UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON GANT, et al.,

     Plaintiffs,

v.

FORD MOTOR COMPANY, INC.,

     Defendant.

Case: 2:19-cv-12533

Honorable Sean F. Cox

Magistrate Judge David R. Grand

**DEFENDANT FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR
LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Defendant Ford Motor Company, per E.D. Mich. LR 5.1 and 7.1, opposes the plaintiffs' Motion for Leave to File a Second Amended Complaint (SAC) (ECF No. 19), which would actually be the *fourth* attempt by the majority of the 360 plaintiffs in this litigation to plead valid claims against Ford, dating back to the prior *Kinner v. Ford* action filed in this Court nearly one year ago. No. 2:19-cv-10583-SFC-DRG (ECF No. 1) (E.D. Mich. Feb. 26, 2019).

The plaintiffs' currently operative First Amended Complaint (FAC)—their second, or in most cases, *third* pleading attempt—was in response to the Court's directive for them to amend to attempt to address the issues and arguments Ford's raised in its motion to dismiss the original complaint. (ECF Nos. 9 & 10.) The FAC failed to save the plaintiffs' claims from dismissal, as Ford has shown in its pending motion to dismiss. (ECF No. 20.)

1

The proposed SAC fares no better, including because it offers no new factual allegations except with respect to *one* of the 360 plaintiffs. (ECF No. 19 at 7.) As to that one plaintiff, the few facts added affirmatively show her claims fail for numerous reasons. (*See* ECF No. 19-2 ¶ 170.) Thus, the Court can and should properly deny further leave to amend to file because the proposed SAC is futile. Indeed, at most, the SAC merely reinforces that despite multiple pleading attempts, the plaintiffs cannot plead any claims able to withstand a motion to dismiss, and that in granting Ford's pending motion to dismiss, the Court should do so with prejudice.

In addition, the plaintiffs' presentation of their SAC evinces a lack of diligence, including their lack of reasonable explanation for why they did not attempt in their FAC what they propose in their SAC. This lack of diligence also suggests dilatory motive in waiting until the eve of Ford's motion to dismiss the FAC to present their 828-page, 2,500-plus-paragraph, 257-count SAC. (*See* ECF No. 19-2.) Together, these factors only further support denying leave to amend.

For numerous reasons—most fundamentally, the SAC's futility—the Court should deny the plaintiffs' motion for leave to amend, reject the SAC, and grant Ford's pending motion to dismiss the FAC.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

BY:   /s/ Thomas P. Branigan
      THOMAS P. BRANIGAN (P41774)
      JODI MUNN SCHEBEL (P55889)
      MATTHEW G. BERARD (P77024)
      MARY T. NOVACHECK (*pro hac vice*)
      41000 Woodward Avenue, Suite 200 East
      Bloomfield Hills, MI 48304-4132
      Telephone: 248.205.3300
      Facsimile:  248.205.3309
      Email: tom.branigan@bowmanandbrooke.com
      Email: jodi.schebel@bowmanandbrooke.com
      Email: matthew.berard@bowmanandbrooke.com
      Email: mary.novacheck@bowmanandbrooke.com

      *Attorneys for Defendant*
      *Ford Motor Company, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AARON GANT, et al., | Case: 2:19-cv-12533 |
| Plaintiffs, | Honorable Sean F. Cox |
| v. | Magistrate Judge David R. Grand |
| FORD MOTOR COMPANY, INC., | |
| Defendant. | |

**DEFENDANT FORD MOTOR COMPANY'S
BRIEF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO
THE PLAINTIFFS' MOTION FOR LEAVE TO FILE
A SECOND AMENDED COMPLAINT**

## STATEMENT OF THE ISSUES PRESENTED

The plaintiffs' brief for their motion for leave did not contain a "Statement of

the Issue Presented." Nonetheless, their motion presents the following issue:

> Leave to amend, while typically liberally granted, is properly denied where, among other reasons, the proposed amendment would be futile, there have already been multiple failed pleading attempts, and the facts show undue delay, lack of diligence, and prejudice. Here, the proposed SAC comes two months *after* the Court's deadline in granting the plaintiffs leave to attempt to address the issues Ford raised in its first motion to dismiss, and it would be, for the majority of these plaintiffs, their *fourth* attempt to plead their claims. Moreover, the SAC cures nothing, would not withstand Ford's pending motion to dismiss, and is, therefore, futile. Granting further leave to amend would delay scrutiny of these claims yet again, require another round of motions, and prejudice the Court and Ford by further protracting proceedings on facially defective claims.

On this record, should the Court exercise its discretion to deny further leave

to amend to file the SAC? The answer is, yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY[1]

1. Fed. R. Civ. P 15.

2. *Foman v. Davis*, 371 U.S. 178 (1962).

3. *Ogle v. Hocker*, No. 02-73200, 2004 WL 7340719 (E.D. Mich. Aug. 5, 2004).

4. *W.-Bowlson v. U.S. Bank, Nat. Ass'n*, No. 13-13584, 2014 WL 3124239 (E.D. Mich. July 8, 2014) (Cox, J.).

5. *Yusong Gong v. Univ. of Mich.*, No. CV 16-14516, 2018 WL 7254249 (E.D. Mich. July 17, 2018) (Cox, J.).

---

[1] Cases appended as Ex. 1.1-1.4 per the Court's Practice Guidelines.

# TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND .......................................1

ARGUMENT .................................................................................................5

I. The plaintiffs' repeated failure to cure the numerous deficiencies in their serial complaints, along with the inability of their proposed SAC to withstand a motion to dismiss and its futility, warrant denying further amendment. ..........................................................................6

    A. The plaintiffs' serial failures—despite multiple opportunities—to plead properly any valid claims they may have supports denying further leave to amend. .............................6

    B. The SAC fails to address—much less to cure—the myriad of pleading deficiencies in the FAC and would not survive a motion to dismiss; its futility and the serial failed amendments are further reason to deny leave to amend. ..............8

        1. The "state-specific claims" add no new factual allegations—only boilerplate legal conclusions—and are futile. .....................................................................10

        2. The MMWA claim likewise adds only generic boilerplate, with no facts or substance, and since the underlying warranty claims fail as Ford has shown, adding an MMWA claim is entirely futile. ...........................15

        3. The few new facts the SAC proposes to add for *one* of the 360 plaintiffs show only that she cannot state claim, and that allowing her leave to amend is entirely futile ........16

II. The remaining factors support denying further leave to amend. ...........19

III. Should the Court allow further leave to amend, then further motions practice will be necessary, including in light of the additional new problems the SAC would introduce................................22

CONCLUSION.................................................................................................24

i

# INDEX OF AUTHORITIES

## Cases

*Benzon v. Morgan Stanley Distrib., Inc.*,
  420 F.3d 598 (6th Cir. 2005) ..................................................................5

*Blair v. Wachovia Mortg. Corp.*,
  No. 5:11-CV-566-OC-37TBS, 2012 WL 868878 (M.D. Fla. Mar. 14,
  2012) ........................................................................................................18

*Daniel v. Bluestem Brands, Inc.*,
  No. 13-11714, 2014 WL 81763 (E.D. Mich. Jan. 9, 2014)......................8

*Diamond Resorts Int'l, Inc. v. Aaronson*,
  No. 617CV1394ORL37DCI, 2018 WL 735627 (M.D. Fla. Jan. 26,
  2018) ........................................................................................................18

*Foman v. Davis*,
  371 U.S. 178 (1962) .................................................................................5

*Frank v. Dana Corp.*,
  547 F.3d 564 (6th Cir. 2008) ..................................................................18

*Goemaere v. Tiell*,
  No. 19-10839, 2020 WL 134095 (E.D. Mich. Jan. 13, 2020)...................5

*Harnden v. Ford Motor Co.*,
  408 F. Supp. 2d 315 (E.D. Mich. 2005), *aff'd sub nom. Harnden v.*
  *Jayco, Inc.*, 496 F.3d 579 (6th Cir. 2007) .............................................16

*Kinner v. Ford Motor Company*,
  No. 2:19-cv-10583-SFC-DRG (E.D. Mich. Feb. 26, 2019).......... 1, 3, 6, 7

*Miller v. Calhoun Cty.*,
  408 F.3d 803 (6th Cir. 2005) .............................................................. 7, 12

*Murry v. Daimler Chrysler Corp.*,
  No. 06-12190, 2006 WL 3253250 (E.D. Mich. Nov. 8, 2006) .............22

*Ogle v. Hocker*,
  No. 02-73200, 2004 WL 7340719 (E.D. Mich. Aug. 5, 2004) ............6, 7

*Reid v. City of Detroit*,
  No. 18-13681, 2019 WL 6310956 (E.D. Mich. Nov. 25, 2019) .......... 8, 18

*Resnick v. Hyundai Motor Am., Inc.*,
  No. CV1600593BROPJWX, 2016 WL 9455016 (C.D. Cal. Nov. 14,
  2016) ................................................................................................................15

*Roe v. Ford Motor Co.,*
  No. 218CV12528LJMAPP, 2019 WL 3564589 (E.D. Mich. Aug. 6,
  2019) ........................................................................................................ 16, 17

*Springer v. Brennan*,
  No. CV 17-11413, 2018 WL 3238174 (E.D. Mich. July 3, 2018).......................20

*Toltest, Inc. v. N. Am. Specialty Ins. Co.*,
  No. 07-15193, 2009 WL 877715 (E.D. Mich. Mar. 30, 2009) (Cox, J.),
  *aff'd*, 362 F. App'x 514 (6th Cir. 2010) ...........................................................21

*United States v. Berman*,
  884 F.2d 916 (6th Cir. 1989) ................................................................................6

*W.-Bowlson v. U.S. Bank, Nat. Ass'n*,
  No. 13-13584, 2014 WL 3124239 (E.D. Mich. July 8, 2014) ...................... 9, 20

*Williams v. City of Cleveland*,
  771 F.3d 945 (6th Cir. 2014) ................................................................................5

*Wozniak v. Ford Motor Co.*,
  No. 2:17-CV-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019).....................17

*Yusong Gong v. Univ. of Mich.*,
  No. CV 16-14516, 2018 WL 7254249 (E.D. Mich. July 17, 2018).....................5

## Other Authorities

Fed. R. Civ. P 15 ....................................................................................................5

Fed. R. Civ. P 15(a)(1) ...........................................................................................5

Fed. R. Civ. P 15(a)(2) ...........................................................................................5

Fed. R. Civ. P 9(b) ......................................................................................... passim

Fed. R. Civ. P. 12(b)(6)....................................................................................... 8, 25

Fed. R. Civ. P. 8 ......................................................................................... 1, 2, 20, 25

## INTRODUCTION AND FACTUAL BACKGROUND

For the majority of these 360 plaintiffs, their proposed "Second Amended Complaint" would be their *fourth* attempt to plead their claims. Indeed, over 190 of them were plaintiffs in the *Kinner v. Ford Motor Company* matter that they voluntarily dismissed last June. No. 2:19-cv-10583-SFC-DRG (ECF No. 1) (E.D. Mich. Feb. 26, 2019). They and over one hundred more plaintiffs then filed this action last August, alleging largely the same claims. After Ford moved to dismiss that complaint, the Court gave the plaintiffs a choice: stand by their *Gant* complaint and possibly face dismissal with prejudice; or amend. (ECF No. 10.) The plaintiffs chose to amend, filing their "First Amended Complaint" (FAC) in November 2019—which pleading was, in fact, the third attempted complaint by over 190 of these plaintiffs. (ECF No. 12.)

