# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AARON GANT, *et al*.,

      Plaintiffs,

v.

FORD MOTOR COMPANY,

      Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

_____

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

NOW COME Plaintiffs, Aaron Gant, *et al*. ("Plaintiffs"), by and through their counsel, Stern Law, PLLC, and Marino Law, PLLC, pursuant to Federal Rules of Civil Procedure 8, 9, and 12, respectfully submit this response in opposition to Defendant Ford Motor Company's ("Ford") motion to dismiss (ECF No. 20) the First Amended Complaint (ECF No. 12) ("FAC") pursuant to Federal Rule of Civil Procedure 12(b). Ford consistently misinterprets and misrepresents Plaintiffs' legal positions and factual allegations in the FAC, and thus spills significant ink contesting arguments that Plaintiffs do not make, as well as bypassing clear contextual statements and explanations presented throughout the FAC. Moreover, many of the purported defects identified in the FAC have already been addressed by Plaintiffs through the filing of their motion for leave to file a second amended

complaint (ECF No. 19) and the proposed Second Amended Complaint (ECF No. 19-2) ("SAC").

Accordingly, for the reasons set forth in the accompanying memorandum of law, Ford's motion to dismiss the FAC must be denied.

Respectfully submitted this 28th day of February, 2020.

STERN LAW, PLLC

/s/ Kenneth A. Stern_____
KENNETH A. STERN (P30722)
41850 W. Eleven Mile Road, Suite 121
Novi, MI 48375-1857
(248) 347-7315
ken@sternlawonline.com

MARINO LAW PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste 100E
Southfield, Michigan 48075
Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON GANT, *et al*.,

      Plaintiffs,

v.

FORD MOTOR COMPANY,

      Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

_____

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. General Motors, L.L.C.*, No. 1:13-CV-00437, 2013 WL 5670888 (C.D. Cal. Oct. 16, 2013)

*Alfieri v. Bertorelli*, 813 N.W.2d 772 (Mich. Ct. App. 2012)

*Anderson v. Dist. Bd. of Trustees of Cent. Fl. Cmty. Coll.*, 77 F.3d 364 (11th Cir. 1996)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950 (E.D. Mich. 2017)

*Att'y Gen. v. Diamond Mortgage*, 327 N.W.2d 805 (Mich. 1982)

*Beck v. FCA US LLC,* 273 F.Supp.3d 735 (E.D. Mich. 2017).

*Biagini v. Mocnik*, 120 N.W.2d 827 (Mich.1963)

*Bouverette v. Westinghouse Electric Corp.*, 628 N.W.2d 86 (Mich. Ct. App. 2001).

*Cameron v. Seitz*, 38 F.3d 264 (6th Cir. 1994)

*Cardwell v. International Housing*, *Inc.*, 423 A.2d 355 (Pa. 1980)

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012)

*Cholakyan v. Mercedes-Benz USA, L.L.C.*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011).

*Christelles v. Nissan Motor Corp., U.S.A.*, 701 A.2d 1317, 1321 (N.J. Super. App. Div. 1997)

*City Nat'l Bank v. Wells*, 384 S.E.2d 374 (W. Va. 1989)

*Cline v. DaimlerChrysler Corp.*, 115 P.3d 468 (Okla. Civ. App. 2005)

*Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993)

*Colonial Dodge, Inc. v. Miller*, 362 N.W.2d 704 (Mich. 1985)

*Columbia Nat''l Res., Inc. v. Tatum*, 58 F.3d 110 (6th Cir. 1995)

*Conley v. Gibson*, 355 U.S. 41 (1957)

*Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d 144 (Conn. 1976)

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997)

*Cyr v. Ford Motor Co.*, No. 345751, 2019 W.L. 7206100 (Mich. Ct. App. Dec. 26, 2019)

*Cyr v. Ford Motor Co.*, Michigan Supreme Court No. 160927

*Davis v. Forest River, Inc.*, 774 N.W.2d 327 (Mich. 2009)

*Davis v. LaFontaine Motors, Inc.*, 719 N.W.2d 890 (Mich. Ct. App. 2006)

*Dix v. American Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206 (Mich. 1987)

*Dopieralla v. Arkansas Louisiana Gas Co.*, 499 S.W.2d 610 (Ark. 1973)

*Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162 (11th Cir. 1997)

*Experian Marketing Solutions, Inc. v. Lehman*, No. 1:15–CV–476, 2015 WL 5714541 (W.D. Mich. Sept. 29, 2015)

*Fablok Mills, Inc. v. Cocker Mach & Foundry Co.*, 310 A.2d 491, cert. denied, 315 A.2d 405 (N.J. 1973)

*Feldman v. Mercedes-Benz USA, L.L.C.*, No. 2:11-CV-00984, 2012 WL 659830 (D.N.J. Dec. 18, 2012)

*Flamenbuam v. Orient Lines, Inc.*, No. 03–22549–CIV, 2004 WL 1773207 (S.D. Fla. 2004)

*Foman v. Davis*, 371 U.S. 178 (1962)

*Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, No. 13-CV-0331, 2013 WL 4401437 (S.D. Cal. Jun. 20, 2013)

*Gambrill v. Alfa Romeo, Inc.*, 696 F. Supp. 1047 (E.D. Pa. 1998)

*Genetti v. Caterpillar, Inc.*, 621 N.W.2d 529 (Neb. 2001)

*Glaske v. Indep. Bank Corp.*, No. 16-CV-323167, 2016 WL 298986 (Mich. Ct. App. Jan. 21, 2016).

*Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325 (Mich. 1995)

*Greifenstein v. Estee Lauder Corp., Inc.*, No. 12–cv–09235, 2013 WL 3874073 (N.D. Ill. Mar. 31, 2016).

*Grosse Pointe Law Firm, P.C. v. Jaguar Land Rover N. Am., L.L.C.*, 894 N.W.2d 700 (Mich. Ct. App. 2016), *appeal denied* 896 N.W.2d 421 (Mich. 2017).

*Hand v. Dayton-Hudson*, 775 F.2d 757 (6th Cir. 1985)

*Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595 (Mich. Ct. App. 1999)

*Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541 (Mich. Ct. App. 1995)

*In re Bridestone/Firestone, Inc., ATX*, No. 1P- 00-9373, 2001 WL 34136021 (S.D. Ind., 2001)

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, No. CV-1706656, 2019 WL 3000646 (C.D. Cal. May 22, 2019)

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-CV-2623, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009)

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010).

*JAC Holding Enterprises, Inc. v. Atrium Capital Partners, L.L.C.*, 997 F. Supp. 2d 710 (E.D. Mich. 2014)

*Jimmy Smith Racing Tires, Inc. v. Ashleman*, No. CIVA 1:05-CV-0970 JEC, 2006 WL 2699127 (N.D. Ga. Sept. 19, 2006)

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008)

*Kelynack v. Yamaha Motor Corp.*, 394 N.W.2d 17 (Mich. Ct. App. 1986)

*Kenkel v. Stanley Works*, 665 N.W.2d 490, 496 (Mich. Ct. App. 2003)

*King v. Taylor Chrysler-Plymouth, Inc.,* 457 N.W.2d 42 (Mich. Ct. App. 1990)

*Krupp PM Engg'g, Inc. v. Honeywell, Inc.*, 530 N.W.2d 146, 149 (Mich. Ct. App. 1995).

*Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618 (Mich. Ct. App. 1986)

*Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007)

*Lorenzo v. Noel*, 522 N.W.2d 724 (Mich. Ct. App. 1994)

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014)

*Majors v. Kalo Laboratories, Inc.*, 407 F. Supp. 20 (M.D. Ala. 1975)

*Mallory v. Conida Warehouses,* 350 N.W.2d 825 (Mich. Ct. App. 1984)

*Mason v. Porsche Cars of N. Am., Inc.*, 688 So.2d 361 (Fla. Dist. Ct. App. 1997)

*Matanky v. General Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

*McKee v. General Motors L.L.C.*, 376 F. Supp.3d 751 (E.D. Mich. 2019)

*Mertik v. Blalock*, 983 F.2d 1353 (6th Cir. 1993)

*Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674 (6th Cir. 1988).

*Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995)

*Miller v. Gen. Motors, L.L.C.*, No. 17-cv-14032, 2018, WL 2740240 (E.D. Mich. June 7, 2018)

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989).

*Muir v. Nature's Bounty (DE), Inc.*, No. 15-C-9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)

*Myers v. Ford Motor Co.,* No. BC638302 at Dkt. 1 (Cal. Super. Ct. Los Angles Cty. Oct. 21, 2016)

*Nesbitt v. American Community Mut. Ins. Co.*, 600 N.W.2d 427 (Mich. Ct. App. 1999)

*Ordon v. Johns*on, 77 N.W.2d 377 (Mich. 1956)

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991)

*Regents of Univ. of Colorado v. Pacific Pump & Supply, Inc.*, 528 P.2d 941 (Colo. App. 1974)

*Republic Bank & Tr. Co. v. Bear Stearns Co.*, 683 F.3d 239 (6th Cir. 2012)

*Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226 (6th Cir. 1997)

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)

*Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999)

*Sutton v. Community Health Systems, Inc.*, No. 1:16-cv-01318-STA-egb, 2017 WL 3611757 (E.D. Tenn. Aug. 22, 2017)

*T.D.S., Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 (11th Cir. 1985)

*Taylor v. Volvo N. Am. Corp.*, 451 S.E.2d 61825 (N.C. 1994)

*Tiger Motor Co. v. McMurtry*, 224 So.2d 638 (Ala. 1969)

*Tkachik v. Mandeville*, 790 N.W.2d 260 (Mich. 2010)

*Tompkins v. Hollister*, 27 N.W. 651 (Mich. 1886)

*U.S. Fidelity. & Guar. Co. v. Black*, 313 N.W.2d 77 (Mich. 1981)

*U.S. Sec. Exch. Comm'n v. Kilpatrick*, No. 12-12109, 2012 WL 4839868 (E.D. Mich. Oct. 11, 2012)

*United States v. Layne*, 192 F.3d 556 (6th Cir. 1999)

*United States v. Williams*, 544 F.3d 683 (6th Cir. 2008)

*Van Hoven v. Buckles & Buckles, P.L.C.,* 947 F.3d 889 (6th Cir. 2020)

*VanderHoef v. Parker Bros Co., Ltd.*, 255 N.W. 449 (Mich. 1934)

*Vista Chevrolet, Inc. v. Lewis*, 704 S.W.2d 363 (Tex. Ct. App. 1983), *rev'd on other grounds*, 709 S.W.2d 176 (Tex. 1986)

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)

*Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)

*Williams v. Benson*, 141 N.W.2d 650 (Mich. Ct. App. 1966)

*Wozniak v. Ford Motor Co.*, No. 2:17-CV-1279, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)

*Wysocki v. Int''l Bus. Mack Corp.*, 607 F.3d 1102 (6th Cir. 2010)

*Yagman v. General Motors*, No. CV-14-4696, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014)

*Ybarra v. Modern Trailer Sales, Inc.*, 609 P.2d 331 (N.M. 1980)

*Young v. Donahoe*, No. 1:11-CV-0105, 2013 WL 5332109 (M.D. Tenn. Sept. 20, 2013)

*Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008)

**Statutes**

MICH. COMP. LAWS § 440.2302(1) (2013)

MICH. COMP. LAWS § 440.2314(2) (1964)

MICH. COMP. LAWS § 440.2605 (2013)

MICH. COMP. LAWS § 440.2608 (1964)

MICH. COMP. LAWS § 440.2608(1) (1964)

MICH. COMP. LAWS § 440.2714(2) (1964)

MICH. COMP. LAWS § 440.2719(2) (1964)

MICH. COMP. LAWS §§ 445.901, *et seq.* (1977)

MICH. COMP. LAWS § 445.902 (2018)

MICH. COMP. LAWS § 445.902(1)(g) (2018)

MICH. COMP. LAWS § 445.902(c) (2018)

MICH. COMP. LAWS § 445.902(d) (2018)

MICH. COMP. LAWS § 445.903(1) (2018)

MICH. COMP. LAWS § 445.904(1) (2015)

MICH. COMP. LAWS § 600.6013(8) (2013)

**Rules**

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 15

Fed. R. Civ. P. 8

Fed. R. Civ. P. 9(b)

## **CONTROLLING/MOST APPROPRIATE AUTHORITY**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility" as long as "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

*Consol. Rail. Corp. v. Grand Trunk Western. R.R. Co.*, No. 09-10179, 2009 WL 3460334 (E.D. Mich. Oct. 22, 2009) (Where "the facts plead[ed] sufficiently state a claim for relief, the issue of reasonableness is a matter appropriately reserved for summary judgment or trial.").

