# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AARON GANT, *et al*.,

     Plaintiffs,

v.

FORD MOTOR COMPANY,

     Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO RESPOND TO DISCOVERY**

---

## PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO RESPOND TO DISCOVERY

NOW COME Plaintiffs, Aaron Gant, *et al*. ("Plaintiffs"), by and through their counsel, Stern Law, PLLC, and Marino Law, PLLC, and pursuant to Fed. R. Civ. P. 37, respectfully submit this motion for an order compelling Defendant Ford Motor Company ("Ford") to immediately provide full and complete answers to interrogatories, full and complete responses to requests for admission, full production of responsive documents, and payment of Plaintiffs' costs and attorney fees.

Consistent with its corporate litigation history, Ford has obstructed all discovery efforts in this matter through an unreasonable failure to agree to early

discovery, as well as a fusillade of boilerplate objections to individual requests. Accordingly, for the reasons set forth in the accompanying memorandum of law, this Court should grant this motion to compel and order full and complete answers to interrogatories, full and complete responses to requests for admission, full production of responsive documents, and payment of Plaintiffs' costs and attorney fees.

## **L.R. 7.1(a) Certification**

On March 12, 2020, there was a conference between counsel for the parties in which Plaintiffs' counsel explained the nature of this motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted this 18th day of March, 2020.

STERN LAW, PLLC

/s/ Kenneth A. Stern
KENNETH A. STERN (P30722)
41850 W. Eleven Mile Road, Ste 121
Novi, MI 48375-1857
(248) 347-7315
ken@sternlawonline.com

MARINO LAW PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste 100E
Southfield, Michigan 48075
Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON GANT, *et al*.,

      Plaintiffs,

v.

FORD MOTOR COMPANY,

      Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO RESPOND TO DISCOVERY**

---

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION
## TO COMPEL DEFENDANT TO RESPOND TO DISCOVERY

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 26; 33(b); 34; 36; 37(b); 37(c)

Judge Sean F. Cox, Discovery Practice Guidelines, available at https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=22# (last visited March 9, 2020)

*Carfagno v. Jackson Nat'l Life Ins. Co.,* No. 5:99CV118, 2001 WL 34059032 (W.D. Mich. Feb. 13, 2001)

*Karlsson v. Ford Motor Company*, 45 Cal. Rptr. 3d 265 (2006)

*Wilson v. Wal-Mart Stores, Inc.*, 199 F.R.D. 207 (S.D. Tex. Feb 12, 2001)

# TABLE OF AUTHORITIES

## CASES

*Babb v. Ford Motor Co., Inc.*, 41 Ohio App.3d 174, 181-82 (Ohio. App. 8 Dist. 1987) ................................................................................................22

*Bally v. First Nat'l. Bank Omaha*, No. 17-10632, 2018 WL 1558861, at *1 (E.D. Mich. 2018) ...........................................................................................11

*Carfagno v. Jackson Nat'l Life Ins. Co.,* No. 5:99CV118, 2001 WL 34059032, 12-13 (W.D. Mich. Feb. 13, 2001) .......................................................7

*Cratty v. City of Wyandotte*, 296 F.Supp.3d 854, 858 (E.D. Mich. 2017) .............13

*Crenshaw v. Ford Motor Co.*, Case No. CV-93-75 ................................................23

*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns*, 7 Cal. App. 4th 27, 9 Cal. Rptr. 2d 396 (1992) .......................................................19

*FenF, LLC v. Taylor Gifts, Inc.*, Civil Action No. 10–14351, 2011 WL 3422789, *2 (E.D. Mich. Aug. 3, 2011) ...............................................................13

*Florida Evergreen Foliage v. E.I. DuPont De Nemours*, Co., 135 F. Supp.2d 1271, (S.D. Fla. 2001) .........................................................................................15

*Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 547-49 (Ind. App. Feb 12, 1999) ................................................................................................................23

*Ford Motor Co. v. Nu-Car Carriers*, 87 F.R.D. 21 (E.D. Pa. 1980) ......................22

*Ford Motor Company v. Conley, et. al.*, 294 Ga. 530, 757 S. E. 2d 20 (2014)19, 20, 21

*Goodrich Corp. v. Emhart Indus., Inc.*, No. ED CV 03 00079 VAP SSX, 2005 WL 6440828, at *3 (C.D. Cal. June 10, 2005) ..........................................10

*Haumersen v. Ford Motor Co.*, 257 N.W.2d 7 (Iowa 1977) ..................................24

*Hi–Lex Controls Inc. v. Blue Cross and Blue Shield of Michigan*, 2013 WL 1303622, *3 (E.D. Mich. 2013) ...............................................................13

*In re E.I. DuPont De Nemours & Company-Benlate Litigation*, 99 F.3d 363 (11th
    Cir. 1996)..................................................................................15

*In re Tutu Wells Contamination Litig.*, 165 F.R.D. 81 (D.C.V.I. St. Thomas Div.
    1995) ......................................................................................14

*In the Matter of Ford Motor Co.*, 96 F.T.C. 362 (1980) .........................................25

*Johnson v. Ford Motor Co.*, No. 99 Civ 0509 (W.D. Ill. Feb. 14, 2003)...............17

*Karlsson v. Ford Motor Company*, 45 Cal. Rptr. 3d 265, 276, 140 Cal. App. 4th
    1202, 1216 (2006).................................................................. 17, 18, 19

*Kawamata Farms, Inc. v. United Agri Products*, 948 P.2d 1055 (Hawaii 1997)....15

*King v. Ford Motor Co.*, 209 F.3d 886 (6th Cir. 2000) ..........................................23

*Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 187-88, 192 (N.D. Iowa
    Mar. 13, 2017) ........................................................................25

