UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON GANT, et al.,

     Plaintiffs,

v.

FORD MOTOR COMPANY,

     Defendant.

Case: 2:19-cv-12533

Honorable Sean F. Cox

Magistrate Judge David R. Grand

**REPLY BRIEF IN SUPPORT OF FORD MOTOR COMPANY'S MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## SUPPLEMENTAL CONTROLLING OR
## MOST APPROPRIATE AUTHORITY[1]

*Hall v. Gen. Motors LLC*, No. 19-CV-10186, 2020 WL 1285636 (E.D. Mich. Mar. 18, 2020)*

---

[1] Appended per the Court's Practice Guidelines.

# TABLE OF CONTENTS

Introduction.................................................................................1

Argument ...................................................................................2

   I.  The FAC warrants dismissal as an improper "shotgun" pleading.............................................................................2

      A. The FAC remains a shotgun pleading. .................................2

      B. The proposed SAC is still an improper shotgun-pleading........6

   II. The plaintiffs fail to show their claims survive dismissal..............9

      A. The plaintiffs fail to rebut as to the time-barred claims...........9

      B. The plaintiffs fail to rebut the substantive grounds for dismissal................................................................... 11

         1.  The express warranty claim fails for numerous reasons............................................................... 11

         2.  The plaintiffs likewise fail to save the implied warranty claim.............................................. 16

         3.  The plaintiffs' response does nothing to save their revocation claim. ....................................... 17

         4.  The plaintiffs fail to save their MCPA claim from dismissal............................................................ 19

         5.  The "Unconscionability" claim also fails for several reasons........................................................ 23

         6.  The fraud-based claims (Counts VI-VIII) still fail. ...... 23

            a. The plaintiffs fail to show any of their fraud theories survive. .................................... 23

            b. The economic-loss rule continues to bar their fraud claims....................................... 27

         7.  The plaintiffs fail to save their Unjust Enrichment Claim........................................................ 28

Conclusion.................................................................30

# INDEX OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................ 1

*Boyle v. General Motors Corp.,*
  661 N.W.2d 557 (Mich. 2003) ........................................................ 11

*Callaghan v. BMW of N. Am., LLC,*
No. 13-cv-04794-JD, 2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) ......... 26

*Colonial Dodge, Inc. v. Miller,*
  362 N.W.2d 704 (Mich. 1985) ........................................................ 18

*Darne v. Ford Motor Co.,*
  No. 13 CV 03594, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2017) .............. 15

*Davis v. Forest River, Inc.,*
  774 N.W.2d 327 (Mich. 2009) ................................................... 18, 19

*Ducharme v. A & S RV Ctr., Inc.,*
321 F. Supp. 2d 843 (E.D. Mich. 2004) ................................................ 17

*Experian Mktg. Sols., Inc. v. Lehman,*
  No. 1:15-CV-476, 2015 WL 5714541 (W.D. Mich. Sept. 29, 2015) .......... 6

*Fedrick v. Mercedes-Benz USA, LLC,*
  366 F. Supp. 2d 1190 (N.D. Ga. 2005) ............................................... 15

*Flamenbaum v. Orient Lines, Inc.,*
  No. 03-22549-CIV, 2004 WL 1773207 (S.D. Fla. July 20, 2004) ............. 4

*Fleming v. Mich.,*
  No. 09-11795, 2010 WL 931925 (E.D. Mich. Mar. 11, 2010) ................. 6

*Gernhardt v. Winnebago Indus.,*
  No. 03-73917, 2005 WL 2562783 (E.D. Mich. Oct. 12, 2005) ............... 20

*Gertz v. Toyota Motor Corp.,*
  No. CV 10-1089 PSG (VBKx), 2011 WL 3681647 (N.D. Cal. Aug.
22, 2011) ......................................................................................... 13

*Glaske v. Indep. Bank Corp.,*
  No. 323167, 2016 WL 298986 (Mich. Ct. App. Jan. 21, 2016) ................ 29

*Hall v. Gen. Motors LLC,*
  No. 19-CV-10186, 2020 WL 1285636 (E.D. Mich. Mar. 18,
  2020) ................................................................................... 27, 28, 30

*Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.,*
  774 N.W.2d 332 (2009) ................................................................ 17

*Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.,*
  188 F. Supp. 3d 631 (E.D. Mich. 2016) .............................................. 18

*In re Auto. Parts Antitrust Litig.,*
  No. 12-MD-02311, 2017 WL 7689654 (E.D. Mich. May 5, 2017) .......... 10

*In re: Bridgestone/Firestone, Inc., ATX, ATX II & Wilderness Tires
Prod. Liab. Litig.,*
  No. IP00-9373-C-B/S, 2001 WL 34136021 (S.D. Ind. Sept. 6, 2001) ...... 20

*In re Ford Motor Co. DPS6 Powershift Trans. Prod. Liab. Lit.,*
  No. CV1706656ABFFMX, 2019 WL 3000646 (C.D. Cal. May 22,
  2019) ....................................................................................... 25

*In re Refrigerant Compressors Antitrust Litig.,*
  No. 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ......... 4

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,*
  No. 05 C 2623, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009) .................... 26

*Johnson v. Ventra Grp., Inc.,*
  191 F.3d 732 (6th Cir. 1999) ........................................................... 8

*Latimer v. William Mueller & Son, Inc.,*
  386 N.W.2d 618 (Mich. App. 1986) ................................................. 23

*Matanky v. Gen. Motors LLC,*
  370 F. Supp. 3d 772 (E.D., Mich. 2019) .................................. 21, 22, 28

*McKee v. General Motors LLC,*
  376 F. Supp. 3d 751 (E.D. Mich. 2019) ......................................... 12, 13

*Mekani v. Homecomings Fin., LLC,*
  752 F. Supp. 2d 785 (E.D. Mich. 2010) .................................. 9, 17, 23

*Michels v. Monaco Coach Corp.*,
  298 F. Supp. 2d 642 (E.D. Mich. 2003) ................................................. 22

*Miller v. Gen. Motors, LLC*,
  No. 17-CV-14032, 2018 WL 2740240 (E.D. Mich. June 7, 2018) ........ 16, 28

*Murphy v. The Proctor & Gamble Co.*,
  695 F. Supp. 2d 600 (E.D. Mich. 2010) ................................................. 27

*Nesbitt v. American Community Mutual Insurance Co.*,
  600 N.W.2d 427 (Mich. Ct. App. 1999) ................................................. 20

*Roe v. Ford Motor Co.*,
  No. 2:18-cv-12528-LJM-APP, 2019 WL 3564589 (E.D. Mi. Aug. 6,
  2019) ....................................................................................... 15, 23