Ford's first motion to dismiss identified numerous fundamental and dispositive flaws in the plaintiffs' claims. (ECF No. 9.) Indeed, Ford's motion showed that many plaintiffs' claims are facially time-barred. It catalogued the complaint's serial failures to plead sufficient factual allegations under Rule 8. It showed the failure to organize their claims in any kind of intelligible fashion so the Court and Ford could discern which plaintiffs were relying on which allegations to support which claims under which governing laws in violation of Rule 8. And it highlighted the wholesale failure to plead with anything close to the particularity

1

required for fraud-based claims under Rule 9(b), in addition to numerous other failings. (*Generally id.*)

Rather than respond to any of these issues, the plaintiffs availed themselves of the Court's offer to amend and filed their FAC. However, the FAC ignored and wholly failed to cure the overwhelming majority of the flaws Ford identified with respect to the first *Gant* complaint.

For example, the FAC still violated basic pleading principles under Rule 8, including plaintiffs' failure to plead their claims individually and to identify which plaintiffs rely on which factual allegations to support which claims under which states' laws. (*Generally* ECF No. 20 & *id.* at 13–18.) The plaintiffs also still failed to identify any actual transmission defect and instead continued to plead only conclusory allegations. (*Id.* at 26–27.) Scores of plaintiffs still alleged no facts whatsoever about their vehicle purchases, any purported transmission issues, warranty and repair history, or any other relevant facts. (*Id.* at 28; *also* ECF No. 20-1.2 (chart of "Plaintiffs Pleading Nothing More Than Their Purchase Date, State Residence, and VIN").) Instead, what facts the FAC added affirmatively showed that the majority of the plaintiffs have no claims, either because their vehicles were outside warranty, their claims are time-barred, there was no breach, or for a number of other reasons. (ECF No. 20-1.1 (chart of "Dismissible Counts for Each Individual Plaintiff").) And no plaintiffs added any facts to support their bald fraud allegations

2

to satisfy Rule 9(b) or the elements of such claims. (ECF No. 20 at 24, 38–39, 41–48.) This listing is far from exhaustive, as the FAC remained wholly and materially deficient on every level. (*Generally id.*)

In anticipation of moving to dismiss the FAC, Ford's counsel requested a conference with the plaintiffs' counsel per E.D. Mich. LR 7.1(a) to discuss the grounds for that planned motion, which took place by telephone on January 10, 2020. During that call, Ford's counsel explained that since the FAC failed to address—much less cure—the vast majority of the deficiencies Ford raised in its first motion to dismiss, its anticipated motion on the FAC would address many of the same issues.

The plaintiffs' counsel, meanwhile, advised for the first time during that call that they were contemplating seeking leave to amend yet again, including to set out claims under separate states' laws, as well as to re-assert a count under the Magnuson-Moss Warranty Act that the original *Kinner* plaintiffs asserted then dismissed. The plaintiffs' counsel did not, however, provide any more details concerning their proposed amended complaint, nor did they provide a draft of such a proposed filing. The following business day, Ford's counsel advised the plaintiffs' counsel that, for several reasons, Ford could not agree to the plaintiffs' vague proposed amendment, and that Ford intended to move to dismiss by its January 17,

2020 deadline. E-mail from Ford counsel, Rob Wise, to Plaintiffs' counsel, Ken Stern (Jan. 13, 2020), attached as Ex. 2.

On the afternoon of January 17—the day Ford's motion to dismiss was due—the plaintiffs moved to amend, with a copy of their proposed Second Amended Complaint (SAC), which spans 828 pages and over 2,500 paragraphs (not counting subparagraphs). (ECF Nos. 19 & 19-2.) According to the plaintiffs, their SAC would make three changes: 1) to include "state-specific claims for breach of implied and express warranties, consumer protection act violations, and various state-law claims sounding in fraud and contract," 2) to add "a claim by all Plaintiffs for violations of the Magnuson-Moss Warranty Act," and 3) to provide "some additional factual allegations regarding Plaintiff Marion Hand," who was one of 87 plaintiffs Ford identified as failing to provide any facts except state of residence and the model year, VIN, and date of purchase of their vehicle. (ECF No. 19 at 7; *also* ECF No. 20 Ex. 1.2.)

Among the "state-specific claims," the SAC would add claims for alleged negligence as well as state-law product liability claims, such as strict liability for alleged design defect and failure to warn—all of which are pled, however, only in generic, boilerplate fashion and are non-specific as to any individual plaintiff. (*E.g.*, ECF No. 20 ¶¶ 963–92.) In all, the SAC includes at least 257 separate counts, under 41 states' different laws. (*Generally id.*)

## ARGUMENT

At this stage of the proceedings, where the plaintiffs have already previously amended, Rule 15 requires leave of court for further amendment, which the rule instructs the Court should "freely give" when "justice so requires." Fed. R. Civ. P 15(a)(1) & (2). "The decision as to whether justice requires the amendment is committed to the district court's sound discretion." *Yusong Gong v. Univ. of Mich.*, No. CV 16-14516, 2018 WL 7254249, at *3 (E.D. Mich. July 17, 2018) (Cox, J.). "Abuse of that discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Reasons that warrant denying a motion for leave to amend include 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.' " *Id.* (quoting *Foman*, 371 U.S. at 182) ; *also Goemaere v. Tiell*, No. 19-10839, 2020 WL 134095, at *4 (E.D. Mich. Jan. 13, 2020) (Cox, J.) (same) (citing *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 613 (6th Cir. 2005)). Whether there are reasons to deny leave to amend is generally reviewed as a discretionary matter, except for a denial of leave to amend on futility grounds, which is reviewed de novo. *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014).

Here, several reasons support denying further leave to amend. The Court should therefore deny the plaintiffs' motion, reject the SAC, and rule on and grant Ford's pending motion to dismiss.