*Flamenbuam v. Orient Lines, Inc.,* No. 03–22549–CIV, 2004 WL 1773207, *15 (S.D. Fla. 2004) Impermissible shotgun pleading occurs when the incorporation "makes it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.")

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008) (consideration of a motion to dismiss under Rule 12(b)(6) is confined strictly to the pleadings).

*Sutton v. Community Health Systems, Inc.*, No. 1:16-cv-01318-STA-egb, 2017 WL 3611757 (E.D. Tenn. Aug. 22, 2017) (rejecting shotgun pleading argument on the basis that it is unfounded in the Sixth Circuit).

*U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77 (Mich. 1981) (establishing the elements that must be pled to state an actionable Michigan fraud claim, sufficient to survive a motion to dismiss).

*Wysocki v. Int'l Bus. Mack Corp.*, 607 F.3d 1102 (6th Cir. 2010) (on a motion to dismiss, the facial sufficiency of the complaint is assessed without resort to matters outside the pleadings).

## COUNTERSTATEMENT OF ISSUES PRESENTED

1.     All Counts – Pleading rules require complaints to be simple, concise, and direct, showing the claim which relief can be granted. The amended complaint here does just that, organizing the 360 plaintiffs regarding their individual purchases of vehicles over the course of 10 years, across various states. This amended complaint demonstrates superior organization and conciseness. All the claims alleged are under applicable laws and rely on the same facts regarding Ford's knowledge of the "Transmission Defects" and their attempts to fraudulently deceive customers into purchasing them. Should the Court deny the motion to dismiss the amended complaint? *Plaintiffs' Answer*: Yes.

2.     All Counts as to Certain Plaintiffs –There are 360 Plaintiffs that are not all governed by Michigan statutes of limitation. The jurisdictions for the claims of the plaintiffs' are unique to each claimant as corrected by Plaintiffs' proposed SAC. Denying Defendants' motion to dismiss and allowing Plaintiffs' SAC to cure the statute of limitations deficiencies would be proper. Should the Court deny the motion to dismiss these claims allowing Plaintiffs to plead proper claims by their respective state law claims? *Plaintiffs' Answer*: Yes.

3.     Count I –Plaintiffs' pled facts that support their express warranty claims because the transmissions did not meet the "essential purpose" that warranted the existence of the warranty. Ford is unable to repair, replace, or adjust these transmissions to make them acceptable and fit for their intended purpose. All Plaintiffs have pled these requirements and further discovery can address any specific individual claim.  Should the Court deny the motion to dismiss regarding the express warranty claim? *Plaintiffs' Answer*: Yes.

4.      Count II –Plaintiff have pled sufficient facts supporting a lack of merchantability due to the transmissions lack of fitness for its intended use. Should the Court deny the motion to dismiss regarding the implied warranty claim as to all plaintiffs? *Plaintiffs' Answer*: Yes.

5.     Count III –. Plaintiffs have properly pled claims for revocation of acceptance under Michigan law because the Ford transmissions are nonconforming and impairs the value of the vehicles to the plaintiffs. Ford is a proper manufacturer under Michigan laws and Plaintiffs' pleadings are sufficient notice of revocation of acceptance. Should the Court deny the motion to dismiss regarding the revocation claims as to all plaintiffs? *Plaintiffs' Answer:* Yes.

6.      Count IV –The MCPA protects any person, including non-Michigan residents, from violations of the Act by any company headquartered in Michigan. Ford's conduct is prohibited by the MCPA for the sale of new and used vehicles. Plaintiffs plead sufficient facts to support their claim for violations to the MCPA. Should the Court deny the motion to dismiss regarding the MCPA claims to all plaintiffs? *Plaintiffs' Answer:* Yes.

7.      Count V –Plaintiffs adequately plead sufficient facts showing Ford's knowledge of the latent defects in the transmissions which rendered the limitations in its written warranty unconscionable. Should the Court deny the motion to dismiss regarding this count as to all plaintiffs? *Plaintiffs' Answer*: Yes.

8.      Counts VI, VII, and VIII –In accordance with Rule 9(b) requiring particularity for allegations of fraudulent misrepresentation, plaintiffs plead a simple, concise statement to allow Ford "fair notice" of the substance of Plaintiffs' claims. Should the Court deny the motion to dismiss regarding the fraud-based claims in Counts VI, VII, and VIII as to all plaintiffs? *Plaintiffs' Answer:* Yes.

9.      Count IX –Plaintiffs' properly plead that Ford has profited and benefitted from the purchase and leasing of the subject vehicles when it knew that the transmissions were defective. Plaintiffs need not establish the elements for fraud to establish a claim for unjust enrichment. Unjust enrichment is a claim that stands on its own and is not barred but the economic-loss rule. Should the Court deny the motion to dismiss this claim as to all plaintiffs? *Plaintiffs' Answer:* Yes.

# I.   Table of Contents

BRIEF IN OPPOSITION TO MOTION TO DISMISS ................................... 2
I.     BACKGROUND ........................................................................... 2
II.    Introduction ................................................................................... 3
III.   Legal Standard ON A MOTION TO DISMISS .................................... 4
IV.    Argument ....................................................................................... 6
   A.     "Shotgun Pleading".................................................................. 6
      1.     The FAC Is not a Shotgun Pleading ................................. 6
      2.     Shotgun Pleadings Do Not Necessarily Warrant Dismissal.......... 6
      3.     Ford Depends upon Inapplicable and Unreliable Legal Authority 9
   B.     Motion for Leave to Amend.................................................... 10
   C.     Plaintiffs Pled Adequate Facts to Support Tolling............................. 12
   D.     MCPA Claims ........................................................................ 12
      4.     The MCPA Provides a Remedy to All of the Plaintiffs .............. 13
      5.     Plaintiffs' MCPA Claims Are Not Barred By The Safe Harbor
          Provision Of Mich. Comp. Laws § 445.904(1). ...................... 15
      6.     Plaintiffs Plead MCPA With Sufficient Particularity Pursuant To
          Fed. R. Civ P 9(B) ...................................................... 20
   E.     Warranty Claims ................................................................... 22
      7.     Breach of Express Warranty.......................................... 22
      8.     Breach of Implied Warranty of Merchantability ...................... 25
      9.     The Statute of Limitations on an "Repair or Replace" Warranty
          Does Not Begin To Run Until The Failure Or Refusal To Repair 28
   F.     Revocation of Acceptance Pursuant to Mich. Comp. Laws § 440.2608
      (1964) and/or Damages Pursuant to Mich. Comp. Laws § 440.2714(2)
      (1964)................................................................................ 28
   G.     Unconscionability.................................................................. 32
   H.     The Fraud Claims Are Pled with Sufficient Particularity ............... 35
      10.    Plaintiffs Sufficiently Pleaded the "Who" and "What" .............. 39
      11.    Affirmative Fraud Claims Are Pled Sufficiently ...................... 43
      12.    Silent Fraud Is Pled Sufficiently .................................... 45
      13.    Plaintiffs' Pleading Satisfies the Requirements for Innocent
          Misrepresentation..................................................... 48
   I.     Economic-Loss Rule Does Not Bar Fraud Claims ........................... 49
   J.     Unjust Enrichment................................................................. 52
V.     Conclusion .................................................................................. 55

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

### I.   BACKGROUND

In general, this lawsuit is a breach of warranty/fraud case based on defective transmissions that Ford installed in Fusion brand cars with model years between 2010 and 2017, inclusive. These transmissions were defectively designed and/or defectively manufactured, forced into a manufacturing effort to provide more options than transmission design constraints permitted, and failed to operate as Ford represented to consumers relying upon said representations. Ford, however, continued to install these defective transmissions in Fusion cars, even though Ford knew of their defects undisclosed to owners, lessees and prospective purchasers and lessees. Even worse, Ford repeatedly lied to consumers as to the reasons for the problems consumers experienced. As a result, consumers were and are stuck in unsafe Fusion autos that have costly repairs and minimal resale value due to the widely discussed transmission defects, with used Fusion sticker prices indicating the market's awareness of the transmission defects alleged herein. Due to the defects in the transmissions, Ford's failure to remedy these problems, and Ford's fraud on consumers, Plaintiffs have been forced to join the ranks of tens of thousands of consumers who have sued Ford in courts nationwide for several years.

The causes of action arise out of the warranty obligations of Ford for Fusions purchased or leased by Plaintiffs and for which Ford issued a written warranty.

Plaintiffs also allege that Ford concealed from Plaintiffs known defects in the transmissions integrated into Plaintiffs' Fusions.

## II.   INTRODUCTION

Ford moves to dismiss the FAC for failure to state a claim as to all counts, as well as for alleged deficiencies in pleading under Federal Rules of Civil Procedure 8 and 9. In particular, Ford avers that the FAC constitutes an impermissible "shotgun pleading" warranting dismissal of all counts based upon form alone. Furthermore, Ford claims that Plaintiffs fail to plead all fraud counts with sufficient particularity, in addition to other defenses concerning rules barring recovery and the types of fraud alleged. Also, Ford asserts that a significant number of warranty claims are barred by limitations.

Finally, a common thread throughout the motion to dismiss targets the governing law underlying the claims of the geographically diverse group of Plaintiffs. Specifically, Ford avers that claims for fraud and breaches of warranty are either not pled under any particular state law, or are pled under only a single state law, while the Plaintiffs' individual claims arise nationwide under a plethora of state laws.

For the reasons that follow, Ford's arguments fail. Plaintiff's pleading, on its face, sets forth actionable, discernable claims for relief. While the pleadings in this matter are long, they are necessarily so due solely to the number of parties involved. Moreover, Plaintiffs specifically identify the fraud at issue and its underlying

elements, as well as particularly plead the unconscionability of the limitations asserted for all warranty actions

And regardless of whether the FAC is deemed deficient in some manner, Plaintiffs proactively addressed some of the issues in that pleading before Ford's motion to dismiss was filed through their own motion for leave to amend accompanied by a proposed second amended complaint ("SAC") that effectively addresses all deficits of law in the FAC.

Accordingly, the appropriate avenue for relief herein is to deny the motion to dismiss, grant Plaintiffs' separately filed motion for leave to amend, order Ford to answer the SAC, and proceed with discovery.

## III.    LEGAL STANDARD ON A MOTION TO DISMISS

As the Sixth Circuit has repeatedly emphasized, "[o]n a Fed. R. Civ. P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir. 1993); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). "Dismissal under Fed. R. Civ. P. 12(b)(6) is warranted 'only if it appears beyond doubt that the plaintiff can prove ***no set of facts*** in support of the claims that would entitle him or her to relief.'" *U.S. Sec. Exch. Comm'n v. Kilpatrick*, No. 12-12109, 2012 WL 4839868, *1 (E.D. Mich. Oct. 11, 2012) (emphasis added) (quoting *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564,

570 (6th Cir. 2008)). *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (same).