*Manigault v. Ford Motor Co.,* 96 Ohio St. 3d 431 (2002) .....................................24

*Nat' Hockey League v. Metropo. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)....14

*Nissan N. Am., Inc. v. Johnson N. Am., Inc.*, No. 09-11783, 2011 WL 669352, at *2
    (E.D. Mich. Feb. 17, 2011).........................................................8

*Parnell v. Ford Motor Co.*, No. 4:94-CV-825-A (N.D. Tex. 1995).......................24

*Parrett v. Ford Motor Co.*, 52 F.R.D. 120, 121-122 (W.D. Mo. 1969) .................22

*Rock Island Bank & Trust Co. v. Ford Motor Co.*, 54 Mich. App. 278, 279-281
    (Mich. App. 1974) ...................................................................22

*Simon v. Ford Motor Co.*, 165 F.R.D. 650, 651-58 (N.D. Okla. Nov. 22, 1995) ...23

*Strategic Mktg. & Research Team, Inc. v. Auto Data Solutions, Inc.*, 15-12695,
    2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017)....................................8, 25

*Traxler v. Ford Motor Co.*, 227 Mich. App. 276, 288; 576 N.W.2d 398 (1998)....21

*Wesley Corporation v. Zoom T.V. Products, LLC*, Case No. 17-10021, 2018 WL
    372700, *4 (E.D. Mich. Jan. 11, 2018........................................... 7, 8, 9

*Wiitala v. Ford Motor Co.*, No. 214444, 2001 WL 1179610 (Mich. App. Oct. 5,

2001) .................................................................................................... 23

*Wilson v. Wal-Mart Stores, Inc.*, 199 F.R.D. 207 (S.D. Tex. Feb 12, 2001) .... 14, 15

*Youn v. Track, Inc.*, 324 F.3d 409 (6th Cir. 2003) .................................................. 3

## R<span>ULES</span>

34(b)(2)(B) ............................................................................................................. 3

Fed. R. Civ. 26 ...................................................................................................... 4

Fed. R. Civ. P. 26(b)(1) ..................................................................................... 3, 6

Fed. R. Civ. P. 26(b)(5)(A) ................................................................................. 13

Fed. R. Civ. P. 26(g) ........................................................................................... 26

Fed. R. Civ. P. 33(b)(4) ........................................................................................ 3

Fed. R. Civ. P. 34(b)(2)(c) ................................................................................. 11

Fed. R. Civ. P. 36 .................................................................................................. 3

Fed. R. Civ. P. 37(a)(3)(A) ................................................................................... 6

Fed. R. Civ. P. 37(a)(4) ........................................................................................ 3

Fed. R. Civ. P. 37(a)(5)(A) ................................................................................... 3

Fed. R. Evid. 401 .................................................................................................. 6

## **R<span>EGULATIONS</span>**

ARTICLE I, SECTION 1 OF THE FLORIDA CONSTITUTION .......................... 5

# **TABLE OF CONTENTS**

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................... ii

TABLE OF AUTHORITIES …………………………………………………… iii

STATEMENT OF ISSUES ................................................................................ vii

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL ...................... 1

I.      INTRODUCTION .................................................................................. 1

II.     LEGAL STANDARD. ............................................................................ 3

III.    LEGAL ARGUMENT ........................................................................... 4

        A. Early Discovery .................................................................................. 4

        B. The Practice of Boilerplate Objections Is
           Tantamount to Not Filing Objections. ................................. 6

             1. Objections to Definitions ............................................. 10

             2. Overly Broad, Unduly Burdensome, and
                Seeks Irrelevant Information.  ................................. 11

             3. Attorney-Client Privilege.  ......................................... 13

        C. Ford's Current Refusals to Produce Discovery
           Are Part of an Ongoing Corporate Policy,
           Strategy, Pattern, and/or Practice of Obstructing
           Plaintiffs' Discovery Efforts in this and Other
           Cases, Which Should Not be Tolerated ............................... 14

             1. Ford Continually Flouts State and Federal
                Rules and Court Orders ............................................. 16

             2. Ford utilizes overbroad objections and
                other delay tactics. ..................................................... 21

             3. Other Instances of Discovery Abuse.  ....................... 22

        D. Discovery Sanctions ........................................................................ 25

IV.     CONCLUSION .................................................................................... 26

## STATEMENT OF ISSUES

1.     Whether the Court should order Ford to comply with early discovery served upon it by Plaintiffs. *Plaintiffs' Answer:* Yes.

2.     Whether Ford's fusillade of objections to each and every discovery request constitute improper boilerplate objections, and thus, whether this Court should therefore order full and complete responses to the requests. *Plaintiffs' Answer:* Yes.

3.     Whether the Court should consider Ford's long history of discovery obstruction in deeming its objections boilerplate and assessing sanctions for the blockading of rightful discovery in this action. *Plaintiffs' Answer:* Yes.

4.     Whether the Court should award Plaintiffs' attorneys fees and costs for having to file a motion to compel substantive discovery responses. *Plaintiffs' Answer:* Yes.

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL

## I.    INTRODUCTION

On December 23, 2019, anticipating Ford's forthcoming motion to dismiss the First Amended Complaint, and in keeping with the Court's own Discovery Practice Guidelines stating the Court's expectation that the parties agree to conduct early discovery, Plaintiffs served Ford with their first set of discovery requests: 25 interrogatories, 141 requests for production of documents, and 15 requests to admit (collectively, the "Discovery Requests"). (Exhibits A, B, C, respectively.) Ten days later, on January 2, 2020, Ford's counsel, Thomas Branigan, asked Plaintiffs' counsel, via letter, to withdraw all the requests. On January 6, 2020, undersigned Plaintiffs' counsel met and conferred by phone with Ford's counsel, Mary Novacheck, regarding early discovery. During the conference, Ms. Novacheck acknowledged that Ford would never agree here or elsewhere to early discovery without first reviewing the requests and that, having had such an opportunity before and during the conference, it would not agree to respond to any of them. Plaintiffs, however, insisted upon Ford's response to the requests and refused to withdraw. Additionally, Plaintiffs informally requested that the Court open early discovery or, alternatively, schedule a Rule 26 discovery conference. (*See* Exhibit D, Pls.' Letter to Court.)