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
  No. 16-CV-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) ........... 17

*Schechner v. Whirlpool Corp.*,
  237 F. Supp. 3d 601 (E.D. Mich. 2017) ................................................. 12

*Sloan v. Gen. Motors LLC*,
  No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ..... 12

*Sutton v. Cmty. Health Sys., Inc.*,
  No. 116CV01318STAEGB, 2017 WL 3611757 (W.D. Tenn. Aug.
  22, 2017) ................................................................................................. 5

*Wagner v. First Horizon Pharm. Corp.*,
  464 F.3d 1273 (11th Cir. 2006) ......................................................... 3, 5

*Weiland v. Palm Beach County Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) ............................................................ 2

*Wozniak v. Ford Motor Co.*,
  No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019) . 15, 16, 29

## Other Authorities

Fed. R. Civ. P. 8 ..................................................................................... 6

Fed. R. Civ. P. 9(b) ......................................................................... passim

Fed. R. Civ. P. 12(b)(6) ...................................................................... 4, 5

Fed. R. Civ. P. 12(e)..............................................................................5

MCR 7.215(C)(1) ...............................................................................29

## Introduction

The FAC suffers from a multitude of pleading deficiencies and fails to state valid claims on multiple levels. But the most persistent defect throughout every iteration of the plaintiffs' complaints has been their misguided attempt to plead in conflated, mass-action fashion, by which it is impossible to determine which factual allegations pertain to which plaintiffs' claims and under which states' laws.

Faced with Ford's motion to dismiss, which—for the *second* time—points out these myriad flaws along with dozens of specific examples of why their claims fail, the plaintiffs simply refer back to their FAC and insist it is sufficient, even as to Rule 9(b)'s required particularity. Plainly, it is not. Moreover, their response largely ignores both case law and whole arguments, thereby conceding them.

The plaintiffs' deficient response as to their improper FAC only further shows this litigation for what it is—an abuse. Indeed, their strategy is clear: plead a mass action on bald, conclusory, and in many instances, demonstrably untrue assertions in the hopes of forcing Ford into massive discovery to leverage an *in terrorem* settlement. (*See* ECF No. 27 (Pls.' Resp.) at 25); *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, (2007). These 360 plaintiffs should not get a pass from properly pleading their claims just because they misguidedly chose to file a mass action—and in so doing, to baselessly clog this Court's docket while depriving the judiciary of over $140,000 in filing fees. The plaintiffs' claims remain deficient and improperly

pled on many levels. This litigation has been pending in various forms for a year. It is time to end it by granting Ford's motion and dismissing with prejudice.

## Argument

### I.    The FAC warrants dismissal as an improper "shotgun" pleading.

#### A.    The FAC remains a shotgun pleading.

Ford showed how the plaintiffs' FAC comprises an improper shotgun pleading. (ECF No. 20 (Ford's Br.) at 13–18.) In fact, the plaintiffs conceded that their original complaint was such an improper pleading in that each of its counts "incorporate[d] all the factual allegations of the previous count." (Pls.' Resp. at 6.) They insist their FAC is "not a shotgun pleading," however, because they "removed the language at the beginning of every count of the complaint that incorporated 'all' previous allegations, instead tailoring it to specify which previous allegations were incorporated into each count by reference." (*Id.*) They are incorrect.

Primarily, the plaintiffs ignore that shotgun pleadings can take many forms, not just the incorporation of prior counts into latter counts. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). As Ford explained, while the plaintiffs addressed *one* of the ways in which the earlier complaint violated pleading rules (i.e., narrowing their incorporation paragraphs to remove incorporation of other counts), the other infirmities remain. (Ford's Br. at 13–14.)

Chiefly, the plaintiffs ignore that they maintained the practice of each and every one of the nine generic counts incorporating and relying on all the same 490

paragraphs of generic *factual* allegations, regardless of their relevance to each individual count. This remains patently improper because the FAC lacks any "connection between the substantive count(s) and the factual predicates" upon which the counts depend—particularly so with respect to the fraud-based claims. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

Numerous other resulting infirmities of their shotgun approach remain, which the plaintiffs similarly ignore. For example, all 360 plaintiffs purport to rely on all the same marketing statements and other alleged information, even though that is patently impossible. Indeed, Ford provided numerous specific examples of plaintiffs who could not possibly have relied on information they nonetheless indiscriminately incorporate into their boilerplate claims. (Ford's Br. at 14–17.)

The plaintiffs ignore those examples and instead baldly (and incorrectly) proclaim that their individual "plaintiff-specific" paragraphs provide "the details of each named plaintiff's circumstances, including . . . relevant facts establishing their recognition of and reliance upon warranties and promises of Ford." (Pls.' Resp. at 8.) This assertion is incorrect, as Ford showed with numerous examples of plaintiffs providing no such information. (Ford's Br. at 16.) But it is also emblematic of the bald and conclusory manner in which the plaintiffs both pled their claims and now attempt to defend their improper pleading. Indeed, as the plaintiffs acknowledge, "*[i]mpermissible* shotgun pleading occurs when the incorporation [of paragraphs]

'makes it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.' " (Pls.' Resp. at 6–7 (quoting *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549-CIV, 2004 WL 1773207, at *15 (S.D. Fla. July 20, 2004); emphasis by plaintiffs).) That is precisely the case here, as it is impossible to know which factual allegations are intended to support which plaintiffs' claims under which states' laws. (FAC ¶¶ 491, 510, 521, 530, 539, 543, 559, 577, 581.)

To the last point, the plaintiffs essentially concede their FAC failed to plead according to the applicable states' laws, and their proposed SAC would be—for most plaintiffs—their fourth (unsuccessful) pleading attempt. Ford raised this flaw back in October in its original motion to dismiss. (ECF No. 9 at 18–20 (citing *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *24 (E.D. Mich. Apr. 9, 2013) (Cox., J.)).) The plaintiffs don't explain why they did not attempt to address this failing in their FAC. Instead, they offer two other arguments in its defense. (Pls.' Resp. at 6–10.) Neither has merit.

*First*, the plaintiffs assert there is no "Sixth Circuit precedent that permits dismissal of a 'shotgun' pleading without allowing the plaintiff to replead her case," and that Ford can instead "move for a more definite statement pursuant to Rule 12(e)." (Pls.' Resp. at 9.) They ignore, however, that Ford already sought such relief, asking the Court to strike the improper original complaint and order a more definite statement as an alternative form of relief. (ECF No. 9 at 14, 21, 56.) The plaintiffs,

4

meanwhile, chose to amend their complaint in response to the Court's October 16, 2019 order. (ECF No. 10.) The plaintiffs' assertion that Ford did not seek Rule 12(e) relief is incorrect. (*See* Pls.' Resp. at 9.)