**I.   The plaintiffs' repeated failure to cure the numerous deficiencies in their serial complaints, along with the inability of their proposed SAC to withstand a motion to dismiss and its futility, warrant denying further amendment.**

> **A.   The plaintiffs' serial failures—despite multiple opportunities—to plead properly any valid claims they may have supports denying further leave to amend.**

As this District recognizes, "repeated failure to cure deficiencies by amendment despite an opportunity to do so constitutes a sufficient basis on which to deny a request for leave to amend." *Ogle v. Hocker*, No. 02-73200, 2004 WL 7340719, at *1 (E.D. Mich. Aug. 5, 2004) (citing *United States v. Berman*, 884 F.2d 916, 921 (6th Cir. 1989)). Here, the plaintiffs have repeatedly failed to plead their claims properly, and the SAC would be the *fourth* (failed) pleading attempt by the majority of them.

The plaintiffs failed to plead their claims properly back in the *Kinner* action. That complaint was woefully deficient, with those approximately 200 plaintiffs each asserting identical boilerplate allegations in improper "shotgun" fashion. *Kinner*, No. 2:19-cv-10583-SFC-DRG (ECF No. 1). After voluntarily dismissing that action, the *Kinner* plaintiffs (with over 100 new plaintiffs) refiled their claims as this *Gant* action in state court, but again in wholly deficient fashion, as Ford showed in moving

to dismiss that complaint. (*Generally* ECF No. 9.) Indeed, Ford's first motion to dismiss catalogued, with specific examples, the myriad ways in which the original complaint was materially flawed and required dismissal. (*Id.*) The Court already gave the plaintiffs leave once before to amend to attempt to address the numerous deficiencies that Ford raised. (ECF No. 10.) The plaintiffs' FAC was that attempt.

Now, however, the plaintiffs ask for leave to amend *yet again*, purportedly in response to the same pleading deficiencies that Ford raised and that the plaintiffs failed to cure in their FAC. (*See* ECF No. 19 at 7.) In seeking to do so, however, the plaintiffs essentially acknowledge that their FAC failed "to cure deficiencies by amendment despite an opportunity to do so." *Ogle*, 2004 WL 7340719, at *1. In fact, since they first raised their claims nearly a year ago, these plaintiffs have had *multiple* opportunities to attempt to plead any valid claims properly: in *Kinner*, in their original complaint here, and in their FAC. They have failed each time.

Moreover, as discussed below, the plaintiffs' SAC would do nothing to cure the issues Ford raises in its pending motion to dismiss. Rather, the SAC—like its multiple predecessors—*still* would not "survive a motion to dismiss," *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005), thereby further demonstrating repeated failure to cure deficiencies, which presents "a sufficient basis on which to deny a request for leave to amend," *Ogle*, 2004 WL 7340719, at *1.

**B.**     **The SAC fails to address—much less to cure—the myriad of pleading deficiencies in the FAC and would not survive a motion to dismiss; its futility and the serial failed amendments are further reason to deny leave to amend.**

Amendment is properly denied where it would be futile. *Daniel v. Bluestem Brands, Inc.*, No. 13-11714, 2014 WL 81763, at *7 (E.D. Mich. Jan. 9, 2014). "A proposed amendment is futile if the amendment could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Reid v. City of Detroit*, No. 18-13681, 2019 WL 6310956, at *2 (E.D. Mich. Nov. 25, 2019) (Cox, J.) (citing *JGMM Realty, LLC v. LNR Partners, LLC*, 701 F. App'x 465, 471 (6th Cir. 2017) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000))). Here, the SAC is futile on several grounds.

In determining whether a proposed amendment would survive a motion to dismiss and thereby not be futile, the "dispositive question" is whether the amendment "contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Reid*, 2019 WL 6310956, at *2. Leave to amend is properly denied where, in the proposed amendment, the plaintiff "has not come forth with any additional *facts* that would change this Court's analysis of" a pending motion to dismiss. *Daniel*, 2014 WL 81763, at *7. In addition, when there is a motion to dismiss pending, courts will often consider the proposed amendment in light of the issues raised in the pending motion, as they are often "inextricably intertwined."

8

*W.-Bowlson v. U.S. Bank, Nat. Ass'n*, No. 13-13584, 2014 WL 3124239, at *4 (E.D. Mich. July 8, 2014) (Cox, J.).

Here, Ford's pending motion to dismiss again raises numerous pleading deficiencies. (ECF No. 20.) Ford showed that the FAC still presented the plaintiffs' claims in improper "shotgun" fashion, in which it was impossible to discern which plaintiffs where relying on which allegations to support which claims under which states' laws. (*Id.* at 13–18.) Ford showed that scores of plaintiffs' claims are time-barred, with no well-pled facts to support any alleged tolling. (*Id.* at 19–26.) And Ford catalogued the numerous other reasons the plaintiffs' claims failed, including failing to plead facts supporting any actual defect, failing to plead facts showing any breach of warranty, and failing to plead their fraud-based claims with anything close to the particularity required under Rule 9(b) , in addition to numerous other deficiencies. (*Id.* at 26–55.)

Nowhere in their motion for leave to amend do the plaintiffs assert that their SAC cures the myriad pleading deficiencies Ford has raised. They don't recite the standard for futility. Instead, the plaintiffs address futility only in passing, and with no substance, baldly asserting that "for many of the same reasons, the proposed amendment is not futile." (ECF No. 19 at 10.) Yet none of the preceding "reasons" addressed anything relevant to the futility analysis. For example, nowhere do the plaintiffs address Ford's prior motions to dismiss and show that the SAC cures all

9

the myriad issues Ford raised such that it would survive Ford's pending motion to dismiss—because it doesn't. Not even close. Instead, the plaintiffs state that their SAC is not futile because "having all their claims before the Court provides Plaintiffs with additional avenues of recovery and ensures that both parties have a chance to litigate the entire dispute and achieve finality." (*Id.*) It is unclear what the plaintiffs are trying to say, but whatever it is, it has nothing to do with the futility analysis.

In all, despite its massive inflation in page length from the FAC, according to the plaintiffs, their SAC makes only three changes: 1) pleading "state-specific claims," 2) adding a Magnuson-Moss Warranty Act (MMWA) claim, and 3) providing "some additional factual information regarding Plaintiff Marion Hand." (ECF No. 19 at 7.) In other words, of the limited changes the SAC proposes to make, only one involves adding any new factual allegations—and even then, only as to *one* of the 360 plaintiffs. None of these three proposed changes saves the plaintiffs' claims from dismissal on numerous grounds.