"A plaintiff must include in the complaint enough facts which 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Kilpatrick*, 2012 WL 4839868 at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2010)). Further, consideration of a motion to dismiss under Rule 12(b)(6) is confined strictly to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), and the facial sufficiency of the complaint is assessed without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mack Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

In applying this standard, "'[a] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."' *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). As the United States Supreme Court has explained, "[the district court's] task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Miller*, 50 F.3d at 377 (quoting Scheuer). In sum, "[i]t is not the function of the court to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)). "The court treats all well-pleaded allegations in the

complaint as true." *Kilpatrick*, 2012 WL 4839868 at *1 (citing *Zaluski*, 527 F.3d at 570). The allegations must be viewed in the light most favorable to the plaintiff, and inferences from those allegations must be drawn strictly in the plaintiff's favor.

## IV.   ARGUMENT

### A. "Shotgun Pleading"

#### 1.  *The FAC Is Not a Shotgun Pleading*

In the broadest meaning of the term, a "shotgun pleading" can include any pleading in which each count incorporates all the factual allegations of the previous count. *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991). While Plaintiffs' original complaint fairly could be described as a shotgun pleading, Plaintiffs' FAC does not meet this broadly inclusive definition. In amending the complaint, Plaintiffs removed the language at the beginning of every count of the complaint that incorporated "all" previous allegations, instead tailoring it to specify which previous allegations were incorporated into each count by reference.

#### 2.  *Shotgun Pleadings Do Not Necessarily Warrant Dismissal*

Ford is mistaken that a "shotgun pleading" necessarily (or even typically) warrants dismissal. *See Jimmy Smith Racing Tires, Inc. v. Ashleman*, No. CIVA 1:05CV0970 JEC, 2006 WL 2699127 (N.D. Ga. Sept. 19, 2006). *See also Flamenbuam v. Orient Lines, Inc.*, No. 03–22549–CIV, 2004 WL 1773207, *15 (S.D. Fla. 2004) ("It is hardly a violation in every case for several counts to adopt by reference paragraphs describing the same set of circumstances."). *Impermissible*

shotgun pleading occurs when the incorporation "makes it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.*

Faced with a shotgun pleading, a district court must "narrow and define the issues" sufficient to ensure "the orderly, efficient, and economic disposition of disputes." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997). The purpose of the rule against shotgun pleading is:

> to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*T.D.S., Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting). Here, the FAC does not incorporate preceding paragraphs in a manner that Ford cannot readily discern the claims against it and respond. Indeed, Ford has identified each and every claim without issue and responded with a focused set of substantive arguments for dismissal concerning them.

Here, Plaintiffs divide their allegations by "FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS" (ECF No. 12, ¶¶ 6-115) and "PLAINTIFF-SPECIFIC ALLEGATIONS" (*Id.*, ¶¶ 116-490). The former section addresses the general circumstances underlying this action, which, as described above boils down to a breach of warranty/fraud case based on defective transmissions that Ford installed in Fusion brand cars with model years between 2010 and 2017. Within this section, Plaintiffs break down the facts further into subsections, which walk the

reader through the relevant facts at issue here: For instance, what transmissions were defective; what was the effect of those defects; when did Ford recognize the defects; how has Ford previously addressed similar circumstances (i.e., does it have a history of deceptive conduct rendering the mindset of fraud more likely); what warranties were in effect; and what effect does Ford's behavior have on the limitations inherent in those warranties. (*Id.*, ¶¶ 6-115). This section is long because it outlines the general factual allegations concerning defects to vehicles over a period of eight years and how this history translates into nine separate causes of action for misconduct.

The latter primary section provides the details of each named plaintiff's circumstances, including the vehicle on which they are making a claim, the damages they have incurred, and other relevant facts establishing their recognition of and reliance upon warranties and promises of Ford. (*Id.*, ¶¶ 116-490). This section is long because of the number of named plaintiffs. The allegations, however, are straightforward -- each individual purchased a certain vehicle, relied on a certain warranty, and was damaged by a certain faulty transmission. The incorporation of this section into all nine counts does not render the FAC as a whole or any of its claims undiscernible -- to the contrary, it provides further detail for the claims in which it is incorporated.

Because the FAC does not incorporate factual allegations in a manner that renders the claims themselves incomprehensible or undiscernible, the Court must reject Ford's assertion that the FAC constitutes an impermissible shotgun pleading.

3. *Ford Depends upon Inapplicable and Unreliable Legal Authority*

Ford relies almost exclusively on out-of-circuit precedent to support its contention that the FAC constitutes an impermissible shotgun pleading, particularly the Eleventh Circuit's "thirty-year salvo of criticism aimed at shotgun pleadings." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). "Defendant has not cited, nor is the undersigned aware of, any Sixth Circuit precedent that permits dismissal of a 'shotgun' pleading without allowing the plaintiff to replead her case." *Young v. Donahoe*, No. 1:11-0105, 2013 WL 5332109, at *8 (M.D. Tenn. Sept. 20, 2013). "On the contrary, at least one district court in the Sixth Circuit has explicitly said that 'shotgun' complaints should not be dismissed." *Id.* (collecting authority); *see also Sutton v. Community Health Systems, Inc.*, No. 1:16-cv-01318-STA-egb, 2017 WL 3611757 (E.D. Tenn. Aug. 22, 2017) (rejecting shotgun pleading argument on the basis that it is unfounded in the Sixth Circuit).

If Ford is uncertain about a particular claim, the Federal Rules provide a remedy: Ford can move for a more definite statement pursuant to Rule 12(e). *See Anderson v. Dist. Bd. of Trustees of Cent. Fl. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Ford did not do so. As a court in the Western District of Michigan wrote:

> The Court does not find Plaintiff's complaint to be improper as a whole. Although it is lengthy, it is not unmanageable. In most cases, it is not difficult for the Court to discern what is being claimed or what allegations are relevant to each claim.

*Experian Marketing Solutions, Inc. v. Lehman*, No. 1:15–CV–476, 2015 WL 5714541 (W.D. Mich. Sept. 29, 2015). Thus, this Court, too, should not be persuaded that the FAC should be dismissed in its entirety on account of its length and complexity.

## B. <u>**Motion for Leave to Amend**</u>

Much of Ford's criticism of the FAC stems from Plaintiffs' failure to plead state law claims adequately under the law of the particular jurisdictions in which the claims arise. This issue was recognized by Plaintiffs before the filing of Ford's motion to dismiss the FAC, and, accordingly, Plaintiffs preemptively amended the complaint again and moved this Court for leave to file a SAC. (ECF No. 19). Accordingly, in the proposed SAC, Plaintiff's stand-alone claim for "Revocation of Acceptance" (Count III) has been re-pled under the laws of the various states. (*See* ECF No. 19-2).

It is beyond question that leave to amend a pleading under Fed. R. Civ. P. 15 should be freely granted when "justice so requires." This rule is well-established and grounded in the sound principle that cases should be determined on their merits whenever possible. *See, e.g., Foman v. Davis*, 371 U.S. 178 (1962). The Court may exercise its discretion to deny a proposed amendment based on ". . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" *Id.*

at 182–83. While these particular questions are before the Court presently in separate filings (ECF Nos. 19; 23), these issues still weigh heavily on the current motion, particularly where the motion to dismiss the previous incarnation of the pleading was filed *after* Plaintiffs moved to amend that pleading, thereby addressing many of the deficiencies identified therein, as well as rendering moot significant portions of the motion to dismiss in light of changed laws and jurisdictions.

Moreover, the SAC's expansion of the legal universe posits complications for many claims currently pled improperly under Michigan law. For instance, the fraud claims in the FAC are primarily based upon Michigan law, according to which Ford asserted the economic loss doctrine as grounds for dismissal. (ECF No. 20 at 63). In light of the fact that not all Plaintiffs' claims actually arise under the law of Michigan, dismissal of said claims based upon a doctrine of law in the state of Michigan (which, as set forth below, Plaintiffs still deem to be incorrect and inapplicable to the current case) would render significant injustice to parties whose state laws may not recognize the same defenses. The same principles would apply wo the application of statutes of limitation, which vary from state to state, yet, in the motion to dismiss, are applied only based upon the law of Michigan. (ECF No. 20 at 34-38). Given that these claims actually arise under a plethora of statutes of limitations governed by a further amalgam of tolling rules and exceptions, any ruling on the substance of the FAC and the corresponding motion to dismiss risk manifesting significant injustice and promoting the misapplication of law.

As it is this court system's prerogative to determine cases on the merits, *see Foman*, 371 U.S. 178, the circumstances herein weigh in favor of the Court allowing this matter to proceed to the SAC, particularly where a substantial portion of Ford's contentions -- that several counts rely on unknown or ill-described state laws -- are now moot in light of the SAC.

### C. Plaintiffs Pled Adequate Facts to Support Tolling

Ford asserts that Plaintiffs fail to plead facts that would entitled them to tolling (MTD at 23). Ford said the same thing in its Motion to Dismiss the original complaint. The FAC added considerable specific allegations to support tolling: that Ford misrepresented the qualities of the transmissions at sale; that it misrepresented its ability to repair the Vehicles per the warranties; that it was aware of the defects and concealed them despite duties to disclose same; that it intended for Plaintiffs to rely on its misrepresentations; that Plaintiffs could not discover the operative facts during the limitations period, regardless of diligence, due to Ford's concealment; and that Ford continues in this course of conduct, which earns it significant profits. FAC ¶¶ 91-110. These allegations satisfy the elements of fraudulent concealment tolling set forth in *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL 7689654, at *4 (E.D. Mich. May 5, 2017). Plaintiff's have pled Ford's affirmative acts designed to prevent subsequent discovery, and the statutes of limitations should be tolled.

### D. MCPA Claims

Count IV of the plaintiffs' complaint states a claim based on Michigan's Consumer Protection Act (MCPA), Mich. Comp. Laws §§445.901, *et seq.* (1977), a statute that makes unlawful any "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." Mich. Comp. Laws §445.903(1) (2018). The Michigan Supreme Court has declared that the remedies provided in the MCPA "should be construed liberally to broaden the consumers' remedy, especially in situations involving consumer fraud affecting a large number of persons." *Dix v. American Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206, 209 (Mich. 1987).

In its motion to dismiss, Ford raises three challenges to plaintiffs' MCPA claims.

### 4.  *The MCPA Provides a Remedy to All of the Plaintiffs*

Ford first contends that the MCPA provides a remedy only to those plaintiffs who reside in Michigan or who purchased or leased their vehicles in Michigan. Thus, Ford contends that the plaintiffs who do not reside in Michigan cannot claim the benefit of the MCPA. In making this argument, Ford fails to discuss the one Michigan appellate court decision that has considered the reach of the MCPA to plaintiffs living outside Michigan, *Nesbitt v. American Community Mut. Ins. Co.*, 600 N.W.2d 427 (Mich. Ct. App. 1999). In *Nesbitt*, two Ohio residents sued a Michigan-based insurance company. Among the theories raised by the plaintiffs in *Nesbitt* was that the defendant insurer had violated provisions of the MCPA.

The insurer/defendant in *Nesbitt* contended that judgment should be entered

in its favor on the MCPA claim because plaintiffs, as residents of Ohio, had no grounds for claiming the benefit of that Act. The trial court agreed with the defendant and dismissed that claim. On appeal, the Michigan Court of Appeals reversed that ruling.