The Court convened an informal conference with the parties on January 13, 2020, to discuss the matter. There, the Court opined that the issues in this litigation were not unusual and expressed its hope that the parties would accommodate each other as best as they could; failing that, the Court anticipated that Plaintiffs would move to compel and/or Ford would move for a protective order. The parties met and conferred through counsel again on the following day, January 14, 2020, and no progress towards agreement could be made.

One week later, having once disregarded the Court's written expectation that the parties would engage in early discovery, Ford again disregarded the Court's expectation as stated at the January 13 conference that the parties should reach a compromise. Steadfast in its refusal to respond to the Discovery Requests, on January 21, 2020, Ford served its Objections to the Discovery Requests (attached as Exhibits E, F, G), but failed to answer or provide full disclosure to the interrogatories and requests. Instead, Ford asserted unsubstantiated and boilerplate objections. A subsequent exchange of written correspondence between counsel also failed to resolve the impasse, including that on January 23, 2020, Plaintiffs invited Defendant by email to participate in a Rule 26(f) conference, which Defendant declined by letter the next day.

As set out below, Ford's responses are inadequate, requiring the intervention of this Court.

## II.   LEGAL STANDARD

The legal standards governing discovery are clear. Federal Rule of Civil Procedure 26(b)(1) states in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). A party may object to discovery requests; however, an objection to an interrogatory must be "stated with specificity," and an objection to a request for production must include the reasons. *See* Fed. R. Civ. P. 33(b)(4); 34(b)(2)(B). According to Fed. R. Civ. P. 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." And "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. . . . The grounds for objecting to a request must be stated." Fed. R. Civ. P. 36.

Moreover, a party who fails to disclose or cooperate in discovery may be subject to an order for payment of expenses incurred in connection with a successful motion to compel. Fed. R. Civ. P. 37(a)(5)(A). As held by the Sixth Circuit in *Youn v. Track, Inc.*, 324 F.3d 409 (6th Cir. 2003), if a party cannot establish that its actions were substantially justified or that other circumstance would make an award for costs unjust, a court "'*shall*' require the responding party to pay the moving party's expenses." *Youn*, 324 F.3d at 421 (emphasis supplied).

## III.  LEGAL ARGUMENT

### A.  <u>Early Discovery</u>

In response to each and every discovery request, Ford avers that any discovery is premature, in violation of Fed. R. Civ. P. 26. Specifically, Ford claims: "Plaintiffs have not sought leave to serve early discovery, Plaintiffs are unable to show good cause for it and the Court has not entered an order permitting early service of discovery." (*See* Exhibits E, F, G.) Contrary to Ford's position, however, early discovery does not necessarily require leave of the Court, nor a showing of good cause. Notably, this Court's own Practice Guidelines emphasize: "The Court *expects the parties to conduct early discovery by agreement* although Rule 26(d) does not authorize court-sanctioned discovery prior to the initial attorney conference." Judge Sean F. Cox, Practice Guidelines, available at https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=22# (last visited March 18, 2020) (emphasis supplied).

Plaintiffs have sought such an agreement from Ford and have prepared to move the case forward while awaiting the Rule 26 conference date. Thus, Plaintiffs' counsel reached out to Ford to open discovery as soon as possible and prepared discovery requests for Ford. (*See* Exhibits A, B, C.) At this point though, the only matter holding up discovery is not the law, but rather, Ford's obstinance. Such conduct is unfortunately typical of Ford's behavior during the course of litigation

historically, which, for at least the purpose of awarding attorney's fees, this Court should consider.

Moreover, even if the Court accepts Ford's argument that early discovery may not proceed without "good cause," such good cause manifestly exists here for early discovery. Plaintiffs are facing Ford's dispositive motion [Dkt. 20], which seeks to dismiss Plaintiffs' First Amended Complaint ("FAC"), [Dkt. 12], for not pleading every possible detail Ford could imagine. Ford complains that Plaintiffs have not provided warranty and repair history details that Ford itself can access with a simple VIN search on one of several shared information platforms Ford maintains to communicate with its authorized dealerships, as if obtaining relief on a meritorious claim were a memory test or a remedy only available to the most fastidious record-keepers among the consuming public. Plaintiffs also have a proposed second amended complaint pending ("SAC"), [Dkt. 19-2], which, should it become operative in whole or in part, would likely face the same familiar arguments from Ford—fact-intensive arguments Ford can only hope to succeed on because it has withheld from Plaintiffs the discovery they need to completely and effectively respond: purchase records, detailed repair histories, defect and root cause analyses, and warranty-based claim history—information which remains uniquely or mainly available to Ford and which it refuses to produce.

## B.   The Practice of Boilerplate Objections Is Tantamount to Not Filing Objections.

The Federal Rules of Civil Procedure state that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without that evidence." Fed. R. Evid. 401. Relevance is further clarified in that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 34(a) provides that requests to produce documentation including "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into reasonably usable form" are also "within the scope of Rule 26(b)." Furthermore, "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A).

When a party levies the objections of being vague, ambiguous, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence against every request to produce documents, these objections are boilerplate in nature.