Also, a more definite statement under Rule 12(e), as opposed to dismissal under Rule 12(b)(6), can be more appropriate unless, as here, there has been a "repeated failure on Plaintiffs['] part to draft a conforming complaint." *Wagner*, 464 F.3d at 1280. Every version of the plaintiffs' complaints—the prior *Kinner* complaint, the original *Gant* complaint, the FAC, and even their proposed SAC— evidences their repeated failures to plead their claims properly. Moreover, unlike in their cited cases, (Pls.' Resp. at 9), these are not *pro se* plaintiffs.

*Second*, the plaintiffs' assertion that courts have "rejected" shotgun-pleading arguments as "unfounded in the Sixth Circuit" is a misreading of the lone case they cite, which is materially distinguishable (Pls.' Resp. at 9 (citing *Sutton v. Cmty. Health Sys., Inc.*, No. 116CV01318STAEGB, 2017 WL 3611757, at *5 (W.D. Tenn. Aug. 22, 2017)).) *Sutton* stands merely for the unremarkable proposition that some courts prefer a more definite statement in lieu of dismissal—but again, where there have been no prior amendments. Indeed, unlike here, the *Sutton* defendant did not seek a Rule 12(e) motion, there weren't repeated failures to draft a proper complaint, and the other defendants had answered the complaint. 2017 WL 3611757, at *5.

Contrary to the plaintiffs' suggestion, Michigan federal courts *do* recognize the impropriety of shotgun pleadings. *E.g.*, *Experian Mktg. Sols., Inc. v. Lehman*, No. 1:15-CV-476, 2015 WL 5714541, at *2 (W.D. Mich. Sept. 29, 2015) ("Shotgun pleadings include those in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.' "); *also Fleming v. Mich.*, No. 09-11795, 2010 WL 931925, at *8 (E.D. Mich. Mar. 11, 2010) (similar). In short, none of the plaintiffs' case law supports their assertion that Ford's cited authority is either "inapplicable" or "unreliable." (*See* Pls.' Resp. at 9.)

The plaintiffs' bald assertions to the contrary notwithstanding, their FAC remains an improper shotgun pleading. It still improperly amalgamates all 360 plaintiffs' claims. It still aggregates the allegations in the hopes of evading individual scrutiny. And it still makes it impossible to know which facts are supposed to apply to which plaintiffs' claims. After the multiple failed pleading attempts, the Court should dismiss their improper shotgun complaint with prejudice under Rule 8.[2]

### B.   The proposed SAC is still an improper shotgun-pleading.

The plaintiffs argue their proposed SAC moots Ford's motion, including the shotgun-pleading argument. (Pls.' Resp. at 10–12.) They are incorrect. Primarily, as explained above, the SAC's identification of allegedly applicable states' laws was

---

[2] As it has maintained, if this action is not dismissed, Ford reserves the right to move to sever or for other appropriate relief given the improper joinder of these 360 plaintiffs' claims involving different vehicles, from different states, with different (if any) issues, which would require adjudication under different states' laws.

merely one of many ways in which the FAC still violated pleading rules. Moreover, the proposed SAC still presents those now state-specific claims in only the most generic and boilerplate fashion, while still failing—like its numerous predecessors— to connect such generic claims to the individual plaintiffs based on their unique factual circumstances (especially with respect to the fraud-based claims).

The plaintiffs appear to assert that their proposed SAC gives them a pass on Ford's motion to dismiss. Indeed, they assert not only that their SAC renders "moot significant portions" of Ford's motion, but also that it has now expanded "the legal universe" such that "any ruling on the substance of the FAC and the corresponding motion to dismiss risk [sic] manifesting significant injustice and promoting the misapplication of law." (Pls.' Resp. at 11.) For multiple reasons, they are incorrect.

*First*, while the plaintiffs pat themselves on the back that they "recognized" the failure to assert claims under applicable states' laws, (Pls.' Resp. at 10), Ford actually raised this particular pleading failure months ago, in October 2019. (ECF No. 9 at 17–18.) The FAC was the opportunity to cure the defects Ford identified. The plaintiffs don't explain why they didn't attempt in their FAC what they attempt with their SAC, especially given the clear warning of possible dismissal with prejudice in the Court's October 2019 order. (ECF No. 10.)

The plaintiffs also mischaracterize the timeline with respect to their SAC, asserting that they "preemptively amended," and that the "motion to dismiss the

previous incarnation of the pleading was filed *after* Plaintiffs moved to amend that pleading." (Pls.' Resp. at 11 (emphasis in original).) Ford moved to dismiss the *current* "incarnation of the pleading"—i.e., the FAC. The SAC is not the operative pleading unless, and until, the Court says it is. Moreover, the plaintiffs filed the SAC only hours before Ford filed its motion to dismiss, knowing it was due on that day per the agreed briefing schedule entered back in November 2019. (ECF Nos. 11, 19, 20.) Why they waited until that same day to move to amend remains unexplained.

*Second*, the argument that the Court cannot rule on Ford's motion to dismiss because statutes of limitation "vary from state to state" is incorrect. (Pls.' Resp. at 11.) The plaintiffs ignore that under "Michigan's common law choice of law rule," which this Court applies, "statutes of limitation are considered procedural and are governed by the law of the forum"—i.e., Michigan law—as Ford explained. *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). (Ford's Br. at 19.)

*Third*, refraining from ruling on Ford's motion to dismiss because the plaintiffs have lodged their SAC is further inappropriate because—as Ford showed in opposing leave to amend—the proposed amendment is futile. (ECF No. 23.)

The plaintiffs were warned to plead their claims to cure the deficiencies Ford raised, or else face dismissal. (ECF No. 10.) They did not. Their belated and futile SAC provides no proper basis to evade Ford's motion and dismissal.

## II.   The plaintiffs fail to show their claims survive dismissal.

### A.   The plaintiffs fail to rebut as to the time-barred claims.

Ford explained why most of the plaintiffs' claims—both warranty and fraud-based—are outright time-barred, and why the plaintiffs' wholly conclusory tolling allegations fail to save those claims from dismissal. (Ford's Br. at 19–26.) In response, the plaintiffs offer two arguments: 1) that they pled adequate facts to "satisfy the elements of fraudulent tolling," and 2) that the statute of limitations on the express "repair and replace" warranty does not begin to run until an alleged failure to repair or replace. (Pls.' Resp. at 12, 28.) Neither argument helps them.