1.   **The "state-specific claims" add no new factual allegations—only boilerplate legal conclusions—and are futile.**

The "state-specific claims" contain zero new factual allegations, and offer instead only generic, boilerplate legal conclusions of the elements of the claims asserted across 41 different states. (ECF No. 20 ¶¶ 516–2546.) For example, the SAC's proposed new "state-specific claim" for alleged violation of Alabama's Deceptive Trade Practices Act includes no actual facts and instead refers only to the

"conduct of Ford, as set forth herein" and "Ford's actions, as set forth above"—in addition to incorporating by reference each of the SAC's first 495 paragraphs (which include all of the individual plaintiff allegations, even the non-Alabama plaintiffs). (ECF No. 19-2 ¶¶ 517–19.) These internal references are to, for example, Alabama plaintiff Deajia Thompson, who alleges she bought a 2012 Ford Fusion in September 2014, but doesn't say from whom or where, doesn't allege what she paid, doesn't allege having sustained any economic loss or other damage, doesn't allege that her vehicle has experienced *any* issues whatsoever (much less the plaintiffs' vague "Transmission Defect"), and doesn't allege any facts as to any attempted repairs, warranty claims, or notice to Ford of any alleged issues. (*Id.* ¶ 123.) The SAC's Alabama Deceptive Trade Practices Act count makes no attempt to show how or why plaintiff Thompson's alleged facts—nor the facts alleged for any of her fellow Alabama plaintiffs, for that matter—support a claim under that law.

The same goes for the rest of the SAC's "state-specific claims." Indeed, as with every prior complaint iteration, the SAC lacks any tailoring of any of the claims to the individual plaintiffs and their circumstances. The proposed new "state-specific claims" instead make only bald legal assertions—assertions which the SAC otherwise shows lack factual support.

For example, the SAC now baldly proclaims that the plaintiffs all had "sufficient direct dealings with Ford or its agents (dealerships) to establish privity of

contract." (ECF No. 19-2 ¶ 509.) The SAC itself shows this to be merely another bald and baseless legal conclusion entitled to no weight, as opposed to a well-pled factual allegation—such as with plaintiff Miller, who alleges (in both the FAC and the SAC) that she bought her 2013 Ford Fusion from CarMax in 2014, provides no facts showing any dealings with any Ford agents or dealers in purchasing her vehicle, and thus has no factual support for the new "privity" assertion in the SAC. (*Id.* ¶ 193.) Numerous similar examples abound throughout the SAC. (*E.g.*, *id.* ¶¶ 134, 139.) And these examples are in addition to the scores of plaintiffs who *still* fail to provide any facts whatsoever except their residence, and the model, year, VIN, and purchase date of their vehicle. (*E.g.*, *id.* ¶ 135.)

The "state-specific claims" further confuse matters in that some of them purport to be asserted only on behalf of certain plaintiffs, yet the new criteria for inclusion have no basis in any facts alleged. For example, the California express warranty claim purports to be asserted "on behalf of those Plaintiffs who sought repairs pursuant to the recalls . . . ." (ECF No. 19-2 ¶ 698.) *None* of the California plaintiffs allege they sought repairs pursuant to any recall, nor do they allege any facts as to any purportedly applicable recall. (*See id.* ¶¶ 138–42.) Similarly, the New York Deceptive Acts or Practices claim purports to be "asserted by Plaintiffs who . . . (b) sold their vehicle at a loss." (*Id.* ¶ 1851.) *None* of the New York plaintiffs

allege they sold their vehicles at a loss. (*Id.* ¶¶ 348–66.) It is thus entirely unclear as to who fits into this inclusion criterion.

Meanwhile, other aspects of the "state-specific claims" are internally conflicting and confusing, and many plaintiffs appear even to be abandoning certain claims. For example, the SAC asserts in boilerplate fashion that each and every one of the plaintiffs' vehicles experienced "the transmission defects," and that "[e]ach of the Plaintiffs to this Complaint requested or desired that Ford fix the defective transmission in their vehicle, but Ford could not or would not permanently repair it." (*Id.* ¶¶ 8, 27.) Yet, contrary to that bald assertion, the Florida express warranty claim purports to be asserted only "on behalf of Plaintiffs who experienced the Transmission Defects and who presented their Vehicle for repair." (*Id.* ¶ 853.) While many Florida plaintiffs allege neither that they experienced the alleged "Transmission Defect," nor that they presented their vehicles for repair.[2] (*E.g.*, *id.* ¶¶ 150, 151, 154, 158, 162–64, 166, 169, 171, 174–79; *also id.* ¶ 844 (defining the Florida Unfair & Deceptive Trade Practices Act claim as also being asserted only by those who "experienced the Transmission Defects").)

Similarly, the New York Deceptive Acts or Practices claim purports to be asserted by Plaintiffs who either "(a) suffered a Transmission Defects event or (b)

---

[2] Ford disputes that accuracy or appropriateness of the plaintiffs' purported inclusion criteria, and only relies on the SAC's inclusion criteria to show that many of the plaintiffs now affirmatively plead themselves *out* of their own claims.

sold their vehicle at a loss." (*Id.* ¶ 1851.) Again, no New York plaintiff alleges selling their vehicle at a loss, and many of them also don't allege having experienced any "Transmission Defects event." (*Id.* ¶¶ 349, 351, 355–56, 361–62; *see also id.* ¶¶ 1869, 1883, & 1890 (defining various New York warranty-based claims with similar inclusion criteria that many of the New York plaintiffs don't meet).)