The panel in *Nesbitt* examined the text of the MCPA and found nothing in the language of the Act that would limit its coverage to Michigan residents:

> Further, the language of the MCPA itself not only implies no exclusion of residents from other states, but instead implies broad applicability. "Person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated associations, or other legal entity." MICH. COMP. LAWS § 445.902(c); M.S.A. 19.418(2). "Trade or commerce" is defined as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes. . ." MICH. COMP. LAWS § 445.902(d); M.S.A. 19.418(2)(d).

600 N.W.2d at 433. Based on the text of the MCPA and the fact that the defendant's home office was in Michigan, the Court of Appeals held in *Nesbitt* that plaintiffs' MCPA action would survive because "any person with whom a Michigan licensed company, operating from its home office within this state, has engaged in trade or commerce may invoke the protections of the MCPA that concern disputes arising from that trade or commerce." *Id*.

Other federal district courts, relying on the *Nesbitt* decision, have concluded that non-Michigan residents are protected by the MCPA, where the defendant charged with violating that Act is headquartered in Michigan. *Muir v. Nature's Bounty (DE), Inc.*, No. 15-C-9835, 2018 WL 3647115, at *7, fn. 5 (N.D. Ill., August 1, 2018); *In re Bridestone/Firestone, Inc., ATX*, No. 1P 00-9373, 2001 WL

14

34136021, at *3 (S.D. Ind., 2001).

As a company that is headquartered in Michigan, Ford is subject to the interpretation of the MCPA announced by the Michigan Court of Appeals in *Nesbitt*. Its argument for dismissal of the claims based on that Act brought by plaintiffs who are not residents of Michigan must be rejected.

### 5. *Plaintiffs' MCPA Claims Are Not Barred By The Safe Harbor Provision Of Mich. Comp. Laws § 445.904(1).*

The MCPA contains a safe harbor provision which provides that a transaction or conduct that would otherwise be in violation of the Act's provisions cannot be the basis for a claim if that transaction or conduct is specifically authorized by federal or state law. The MCPA's safe harbor provision is found in §4(1)(a) of the Act, MICH. COMP. LAWS § 445.904(1)(a) (2015), which provides:

(1) This act does not apply to . . . the following:

(a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

In its motion to dismiss, Ford argues that §4(1)(a) of the MCPA exempts from the Act's coverage all new vehicle purchases and it claims that all of the plaintiffs who purchased their vehicles new have no claim under that Act. For the reasons that follow, Ford's argument should be rejected.

The meaning of §4(1)(a) first came before the Michigan Supreme Court five years after the MCPA was enacted in *Att'y Gen. v. Diamond Mortgage*, 327 N.W.2d

805 (Mich. 1982), attached as **Exhibit A**. In *Diamond Mortgage*, the Attorney General brought an action based on the MCPA against a licensed real estate broker claiming that it had engaged in various deceptive practices associated with mortgage loans that violated the MCPA.

Among the defenses that Diamond Mortgage raised to the Attorney General's claim was that it was exempt from the coverage of the MCPA under §4(1)(a) based on the real estate brokers license that was issued to it.  The Michigan Supreme Court rejected that defense:

> We agree with the plaintiff that Diamond's real estate broker's license does not exempt it from the Michigan Consumer Protection Act. While the license generally authorizes Diamond to engage in the activities of a real estate broker, *it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct*. In so concluding, we disagree that the exemption of §4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States". For this case, we need only decide that a real estate broker's license is not specific authority for all the conduct and transactions or the licensee's business.

327 N.W.2d at 811 (emphasis added).  What the Michigan Supreme Court held in *Diamond Mortgage* was that, to claim an exemption to the MCPA on the basis of §4(1)(a) of that Act, a defendant would have to demonstrate that a federal or state law or regulation "specifically authorize[s] the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act."  327 N.W.2d at 811.  Thus,

under the principle of law announced in *Diamond Mortgage,* Ford in this case would have a valid defense to plaintiffs' MCPA claims only if it could demonstrate that it was authorized by some law or regulation to engage in the specific conduct that plaintiffs allege in their complaint as violations of the Act.

Ford makes no such claim in this case.  Ford does not assert that its conduct that resulted in the violations of the MCPA alleged in plaintiffs' complaint was specifically authorized under a state or federal law or regulation.

Since *Diamond Mortgage* was decided, the Michigan Supreme Court has twice revisited §4(1)(a).   See *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich 1999);  *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich 2007) . In neither of these cases did the Michigan Supreme Court overrule its explicit holding in *Diamond Mortgage* regarding the scope of §4(1)(a).  But, in both *Smith* and *Liss,* the Michigan Supreme Court offered a far different interpretation of the exclusion to the MCPA provided in §4(1)(a).

While the express holding in *Diamond Mortgage* was that §4(1)(a) provided a safe harbor from a possible MCPA claim where a federal or state law "specifically authorize[s] the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act," 327 N.W.2d at 811, the Supreme Court reached a dramatically different conclusion in *Smith*.   There, the Supreme Court ruled that "the relevant inquiry [for purposes of §4(1)(a)] is not whether the specific misconduct alleged by the plaintiff is 'specifically authorized'.  Rather it is whether the general transaction

17

is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."  597 N.W.2d at 38.

Since the Michigan Supreme Court has never overruled its 1982 decision in *Diamond Mortgage,* there exist at present two very different strands of Michigan Supreme Court precedent with respect to the meaning of §4(1)(a).  This presents a somewhat difficult question for a federal court which is placed in the position of attempting to predict how the Michigan Supreme Court would at present decide this question.  *Cf.*, *Van Hoven v. Buckles & Buckles, P.L.C.,* 947 F.3d 889, 897 (6th Cir. 2020).[1]

But even if this Court were to conclude that *Smith* and *Liss* represent the appropriate interpretation of §4(1)(a), there is reason to reject Ford's argument in this case.  In both *Smith* and *Liss*, the Supreme Court cited to specific statutes that regulated the defendant's general conduct.  Here, Ford asserts that its general conduct in this case is "specifically authorized by law." But it cites to no law that provides such authorization.  Absent such statutory or regulatory authorization, Ford is not entitled to a defense under §4(1)(a) even under the analysis employed in the

---

[1]    In its brief, Ford makes reference to a recent unpublished decision rendered by the Michigan Court of Appeals, *Cyr v. Ford Motor Co.*, No. 345751, 2019 W.L. 7206100 (Mich. Ct. App. December 26, 2019), which considered the reach of §4(1)(a) of the MCPA. The court should be aware of the fact that an application for leave to appeal has been filed in the Michigan Supreme Court in the *Cyr* case. *Cyr v. Ford Motor Co.*, Michigan Supreme Court No. 160927. In that application, which remains pending, the Supreme Court has been asked to address the confusion that its prior decisions with respect to §4(1)(a) have created.

Michigan Supreme Court's decisions in *Smith* and *Liss*.

Finally, after seeking the dismissal of all of the plaintiffs' claims that are the result of new vehicle purchases, Ford asserts that the plaintiffs who purchased used vehicles have no claim under the MCPA either. Ford announces this position without citation to any authority and in a single sentence of its brief. Thus, after claiming that new vehicle purchases are excluded from the MCPA's coverage based on §4(1)(a), Ford merely adds: "Nor can those who bought their vehicles used and thus had no transaction – even indirectly – with Ford." Defendant's Brief, at 38.

This argument must be rejected for multiple reasons. First, the Sixth Circuit has ruled that it is appropriate to refuse to address an issue where a party "failed to develop or support his argument with any legal authority." *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008); *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by a some effort at developed argumentation, are deemed waived."). For this reason alone, the Court should decline to address Ford's one-sentence argument.

But even if this argument regarding the MCPA's coverage of used car sales were properly preserved, Ford's argument would still have to be rejected. There is nothing in the text of the MCPA that specifies or even suggests that such sales would be exempted from the Act's coverage. The Act itself makes no distinction between new and used sales. More importantly, the MCPA is broadly written to include numerous examples of "unfair, unconscionable, or deceptive methods, acts or

practices in the conduct of trade or commerce."  MICH. COMP. LAWS § 445.903(1)

(2018).  Moreover, the term "trade or commerce" is itself defined broadly in the Act

to include "conduct of a business providing goods, property, or service primarily for

personal, family, or household purposes. MICH. COMP. LAWS §445.902(1)(g) (2018).

### 6.  *Plaintiffs Plead MCPA With Sufficient Particularity Pursuant To Fed. R. Civ P 9(B)*

The MCPA is a much broader statute than the common law tort of fraud, as it

covers not only deceptive practices, but also unfact and unconscionable conduct.   In

the instant case, Defendants have filed a motion claiming that Plaintiff's First

Amended Complaint contains, *"only a laundry list of boilerplate accusations."* This

statement is patently false.   It is Defendant's motion and brief that appears to be

scattershot and boilerplate.   In fact, even a cursory review of the Plaintiffs' FAC

demonstrates detailed particularity far surpassing the requisite particularity required

by Fed R. Civ P. 9(b).  *E.g.,* FAC  ¶¶ 29-46 and ¶¶ 530-538. These paragraphs set

forth detailed information with respect to Ford's misrepresentations.   Additionally,

the FAC specifically attaches complaints from more than 500 consumers.   FAC ¶

52.

Additionally, it is worth noting that Defendant's argument still is without

merit as the pleading requirement under the MCPA is not the same heightened

pleading requirement for fraud.   Plaintiffs' need not plead with the particularity

required by Federal Rule of Civil Procedure 9(b).  See: *Michels v Monaco Coach*

*Corp.*, 298 F. Supp. 2d 642, 651 (E.D. Mich. 2003) which rejected the dismissal of MCPA claims based upon plaintiff's failure to plead fraud with particularity, recognizing that "[d]eceptive trade practices however, are not the only conduct prohibited by the MCPA" and finding that claims of breach of warranty asserted under the MCPA need not meet the heightened fraud pleading standards. See also: *Game On Ventures v General RV Center, Inc*., 587 F. Supp2d 831, 839 (E.D. Mich 2008): "The MCPA is broader than common law torts of fraud inasmuch as it prohibits not only deceptive business practices but also those which are 'unfair' and 'unconscionable.'" (internal quotation marks omitted).

Specifically, with respect to the common law fraud requirement of reliance, it should be noted that not all of the MCPA's thirty-three 'unfair, unconscionable or deceptive methods acts, or practices' require that the plaintiff show reasonable reliance by the consumer. *Evans v Ameriquest Mrtg. Co. No. 233115, 2003 WL 734169 at \*3* (Mich App March 4, 2003) (unpublished). It is important to note that: "while a cause of action under the MCPA has similarities to a fraud claim, the MCPA captures more conduct within its sweep and offers greater protection to consumers."

Plaintiffs allege multiple violations of the MCPA. Some require a showing of reliance, while others do not. As to those requiring reliance, the FAC outlines by way of example, multiple press releases (e.g., FAC ¶¶ 29, 31, 35) and marketing brochures by Ford (FAC Exhibits G–R) that were relied upon by Plaintiffs, and representations about the repairability of the defects.

### E. __Warranty Claims__

Aside from the above-identified issues of jurisdictional construction, *supra,* the claims in the FAC, as currently drafted are not defective or time-barred as a matter of law.

### *7. Breach of Express Warranty*

It is undisputed that Defendant issued a written warranty with respect to vehicles that included a powertrain warranty of 60 years/60,000 miles and Plaintiffs have so pleaded. (FAC, para 13). The warranty promises that Ford will repair any defects in covered parts, i.e. the transmission. (FAC, para 13). Defendant does not deny the existence of an express warranty, rather it argues that Plaintiffs have failed so sufficiently plead a breach.