*Carfagno v. Jackson Nat'l Life Ins. Co.,* No. 5:99CV118, 2001 WL 34059032, 12-13 (W.D. Mich. Feb. 13, 2001).

Ford's "objections" to the Discovery Requests here are the typical boilerplate objections known and detested by courts, commentators, and receiving parties around the nation.

> A "boilerplate" objection is one that is invariably general; it includes, by definition, "[r]eady-made or all-purpose language that will fit in a variety of documents." Boilerplate, Black's Law Dictionary (10th ed. 2014). Thus, "[a]n objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request." Jarvey, Matthew L., Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them, 61 Drake L. Rev. 913, 914 (2013).

*Wesley Corporation v. Zoom T.V. Products, LLC*, Case No. 17-10021, 2018 WL 372700, *4 (E.D. Mich. Jan. 11, 2018).

Boilerplate objections to interrogatories and requests for production are not permitted under the Federal Rules of Civil Procedure. Rule 33(b)(4) requires that objections to interrogatories be made "with specificity" and provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Rule 34(b)(2)(B) requires that objections to requests for production "state with specificity the grounds for objecting to the request." Rule 34(b)(2)(C) further demands that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."

When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited. "Boilerplate or generalized objections are tantamount to no objection at all and will not be considered." *Strategic Mktg. & Research Team, Inc. v. Auto Data Solutions, Inc.*, 15-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) (quoting *Nissan N. Am., Inc. v. Johnson N. Am., Inc.*, No. 09-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011)). Lawyers who purport to "preserve" an objection by including it in a boilerplate statement must be prepared to face the fact that the result of a substance-free objection is generally "the opposite of preservation[,]" *i.e.*, forfeiture. *Wesley Corporation*, 2018 WL 372700 at *4. Similarly, the common "notwithstanding-the-above" designations that frequently follow a boilerplate objection and precede a more substantive response also fail to preserve objections. *Id.*

> This Court is not the first—nor will it be the last—to condemn the use of boilerplate objections. Indeed, perhaps the only thing more surprising than the pervasive reliance on boilerplate is the practice's continued existence in the face of strong and widespread criticism by federal courts. *See, e.g., Black v. Pension Benefit Guar. Corp.*, No. 09-13616, 2014 WL 3577949, at *2 (E.D. Mich. July 21, 2014) (Tarnow, J.) ("The Court strongly condemns the practice of asserting boilerplate objections to every discovery request."); *Kristensen v. Credit Payment Servs., Inc.*, No. 12-0528, 2014 WL 6675748, at *4 (D. Nev. Nov. 25, 2014) (describing a party's "general and additional objections" as "boilerplate objections which are designed to evade, obfuscate, and obstruct discovery"); *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 3731781, at *3 (E.D. Mich. Aug. 28, 2010) (Lawson, J.) (noting that a party's boilerplate objections "do not gain in substance through

repetition"); *Marti v. Baires*, No. 08-00653, 2012 WL 2029720, at \*11 (E.D. Cal. June 5, 2012) ("The Court will not countenance any party's effort to obstruct discovery through objections or evasive responses which lack any good faith basis."); *Near v. Eli Lilly & Co.*, No. 07-00006, 2008 WL 11334459, at \*1 (S.D. Iowa July 16, 2008)("[T]he use of boilerplate, unsubstantiated objections is rejected by federal courts."). These cases, in their interpretation of the discovery rules and their denunciation of boilerplate, "are not aspirational, they are the law." *Liguria Foods, Inc. v. Griffith Labs., Inc.,* 320 F.R.D. 168, 191 (N.D. Iowa Mar. 13, 2017).

*Id.*

Ford failed to comply with Plaintiffs' reasonable Discovery Requests based upon boilerplate objections. First, Ford claims the discovery requests are too early, which Plaintiffs addressed above. Notably, in response to each set of discovery requests, Ford repeats nearly identical boilerplate objections. According to Ford, virtually all of Plaintiffs' Requests were either overly broad and unduly burdensome or vague and unclear. (*See* Exhibits E, F, G.) Moreover, Ford objects to Plaintiffs' definitions of basic terms without basis, asserts attorney-client privilege without elaboration or privilege log, as well as avers that Plaintiffs already possess information requested or the information is not readily accessible by Ford.

Aside from objecting generally to the timing, Ford's boilerplate objections are exemplified by three basic categories that proliferate the responses—all of which are inadequately stated and inapplicable to this matter.

### 1.    *Objections to Definitions*

First, Ford offers generalized objections concerning the definitions of the terms in the Requests. Among the definitions objected to is "YOU", "YOUR" and "DEFENDANT." Here, Plaintiffs define the terms as:

> The term "YOU," "YOUR," and "DEFENDANT" shall mean Defendant FORD MOTOR COMPANY and any and all agents, representatives, assigns, successors, dealerships, individuals, and/or businesses who represent themselves to be affiliated with, or work for, FORD MOTOR COMPANY.

(Exhibit A at 2). Ford avers that "[t]his definition is overly broad, unduly burdensome, and seeks irrelevant information because it does not identify a particular entity, affiliate, agent, dealership or business, or other person with any particularity, and is not limited by subject matter or connection to the allegations in this case." (*See* Exhibit E at 2). "The discovery rules require that a corporation furnish such information as is available from the corporation itself or from sources under its control." *Goodrich Corp. v. Emhart Indus., Inc.*, No. ED CV 03 00079 VAP SSX, 2005 WL 6440828, at *3 (C.D. Cal. June 10, 2005). Thus, this definition fully complies with the rules of discovery, and Ford's objection represents mere boilerplate for the purpose of obstructing the discovery process.