Primarily, the plaintiffs' response addresses only fraudulent-concealment tolling. As Ford showed, while the FAC baldly raised the discovery rule, it lacked any well-pled factual allegations to support it; meanwhile Michigan law rejects its application in most instances. (Ford's Br. at 23–24.) Regardless, the plaintiffs' complete lack of response as to the discovery rule now abandons that issue. *See Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim").

As for fraudulent-concealment tolling, the plaintiffs again do not dispute that it requires pleading—with Rule 9(b) particularity—three elements: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover

9

the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL 7689654, at *4 (E.D. Mich. May 5, 2017). Nor do they dispute that a "mere allegation of due diligence without asserting what steps were taken is insufficient." *Id.* Yet the plaintiffs point to no such well-pled, particularized factual allegations on these elements. Instead, they merely refer back to their conclusory and wholly deficient FAC allegations. And while they baldly insist their allegations "satisfy the elements of fraudulent concealment tolling set forth in *In re Auto. Parts*," they fail to explain how so, given that—among other failings—they allege no facts whatsoever of supposed due diligence. (Pls.' Resp. at 12.) In short, the plaintiffs' response is as bald and conclusory as their FAC, and their lack of any meaningful response on this issue should be taken as a concession to Ford's arguments and result in a dismissal of the time-barred claims.

As for the express warranty, the plaintiffs appear to concede Ford's explanation that this is a "repair/replace" warranty, (Ford's Br. at 19–20), and not an "express warranty as defined in UCC sections 2-313 and/or 2A-210," as the plaintiffs originally asserted, (FAC ¶ 493). They also agree with Ford that the limitations period on such a warranty runs from an alleged failure to repair or replace. (Ford's Br. at 20; Pls.' Resp. at 28.) Even so, however, many plaintiffs' claims are nonetheless time-barred. (Ford's Br. at 20–21.) The plaintiffs offer

nothing in response, instead arguing only in the abstract that the limitations period on a repair/replace warranty begins to run "when the seller either fails to refuses to repair or replace the defect," (Pls.' Br. at 28)—which, again, is an undisputed point.

The plaintiffs' limited attempt to defend their claims as timely are ineffective. Meanwhile, they leave numerous arguments unrebutted. For example, Ford explained that the limitations period as to the fraud-based claims "begins to run from the time the fraud is perpetrated," *Boyle v. General Motors Corp.*, 661 N.W.2d 557, 559 (Mich. 2003), "regardless of the time when damage results," MCL § 600.5827— which, here, would be the date of first sale. The plaintiffs likewise don't rebut (and thus concede) that the limitations period on the implied warranty claims ran from original tender of delivery, which means the implied warranty claims Ford identified are time-barred. (Ford's Br. at 21 & *id.* Ex. 1.1.) In short, for the reasons Ford stated, the Ford claims identified remain time-barred.

**B.      The plaintiffs fail to rebut the substantive grounds for dismissal.**

**1.      The express warranty claim fails for numerous reasons.**

The plaintiffs don't dispute that their vehicles, from the date of original purchase, each came with a New Vehicle Limited Warranty (NVLW) covering the powertrain (and transmission) for the earlier of five years or 60,000 miles. The plaintiffs misstate the warranty's terms, arguing that the warranty "promise[d] that Ford will repair any defects in covered parts, i.e., the transmission." (Pls.' Resp. at

22.) Rather, as this Court has held—and, indeed, the "overwhelming weight of state law authority holds"—Ford's warranty terms cover only defects in materials and workmanship, and *not* alleged design defects. *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 614 (E.D. Mich. 2017); *also Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017).

The plaintiffs incorrectly assert this argument was "soundly rejected" in *McKee v. General Motors LLC*, 376 F. Supp. 3d 751 (E.D. Mich. 2019). (Pls.' Resp. at 23–24.) In *McKee*, General Motors' express warranty language was entirely different from Ford's, in that General Motors' warranty covered "*both* design defects and abnormal 'characteristics of the vehicle related to materials or workmanship.'" 376 F. Supp. 3d at 757–58. In fact, the *McKee* Court specifically distinguished the GM warranty from Ford warranty language similar to here that it acknowledged was limited to defects in materials or workmanship. *Id.* at 758 & n.8.

Moreover, the *McKee* Court engaged in this analysis specifically so that it could determine "the scope of the Warranty's coverage," whether the warranty covered the alleged transmission defect there, and "whether Plaintiff pleaded a covered defect." *Id.* at 759. The *McKee* Court observed the plaintiff there had pled that the alleged defect was inherent in each of the putative class vehicles, which included "*all* 2015–17 GMC Canyon and Chevrolet Colorados," which was tantamount to asserting "a design defect." *Id.* But in *McKee*, a distinction between

12

manufacturing and design defect didn't matter because the warranty there covered both. *Id.* Here, the plaintiffs ignore this critical distinction, which guts their reliance on *McKee*. They offer nothing else against Ford's showing that its NVLW covers *only* alleged manufacturing defects. (Ford's Br. at 27–28.)

This critical distinction between alleged design versus manufacturing defect ties directly into what the *McKee* court recognized are essential initial inquiries for alleged breach of express warranty—namely, determining the scope of the warranty's coverage, and whether the plaintiffs have pled a covered defect. Here, as Ford has shown, and the plaintiffs haven't rebutted, the NVLW covered only alleged manufacturing defects. Meanwhile, the plaintiffs have pled only alleged design defect, given that, like in *McKee*, they allege the "Transmission Defect" is "inherent in and the same for each of the Plaintiffs' vehicles" and "systemic" across all 2010 through 2017 Ford Fusions. (FAC ¶¶ 20, 82, 83; *also id.* ¶¶ 56, 102, 568.) "Taken together," their allegations have pled that "the Transmission Defect is a design defect." 376 F. Supp. 3d at 759. As such, it falls *outside* the scope of the NVLW's coverage. *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG (VBKx), 2011 WL 3681647, at *3 (N.D. Cal. Aug. 22, 2011) (recognizing similar allegations as asserting design defect only, outside the scope of "materials or workmanship"). Moreover, this unrebutted limitation on the NVLW's scope renders all the more essential the need for the plaintiffs to provide well-pled facts plausibly supporting

13

whatever they claim is the actual defect(s) to plausibly support that it falls within the warranty's coverage, which they have not done.