The SAC is internally conflicting, inconsistent, and confusing in terms of why any plaintiffs from other states who have not alleged they experienced any "Transmission Defect" are asserting claims for breach of warranty. For example, why is California plaintiff Haggard, who bought a used 2016 Fusion in March 2018 from "Paul Blanco's Good Car Company" asserting a claim under California's Song-Beverly Consumer Warranty Act alleging that he bought his vehicle new (when he did not), and that he "gave Ford or its authorized repair facilities at least two opportunities to fix the defects" (when he does not allege having sought any repairs under warranty)? (*See id.* ¶¶ 140, 630–38; *also id.* ¶ 139 (showing California plaintiff Morss bought his vehicle used and sought repairs only from "AAMCO Transmissions and Total Car Care," yet likewise asserts a Song-Beverly claim).)

As these numerous other examples show, the SAC's "state-specific claims" provide nothing more than bare elements of various claims across different states along with irrelevant conclusory assertions, while adding no facts, no substance, and nothing to avoid a motion to dismiss. This is particularly true with respect to the

consumer-protection, trade-practices, and other various fraud-based claims (both common-law and statutory) that the SAC proposes to add, which overwhelmingly require pleading with Rule 9(b) particularity. *E.g.*, *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2016 WL 9455016, at *12 (C.D. Cal. Nov. 14, 2016) (recognizing that claims under California's Consumer Legal Remedies Act (CLRA), Unfair Competition Law (UCL), and False Advertising Law (FAL) all "must comply with the heightened pleading standards of Rule 9(b)") ; (ECF No. 19-2 ¶¶ 656–96 (alleging counts under the CLRA, UCL, and FAL)). Bald, generic boilerplate such as this fails to state a claim, and it likewise fails to show that the requested amendment is anything but futile.

### 2. The MMWA claim likewise adds only generic boilerplate, with no facts or substance, and since the underlying warranty claims fail as Ford has shown, adding an MMWA claim is entirely futile.

The re-added MMWA claim likewise provides no new facts. (*Id.* ¶¶ 496–515.) Instead, it too states merely boilerplate legal conclusions—incorrect legal conclusions at that, such as asserting that Ford's "written and implied warranties relate to future performance of its vehicles because it promised that the drivetrain of Plaintiffs' vehicle would perform adequately for a specified period of time or mileage, whichever came first." (*Id.* ¶ 507.) Neither Ford's NVLW nor the UCC implied warranty of merchantability is a promise that no warranted issues will arise during the mileage or time limitations.

Regardless, nothing in the newly re-asserted MMWA claim addresses or resolves anything covered in Ford's pending motion to dismiss. Rather, as Ford showed in moving to dismiss the FAC, the express and implied warranty claims fail (ECF No. 20 at 19–33), and where—as here—there are no viable underlying warranty claims, an MMWA claim likewise fails. *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315, 322–23 (E.D. Mich. 2005), *aff'd sub nom. Harnden v. Jayco, Inc.*, 496 F.3d 579 (6th Cir. 2007) (acknowledging MMWA claims "are derivative of . . . breach [of] express and implied warrant[y]" claims and granting defendants motion for summary judgment on plaintiff's state-law warranty and MMWA claims). In short, the MMWA claim does nothing to withstand a motion to dismiss, and its proposed addition is futile.

> **3.    The few new facts the SAC proposes to add for *one* of the 360 plaintiffs show only that she cannot state claim, and that allowing her leave to amend is entirely futile.**

As for plaintiff Hand, the few new facts she proposes to add with the SAC nonetheless still fail to state a claim. (*Id.* ¶ 170.) Indeed, her newly added facts show she bought a used 2013 Ford Fusion in February 2016,[3] and (according to her allegations) she did not experience any alleged "Transmission Defect" until 2017, at

---

[3] Plaintiff Hand does not affirmatively allege her 2013 vehicle was used when she bought it 2016, but "common-sense dictates that the car did not sit on a dealer lot for over two years." *Roe v. Ford Motor Co.,* No. 218CV12528LJMAPP, 2019 WL 3564589, at *9 (E.D. Mich. Aug. 6, 2019), *reconsideration denied in part*, No. 2:18-CV-12528, 2020 WL 289306 (E.D. Mich. Jan. 21, 2020).

*70,000 miles*—i.e., *after* her Fusion's 60,000-mile NVLW had expired. (ECF No. 19-2 ¶ 170.)[4] Thus, she cannot state a claim for breach of express warranty. *Roe*, 2019 WL 3564589, at \*11 (holding that there is no breach of express warranty, nor any failure of its essential purpose, when there are no alleged issues nor any requested repairs within the warranty period"); *also Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at \*2 (E.D. Mich. Jan. 4, 2019) ("For a repair-or-replace remedy to fail its essential purpose . . . the consumer must give the manufacturer an opportunity to repair or replace the alleged defect during the warranty period"). Plaintiff Hand likewise alleges no facts to support a breach of implied warranty, including, among other reasons, facts showing she experienced any issues within the implied warranty period.

Moreover, plaintiff Hand, like her co-plaintiffs, still fails to identify any actual defect, and instead merely describes alleged driving conditions that could be due to any number of various causes, with many having nothing to do with any defect. (ECF No. 19-2 ¶ 170; *also* ECF No. 20 at 26–27.) She likewise now joins many of her co-plaintiffs in alleging in generic fashion that she supposedly relied on "TV, Radio or Billboard Ads, Internet, and Historical Brand Slogans" in deciding to purchase her

---

[4] Plaintiff Hand asserts she "sought repairs four times under warranty," which makes no sense if she is referring to the alleged "Transmission Defect" since she alleges that she only first experienced the alleged "Transmission Defect" "at approximately 70,000 miles," at which point her vehicle was *outside* the NVLW's coverage. (*Id.*)

vehicle, with no facts alleged as to what the actual representations were that she supposedly saw or heard. (*Id.*)