Relying heavily on *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, No. CV-1706656, 2019 WL 3000646 (C.D. Cal. May 22, 2019), Defendants argue that plaintiffs have failed to sufficiently plead a cause of action for breach of express warranty, but it incorrectly relies on the standard set forth for fraudulent omission. The *In re Ford Motor Co.* court stated that in order to support a fraudulent concealment claim, "a plaintiff must describe the content of the omission and where the omitted information should or could have been revealed" because fraudulent concealment was subject to the heightened pleading requirements of Rule 9(b). *In re Ford Motor Co.*, *supra*, at \*7. However, breach of express warranty claims are not subject to Rule 9(b) because they are treated as

typical contract claims.  *See, Davis v. LaFontaine Motors, Inc.*, 719 N.W.2d 890, 894 -895 (Mich. App. 2006).

Defendant next argues that Plaintiffs have failed to plead a defect in both design and manufacturing.  However, in a breach of express warranty claim, a plaintiff may also properly plead a cause of action by pleading "abnormal characteristics of the vehicle related to materials or workmanship."  *McKee v. General Motors L.L.C.*, 376 F.Supp.3d 751, 759 (E.D. Mich. 2019), attached as **Exhibit B.** Furthermore, "[i]n light of the technological complexity of most automobiles currently on the market, forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons the Warranty Act was meant to aid." *Mason v. Porsche Cars of N. Am., Inc.*, 688 So.2d 361, 367 (Fla. Dist. Ct. App. 1997). [17]

Defendant attempts to argue that the warranty does not cover the complained of problems because the warranty only covers defects in material and workmanship and does not apply to design defects.  (ECF No. 20, p. 42).  The Defendant in *McKee* made a similar argument which was soundly rejected by the court.  In ruling against

---

[17]   Other courts have held similarly: *Taylor v. Volvo N. Am. Corp.*, 451 S.E.2d 618, 625 (N.C. 1994)(buyer not required to prove the cause of the nonconformity or identify any specific defect related to the nonconformity); *Cline v. DaimlerChrysler Corp.*, 115 P.3d 468, 477-78 (Okla. Civ. App. 2005)(majority of courts do not require proof of a specific defect under either the UCC or lemon law); *Genetti v. Caterpillar, Inc.*, 621 N.W.2d 529, 542 (Neb. 2001)(proof may be circumstantial and may be inferred from the evidence); *Gambrill v. Alfa Romeo, Inc.*, 696 F. Supp. 1047, 1050 (E.D. Pa. 1998)(plaintiff need not prove with specificity the existence of a manufacturing defect); *Christelles v. Nissan Motor Corp., USA*, 701 A.2d 1317, 1321 (N.J. Super. App. Div. 1997)("forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons such legislation was meant to aid").

the defendant, the court stated that to accept the defendant's argument that the design defects must be separated from abnormal characteristics of the vehicle related to materials or workmanship would require the defendant to adopt the argument that "it intended for the … transmission to slip, buck, kick, jerk, and harshly engage," among a list of additional problems. *McKee*, *supra*, at 759. One cannot reasonably conclude that Defendant intended for its transmission to the display the problems about which Plaintiffs have complained.

A "repair or replace" is breached "when the seller either fails or refuses to repair or replace the defect." *Grosse Pointe Law Firm, P.C. v. Jaguar Land Rover N. Am., L.L.C.*, 894 N.W.2d 700, 707 (Mich. Ct. App. 2016), *app. den.* 896 N.W.2d 421 (Mich. 2017). The "essential purpose" of a repair or replace warranty is to provide the consumer with a properly functioning product within a reasonable time. "Even where a valid limitation of liability in a warranty exists, a buyer is entitled to pursue other remedies where the seller takes too long to complete the repairs or replacements promised in the warranty." *Krupp PM Eng'g, Inc. v. Honeywell, Inc.*, 530 N.W.2d 146, 149 (Mich. App. Ct. 1995).

In the case of these transmissions, there simply is no fix. Furthermore, prior to out and out failure, the transmissions exhibit the undesirable – and often dangerous – characteristics previously described. Again, there is no fix. Therefore, under Ford's own definition, the written warranty has failed of its essential purpose

because Ford is not able to repair, replace, or adjust these transmissions to make them acceptable and fit for their intended purpose.

Defendant next attempts to simply ignore the well pleaded facts common to all Plaintiffs, in favor of selectively choosing limited plaintiffs' facts. The FAC contains a set of allegations common to all Plaintiffs. Indeed, paragraphs 8 through 26 contain allegations that properly set forth a cause of action for breach of warranty. As such, any facts specific to an individual plaintiff should be considered in addition to the common allegations. Plaintiff has alleged that the vehicles came with express warranties (para 8); that Plaintiffs relied upon these warranties when deciding to purchase their vehicles and suffered damage as a result (para 8 and 11); that the transmissions displayed a variety of problems that are not consistent with a properly functioning transmission (FAC para 9 and19); and that the Plaintiffs presented their vehicles for repair under the warranty, but that the problems were not fixed (FAC para 26). Stated differently, they never received a properly functioning vehicle within a reasonable amount of time.

Since these allegations are common to all Plaintiffs, the pleading requirements for breach of express warranty have been met. Whether any specific individual will ultimately be successful on its claims is an issue to be addressed after sufficient discovery has been conducted, not at the motion to dismiss stage.

### 8. *Breach of Implied Warranty of Merchantability*

Ford avers that Plaintiffs plead no facts plausibly supporting that any of their vehicles are unmerchantable. Michigan's version of the UCC defines "merchantability" as follows:

> Goods to be merchantable must be at least **all** of the following:
> (a) pass without objection in the trade under the contract description; and
> * * *
> (c) are fit for the ordinary purposes for which such goods are used;

MICH. COMP. LAWS § 440.2314(2) (1964) (emphasis added).

According to Ford, Plaintiffs merely present boilerplate definitions under the guise of factual allegations. (ECF No. 20 at 30-31). This claim, however, omits the extremely detailed list of issues with the transmissions. The allegations in the FAC make clear that transmissions are subject to:

> sudden and unexpected shaking, violent jerking, bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"), delayed acceleration (especially from a complete stop), gears slipping, hesitation on acceleration, difficulty stopping the vehicle, lack or loss of motive power, delayed downshifts, hard decelerations or 'clunks' when slowing down or accelerating at low speeds, premature wear of the internal components, transmission failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident, and/or catastrophic failures necessitating replacement, attributable to one or more of the following: failing fluid seal integrity, throttle body deficiencies, failed torque converter welds, driveshaft failure, and failed Transmission Control Module ("TCM") or Powertrain Control Module ("PCM") updates to limit problems associated with transmission design and/or manufacture, or caused by the vehicle's design and architecture issues (collectively, the "Transmission Defects").

> (ECF No. 12 at 5).

Transmissions subject to these issues clearly are not fit for their ordinary purpose. Plaintiffs sufficiently allege that Ford violated its obligations under this warranty.

In its arguments, Defendant mistakenly utilizes the standards for a product liability or negligence case with the standards for a breach of warranty. "Claims of breach of implied warranty and negligence in manufacturing or design may require the same proofs in certain circumstances. However, 'the theories of negligence and implied warranty remain separate causes of action with different elements.'" *Kenkel v. Stanley Works*, 665 NW2d 490, 496 (Mich. Ct. App. 2003) citing *Bouverette v. Westinghouse Electric Corp.*, 628 N.W.2d 86, 90 (Mich. Ct. App. 2001).

It is true that a plaintiff must **prove** a defect attributable to the manufacturer and a causal connection between that defect and the injury or damage of which he complains. *Kenkel, supra*, citing *Gregory v. Cincinnati, Inc.,* 538 N.W.2d 325, 329 (Mich. 1995). However, given the differing standards between product liability cases and implied warranty claims, "the product's lack of fitness for its intended use amounts to an actionable defect." *Kenkel, supra,* citing *Bouverette*, at *90 – 91.*

In the instant case, Plaintiff has pleaded that the transmissions in question lack fitness for their intended use as demonstrated by the many problems, such as those set forth in the FAC, paragraphs 8, 9, 11, and 19. Thus, for purposes of its breach of implied warranty count, the problems themselves establish the actionable defect and Plaintiffs have met their burden for pleading.

9. **The Statute of Limitations on an "Repair or Replace" Warranty Does Not Begin To Run Until The Failure Or Refusal To Repair**

Plaintiffs' express warranty claims are not time-barred.   As the Michigan

Court of Appeals wrote:

> Accordingly, we adopt the approach that promises to repair or replace defective goods are contractual promises under Article 2, but are not warranties. To conclude otherwise would require us to reach "the perverse conclusion that the statute of limitations began to run before the breach occurred." *Baker v. DEC Int'l,* 458 Mich. 247, 249 n. 4, 580 N.W.2d 894 (1998) (citation and quotation marks omitted).[10] That conclusion would also render repair-or-replace promises extending beyond four years meaningless because any claim for breach of the promise would be time-barred four years after the tender of delivery, and it would further give sellers an incentive to stall repairs until the limitations period expired. Because remedial promises are not warranties, a claim for breach of a remedial promise "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." MCL 440.2725(2). It seems unremarkable to state that a promise to repair or replace defective goods is breached when the seller either fails or refuses to repair or replace the defect, and that the statute of limitations begins to run at that time. Therefore, the trial court erred by concluding that plaintiff's claim accrued on tender of delivery.

*Grosse Pointe Law Firm, PC v. Jaguar Land Rover N Am, LLC*, 894 NW2d 700,

706–07 (Mich. App. 2016)

F. **Revocation of Acceptance Pursuant to Mich. Comp. Laws § 440.2608 (1964) and/or Damages Pursuant to Mich. Comp. Laws § 440.2714(2) (1964).**

Defendant provides a litany of excuses as to why Plaintiffs' revocation count

should be dismissed at this stage, arguing that as a remedy revocation is linked to

the express and implied warranty counts, revocation is not available against a remote manufacturer, and that notice of revocation was not timely provided. Again, Defendant takes an overly limited position on Plaintiff's complaint.

As an initial matter, Defendant concedes that revocation is appropriate when a breach of warranty exists. (ECF No. 20, p. 48). Under MICH. COMP. LAWS § 440.2719(2) (1964), "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act." See, also, *Kelynack*, *supra*, 152 Mich App at 112 (where repair or replace warranty fails of its essential purpose, plaintiff is entitled to pursue other remedies). Since Plaintiffs have properly pled a breach of both express and implied warranties, Defendant's motion as to the revocation count must also be denied.

However, even if Plaintiffs' breach of warranty claims were to fail, Plaintiffs may revoke acceptance on other grounds, as well. The UCC provides that revocation is available to a buyer when the product's "non conformity impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his accepted was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." MICH. COMP. LAWS § 440.2608(1) (1964).

The plain language of the revocation statute makes no mention of breach or express or implied warranty. It only states a "non-conformity that impairs the value"

to the buyer.  Under the statute, impairment of use or value is a subjective test, to be measured from the point of view of the actual consumer, rather than the hypothetical "reasonable consumer." *Colonial Dodge, Inc. v. Miller*, 362 N.W.2d 704 (Mich. 1985)(holding that lack of spare tire was sufficient to justify revocation where plaintiff testified that he was concerned about being stranded on Detroit freeways without a spare). Defendant's relied upon authority is distinguishable from the instant case because Plaintiffs in the instant case do not rely **solely** on breach of warranty to justify its revocation.  Indeed, Plaintiffs alleged that the "non-conformities substantially impair the value of Plaintiffs' Vehicles in that the defects or conditions have rendered the Vehicles dangerous and unpredictable to operate and have caused Plaintiffs to lose faith in their vehicles."  FAC, para 524.  If this allegation is proven to be true, Plaintiffs will have established a right to revocation that is independent of any breach of warranty.