Ford further "objects to Plaintiffs' definition of DOCUMENT(S), which states it shall be interpreted in accordance with California Evidence Code section 250. This matter is not pending in California, and the California discovery rules do not apply to this action." Regardless, Plaintiffs may adopt any definition of a term

for the purpose of the discovery document itself. This objection purposefully misinterprets the rules and is made clearly to obfuscate discovery.

Ford has failed to state whether it is withholding any documents based on these generalized objections, which Rule 34(b)(2)(C) requires them to do. Fed. R. Civ. P. 34(b)(2)(c) (instructing the objecting party to "state whether any responsive materials are being withheld on the basis of that objection."); *see also Bally v. First Nat'l. Bank Omaha*, No. 17-10632, 2018 WL 1558861, at *1 (E.D. Mich. 2018)

Ford's objections to terms throughout its non-responsive responses constitute generalized boilerplate tantamount to no objections at all. This Court should so rule.

## 2. *Overly broad, unduly burdensome, and seeks irrelevant information.*

Ford responds to nearly every discovery request claiming that it is:

> overly broad, unduly burdensome and seeks irrelevant information because it is not limited to Plaintiffs' claims or to the subject vehicles at issue, to any particular aspect of the transmission or its component parts, because the defect has not been sufficiently defined or the current Complaint refers only to vague and generic transmission concerns or complaints overall, and because it is not limited to any particular factor or circumstance giving rise to an accident.

(*See* Exhibit E). Notably, the term "transmission defect" is defined with particularity in all of the Discovery Requests:

> The two "TRANSMISSION DEFECTS" shall be understood to refer to problems with the TRANSMISSIONS (and their component parts) in the SUBJECT VEHICLE and FORD VEHICLES, which manifest in various symptoms, including, but not limited to, sudden and unexpected

shaking, violent jerking, bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"), delayed acceleration (especially from a complete stop), gears slipping, hesitation on acceleration, difficulty stopping the vehicle, lack or loss of motive power, delayed downshifts, hard decelerations or 'clunks' when slowing down or accelerating at low speeds, premature wear of the internal components, transmission failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident, and/or catastrophic failures necessitating replacement, attributable to one or more of the following: failing fluid seal integrity, throttle body deficiencies, failed torque converter welds, driveshaft failure, and failed Transmission Control Module ("TCM"), Powertrain Control Module ("PCM"), or other module updates, to limit problems associated with transmission design and/or manufacture, or caused by the vehicle's design and architecture issues (collectively, the "Transmission Defects").

(Exhibit A at 3.)

These objections lack the specificity mandated by Rule 34(b)(2)(B) and are almost identical to requests other courts in this District have identified as impermissible boilerplate objections. *See, e.g., Lowe,* 2012 WL 3731781, at *2 (finding objections stating only that requests are "unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence" are boilerplate objections); *Cratty v. City of Wyandotte*, 296 F.Supp.3d 854, 858 (E.D. Mich. 2017) (objections stating only that requests are "vague, overly broad and lacking specific" are boilerplate).

### 3.    *Attorney Client Privilege.*

Ford makes general, boilerplate objections based on attorney-client and work product privilege, as well as confidentiality. But Ford did not provide a privilege log. Fed. R. Civ. P. 26(b)(5)(A) requires the filing of a privilege log as follows:

"(5) Claiming Privilege or Protecting Trial–Preparation Materials.

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

"The practice of listing possible privileges and failing to submit a privilege log is not proper." *FenF, LLC v. Taylor Gifts, Inc.*, Civil Action No. 10–14351, 2011 WL 3422789, *2 (E.D. Mich. Aug. 3, 2011). "A privilege log must contain the basis for withholding discovery of the document and sufficient detail beyond conclusory allegations to demonstrate the fulfillment of the legal requirements for application of the privilege." *Hi–Lex Controls Inc. v. Blue Cross and Blue Shield of Michigan*, 2013 WL 1303622, *3 (E.D. Mich. 2013).

Ford must provide a sufficiently detailed privilege log. Otherwise, the objection constitutes boilerplate, which is tantamount to no objection at all.

**C.     Ford's Current Refusals to Produce Discovery Are Part of an Ongoing Corporate Policy, Strategy, Pattern, and/or Practice of Obstructing Plaintiffs' Discovery Efforts in this and Other Cases, Which Should Not be Tolerated.**

In ruling on a motion to compel and request for sanctions, the history of discovery violations and/or abuse is relevant. *See In re Tutu Wells Contamination Litig.*, 165 F.R.D. 81 (D.C.V.I. St. Thomas Div. 1995); *Nat' Hockey League v. Metropo. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Indeed, in cases involving large corporations, such as Wal-Mart and DuPont, various courts have considered these companies' policies, strategies, patterns and/or practices of discovery abuse in other non-related lawsuits in other jurisdictions. For example, in *Wilson v. Wal-Mart Stores, Inc.*, 199 F.R.D. 207 (S.D. Tex. Feb 12, 2001), the court stated:

> Unfortunately, nefarious conduct is all too common in lawsuits in which Wal-Mart is a party. *See Wal-Mart Stores, Inc. v. Lync*h, 981 S.W.2d 353, 354-357 (Tex. App.--Texarkana 1998, pet. denied) (affirming discovery sanctions for Wal-Mart's purposeful evasion of the discovery rules); *Greenwalt v. Wal-Mart Stores, Inc.*, 253 Neb. 32, 567 N.W.2d 560, 567-68 (1997) (affirming trial court's entry of judgment against Wal-Mart as a discovery sanction); *Empire, Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478, 482 (E.D.Ky.1999) (imposing discovery sanctions for the third time in the same action after Wal-Mart did not attend a court ordered settlement conference); *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 46-47 (Tex.App.--Austin 1998, pet. denied) (affirming sanctions in excess of $100,000 for Wal-Mart's repeated discovery abuses); *Stevenett v. Wal-Mart Stores, Inc.*, 977 P.2d 508, 512- 14 (Utah Ct.App.1999) (affirming sanctions). As the seemly coup de gras to this appalling list of arrogance, a Texas State District Court entered a default judgment against Wal-Mart and fined it $18 million dollars because Wal-Mart withheld relevant evidence in a personal injury case. *Meissner v. Wal- Mart Stores, Inc.*, A-159,432