In addition to these fundamental failings, the plaintiffs also wholly fail to rebut Ford's showing of their widespread failure to plead any actual breach. (Ford's Br. at 28–29.) On this score, the plaintiffs argue in only the most generic, broad-brush fashion—indeed, they accuse Ford of ignoring the supposedly "well pleaded facts common to all Plaintiffs, in favor of selectively choosing limited plaintiffs' facts." (Pls.' Resp. at 25.) This criticism is not only bizarre, it is also inaccurate, as their supposedly "common" facts are demonstrably not common on a host of levels. But their criticism is also emblematic not only of the faulty manner in which they pled their claims as a whole (i.e., with generic "facts" with no discernible connection, if any, to the 360 plaintiffs individually), but also the manner in which they now attempt to defend their FAC—in other words, entirely conclusory and generic.

Indeed, the plaintiffs want to ignore inconvenient facts and reality, and instead have the Court focus on nothing except their boilerplate (and demonstrably inaccurate) assertions that they all received express warranties, they all relied on them, they all experienced allegedly covered issues, and they all sought repairs within warranty coverage that were not repaired after a reasonable number of attempts. (*Id.* at 25.) Ford's Exhibit 1.1 catalogued the reason why this assertion is not correct. The plaintiffs want the Court to ignore the facts and rely instead on their

purportedly "common" boilerplate to conclude that "the pleading requirements for breach of express warranty have been met." (*Id.*) The Court need only look to the plaintiffs' allegations themselves to see this is not so. (FAC ¶¶ 116–490.)

The plaintiffs' response further ignores the abundant case law Ford cited recognizing that express warranty claims like these require alleging *facts*—not bald conclusions—such as the mileage and incident date to support that "the alleged issues fell within the covered period," *Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at *6 (N.D. Ill. Sept. 1, 2017), and that the vehicle "was taken to a Ford dealership for a warranted repair during the warranty period," *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *2 (E.D. Mich. Jan. 4, 2019). *Also Roe v. Ford Motor Co.*, No. 2:18-cv-12528-LJM-APP, 2019 WL 3564589, at *9 (E.D. Mi. Aug. 6, 2019); (ECF No. 9, Ex. 2.1 at 8–9). Yet the plaintiffs ignore Ford's showing that, even after amendment, the overwhelming majority of them still fail to allege presentment to a Ford dealership within the NVLW's time/mileage limits, as well as a subsequent failure to repair after a reasonable number of attempts. *See Fedrick v. Mercedes-Benz USA, LLC,* 366 F. Supp. 2d 1190, 1198 (N.D. Ga. 2005) ("It is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty."). The plaintiffs likewise ignore the numerous other failings Ford demonstrated and catalogued. (Ford's Br. at 29–30 & Ex. 1.1.)

Finally, the plaintiffs also misplace their reliance on the "essential purpose" doctrine. (Pls.' Resp. at 24–25.) Even when applicable, that doctrine only allows a buyer to avoid contractual limitations as to remedies; it does not excuse the buyer from the terms of the warranty's coverage, including time and duration. *Wozniak*, 2019 WL 108845, at *3. Nor does it excuse the plaintiffs' pleading failures here.

### 2. The plaintiffs likewise fail to save the implied warranty claim.

As Ford showed, the implied warranty claim primarily fails for lack of well-pled facts plausibly supporting that any of the plaintiffs' vehicles were unmerchantable, while the FAC instead provides only conclusory assertions that their vehicles "did not comply with the statutory definition of 'merchantable goods,'" which "adds no substance" to implied warranty claims like these that "contain[] no factual allegations." (Ford's Br. at 31–32 (quoting *Miller*, 2018 WL 2740240, at *9).) Ford also provided plaintiff-specific examples revealing numerous other deficiencies in this claim, all of which show the FAC's bald and indiscriminate legal conclusions are inaccurate and entitled to no weight. (*Id.*) The plaintiffs offer no substantive response, instead they merely double-down on the FAC's conclusory allegations. (Pls.' Resp. at 26.)

Ford raised other deficiencies, including the lack of facts supporting timely notice to Ford of alleged breach, which the plaintiffs similarly ignored. (Ford's Br.

at 32.)[3] Instead, they incorrectly assert that Ford "mistakenly utilizes the standard for a product liability or negligence case with standards for a breach of warranty." (Pls.' Resp. at 27.) In fact, Ford's case law specifically addressed implied warranty claims. (Ford's Br. at 30 (citing *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016); *Ducharme v. A & S RV Ctr., Inc.,* 321 F. Supp. 2d 843, 850 (E.D. Mich. 2004), *aff'd*, 127 F. App'x 204 (6th Cir. 2005)).) In sum, the plaintiffs provide nothing to save this claim.

### 3. The plaintiffs' response does nothing to save their revocation claim.

As the plaintiffs observe, Ford raised "a litany" of reasons why the purported revocation count fails. (Pls.' Resp. at 28.) The plaintiffs ignore the first of those arguments—that non-Michigan purchasers have no basis to assert a purported claim for revocation asserted under Michigan law—and thereby concede it. *See Mekani*, 752 F. Supp. 2d at 797. They fare no better as to Ford's other arguments.[4]

*First*, Ford showed that under Michigan law, revocation is merely a remedy— an exceptional and limited one, at that—and not an independent cause of action.

---

[3] Ford also raised lack of privity, but the law on this issue in Michigan is, at best, muddled and unclear. *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 344 (2009). The implied warranty claims still fail for other reasons.

[4] The plaintiffs incorrectly assert that Ford "concedes that revocation is appropriate when a breach of warranty exists." (Pls.' Resp. at 29.) As Ford explained, revocation is merely a remedy for a breach, but its availability as such is limited to narrow circumstances, none of which the plaintiffs have pled they meet.

(Ford's Br. at 33.) The plaintiffs do not squarely address (much less rebut) this showing, nor do they attempt to distinguish Ford's authority.

*Second*, the plaintiffs argue that revocation is available even without a breach, and that the "plain language of the revocation statute makes no mention of breach or express or implied warranty." (Pls.' Resp. at 29–30.) Yet they concede (as they must) that MCL 440.2608 requires "a nonconformity"—i.e., *a breach* of the contract or warranty. (*Id.*) Indeed, their lone cited case, *Colonial Dodge, Inc. v. Miller*, 362 N.W.2d 704 (Mich. 1985), supports Ford's point, as the buyer there was entitled to revocation because the seller breached the contract by failing to include the spare "extra wide tire" that was part of the vehicle purchase contract. *Colonial Dodge* does nothing to support the plaintiffs' assertion that revocation does not require a breach.