Overall, plaintiff Hand has merely moved from the list of plaintiffs who pled no facts whatsoever, to the list of plaintiffs who pled some facts but still fall woefully short of the mark "to state a claim for relief that is plausible on its face." *Reid*, 2019 WL 6310956, at *2. This is particularly true with respect to her fraud-based claims, given Rule 9(b)'s particularity requirement. *Frank v. Dana Corp.,* 547 F.3d 564, 569–70 (6th Cir. 2008) (explaining that Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"); *Blair v. Wachovia Mortg. Corp.*, No. 5:11-CV-566-OC-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (recognizing that "the heightened pleading standard of Rule 9(b)" applies "where the gravamen of the claim sounds in fraud"); (*also* ECF No. 19-2 ¶¶ 843–51, 869–76 (plaintiff Hand asserting fraud-based claims under Florida's Unfair & Deceptive Trade Practices Act (FDUTPA) and for "Fraud by Concealment")).[5] Neither plaintiff Hand nor the

---

[5] While Florida courts are "divided as to whether this heightened pleading standard applies" across the board to FDUTPA claims, Rule 9(b) particularity is properly required where the "FDUTPA claim rests on fraud allegations." *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 617CV1394ORL37DCI, 2018 WL 735627, at *9 (M.D. Fla. Jan. 26, 2018) (supporting that). Here, the SAC's proposed FDUTPA claim (like all the other 250-plus counts) incorporates the first 495 paragraphs of the SAC, which include no less than 10 paragraphs alleging fraud.

SAC in general add any factual allegations to support any of the alleged fraud-based claims. The proposed amendment is thus entirely futile on this score as well.

*    *    *    *    *    *    *    *

The SAC could not withstand a motion to dismiss, including for the reasons stated in Ford's pending motion to dismiss the FAC. All the SAC does is further show that despite multiple pleading attempts, the plaintiffs still cannot properly plead any claims, that further amendment is futile, and that the Court should grant Ford's pending motion to dismiss *with prejudice.*

## II.   The remaining factors support denying further leave to amend.

Despite these claims first being filed nearly a year ago, this case is (due to the plaintiffs dismissing, refiling, and amending their claims) still at the pleading stage. Thus, while the delays caused by the plaintiffs' past pleading failures and their proposed further amendment would not delay an impending trial date or require re-opening discovery, allowing the plaintiffs to amend yet again would nonetheless unnecessarily further delay proper scrutiny of these deeply flawed claims—scrutiny which should result in the dismissal with prejudice of these baseless and improperly pled claims. Allowing leave to amend would also require Ford to brief yet another motion to dismiss (among possibly other issues raised by the SAC), for a *third* time.

Moreover, scrutinizing these claims under the framework of the SAC's 250-plus counts across 41 states' laws would unnecessarily burden and prejudice the

19

Court and Ford, given that the plaintiffs' claims—under both the FAC and the SAC—fail at much more fundamental levels, including the failure to plead any actual defect, the failure to plead their claims individually under Rule 8, and the failure to comply with Rule 9(b) . These claims have been pending for nearly a year; further amendment would merely delay inevitable dismissal.

Meanwhile, the plaintiffs cannot credibly claim prejudice from denying a third—and in most cases, fourth—attempt to plead their claims properly, since they have repeatedly failed despite ample time and opportunity to do so. Their proposed SAC also makes clear that the plaintiffs have no relevant facts to add to support any viable claims. And the deficiencies in their claims run far deeper than what they propose with their SAC. In sum, prejudice only supports denying leave to amend.

In addition, Ford is not in a position to assert that the plaintiffs' actions rise to the level of bad faith. Nonetheless, as this Court has recognized, a party seeking to amend "must act with due diligence if it intends to take advantage of [Rule 15's] liberality," *W.-Bowlson*, 2014 WL 3124239, at *3, and unreasonable delay, along with other factors, can properly support denying leave to amend. *E.g.*, *Springer v. Brennan*, No. CV 17-11413, 2018 WL 3238174, at *4 (E.D. Mich. July 3, 2018) ("plaintiff unreasonably delayed bringing this claim, as she was aware of the basis of it when she filed her original complaint") (Cox, J.); *Toltest, Inc. v. N. Am. Specialty Ins. Co.*, No. 07-15193, 2009 WL 877715, at *9 (E.D. Mich. Mar. 30,

2009) (Cox, J.), *aff'd*, 362 F. App'x 514 (6th Cir. 2010) ("The Court does not believe that Toltest has established a reasonable basis for its delay in seeking to assert this claim against Acme."). The timing of the plaintiffs' request for leave to amend yet again is unreasonable and, at the very least, exhibits a lack of diligence and suggests dilatory motive that further warrant denying such leave.

For example, despite Ford's original motion to dismiss having raised (among many other issues) their failure to plead according to individual states' laws and the lack of facts for scores of plaintiffs like Ms. Hand, the plaintiffs don't explain why they didn't make their current proposed amendments back when they filed their FAC, and why they instead waited until the eve of Ford's second motion to dismiss to disclose that they might again seek to amend.[6] To the contrary, they assert they filed their SAC in anticipation of "a second motion to dismiss from Ford making many of the same arguments against the FAC that were made against the original complaint." (ECF No. 19 at 7.) In other words, their SAC is an attempted response to arguments that Ford raised last October. In reality, however, nothing they propose to add now by their SAC is new or anything they could not and should not have attempted in their FAC. Their unexplained delay in presenting what they propose in the SAC only further supports denying leave. *See Murry v. Daimler Chrysler Corp.*,

---

[6] To be clear, even if they had attempted their SAC amendments in the FAC, they still would have been futile, as explained herein.

21

No. 06-12190, 2006 WL 3253250, at *2 (E.D. Mich. Nov. 8, 2006) (denying leave, in part, where proposed new "information was known to Plaintiff at the time the original Complaint was filed") (Cox, J.).

The questionable timing of the plaintiffs' motion to amend and their SAC is further highlighted by their assertion that they "are seeking leave to amend at an early point in the case, shortly after learning that Ford still takes a dim view of the FAC's legal soundness," which can only refer to the parties' January 10, 2020 teleconference. (*See* ECF No. 19 at 9.) The notion that the January 10 teleconference was what prompted to plaintiffs to prepare their SAC is belied, however, by the fact that barely one week passed between that January 10 call and when they filed an 828-page, 2,546-paragraph, 257-count pleading.