Defendant argues that Plaintiffs have no right to revoke against a remote manufacturer, relying on two federal district court opinions.  However, those cases go squarely against the Michigan Supreme Court's position as set forth in *Davis v. Forest River, Inc*, 774 N.W.2d 327 (Mich. 2009), attached as **Exhibit C**. There, the Court reiterated that the intent of UCC remedies is to allow the wronged buyer to be made whole. Thus, the Court concluded under MICH. COMP. LAWS § 440.2714(2) (1964), where the usual "difference in value" damages would not suffice, "the plaintiff should be allowed to relinquish title." *Id*., 774 N.W.2d at 328. The Court

then went on to find that the trial court's judgment allowing revocation against the manufacturer was consistent with the damages allowable under MICH. COMP. LAWS § 440.2714(2) (1964), holding that "[t]hese damages include the purchase price of the vehicle less the sum paid to the plaintiff pursuant to case evaluation, and repayment of interest paid on the loan and statutory interest pursuant to MICH. COMP. LAWS § 600.6013(8) (2013), to the extent that such awards of interest are not duplicative." *Id.*

Defendant next argues that Plaintiffs failed to timely revoke acceptance and criticizes Plaintiffs' reliance on *King v. Taylor Chrysler-Plymouth, Inc.*, 457 N.W.2d 42 (Mich. Ct. App. 1990). Defendant correctly notes that the plaintiff in *King* filed his complaint approximately one month after he began storing the car. (ECF No. 20, pp. 49-50). However, the procedural posture of the *King* case is extremely important. The *King* decision was in response to the trial court's denial of defendant's motion for a new trial or judgment notwithstanding the verdict after defendant lost a jury trial. *King, supra* at 44 – 45. As such, the ruling in the *King* case was that the jury decision was not against the great weight of the evidence. *Id.* at 45 – 46. The *King* case cannot reasonably be interpreted to mean that only when a complaint is filed within a month of storing the car, will notice of revocation via the complaint be allowed. Arguing for such an interpretation depends too heavily on factual issues or disputes that have clearly not been fully developed at this stage in the litigation. *King* does not attempt to set forth an absolute limit to the time

within which a complaint can properly serve as notice of revocation. Rather, the decision merely affirms that the jury's findings were not against the great weight of the evidence. Indeed, courts have considered a plethora of factors when determining whether a buyer timely revoked acceptance, including the seller's efforts to repair.[36] Thus, the case law and an examination of *King* fully support that no particular words or form is required to provide notice of revocation and that filing of the complaint is sufficient notice under the UCC. See, *King, supra,* at 45. Based on the cited authority, Plaintiffs have sufficiently pleaded that they are entitled to revocation under MICH. COMP. LAWS § 440.2605 (2013) and/or rescission damage under MICH. COMP. LAWS § 440.2714(2) (1964). Any questions regarding whether a party properly revoked acceptance under his specific circumstances are best decided by a finder of fact and are not suitable for a motion to dismiss.

G. **Unconscionability**

---

[36] "[T]he seller's efforts to repair are relevant to . . . whether the buyer revoked acceptance within a reasonable time after discovering the defect." *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 597-98 (Mich. Ct. App. 1999); Timeliness was measured from date of final unacceptable repair. *Kelynack v. Yamaha Motor Corp.*, 394 N.W.2d 17, 21 (Mich. Ct. App. 1986); "Where delay in revoking acceptance is attributable to efforts or promises to correct the defect or nonconformity in the goods, revocation even after a relatively lengthy period of time may still be timely within the statute." *City Nat'l Bank v. Wells*, 384 S.E.2d 374, 381 (W. Va. 1989). *See, e.g.*, *Tiger Motor Co. v. McMurtry*, 224 So.2d 638 (Ala. 1969) (**12 months**); *Dopieralla v. Arkansas Louisiana Gas Co.*, 499 S.W.2d 610 (Ark. 1973) (**40 months**); *Regents of Univ. of Colorado v. Pacific Pump & Supply, Inc.*, 528 P.2d 941 (Colo. App. 1974) (**over 22 months**); *Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d 144 (Conn. 1976) (**14 months**); *Fablok Mills, Inc. v. Cocker Mach & Foundry Co.*, 310 A.2d 491, cert. denied, 315 A.2d 405 (N.J. 1973) (**24 months**); *Ybarra v. Modern Trailer Sales, Inc.*, 609 P.2d 331 (N.M. 1980) (**48 months**); *Cardwell v. International Housing, Inc.*, 423 A.2d 355 (Pa. 1980) (**21 months**); *Vista Chevrolet, Inc. v. Lewis*, 704 S.W.2d 363 (Tex. Ct. App. 1983), *rev'd on other grounds*, 709 S.W.2d 176 (Tex. 1986) (**20 months**).

MICH. COMP. LAWS § 440.2302(1) (2013) provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Ford began issuing Technical Service Bulletins in an attempt to correct problems with the subject transmission as early as September 2010. Plaintiffs are purchasers or lessees of 2010-2017 vehicles at a time when Ford knew or should have known that its advertisements extolling the virtues of the subject transmissions were false. Ford nevertheless put these vehicles in the stream of commerce with a written warranty that limits consumers' remedies to "repair, replacement, or adjustment of defective parts". Ford Warranty Booklet Exemplar, p 14. Moreover, the warranty excludes the very types of incidental and consequential damages that are foreseeable when a major component of a vehicle, such as a transmission, is defective.

In cases such as this, where the seller knows or has reason to know that the customer is likely to experience damages that outstrip the remedies provided by the contract, the Court is justified in finding such limitations to be unconscionable at the time of contracting. *See, e.g., Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 625 (Mich. Ct. App. 1986) (finding a clause limiting the plaintiff's recovery to the purchase price of seed unconscionable under MICH. COMP. LAWS § 440.2302). As the Court in *Latimer* went on to explain:

In this case, where the defect could not be discovered until after the seed was planted, the remedy prescribed in the limitation of liability clause is an illusory one which represents no remedy at all in that it fails of its essential purpose. Were we to hold plaintiffs to this remedy, unconscionability would clearly result. *See Mallory v. Conida Warehouses, supra* [350 N.W.2d 825, 827 (Mich. Ct. App. 1984)] and *Majors v. Kalo Laboratories, Inc.*, 407 F. Supp. 20 (M.D. Ala. 1975).

386 N.W.2d at 265. In *Majors*, the case cited by our Court of Appeals in *Latimer*,

the Court found that a latent defect renders the type of exclusionary clause seen in

Ford's warranty unconscionable:

This Court is of the opinion that, in the case of a latent defect such as is alleged here, an exclusion such as the one herein makes the remedy available to a purchaser an illusory one which "represent(s) no remedy at all" and that such an exclusion leaves only a remedy which can be said to "fail of its essential purpose." s 2-719(2). In the words of the Official Comment to s 2-719:

"It is of the very essence of a sales contract that at least minimum adequate remedies be available * * * (the parties) must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract."

*Majors*, 407 F. Supp at 23.

Here, the transmission defects are latent and not reasonably discoverable by a

consumer upon reasonable inspection. At the same time, Ford knew or had reason

to know of the latent defects present in the transmission. Limiting Plaintiffs'

remedies to repair or replacement, which will inevitably be followed by further

transmission problems and failures, is unconscionable.

Ford also went to trial in *Myers v. Ford Motor Co.*, No. BC638302 Dkt. 1

(Cal. Super. Ct. Los Angeles Cty. Oct. 21, 2016) wherein the operative Complaint

34

contained the identical fraud/misrepresentation allegations as set forth by Plaintiffs in this Court (*see*, Ex.7). Specifically, the jury found all of the elements of fraud alleged by Plaintiffs in this case (*see*, Ex. 8).

Here, given that Ford's own documents and admissions establish that it knew or should have known of the latent defects in the transmission, its continued marketing and sales of vehicles equipped with the subject transmission, as well as its "blame the customer" warranty strategy, amounted to fraud, and rendered the limitations in its written warranty unconscionable.

### H. <u>The Fraud Claims Are Pled with Sufficient Particularity</u>

While Plaintiffs admit that the fraud counts require revision to satisfy the geographical diversity of the Plaintiffs—which Plaintiffs have done in the proposed SAC—there is no doubt that, under the general principles of Fed. R. Civ. P. 9(b), the allegations are made with sufficient particularity.

Fed. R. Civ. P. 9(b) requires that averments of fraud must be stated with particularity. However, the United States Court of Appeals for the Sixth Circuit reads this rule liberally. *Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993). Allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made. The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiff's claim of fraud. *Id.*

However, Fed. R. Civ. P. 8 requires a "short and plain statement of the claim" and calls for "simple, concise, and direct" allegations in pleading. In ruling upon a motion under Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity, a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules of Civil Procedure codified in Fed. R. Civ. P. 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674 (6th Cir. 1988). Fed. R. Civ. P. 9(b)'s particularity requirement does not mute the general principles set out in Fed. R. Civ. P. 8; rather, the two rules must be read in harmony. *Id.* It is inappropriate to focus exclusively on the fact that Fed. R. Civ. P. 9(b) requires particularity in pleading fraud. *Id.* Given this backdrop admonition of simplicity in pleading, it is notable that the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. *Id.* at 679.

Plaintiffs assert that they have pled the FAC to achieve a harmony between Fed. R. Civ. P. 8, by keeping its pleading simple and concise, and Fed. R. Civ. P. 9(b), by pleading with enough particularity to allow Ford sufficient notice of the fraud, and to allow Ford to answer, addressing in an informed way Plaintiffs' claims of fraud. Plaintiffs' FAC has provided Ford with "fair notice" of the substance of Plaintiffs' claims.

Moreover, Fed. R. Civ. P. 9(b) may be relaxed where information is only within the opposing party's knowledge. *Id.* It is a principle of basic fairness that a

plaintiff should have an opportunity to flesh out its claim through evidence unturned in discovery. *Id.* Thus, Fed. R. Civ. P. 9(b) does not require omniscience; rather, the rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim. *Id.* Furthermore, Fed. R. Civ. P. 9(b) requires only that the circumstances of the fraud be pled with particularity, not the evidence of the case. While circumstances may consist of evidence, the rule does not mandate the presentation of facts and evidence in a complaint. *Id.*

In a lawsuit as complex as this, Plaintiffs have attempted to plead the FAC with enough particularity to put Ford on notice of the allegations against it, but with enough simplicity to allow the FAC to be workable and not convoluted and confusing. Discovery may be used in this instance as a tool to clarify any allegations in the FAC. Thus, based on the foregoing, Plaintiffs requests that this Court deny the motion to dismiss on this ground.

Further, in *M & D, Inc v WB McConkey*, 231 Mich App 22, 27 (1998) the court stated that Fraud consists of six elements: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false , or made it recklessly without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *M & D, Inc v WB McConkey*, 231 Mich App 22, 27 (1998). As will be shown, Plaintiffs have met these

requirements.