(Tex. Dist. Ct. ___ Jefferson County 1999). In a milestone of understatement, one of this Court's brethren has recently succinctly summed up the situation, observing that Wal-Mart's "track record on compliance with discovery requests has been poor both in this case and in other cases." *GTFM, Inc. v. Wal-Mart Stores, Inc.,* 2000 WL 335558, *3 (S.D.N.Y. March 30, 2000) (so observing while issuing discovery sanctions for Wal-Mart's misrepresentations). This Court wholeheartedly concurs. Thus, while if viewed in a vacuum, the Court's sanctions in this case may seem severe, the Court emphasizes that this is just another example in a rapidly growing list of Wal-Mart's egregious approach to discovery, a pattern that the Court cannot ignore. Wal-Mart is an enormous company with an ubiquitous presence throughout the nation. However, simply because Wal-Mart is large does not mean that it can conduct itself in any manner that it pleases without there being consequences. There is a gross disparity in resources between Wal-Mart and little children who are forced to sue when they are injured by a Wal-Mart product. There is, of course, nothing that the Court can do about this, and the Court does not begrudge Wal-Mart's size, which comes through success. However, when Wal-Mart's discovery abuses cause the playing field itself to become unlevel the Court must both promptly and adequately act. Thus, the Court is left with two alternatives in situations like this: (1) To do nothing and allow abuses to go unchecked or (2) To pick up the pieces and try to put Humpty Dumpty back together again.

*Id.* at 208. *See also Kawamata Farms, Inc. v. United Agri Products*, 948 P.2d 1055 (Hawaii 1997); *In re E.I. DuPont De Nemours & Company-Benlate Litigation*, 99 F.3d 363 (11th Cir. 1996); and *Florida Evergreen Foliage v. E.I. DuPont De Nemours*, Co., 135 F. Supp.2d 1271, (S.D. Fla. 2001) (regarding discovery abuses by DuPont).

Likewise, multiple jurisdictions have examined and considered Ford's extensive and ongoing policy, strategy, pattern, and/or practice of obstructing

discovery, when ruling on a motion to compel and determining appropriate sanctions. This discovery abuse history is set forth below.

### 1.    *Ford Continually Flouts Court Rules and Orders.*

In *Johnson v. Ford Motor Co*., District Judge Robert W. Gettleman had this to say about Ford's pattern of discovery abuse and deception:

> I was disturbed the last time we were together, and I'm even more disturbed now than I was then. I've rejected Ford's position that this was some innocent mistake. . . But if that's your response, that's your response. From what I've seen, it appears that Ford, as a corporation, uses people and lawyers to take certain positions. [Tr. 17]
> …
> And I don't want to believe lawyers would come and risk their licenses and livelihoods and professional reputations by making false statements to a Court, but that's what is happening. Whether they're being set up by their client to do it is, you know, it's a big company, and maybe they can do that sort of thing and hope they get away with it. But what happened here . . . is . . . very disturbing . . . and . . . very serious. It almost borders on criminal to be honest with you. [Tr. at 18]
> …
> I'm seeing a deliberate pattern. And, believe me, it took years for me to buy into this group of plaintiffs . . . now it appears after there's a rollover, these documents disappear, and people are denying that it happened. And if it wasn't for this case in Georgia, we never would know about it… And I want to think about this a little bit because I am very, very close to granting the plaintiff's request to instruct the jury that Ford is liable in this case and this is a case of damages only… I come to this conclusion—I said it last time—with great reluctance. Great reluctance. Because I don't want to believe that lawyers misrepresent things to me. I don't want to believe a corporation like Ford does stuff like this. I don't want to believe it. I'm being convinced against my own instincts. [Tr. at 23-24.]

Transcript of Final Pre-Trial Conference, *Johnson v. Ford Motor Co*., No. 99 Civ. 0509 (W.D. Ill. Feb. 14, 2003).

In a California case, Ford was found to have "an abusive discovery pattern that resulted in the loss of evidence." *See Karlsson v. Ford Motor Company*, 45 Cal. Rptr. 3d 265 (2006). A discovery referee appointed very early in the case issued several reports, which were generally adopted by the trial court. The referee cited a laundry list of discovery violations, including:

> 1. At an ordered meet and confer, Ford agreed to produce photos, documents, and prototypes, instead, Ford produced a witness who stated all prototypes had been destroyed;
>
> 2. After another meet and confer, Ford promised to produce a person most knowledgeable (PMK) to discuss various restraint warnings, instead Ford produced several witnesses who were unable to answer the deposition questions;
>
> 3. Ford concealed documents by stating in the year 2000 that all requested documents were held in Ford's rear belt reading room in Dearborn, Michigan, Ford maintained that fiction until the documents were accidently discovered by a paralegal employed by plaintiff's counsel (working on a different case) in Ford's nearby passive restraint reading room just four months before the beginning of the trial in May of 2003, after the discovery period had closed;
>
> 4. Regarding the documents in the passive restraint reading room, the referee found that Ford's continual delay in producing the documents until no additional discovery motions could be brought evidenced a "pattern of discovery abuse [that] has previously been condemned by the Courts;"
>
> 5. Ford had evaded discovery by producing too many documents and failed to properly itemize them in order to overwhelm plaintiff's counsel with written material;
>
> 6. Ford delayed providing the identity of the PMK on the warnings issue, did not explain the delay, and the "actions or inactions by Ford or its counsel . . . are a misuse of the discovery process . . .. Ford or its

counsel failed to act in good faith in producing the appropriate witness or witnesses on the warning issue;