*Third*, the plaintiffs argue that, contrary to Ford's cited case law, Michigan law allows revocation against a remote manufacturer like Ford, relying on *Davis v. Forest River, Inc.*, 774 N.W.2d 327 (Mich. 2009). (Pls.' Resp. at 30–31.) Primarily, as this Court has observed, the "Michigan Supreme Court disposed of *Davis* by order (not by a reasoned opinion)." *Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016). Moreover, the *Davis* court's order does not even mention the word "revocation," and addresses instead rescission— which the plaintiffs have not pled or sought.[5] 774 N.W.2d 327. And as *Davis*'s

_____

[5] The FAC does not mention rescission. Rather, the plaintiffs assert it for the first time in their response, asking for "rescission damage [sic]." (Pls.' Resp. at 32.)

history shows, the trial court originally granted revocation of acceptance as the remedy for the breach, but the Supreme Court in *Davis* vacated that order. For a variety of reasons, *Davis* provides the plaintiffs no useful support.

*Fifth*, the plaintiffs likewise do not effectively rebut Ford's showing that the FAC lacks any well-pled supporting facts for revocation, even as a remedy, given that no plaintiff alleges timely revocation, much less before a substantial change in their vehicle. (Ford's Br. at 34–35.) To the contrary, the FAC is rife with examples squarely rebutting the plaintiffs' boilerplate assertion of timeliness. (*Id.*)

*Finally*, the plaintiffs don't respond to the showing that their bald assertion that Ford supposedly engaged in a fraudulent cover-up is insufficient and unavailing. (*Id.* at 35.) And, consistent with the rest of their brief, they point to no well-pled facts in the FAC to support this assertion—because there are none. Instead, they continue to insist that bald, generic, conclusory assertions in mass-action format are sufficient to get past a motion to dismiss (indeed, all the way to the "finder of fact") for all 360 of them. (Pls.' Resp. at 32.) That is not the law, nor should it be.

### 4. The plaintiffs fail to save their MCPA claim from dismissal.

Ford showed that the MCPA claim fails for numerous reasons. (Ford's Br. at 35–39.) The plaintiffs effectively rebut none of them.

*First*, Ford explained that the MCPA fails outright as to those plaintiffs who purchased their vehicles and reside outside of Michigan. (Ford's Br. at 35–37.) The

plaintiffs do not address Ford's cited authority, but instead rely on the Michigan

Court of Appeals' holding in *Nesbitt v. American Community Mutual Insurance Co.*,

600 N.W.2d 427 (Mich. Ct. App. 1999), to assert that the MCPA de facto covers all

the plaintiffs here because Ford "is headquartered in Michigan." (Pls.' Resp. at 13–

15.) They misconstrue and exaggerate *Nesbitt*'s holding, however, as it announces

no such bright-line rule. Rather, as the cases Ford cited address, whether the MCPA

could and should be applied to out-of-state plaintiffs' claims is determined according

to choice-of-law principles on the individual facts. In *Nesbitt*, for example, the

Michigan-based defendant insurance company contracted and corresponded directly

with the plaintiffs from its Michigan headquarters. 600 N.W.2d at 433. Indeed, as

this District has interpreted *Nesbitt*, it was the totality of the factors there that was

dispositive, not merely the defendant's situs. *Gernhardt v. Winnebago Indus.*, No.

03-73917, 2005 WL 2562783, at *4 (E.D. Mich. Oct. 12, 2005).[6] Here, the response

doesn't point to any out-of-state plaintiffs having any direct dealings or

correspondence with Ford in Michigan sufficient to support applying the MCPA to

their out-of-state transactions. (Ford's Resp. at 36.)

---

[6] The plaintiffs cite *In re: Bridgestone/Firestone, Inc., ATX, ATX II & Wilderness Tires Prod. Liab. Litig.,* No. IP00-9373-C-B/S, 2001 WL 34136021 (S.D. Ind. Sept. 6, 2001), as supporting their reading of *Nesbitt*. (Pls.' Resp. at 14–15.) What they cite is *not*, however, a court decision—it is *a plaintiffs' reply brief*. As for the plaintiffs' other citation, that court's curt footnoted comment is inaccurate to the extent it implies that *Nesbitt* supports application of the MCPA based solely on the defendant being headquartered here, as *Gernhardt* shows.

*Second*, relying on multiple cases, Ford showed that the MCPA exempts any claims by plaintiffs who purchased their vehicles new. (Ford's Br. at 37–38.) The plaintiffs offer nothing to support that these several authorities were wrongly decided. To the contrary, they appear to concede that the decisions Ford cited were consistent with the Michigan Supreme Court's interpretation of MCPA exemption in not one but two holdings. (Pls.' Resp. at 17.) Indeed, Ford's cited cases specifically relied on that same line of precedent. *E.g.*, *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799–800 (E.D. Mich. 2019).

In addition, the plaintiffs who purchased their vehicles used had no transaction with Ford—even arguably indirectly—and thus no basis to pursue an MCPA claim. (Ford's Br. at 38.) The plaintiffs fault Ford for not citing authority for this position, confusingly arguing "waiver" principles applicable on appeal. (Pls.' Resp. at 19.) Yet they offer no authority for the converse—i.e., that Ford could be held liable for an MCPA violation as to a used-vehicle transaction in which it had no involvement.

*Third*, the plaintiffs' defense of their lack of Rule 9(b) particularity follows their familiar tactic of pointing back to their generic, boilerplate, *un*particularized FAC allegations and insisting they are sufficient. (*Id.* at 20–21.) Not once does the response refer to any plaintiffs alleging what representations specifically they supposedly saw, read, heard, or relied on. Indeed, Ford showed that, overwhelmingly, the plaintiffs don't allege—not even conclusorily—having seen,

read, heard, or relied on *any* representations, (*e.g.*, FAC ¶¶ 116, 117, 118), and that those few who do provide only vague boilerplate, such as that they were promised "Sustainability/Long-Lasting" or reviewed "Internet Marketing," (*e.g. id.* ¶¶ 120, 121). (Ford's Br. at 38–39.) The plaintiffs simply ignore this showing.

Instead, the plaintiffs try to evade Rule 9(b) altogether, arguing that such particularity is not required for MCPA claims—despite Ford's on-point authority stating the opposite. (Ford's Br. at 38 (citing *Matanky*, 370 F. Supp. 3d at 797); Pls.' Resp. at 20–21.) Yet in the case on which the plaintiffs rely, the plaintiff there confirmed that its MCPA claim was "not premised on fraud, but rather on [the defendant's] breach of its express and implied warranties." *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 651 (E.D. Mich. 2003). Here, the plaintiffs have not disavowed all fraud premises for their MCPA claim. Rule 9(b) thus applies.

The plaintiffs next confusingly address reliance before conceding it must be alleged with particularity with respect to at least some of their alleged MCPA violations. (Pls.' Resp. at 21.) They assert they satisfy this by referring generally to a few "press releases" and "marketing brochures," (*id.*), yet they fail to identify who purportedly saw and relied on which materials, when, and how, much less why what they saw and relied on was actually false. Merely pointing to marketing materials in the abstract is not Rule 9(b) particularity—much less when those materials contain no actionable representations, as Ford showed. (Ford's Br. at 51.)