Regardless of the reasons for the plaintiffs' delay, the fact remains that their proposed SAC would change nothing because it could not withstand a motion to dismiss. The futility of their amendment is reason enough to deny leave. The plaintiffs' lack of diligence and unexplained delay only further support that outcome.

**III.   Should the Court allow further leave to amend, then further motions practice will be necessary, including in light of the additional new problems the SAC would introduce.**

The Court should deny leave to amend to file the SAC, for numerous reasons. Should the Court grant such leave, however, then as this response shows, Ford should have the opportunity to move against it given the myriad flaws and

deficiencies that persist with the SAC. In addition, the plaintiffs' assertion of claims under separate states' laws will require individualized analysis of those claims on a more state-by-state basis, which Ford was not in a position to do previously in light of the plaintiffs' failure to plead under which states' laws they were purporting to assert claims.

Moreover, in both its prior motions to dismiss, Ford has pointed out that it may be necessary to pursue other relief, depending on the outcome of those motions, such as for severance for improper joinder, or possible transfer. (ECF No. 9 at 21 n.12; ECF No. 20 at 18 n.6.) Ford had not sought such relief earlier because the first and most appropriate outcome has been for the Court to dismiss the plaintiffs' claims entirely. With their motion for leave to amend, however, the plaintiffs have only further magnified the impropriety of their attempt to proceed with their disparate claims by this mass action.

For example, the plaintiffs acknowledge that they bought "several different models of Ford Fusions" with different transmissions (some with the standard transmission, some with the hybrid version). (*See* ECF No. 19 at 6.) They admit they experienced varying (and vague) "unexpected problems" (among those who allege experiencing any "problems" whatsoever). (*Id.*) They admit they have no idea whether these alleged issues are purportedly attributable to some defect in their design, their materials, their manufacture, or instead their workmanship. (*Id.*) And

they admit their claims should be adjudicated under the laws of at least 41 different states, on varying and often unique statutory theories including not merely warranty and fraud/consumer protection, but also negligence, strict liability, failure to warn, and others, such as "redhibition." (*E.g.*, ECF No. 19-2 at 392, 483–84, 540–44, 564–66, 595.)

In addition, of the SAC's proposed 257 counts, only three are asserted under Michigan law, and only 17 of the 360 plaintiffs assert those claims under Michigan law. Thus, beyond the fundamental deficiencies and flaws that persist in these claims as asserted, the plaintiffs' proposed SAC only further calls into question the propriety of proceeding in this Court with claims by 360 plaintiffs who overwhelmingly hale from different states and seek to have their claims adjudicated under 41 different sets of laws. Therefore, should the Court grant leave to amend, then in addition to another motion to dismiss, Ford respectfully reserves the right to pursue additional appropriate relief in light of the significant manageability, efficiency, and practicality concerns the SAC would raises.

## CONCLUSION

Ford respectfully requests that the Court deny the plaintiffs' motion for leave to amend. If, however, the Court grants the plaintiffs leave, Ford respectfully requests and reserves the opportunity to move against the SAC on appropriate grounds, because as it stands, the SAC remains deficient in multiple respects under

Rules 8 and 9(b) and is ripe for dismissal under Rule 12(b)(6) . Ford also respectfully requests and reserves the right to seek other appropriate relief depending on whether and in what form any amendment is allowed, as the proposed SAC now raises even more significant concerns with misjoinder as well as proceeding in mass fashion with claims by plaintiffs from dozens of states before this Court, which may more appropriately be transferred to other jurisdictions.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

BY:   /s/ Thomas P. Branigan
          THOMAS P. BRANIGAN (P41774)
          JODI MUNN SCHEBEL (P55889)
          MATTHEW G. BERARD (P77024)
          MARY T. NOVACHECK (*pro hac vice*)
          41000 Woodward Avenue, Suite 200 East
          Bloomfield Hills, MI 48304-4132
          Telephone: 248.205.3300
          Facsimile:  248.205.3309
          Email: tom.branigan@bowmanandbrooke.com
          Email: jodi.schebel@bowmanandbrooke.com
          Email: matthew.berard@bowmanandbrooke.com
          Email: mary.novacheck@bowmanandbrooke.com

          *Attorneys for Defendant*
          *Ford Motor Company, Inc.*

## CERTIFICATE OF SERVICE

That on January 31, 2020, the undersigned hereby certifies that a copy of the

foregoing document in the above-captioned proceeding has been served through the

MI File e-filing system, upon the attorneys listed below:

STERN LAW, PLLC
BY: KENNETH A. STERN (P30722)
Attorneys for Plaintiffs
41850 W. Eleven Mile Road, Suite 121
Novi, MI 48375-1857
(248) 347-7315
ken@sternlawonline.com

CONSUMER LEGAL REMEDIES, APC
BY: ALLEN-MICHEL D. RESNICK
JOHN NEIL GIELEGHEM
Co-Counsel for Plaintiffs
The Resnick Building
331 North Beverly Drive, Suite 2
Beverly Hills, CA 90210-4715
(310) 213-1398
rnresnick@clrattorney.com
ng@clrattorney.com

BOWMAN AND BROOKE LLP

BY:   /s/ Thomas P. Branigan
       THOMAS P. BRANIGAN (P41774)
       JODI MUNN SCHEBEL (P55889)
       MATTHEW G. BERARD (P77024)
       MARY T. NOVACHECK (*pro hac vice*)
       41000 Woodward Avenue, Suite 200 East
       Bloomfield Hills, MI 48304-4132
       Telephone: 248.205.3300
       Facsimile:  248.205.3309
       Email: tom.branigan@bowmanandbrooke.com
       Email: jodi.schebel@bowmanandbrooke.com
       Email: matthew.berard@bowmanandbrooke.com
       Email: mary.novacheck@bowmanandbrooke.com