"Silent fraud is essentially the same except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Alferi v Bertorelli,* 295 Mich App 189, 193 (2012). "Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a particularized concern." *Id.* Where a claim is fraud by admission, the claim "can succeed without the same level of specificity required by a normal fraud claim." *In re Toyota Motor Corp Unintended Acceleration Mktg Sales Practices, & Products Liab Litig* 754 F Supp 2d 1145, 1189 (CD 2101). "This is because "[r]equiring a plaintiff to identify(or suffer dismissal) the precise time, place and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission *Id.* (It should be noted that among such state laws is MCL 445.903(1)(s), (bb) and (cc) of the MCPA).  In cases of corporate fraud, where plaintiffs lack personal knowledge of all underlying facts…allegations may be made on information and belief so long as they are accompanied by a statement of facts on which the belief is founded. " *Id., citing Moore v Kayport Package Exp Inc.*  885 F2d 531, 540 (9th Cir 1989).

Federal Rule of Civil Procedure 9(b) exists to provide sufficient notice for the defendant to prepare a responsive pleading to fraud allegations." *Durant v ServiceMaster Co,* 159 F Supp 2d 977, 982 (E.D. Mich 2001).  "When it comes to claims of fraud by omission or fraudulent concealment, the Plaintiff faces a slightly

more relaxed pleading burden; the claim 'can succeed without the same level of specificity required by a normal fraud claim. " *Durant* at 1055 citing *Beck v FCA US LLC*, 273 F Supp 735, 751 (ED Mich 2017) (quoting *Baggett v Hewlett Packard Co*, 582 F Supp 3d 1261, 1267 (CD Cal 2007). A Complaint sufficiently pleads the time, place and content of the alleged misrepresentation so long as it 'ensure[s] that [the] defendant possesses sufficient information to respond to an allegation of fraud*." US ex rel Sheldon v Kettering Health Network* 816 F3d 399, 408 (CA 6, 2016). See also *Llewellyn-Jones v Metro Prop Group, LLC,* 22 F Supp 3d 760 (ED Mich 2014):

> "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Ibid. I" The threshold test us whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer addressing in an informed way plaintiff[']s claim of fraud Coffey v Foamex L.P.; 2 F 3d 157, 162 (6th Circuit 1993) (quotation marks omitted.)*
> Id. , 781 (edits by Court).

### 10. Plaintiffs Sufficiently Pleaded the "Who" and "What"

For claims involving fraudulent omissions, however, Fed. R. Civ. P. 9(b) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission." *Miller v. Gen. Motors, L.L.C.*, No. 17-cv-14032, 2018 WL 2740240, at *14 (E.D. Mich. June 7, 2018) (quoting *Republic Bank & Tr. Co. v. Bear Stearns Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). Specifically, a plaintiff pleading a fraudulent omission must allege "(1) precisely what was omitted; (2) who should have made a

representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 256). A complaint may suffice if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect. *See Beck v. FCA U.S. L.L.C.,* 273 F.Supp.3d 735, 751–52 (E.D. Mich. 2017), attached as **Exhibit D**.

Without any citation to legal authority defining the "who" to be identified in a fraud claim, Ford avers that Plaintiffs failed to identify to whom they particularly received misrepresentations concerning the transmissions at issue. Each Plaintiff identifies the source of the representation upon which they relied as being Ford, whether it was in the form of an advertising campaign or individual sales representative. Ford, however, attempts to raise the bar on Plaintiffs by claiming that more is needed in the complaint to satisfy the Rule 9(b) pleading standard. This, however, is unfounded in the rule itself, as well as in the case law, which is conspicuously absent within Ford's argument. (*See* ECF No. 20 at 57-58) (citing to no authority)). Because Ford fails to provide legal support for this argument, this argument must be denied, as each Plaintiff identifies Ford as the source of the misrepresentation, whether it be "dealership personnel" acting under Ford's direction or Ford's own advertising campaign.

In yet another case where Ford sought to escape the consequences of its fraud, *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014), the Court reiterated the maxim that "[a]verments of fraud must be accompanied by 'the who what when where, and how' of the misconduct charged,' but claims based on omission 'can succeed without the same level of specificity required by a normal fraud claim.'" *Id.*, at 1096 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The Court thus rejected essentially the same argument Ford has recycled here, holding that plaintiffs' complaint, which was pled similarly to the case at bar, was adequate: "In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles." *MacDonald*, 37 F. Supp. 3d at 1096.

Indeed, a review of the case law concerning claims arising out of fraud by omission in the context of vehicle defects, indicates that there are simply no cases supporting Defendant Ford's argument in this case. Rather, the case law follows the rationale reiterated in *MacDonald*, supra. This rationale extends even to the issue of pleading reliance, which may be pled generally. *See, e.g., Feldman v. Mercedes-Benz USA, L.L.C.*, No. 2:11-CV-00984 WJM, 2012 WL 659830 (D.N.J. Dec. 18, 2012), where the Court denied Mercedes' motion to dismiss on pleadings similar to the Complaint at issue here, holding:

> Plaintiffs adequately state a claim of fraud by omission. They allege
> specific facts showing Defendants' knowledge and concealment of the

41

alleged defect. They allege that Defendants were obligated to, but did not, disclose specific material facts about the AIS from 2005 onward for specified model years of specified vehicles. They alleged justifiable reliance in that a reasonable customer would not have purchased the car or would have paid less for it had the defect been disclosed, and they allege actual damages for the expense of repairing the AIS and related damage.

*Id.* at *10 (internal citations omitted).

A court does not necessarily expect all plaintiffs to have to "plead the mechanical details" of a defect in order to state a claim. *See Cholakyan v. Mercedes-Benz USA, L.L.C.*, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011). However, the level of specificity required appears to directly correlate to the complexity of the machinery in question. *See, e.g., Yagman v. General Motors*, No. CV-14-4696, 2014 WL 4177295 at (C.D. Cal. Aug. 22, 2014) (requiring more detailed factual allegations where either engine or electrical system could have possibly been defective); *Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, No. 13-CV-0331, 2013 WL 4401437 at *4 (S.D. Cal. Jun. 20, 2013) (allegations about a "wide array of parts" that made helicopter defective were insufficient to state claims for strict products liability, negligence, and breach of warranty). In *Aguilar v. General Motors, L.L.C.*, No. 1:13-CV-00437, 2013 WL 5670888, *7 (C.D. Cal. Oct. 16, 2013), an allegation of a "steering defect that can result in potential failure of power steering . . . and loss of steering control during the normal course of driving" sufficient to survive a motion under Rule 12(b)(6).

In this case, Plaintiffs go beyond merely stating the "what" as "transmission defects" and, instead, provide a detailed description of the defect identified by the parties:

> [P]roblems, including, but not limited to the following defects known to Ford: sudden and unexpected shaking, violent jerking, bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"), delayed acceleration (especially from a complete stop), gears slipping, hesitation on acceleration, difficulty stopping the vehicle, lack or loss of motive power, delayed downshifts, hard decelerations or 'clunks' when slowing down or accelerating at low speeds, premature wear of the internal components, transmission failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident, and/or catastrophic failures necessitating replacement, attributable to one or more of the following: failing fluid seal integrity, throttle body deficiencies, failed torque converter welds, driveshaft failure, and failed Transmission Control Module ("TCM") or Powertrain Control Module ("PCM") updates to limit problems associated with transmission design and/or manufacture, or caused by the vehicle's design and architecture issues (collectively, the "Transmission Defects").

(ECF No. 12 at 5).

Plaintiffs identify Ford's "knowledge of the defect" as the "what" of their fraud claim. Plaintiff also argue that Ford knew of the defect before the sale of the Fusions and that the various channels through which Ford sold the vehicles failed to disclose the defect. Based upon these allegations, Ford has more than sufficient information on which to defend the claim of a defect in its product.

### 11. *Affirmative Fraud Claims Are Pled Sufficiently*

For affirmative misrepresentations, Fed. R. Civ. P. 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or

she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Miller v. Gen. Motors, L.L.C.,* No. 17-cv-14032, 2018 WL 2740240, at *11 (E.D. Mich. June 7, 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012)).

Ford relies, in part on *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-CV-2623, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009), to support its position that Plaintiffs only vaguely refer  to "many representations about the quality, smooth shifting capabilities, efficiency, power, and reliability" of Ford's transmissions, without identifying which plaintiffs were exposed to and relied on which statements, by whom, when, and how those statements were supposedly false as to them. (ECF No. 20 at 64). According to Ford, Plaintiffs have the burden of alleging specifically which commercials they saw and the content of those commercials.

In *Sears*, though, the complaint simply alleged that the plaintiffs relied on advertising for an entire line of tools. 2009 WL 937256, at *4. Because the complaint itself acknowledged that ads for certain tools within that line were not deceptive, the court held that the complaint was factually deficient for failing to identify which specific tool advertisements the plaintiffs viewed. *See id.* at *4, 6. Thus, where the complaint impermissibly lumps together ads for an entire group of products—some ads possibly fraudulent, some not—without specifying which ads caused the plaintiffs to purchase which products, the allegations are insufficient.

In contrast, here, Plaintiffs identify only advertisements associated with a single, specific product -- the Ford Fusion and its transmission. And each named Plaintiff specifically lays out the particular misrepresentation he or she viewed before making the purchase of a Ford Fusion; namely, the Plaintiffs identified particular commentary about the Fusion's transmission as a selling point. This distinction renders the logic in *Sears* inapplicable to the present case. *See Greifenstein v. Estee Lauder Corp., Inc.*, No. 12–cv–09235, 2013 WL 3874073 (N.D. Ill. Mar. 31, 2016).[2]

### 12. Silent Fraud Is Pled Sufficiently

"Silent fraud," also known as fraud by nondisclosure or fraudulent concealment, is a commonly asserted, but frequently misunderstood, doctrine. This is primarily because most fraud claims are based upon alleged affirmatively stated false representations of material fact. A claim of "silent fraud" requires a plaintiff to set forth a more complex set of proofs. In *Lorenzo v. Noel*, 522 N.W.2d 724, 725 - 726 (Mich. Ct. App. 1994), this Court gave the following explanation of the so-called "silent fraud" doctrine:

> "'A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have

---

[2] "Greifenstein complains only about the advertising associated with a single, specific product-Plantscription Anti-aging serum. *See, e.g.*, Compl. ¶¶ 1, 10, 12–14, 19. And she specifically lays out the four alleged misrepresentations she viewed before making her purchase: (1) '88% of the visible wrinkle-reducing power of a prescription,' (2) 'clinically proven to help visibly repair 4 major signs of aging' 'in just 4 weeks,'' (3) repairs 'vertical fret lines' and 'stubborn furrows,'and (4) 'help[s] rebuild natural collagen and elastin fibers,' making skin 'clinically firmer, smoother, and more lifted-looking.'" 2013 WL 3874073, **3-4.

not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud."' *Williams v. Benson*, 141 N.W.2d 650, 653-654 (Mich. Ct. App. 1966), quoting *Tompkins v. Hollister*, 27 N.W. 651, 655 (Mich. 1886). Thus, 'the suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud.' *Williams* at 19, 141 N.W.2d 650."

In other words, Michigan courts have recognized that silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure. *See Black*, 313 N.W.2d 77.

"Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a particularized concern." *Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012). Most cases that provide for an equitable duty to disclose under the silent fraud doctrine address circumstances where one party has superior knowledge that is not easily accessible to the other party by the exercise of due diligence." *See U.S. Fidelity & Guaranty Co. v. Black*, 313 N.W.2d 77, 88 (Mich. 1981); *Hand v. Dayton-Hudson*, 775 F.2d 757, 759 (6th Cir. 1985) (holding that "[t]here is an equitable duty of disclosure in a business transaction when 'circumstances surrounding a particular transaction are such as to require the giving of information") (citations omitted).