7. Ford failed to produce promised photographs, documents, and prototypes of three-point belt systems and instead produced a witness who claimed that all such items would have been destroyed by Ford's outside prototype supplier, thusly "Ford to act with reasonable diligence, and did not act in good faith, disobeying both previous discovery orders and its meet-and-confer agreement;" and,

8. Ford failed to provide proof that a deposition witness was actually ill and delayed providing a federal transportation safety report that plaintiffs needed for deposition until it was too late.[1]

*Id*. at 271-273.

Ford was severely sanctioned by the trial court which stated that Ford's meet-and-confer violations were "'part and parcel of a whole history of stonewalling, wild goose chases, too little, too late. . .' and 'w[ere] the last straw in a series of violations that kept on continuing and continuing and continuing.'" *Id*. at 276.

Even on appeal Ford continued to exhibit gamesmanship and deceptive practices in its appellate filings. The Appellate Court noted that Ford "ignor[ed] in its opening brief that . . . sanctions . . . were based on a pattern of discovery abuse that effectively led to the loss of various items of evidence." *Id*. at 275. The Court reiterated that Ford's brief misstated the facts below and did not "mention . . . the

---

[1] The referee found this incident was not willful.

trial court's reference to the *Do It Urself*[2] case or [the trial court's] findings that sanctions were warranted based on a pattern of discovery abuse." *Id*. at 276. *Karlsson* shows that Ford will go to great lengths to prevent meaningful discovery.

Once Ford finds a way to skirt the truth, it continues to utilize the scheme until caught and held accountable. In *Ford Motor Company v. Conley, et. al.*, 294 Ga. 530 (2014), Ford deliberately concealed the existence of insurance policies that should have been disclosed pursuant to Georgia law.

*Conley* detailed Ford's repeated violation of Georgia jury qualification requirements related to examination for disqualifying ties to an insurance provider. In response to an interrogatory, Ford denied it had insurance coverage applicable to the case and stated, "it has sufficient resources to cover any judgment which could reasonably be rendered in this case, if any." *Id.* at 532-532. Ford doubled down on the lie by responding to a request for insurance agreements or policies with similar "sufficient resources to cover any reasonable judgment" language. *Id.* When given an opportunity to correct the deficiency, Ford responded to Plaintiff Conleys' request that Ford withdraw its objections and respond to the requests by stating that its "[a]nswers . . . are proper and appropriate under the Georgia Rules of Civil

---

[2] *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns*, 7 Cal. App. 4th 27, 9 Cal. Rptr. 2d 396 (1992).

Procedure." *Id.* at 533. Neither side requested that the jurors be qualified as to Ford's insurance policy status and no questions regarding juror relationships to insurance companies were asked. The case was tried and the jury found in favor of Ford.

The deception would have gone unnoticed if Ford hadn't repeated the behavior in a later case. In *Young v. Ford Motor Company*, Ford gave the same "resources sufficient to satisfy any judgment that reasonably could be expected" responses to requests for insurance information. *Conley* at 534. However, unlike in the *Conley* trial court proceedings, counsel in *Young* proposed in the pretrial order that the jury be qualified as to two specific insurance companies. Ford objected. At the close of the first day of *voir dire*, plaintiff's counsel asked Ford to put the absence of any insurance policy on the record. Ford's attorneys were warned by the trial court that failure to qualify the jury as to Ford's insurers would result in a mistrial and, despite the warning, again stated that there were no applicable insurance policies. The next morning, Ford's attorneys informed the court that there were numerous excess coverage policies that might cover a judgment. The trial court declared a mistrial and entertained a motion for sanctions. The court ruled that the appropriate sanction would be a jury instruction that Ford failed to adequately warn consumers of the danger of a seatbelt during rollovers. The *Young* case then settled. *Id.* at 535.

After Ford's actions in *Young* came to light, the *Conleys* filed a motion for a new trial. The trial court, in granting plaintiffs' motion for a new trial, found that

**"Ford's concealment of its insurance coverage . . . was 'willful' and
'intentional'**". *Id*. at 536 (emphasis added). Although *Karlsson*, *Conley*, and *Young*
are all cases specifically implicated under state (California and Georgia) law (not
federal rules), they provide examples of Ford's all-too-common discovery abuses.

### 2. *Ford utilizes overbroad objections and other delay tactics.*

In *Traxler v. Ford Motor Co.*, 227 Mich. App. 276, 288 (1998), the court held
that a defendant is subject to sanctions and default judgment if its misconduct
constitutes a flagrant and wanton refusal to facilitate discovery. Therein, Ford lied
and intentionally concealed relevant information, dragging out discovery for more
than two years with numerous objections requiring repeated motions to compel. *Id.*
at 278, 281. The court found that Ford's interrogatory answers were so misleading
that they were in effect false statements. *Id.* at 284. The court opined, "Here, the trial
court concluded that Ford 'lied' and was guilty of 'an outrageous fraud.'" *Id.* at 281.
"By doing so, Ford created the appearance that it was lying or intentionally
concealing relevant information. We cannot conclude that the trial court's findings
in this regard were clearly erroneous." *Id.* at 285-286.