### 5.   The "Unconscionability" claim also fails for several reasons.

Ford raised several arguments against the purported "unconscionability" count: it lacked any facts as to the alleged unconscionability; it is not an independent cause of action; it failed to plead as to both procedural and substantive unconscionability; and it lacked facts plausibly supporting the required "superior knowledge" of the alleged defect. (Ford's Br. at 39–41.) The plaintiffs neither responded to these arguments, nor addressed Ford's cited case law. Their lack of response concedes Ford's motion on this count. *Mekani*, 752 F. Supp. 2d at 797.

What the plaintiffs argue, meanwhile, is unavailing. (Pls.' Br. at 33–34.) For example, *Latimer v. William Mueller & Son, Inc.* involved an attempt to limit damages for defective agricultural seeds to the purchase price (roughly $1,400), which the damages (nearly $30,000) far exceeded, which the court found to be substantively unreasonable. 386 N.W.2d 618, 636–37 (Mich. App. 1986). The FAC lacks any facts as to any such substantive unconscionability, much less anything to rebut courts' recognition that there "is nothing facially unconscionable about a five-year/60,000 mile warranty in the auto industry." *Roe*, 2019 WL 3564589, at *10.[7]

---

[7] The materials plaintiffs append from a California state court case, *Myers*, are entirely irrelevant for a host of reasons, including because it involved a different vehicle line with a different transmission—the DPS6. (Pls.' Resp. at 34–35.)

**6.   The fraud-based claims (Counts VI–VIII) still fail.**

**a.   The plaintiffs fail to show any of their fraud theories survive.**

The plaintiffs' defense of their fraud-based claims follows the now familiar pattern: ignore entire arguments and case law, misstate the FAC, and rest on its bald, generic, conclusory assertions. And while the plaintiffs concede—as they must—that Rule 9(b) applies to all their fraud-based claims, they nonetheless refuse to acknowledge how woefully short of that mark they come. For example, they fail to explain how fraud is properly alleged as to the scores of plaintiffs who allege only that they bought a Fusion with nothing more—no facts as to whom they spoke to, what (if anything) they saw, read, or heard, when, and why it was false. (*E.g.*, FAC ¶ 331.) While none of the plaintiffs have adequately pled fraud, their stubborn insistence that plaintiffs such as Mr. Sullivan have done so tells the Court all it needs to hear to reject their response across the board. (*See id.*)

The plaintiffs also attempt to exempt themselves from Rule 9(b)'s particularity requirements by labeling this lawsuit as "complex," (Pls.' Resp. at 37), despite their prior description of it as "a standard 'lemon law'/breach of warranty type complaint," (ECF No. 4 at 2). They further laud themselves for pleading "with enough simplicity to allow the FAC to be workable and not convoluted or confusing," (Pls.' Resp. at 37), when it is none of these. And again, their misuse of

the joinder rules to attempt to force a mass pleading here does not excuse them of their obligation to plead their claims according to the rules and law.

For example, emblematic of their bald, conclusory, and non-specific approach, the plaintiffs assert they satisfy the required "who" because "[e]ach Plaintiff identifies the source of the representations upon which they relied as being Ford, whether it was in the form of an advertising campaign or individual sales representative." (Pls.' Resp. at 40.) First, scores of plaintiffs did not allege they saw, read, heard, or relied on anything in deciding to purchase their vehicles, as Ford showed. (Ford's Br. Ex. 1.1.) Second, as purported support for this argument, the plaintiffs confuse and conflate the standard for pleading affirmative fraud with pleading fraud by omission, only the latter of which may be more relaxed under Rule 9(b). (Pls.' Resp. at 41.) While the plaintiffs still fail even under a relaxed 9(b) standard, (Ford's Br. at 48–51), they fall even farther short as to affirmative fraud.

The plaintiffs similarly fall flat on the required "what" of alleged fraud. (Pls.' Resp. at 42–43.) They concede that "the level of specificity required" to plead the "what" in cases like this "directly correlate[s] to the complexity of the machinery in question." (*Id.* at 42.) Yet they ignore directly on-point cases Ford cited holding that this principle squarely applies to alleged transmission defects, including case law rejecting an almost identical description of their amorphous "Transmission Defect." *In re Ford Motor Co. DPS6 Powershift Trans. Prod. Liab. Lit.*, No.

CV1706656ABFFMX, 2019 WL 3000646, at *7 (C.D. Cal. May 22, 2019). They provide only a "laundry list of ways in which their vehicles' performance is subpar," not a description of any specific defect, *id.*, especially given the recognition that "[t]ransmissions can fail for a myriad of different reasons." *Callaghan v. BMW of N. Am., LLC*, No. 13-cv-04794-JD, 2014 WL 6629254, at *3 (N.D. Cal. Nov. 21, 2014).

Similarly unavailing is the plaintiffs' attempt to distinguish *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 2623, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009), which dismissed fraud claims based on the plaintiffs' failure there to identify "specifically which commercials they saw and the content of those commercials." (Pls.' Resp. at 44–45.) *Sears* is directly on point: in similar fashion, while the plaintiffs there mentioned "specific advertisements" in a global portion of the complaint, they otherwise failed to "allege that they saw any of these specific advertisements," which was "fatal to their claim." 2009 WL 937256, at *6. Likewise fatal was the *Sears* plaintiffs' failure "to adequately allege when they saw any misrepresentation," and instead alleged merely that they "saw unspecified advertising 'shortly before' the purchases," just as the plaintiffs here do. *Id.*

The plaintiffs' defense of their fraud theories is perhaps most remarkable for all the issues they ignore. For example, they offer no response to Ford's detailed discussion of how the FAC lacks the requisite particularized facts plausibly supporting that Ford "knew of a defect before sale" as part of the "what" of the

alleged fraud. (Ford's Br. at 43–48.) Nor do they respond to Ford's showing that their shotgun reliance on complaints to NHTSA and TSBs/CSPs fails. (*Id.*); *also Hall v. Gen. Motors LLC*, No. 19-CV-10186, 2020 WL 1285636, at *4–7 (E.D. Mich. Mar. 18, 2020) (rejecting similarly vague and unconnected items as failing to support manufacturer's pre-sale knowledge of alleged defect). They likewise ignore their failure to allege particularized facts as to the requisite fraudulent scheme. (*Id.* at 50.) The same goes for Ford's showings that the alleged "misrepresentations" are nothing more than non-actionable puffery, that the plaintiffs failed to plead any facts plausibly supporting the requisite specific inquiries to trigger a purported duty to disclose, and as to the lack of relationship with remote manufacturer Ford necessary to support innocent misrepresentation—all of which they ignore. (*Id.* at 51–53.)