Where the claim is fraud by omission, the claim "can succeed without the same level of specificity required by a normal fraud claim." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010). "This is because "[r]equiring a plaintiff to

identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission." *Id.* "In cases of corporate fraud where plaintiffs lack personal knowledge of all underlying facts . . . allegations may be made on information and belief so long as they are accompanied by a statement of facts on which the belief is founded." *Id.* (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Here, Plaintiffs underlie their claim with such information and belief, as well as documentary evidence:

> 562. In particular, Plaintiffs are informed, believe, and thereon allege that prior to Plaintiffs acquiring their Vehicles, Ford was well aware that the transmissions integrated in Plaintiffs' Vehicles were defective but failed to disclose this fact to Plaintiffs at the time of sale and thereafter.

> 563. Ford repeatedly and publicly represented that the automatic transmissions in Fusions provide superior function, utility, reliability and other benefits and characteristics, for example: a "smooth-shifting 6-speed automatic." Exhibits G & I, 2010 & 2011 Ford Fusion Brochures.

> 564. Specifically, Ford knew or should have known that Plaintiffs' Vehicles had the Transmission Defects. The Transmission Defects present a safety hazard and are unreasonably dangerous to consumers because they can suddenly and unexpectedly affect the driver's ability to control speed, acceleration, and deceleration.

> 565. Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford

from Ford's network of dealers, amongst other sources of internal information. E.g., Exhibit U, TSBs.

566. Ford knew about the Transmission Defects and their safety risks since at least 2009, if not before. Exhibit U at 1, Sept. 2009 TSB. Ford nevertheless concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their automatic transmissions to Plaintiffs at the time of sale and thereafter.

FAC [Dkt. 12] at 368-69.

The circumstances surrounding the business transaction between Plaintiffs and Ford clearly required the giving of information. Ford had superior knowledge about the transmission defect, Plaintiffs were unaware of the transmission defect, and such facts were not easily accessible by Plaintiffs. These allegations were identified in the FAC.

In *Bergen v Baker,* 691 N.W.2d 770,775 (Mich Ct.App 2004) citing *MD, Inc v McConkey,* 231 Mich App 22, 27 585 NW2d 33 (1998) the court held that "a suppression of material facts" and a "legal or equitable duty to disclose were required to support a silent fraud claim." Plaintiffs have demonstrated throughout the FAC that Ford suppressed material facts in their extensive marketing, publications, and misleading interactions with consumers.  Plaintiff's also specifically pleads and thereafter provides extensive documentation as to Ford's knowledge of the defects and duty to disclose to the NHTSA (FAC ¶¶ 49-67).  Accordingly, the Court should not dismiss the silent fraud claim.

### 13. Plaintiffs' Pleading Satisfies the Requirements for Innocent Misrepresentation.

48

Plaintiffs provide extensive and detailed pleadings that far surpass the pleading requirements for a claim of Innocent Misrepresentation.  Defendant cites only *Kahn v Burman*, 673 F. Supp 210 E.D. Mich 1987) to support their allegation that this count is not sufficiently pled.  However, even a cursory review of the complaints from more than 500 consumers demonstrate a "contractual relationship," the various Ford documents and press releases attached to the FAC which demonstrate that Ford made a <u>multitude</u> of "false representations" upon which Plaintiffs relied and suffered damage which inured to Ford's benefit.

## I. <u>Economic-Loss Rule Does Not Bar Fraud Claims</u>

Ford next avers that the fraud claims are barred under Michigan law under the economic loss doctrine. Ford's assertion, however, is belied by the exceptions inherent in Michigan law. Michigan's construction of the economic loss doctrine does not bar claims for fraudulent concealment premised on "fraud in the inducement" or deceit intended to entice a party to engage in a transaction. *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 963-64 (E.D. Mich. 2017) ("Michigan courts have recognized an exception to the economic loss doctrine for the intentional tort of fraud in the inducement. 'Fraud in the inducement . . . addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort.'") (quoting *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 371, 532 N.W.2d 541, 544 (1995)); *JAC Holding Enterprises,*

*Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 732 (E.D. Mich. 2014) (same). For the same reasons relied upon by the Court in those cases, the request to dismiss this count should be denied.

The economic loss doctrine as it pertains to consumer transactions is essentially an election of remedies imposed by the court where claims arise out of a contract between a buyer and a seller.  <u>However, in the instant case, Ford's fraudulent acts also commenced well in advance of any contract</u>.  Plaintiffs 'complaint contains specific marketing material and extensively documents Ford's fraudulent advertising which Plaintiffs relied upon and that served as an inducement to Plaintiffs to purchase or lease these vehicles.  <u>Because the fraud was extraneous to the contract, the economic loss doctrine does not apply</u>.  Specifically, MCL 440.1103(2) states:

> (2) Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel**, fraud**, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause **shall supplement its provisions *(emphasis added).***

Additionally, and further illustrating legislative intent, MCL 440.2721 further provides:

> Remedies for **material misrepresentation or fraud include all remedies available** under this article for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

Additionally, in *Detroit Edison Co. v NABCO, Inc*., 35 F 3d. 236 (6th Cir. 1994), the court observed that the purpose of "[t]ort law is to "protect [s] society's interest in freedom from harm." *Id at 239 (quoting Neibarger v Universal Cooperatives, Inc. 439 Mich 512,520, 486 N.W.2d 612, 615 (1992).* Contract law however, is based on mutual promises that serve mutual self-interest where "parties <u>of equivalent bargaining power</u> negotiate the terms of the transaction and each is then entitled to the benefit of the bargain." (*emphasis added)  Detroit Edison*, 35 F 3d at 239.  In the instant case, the parties were clearly not in an equal bargaining position, and thus would not be precluded from recovery based upon the economic loss doctrine theory.

Finally, a recent case in  the Eastern District of Michigan released its Opinion and Order denying the same issue in a motion in a similar action against FCA, LLC, to-wit: *In re FCA US LLC Monostable Elec Gearshift Litig*, No. 16-MD-02744, 2018 WL 6192628 (ED Mich, November 28, 2018).  Slip copy attached as **Exhibit E**; As-Filed Copy attached as **Exhibit F**.  *In re FCA* involved a class action brought by consumers from multiple states, including Michigan, involving 2012-2015 vehicles with defective and unsafe transmissions. The operative complaint alleged causes of action very similar to the claims brought by Plaintiffs in the current mass actions against Ford.

The November 28, 2018 Opinion and Order addresses FCA's Rule 12(b)(6) motion to dismiss the plaintiffs' fraud claims based on the economic loss doctrine

("ELD").2 The Court analyzed the ELD under Michigan law, including *Huron Tool & Engineering Co v Precision Consulting Services, Inc*, 209 Mich App 365; 532 NW2d 541 (1995). The Court denied Defendant's motion on the ground that the ELD does not bar claims for fraudulent concealment premised on a fraud in the inducement, as is alleged in both *In re FCA* and in the present Ford mass actions: Michigan's construction of the economic loss doctrine does not bar claims for fraudulent concealment premised on "fraud in the inducement" or deceit intended to entice a party to engage in a transaction. *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 963-64 (E.D. Mich. 2017) ("Michigan courts have recognized an exception to the economic loss doctrine for the intentional tort of fraud in the inducement. 'Fraud in the inducement ... addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort.'")(quoting *Huron Tool & Engineering Co. v.Precision Consulting Services, Inc.*, 209 Mich. App. 365, 371, 532 N.W.2d 541, 544 (1995) ); *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC,* 997 F. Supp. 2d 710, 732 (E.D. Mich. 2014)(same). The same reasons relied upon by the Court in those cases are applicable in the instant case. *Id*., Ex. A, p 5; Ex. B, pp 6-7.

Because *In re FCA* is "on all fours" with the present Ford transmission mass action, Plaintiffs urge that the Opinion and Order is persuasive authority that should be considered by this Court.

### J. <u>Unjust Enrichment</u>

Unjust enrichment is defined as the unjust retention of "money or benefits which in justice and equity belong to another." *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010). The Court must consider both law and equity, and a defendant may be unjustly enriched even where it lawfully obtained the money or benefit in question. *Id.,* at 266 - 267.

Plaintiffs' FAC alleges that Defendant has profited and benefitted from the Plaintiffs' purchasing and leasing the subject vehicles when it knew that the transmission was defective. Meanwhile, Ford has been charging Plaintiffs fees for transmission inspections and continuing its "blame the consumer" strategy.

Ford avers that the unjust enrichment claim relies on alleged fraud, so, therefore, the heightened pleading standard under Fed. R. Civ. P. 9(b) applies. However, a claim for unjust enrichment is not a claim where the elements of fraud need be established. Accordingly, this argument is without merit.

Ford next claims that, under Michigan law, "unjust enrichment claims must be dismissed" where there is an express contract governing the subject matter. *Matanky v. General Motors L.L.C.*, 370 F. Supp. 3d 772, 803 (E.D. Mich. 2019). "It is well established that a plaintiff may raise a breach-of-contract claim and allege in the alternative that a contract is invalid, meriting equitable relief." *Glaske v. Indep. Bank Corp.*, No. 16-CV-323167, 2016 WL 298986, at *10 (Mich. Ct. App., Jan. 21, 2016). Accordingly, Plaintiffs' assertion of express warranty claims does not preclude their unjust enrichment claims. "If the contract is found unconscionable

and thereby invalidated, [Plaintiffs] may be able to establish entitlement to relief under the doctrine of unjust enrichment." *Id.*

Further, Ford claims that because an adequate remedy exists at law here, Plaintiffs are barred from pursuing unjust enrichment as an equitable alternative. While Michigan courts have acknowledged the general rule that a claim for unjust enrichment cannot survive when there exists an express contract covering the same subject matter, that case law also provides that if the contract is void or unenforceable, the rule does not apply. *See Biagini v. Mocnik*, 120 N.W.2d 827, 828 (Mich. 1963) (recovery in quantum meruit allowed where the plaintiff performed under an express contract that is not enforceable because of a statute that bars recovery under terms of the contract); *Ordon v. Johnso*n, 77 N.W.2d 377, 382-383 (Mich. 1956); *VanderHoef v. Parker Bros Co., Ltd.*, 255 N.W. 449, 452-453 (Mich. 1934).

"It is well established that a plaintiff may raise a breach-of-contract claim and allege in the alternative that a contract is invalid, meriting equitable relief." *Glaske*, No. 16-CV-323167, 2016 WL 298986, at *10 (Mich. Ct. App., Jan. 21, 2016). Accordingly, Plaintiffs' assertion of the validity of express warranty claims does not necessarily render unjust enrichment claims barred.

Next, Ford claims that this claim lacks "facts sufficient to establish that Ford obtained any benefit from the complained-of conduct." *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *4 (E.D. Mich. Jan. 4, 2019). Specifically,

because the FAC asserts "Ford has profited and benefitted from the purchase and leasing of Plaintiffs' vehicles, in that Ford sold Plaintiffs defective products for the price of non-defective products", (FAC ¶ 582), Ford avers that Plaintiffs have failed to identify what these "non-defective products" are and their relative cost. *Wozniak*, 2019 WL 108845, at *4. The plain language of the claim, however, sets forth that Ford has sold defective vehicles at the same full price of a non-defective vehicles. This argument is, therefore, without merit.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs FAC is sufficient to state plausible claims for relief. Therefore, Plaintiffs request that this Court deny Ford's motion to dismiss.

Respectfully submitted this 28th day of February, 2020.

STERN LAW, PLLC

/s/ Kenneth A. Stern_____
KENNETH    A.    STERN
(P30722)
41850 W. Eleven Mile Road,
Suite 121
Novi, MI 48375-1857
(248) 347-7315
ken@sternlawonline.com


MARINO LAW PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste
100E
Southfield, Michigan 48075

Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*