### 3. *Other Instances of Discovery Abuse*

Other decisions concerning Ford's history of discovery abuse follow:

1. *Parrett v. Ford Motor Co.*, 52 F.R.D. 120, 121-122 (W.D. Mo. 1969)
(finding that Ford failed to obey federal rules of procedure and an order of court

compelling further answers to interrogatories and that these failures to comply were without substantial justification and caused unnecessary and unreasonable expense to plaintiffs and unnecessary and unreasonable investment of time by plaintiffs' counsel);

2.      *Rock Island Bank & Trust Co. v. Ford Motor Co.*, 54 Mich. App. 278, 279-281 (Mich. App. 1974) (holding that where Ford had stated that no films were available, but after trial it was discovered that such films had been made and were still in possession of manufacturer, plaintiffs were entitled to a new trial on the theory that the fact that they did not receive the ordered information may well have precluded a fair trial);

3.      *Ford Motor Co. v. Nu-Car Carriers*, 87 F.R.D. 21 (E.D. Pa. 1980), (Ford's action dismissed where Ford failed to exhibit good faith in responding to court-ordered discovery requests);

4.      *Babb v. Ford Motor Co., Inc.*, 41 Ohio App.3d 174, 181-82 (Ohio. App. 8 Dist. 1987) (finding that Ford provided "unreasonably evasive and incomplete answers" when the discovery was originally propounded and that Ford should have been sanctioned for this conduct);

5.      *Simon v. Ford Motor Co.*, 165 F.R.D. 650, 651-58 (N.D. Okla. Nov. 22, 1995) (finding Ford had made a "material misrepresentation to the Court" where

Ford claimed that a privilege log or index of documents withheld had never been prepared, but in fact, such log had been prepared for other litigation);

6.   *Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 547-49 (Ind. App. Feb 12, 1999) (noting that relevant documents kept by the office of general counsel had mysteriously disappeared and that prototype testing was not disclosed to NHTSA regarding the Bronco II litigation);

7.   *King v. Ford Motor Co.*, 209 F.3d 886 (6th Cir. 2000) (holding exclusion of Ford's expert testimony was not fundamentally unfair, given that Ford's unexcused failure to disclose that its experts would testify regarding competitor's vehicle did not allow plaintiffs to prepare properly for such witness);

8.   *Wiitala v. Ford Motor Co.*, No. 214444, 2001 WL 1179610 (Mich. App. Oct. 5, 2001) (Calling "Ford's approach to data collection . . . rather offensive," and sanctioning Ford $546,836 for failing to disclose a relevant test, affirmed on appeal);

9.   *Parnell v. Ford Motor Co.*, No. 4:94-CV-825-A (N.D. Tex. 1995) (granting a motion to compel because, "The Court is extremely disappointed in the non-responsiveness of defendant's answers to plaintiff's interrogatories. The court does not consider that any effect should be given to boilerplate objections, including those based on attorney-client privilege and work product privilege. Defendant will not include any such objections when it resubmits its interrogatory answers pursuant

to this order. Further, defendant will answer each interrogatory separately and fully, without incorporating by reference its answer to any other interrogatory.");

10. *Manigault v. Ford Motor Co.,* 96 Ohio St. 3d 431 (2002), (New trial appropriate when Ford failed to produce evidence in its entirety. The Court found that Ford failed to comply with the applicable discovery rules and misled the court by failing to produce both audio and video of a demonstration of vehicle capability.);

11. *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7 (Iowa 1977) (affirming imposition of sanctions by trial court on appeal where Ford claimed it lacked the ability to point to any specific relevant tests and the evidence was clearly to the contrary); and

12. *In the Matter of Ford Motor Co.*, 96 F.T.C. 362 (1980), (Consent Order for violation of the Federal Trade Commission Act for failure to disclose a "piston scuffing" defect to purchasers and owners).

### D. Discovery Sanctions

Courts and commentators have called on courts to deter boilerplate by imposing sanctions with their inherent power and under Federal Rule of Civil Procedure 26. *See, e.g., Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 187-88, 192 (N.D. Iowa Mar. 13, 2017) ("NO MORE WARNINGS. IN THE FUTURE, USING 'BOILERPLATE' OBJECTIONS TO DISCOVERY IN ANY CASE BEFORE ME PLACES COUNSEL AND THEIR CLIENTS AT RISK FOR

SUBSTANTIAL SANCTIONS."); *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court."); Jarvey, Boilerplate, *supra*, at 932 ("In order to curb boilerplate objections, judges should be more willing to dole out sanctions against lawyers who abuse the discovery process by issuing these objections."). The advisory committee notes to Rule 26 also contemplate sanctions as a solution to discovery abuses. Fed. R. Civ. P. 26(g) Advisory Committee's Note to 1983 Amendment ("Thus the premise of Rule 26(g) is that imposing sanctions on attorneys who fail to meet the rule's standards will significantly reduce abuse by imposing disadvantages therefor.")

Plaintiffs accordingly request their reasonable attorney fees incurred in connection with this motion. In light of Ford's conduct in discovery and the need to deter future use of boilerplate, a sanction in the form of attorney fees is warranted.

## IV.    CONCLUSION

Accordingly, the Court must grant this motion, order Ford to respond fully to discovery, and award Plaintiffs' fees and costs for having to bring this motion.

Respectfully submitted this 18th day of March, 2020.

STERN LAW, PLLC

/s/ Kenneth A. Stern

KENNETH A. STERN (P30722)
41850 W. Eleven Mile Road, Ste 121
Novi, MI 48375-1857
(248) 347-7315
ken@sternlawonline.com


MARINO LAW PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste 100E
Southfield, Michigan 48075
Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on March 18, 2020, she filed a copy of the foregoing paper with an index of exhibits and Exhibits A through J using the Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ *Amy L. Marino*
Amy L. Marino
March 18, 2020