### b.   The economic-loss rule continues to bar their fraud claims.

Seeking to evade the economic-loss rule, the plaintiffs mischaracterize their claims as falling under the exception for "fraud in the inducement." (Pls.' Resp. at 49.) But they didn't plead the separate and independent tort of fraud in the inducement. Nor could they on these alleged facts, because "a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract *but that do not in themselves constitute contract or warranty terms subsequently breached by the seller.*" *Murphy v. The Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 608 (E.D. Mich. 2010) (emphasis in *Murphy*). Where, instead,

" 'the only misrepresentation by the dishonest party concerns the quality or character of the goods sold,' the economic loss doctrine would preclude a fraud claim." *Id.* (internal citation omitted). The alleged misrepresentations here concern solely the "quality, smooth shifting capabilities," and other alleged attributes of the plaintiffs' vehicles. (FAC ¶ 546.) The plaintiffs ignore this and don't explain how their claims are supposedly independent of their warranty claims—indeed, they are not. Instead, the plaintiffs rely on a cursory, one-paragraph discussion from the *FCA* case they append, which lacks any considered analysis. (Pls.' Br. at 51–52.)

### 7.   The plaintiffs fail to save their Unjust Enrichment claim.

The plaintiffs essentially concede that the "Unjust Enrichment" claim is improperly pled under no state's law in particular, while their response fails to rebut Ford's remaining arguments effectively. (Ford's Br. at 53–55.)

*First*, while unjust enrichment ordinarily does not require particularized pleading, as the plaintiffs argue, (Pls.' Resp. at 53), they ignore that this is not so where, as here, the claim expressly relies on alleged fraud. (*Id.*; *also* FAC ¶ 583.)

*Second*, Ford showed that "unjust enrichment claims must be dismissed" where there is an express contract governing the subject matter. (Ford's Br. at 53 (citing *Matanky*, 370 F. Supp. 3d at 803; *Miller*, 2018 WL 2740240, at *15)); *also Hall*, 2020 WL 1285636, at *9 (noting "courts have regularly dismissed unjust enrichment claims filed against automobile manufacturers where a valid,

enforceable express warranty covers the same subject matter," citing cases). In response, the plaintiffs don't attempt to distinguish Ford's on-point authority. Instead, they improperly rely solely on an *unpublished* state-court decision—*Glaske*, (Pls.' Resp. at 53)—in violation of that court's rules, MCR 7.215(C)(1).

*Third*, contrary to their own argument, the plaintiffs concede the general rule under Michigan law "that a claim for unjust enrichment cannot survive when there exists an express contract covering the same subject matter." (Pls.' Resp. at 54.) They nonetheless maintain their claim may proceed similar to a claim for quantum meruit. (*Id.*) Yet that is decidedly *not* what they pled (nor could it be, on these facts). As a result, their cited case law is irrelevant and provides them no support.

*Fourth*, the plaintiffs ignore Ford's showing that this claim lacks sufficient facts plausibly supporting the existence of any actual defect as required to show anything "unjust" or inequitable. (Ford's Br. at 54.)

*Fifth*, the plaintiffs acknowledge Ford's argument that the FAC lacks facts supporting "that Ford obtained any benefit from the complained-of conduct," such as what the supposedly "non-defective products" are and their relative cost. (Ford's Br. at 54 (citing *Wozniak*, 2019 WL 108845, at *4); Pls.' Resp. at 54–55.) They don't dispute that *Wozniak* properly states the law; instead, they insist their bald and conclusory assertion that "Ford has sold defective vehicles at the same price of a non-defective vehicles [sic]" suffices. (Pls.' Resp. at 55.) Yet the FAC contains no

facts whatsoever to support that the allegedly "defective vehicles" were less expensive to Ford than the hypothetical "non-defective vehicles," as would have to be the case for Ford to have obtained any benefit from the complained-of conduct.

*Sixth*, the plaintiffs also ignore Ford's showing that this claim further fails for lack of facts plausibly supporting a benefit conferred *on Ford*, since none of them purchased their vehicles directly from Ford, and many purchased their vehicles used. (Ford's Br. at 54–55); *Hall*, 2020 WL 1285636, at *10.

## Conclusion

Where, as here, plaintiffs already had leave to amend after a warning that they could face dismissal with prejudice, and where "the parties and the Court have now spent significant time and resources analyzing the facts and claims in the First Amended Complaint, and it would not be just to require the parties and the Court to repeat this process," dismissal with prejudice is appropriate. *Hall*, 2020 WL 1285636, at *13. Defendant Ford Motor Company asks that the Court grant this motion and dismiss this action in its entirety *with* prejudice.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

BY:  /s/ *Robert L. Wise*
THOMAS P. BRANIGAN (P41774)
JODI MUNN SCHEBEL (P55889)
MATTHEW G. BERARD (P77024)
41000 Woodward Avenue, Suite 200 East
Bloomfield Hills, MI 48304-4132

Telephone: 248.205.3300
Facsimile: 248.205.3309
Email:  tom.branigan@bowmanandbrooke.com
Email:  jodi.schebel@bowmanandbrooke.com
Email:  matthew.berard@bowmanandbrooke.com

ROBERT L. WISE (*Admission 11/1/2019*)
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: 804.819.1134
Facsimile: 804.649.1762
Email: rob.wise@bowmanandbrooke.com

*Attorneys for Defendant*
*Ford Motor Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2020, I electronically filed the foregoing paper Defendant Ford Motor Company's Motion to Dismiss with the Clerk of the Court using the ECF System, which will send notification to all ECF counsel of record.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

BY: /s/ *Robert L. Wise*
THOMAS P. BRANIGAN (P41774)
JODI MUNN SCHEBEL (P55889)
MATTHEW G. BERARD (P77024)
41000 Woodward Avenue, Suite 200 East
Bloomfield Hills, MI 48304-4132
Telephone: 248.205.3300
Facsimile: 248.205.3309
Email: tom.branigan@bowmanandbrooke.com
Email: jodi.schebel@bowmanandbrooke.com
Email: matthew.berard@bowmanandbrooke.com

ROBERT L. WISE (*Admission 11/1/2019*)
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: 804.819.1134
Facsimile: 804.649.1762
Email: rob.wise@bowmanandbrooke.com

*Attorneys for Defendant*
*Ford Motor Company, Inc.*