# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON GANT, *et al.*,

       Plaintiffs,

v.

FORD MOTOR COMPANY,

       Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, by their attorneys, Stern Law, PLLC, and Marino Law, PLLC, hereby file their complaint against the above named Defendant, as follows:

### PRELIMINARY STATEMENT

1.    Broadly stated, this lawsuit is a breach of warranty/fraud case based on defective transmissions that Defendant Ford Motor Company installed in

1

Fusion brand cars with model years between 2010 and 2017, inclusive. These transmissions were defectively designed and/or defectively manufactured, forced into a manufacturing effort to provide more options than transmission design constraints permitted, and failed to operate as Ford represented to consumers relying upon said representations. Ford, however, continued to install these defective transmissions in Fusion cars, even though Ford knew of their defects undisclosed to owners, lessees and prospective purchasers and lessees. Even worse, Ford repeatedly lied to consumers as to the reasons for the problems consumers experienced. As a result, consumers were and are stuck in unsafe Fusion autos that have costly repairs and minimal resale value due to the widely discussed transmission defects, with used Fusion sticker prices indicating the market's awareness of the transmission defects alleged herein. Due to the defects in the transmissions, Ford's failure to remedy these problems, and Ford's fraud on consumers, Plaintiffs have been forced to join the ranks of tens of thousands of consumers who have sued Ford in courts nationwide for several years.

2.    The causes of action to this complaint ("Complaint") arise out of the warranty obligations of Ford for Fusions purchased or leased by Plaintiffs and for

which Ford issued a written warranty. Plaintiffs also allege that Ford concealed from Plaintiffs known defects in the transmissions integrated into Plaintiffs' Fusions.

## **PARTIES**

3.     Defendant Ford Motor Company ("Ford") is a corporation organized and in existence under the laws of the State of Delaware with its principal offices located in the City of Dearborn, Wayne County, Michigan, and registered with the Department of Licensing and Regulatory Affairs to conduct business in Michigan. At all times relevant herein, Ford was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, selling and/or importing automobiles and other motor vehicles and motor vehicle components in Michigan.

4.     All acts of Ford corporate employees as alleged were authorized or ratified by an officer, director or managing agent of Ford.

5.     As used in this Complaint, the word "Plaintiffs" shall refer to those Plaintiffs identified in paragraphs 121 through 495 who are purchasers or lessees of 2010 – 2017 Ford Fusions equipped with defective transmissions.  The word

"Vehicle" (plural "Vehicles") shall refer to the Fusions purchased or leased by Plaintiffs as identified in paragraphs 121 through 495 which were designed, manufactured, constructed, assembled, marketed, distributed, sold and/or imported by Ford.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

6.     Upon information and belief, Ford has superior access to each Vehicle's in-service date, applicable warranties, service contract information and warranty or service contract repair history, as hereinbefore described.

7.     Plaintiffs bring this action as a consolidated action on the grounds that each of their allegations against Ford are the same or substantially similar; as discussed, *infra*, each of Plaintiffs' Vehicles are equipped with one of Ford's defective transmissions.   Vehicles equipped with defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of transmission problems while in operation.

8.     Each Plaintiff purchased or leased his or her Vehicle primarily for personal, family, or household purposes. Each Vehicle was manufactured and/or

4

distributed by Ford. Express warranties accompanied the sale of the Vehicles to Plaintiffs, by which Ford undertook to preserve or maintain the utility or performance of the Vehicles or provide compensation in case of failure in such utility or performance. In deciding to purchase or lease the Vehicles, Plaintiffs reasonably relied on Ford's warranty protection and the express and implied promises contained therein. The Vehicles were delivered to Plaintiffs with serious defects and nonconformities to warranty, and each developed other serious defects and nonconformities to warranty including, but not limited to, a defective transmission. Plaintiffs experienced the transmission defects within the warranty period as extended by Ford and/or the discovery rule.

9.     The transmissions in Plaintiffs' Fusions are defective in design, materials, and/or manufacture and workmanship. This can result in various problems, including, but not limited to the following defects known to Ford: sudden and unexpected shaking, violent jerking, bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"), delayed acceleration (especially from a complete stop), gears slipping, hesitation on acceleration, difficulty stopping the vehicle, lack or loss of motive power, delayed

downshifts, hard decelerations or 'clunks' when slowing down or accelerating at low speeds, premature wear of the internal components, transmission failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident, and/or catastrophic failures necessitating replacement, attributable to one or more of the following: failing fluid seal integrity, throttle body deficiencies, failed torque converter welds, driveshaft failure, and failed Transmission Control Module ("TCM") or Powertrain Control Module ("PCM") updates to limit problems associated with transmission design and/or manufacture, or caused by the vehicle's design and architecture issues (collectively, the "Transmission Defects").

10.    The existence of the Transmission Defects is a material fact that each Plaintiff, and any reasonable consumer, would have considered when deciding whether to purchase or lease the Vehicle. Had Plaintiffs known that their respective Vehicle was equipped with a defective transmission exhibiting the Transmission Defects and subject to premature failure, Plaintiffs would not have purchased/leased it at all.

11.    As a result of Plaintiffs' reasonable reliance on Ford and its agents'

omissions and/or representations, including the express and implied promises included in Ford's warranty protection, each Plaintiff suffered an ascertainable loss of money, property, and value to the Vehicle, including but not limited to, the purchase price of the Vehicle, interest and finance charges, taxes, registration fees, out-of-pocket costs related to repairs to the transmission, the cost and inconvenience of obtaining alternative transportation, diminution in the value of the Vehicle, and loss of use of the Vehicle. Additionally, as a result of the Transmission Defects, each Plaintiff was harmed and suffered actual damages in that the Vehicle's transmission and related components are substantially certain to fail before their expected useful life has run.

12.   Finally, those Plaintiffs forced to sell or trade-in their Vehicle due to expenses related to the Transmission Defects have suffered additional damages due to harm related to their credit report in the event of forfeiture and/or additional financial strain or loans entered into in order to take possession of an alternate, reliable vehicle.

13.   All new Fusion autos are backed by a New Vehicle Limited Warranty ("Warranty"). Ford's Warranty covers any repairs needed to correct defects in

7

materials or workmanship of covered parts. The basic coverage period lasts 36 months or 36,000 miles, whichever comes first, and the powertrain coverage lasts 60 months or 60,000 miles, whichever comes first. The powertrain coverage specifically applies to the engine, transmission and transaxle, drivetrain, and restraint system. Ford explicitly provided the Warranty to all purchasers, lessees, and subsequent purchasers and lessees of Fusion autos throughout the United States. The Warranty assured consumers that Ford would repair any defects in materials or workmanship under normal use.

14. The Warranty purports to cover the transmission. However, consumers have complained that their transmissions failed and required replacement both within and just outside the 60,000-mile warranty period. Fusion owners and lessees have reported to the National Highway Traffic Safety Administration ("NHTSA") that Ford's authorized dealerships are replacing transmissions both within, and just outside, the 60,000-mile warranty period. When such replacements are not being provided under warranty, Plaintiffs have paid significant costs to Ford dealerships for new transmissions out of necessity.

15. These defects and nonconformities substantially impaired the value of

the Vehicles to Plaintiffs. This impairment stems from two basic sources. First, the Vehicles fail in their essential purpose because they present an unreasonably high risk of sudden transmission problems, rendering them unsafe in a very material way. Second, the repair warranty has failed of its essential purpose because Ford cannot repair the Vehicles.

16. Some of the causes of action to this Complaint arise out of the warranty obligations of Ford for a Vehicle purchased/leased by Plaintiffs and for which Ford issued a written warranty. Plaintiffs also allege that Ford concealed the transmissions' known defects from Plaintiffs. As detailed, *infra*, Ford also misrepresented to Plaintiffs the workings, performance, and reliability of said transmissions.

17. Plaintiffs' Vehicles are all Ford Fusions from model years ("MY") 2010 to 2017, inclusive, equipped with one of three transmissions:

    a. Most common among Plaintiffs' Fusions is the 6F35 transmission, touted by Ford as offering more efficient power delivery, better fuel economy and smoother, quieter and more precise shifts than that of options provided by the competition. Plaintiffs who

9

own/lease either a Fusion Sport or a Fusion with a 3.0 liter V-6 engine possess a model which includes as standard equipment the SelectShift control option for the 6F35 transmission. SelectShift allows the driver to shift gears using hand controls without a clutch; upon information and belief, the transmission itself is the same 6F35 present in those without SelectShift with minimal custom alteration to achieve the results described. All automatic, non-hybrid Fusion MYs 2013 and later, and many from MYs 2010 to 2012, contain the 6F35 transmission (with or without a SelectShift);

b. Hybrid Fusions, decidedly far fewer among Plaintiffs' Fusions, have an automatic transmission known as a continuously variable transmission, or "CVT"; and

c. Some Fusions, MYs 2010 to 2012, inclusive, contain a different type of six-speed automatic transmission known as an Aisin or Aisin Warner transmission. Upon information and belief, none of the Plainitffs' Vehicles appear to involve this transmission type.

18.    Purchasers and lessees whose Fusions have manual transmissions (i.e., "stick shifts") are also not a part of this litigation.

19.    Notwithstanding the two transmissions types used in Plaintiffs' Vehicles, commonality exists in the transmission defects and the manifestations thereof. Consistent, endemic problems in Fusions utilizing the 6F35 transmission have made the Fusion subject to countless lemon law claims nationwide; Plaintiffs are informed, believe and thereon allege that Ford has unique knowledge and information of the extent to which 6F35 transmissions have failed owners and lessees dating back at least as far as 2010. Owners and lessees of Fusions without 6F35 transmissions also report and present defects in their Fusions that mirror those of 6F35 failures. This refers to a core problem in design and architecture wherein the unique body, engine, performance goals and overall mechanical demand of the vehicle place improper and damaging forces upon the transmission, resulting in its failure. Plaintiffs believe that the complaints of those owners and lessees of 6F35 Fusions demonstrate clear, continued evidence of the Transmission Defects; Plaintiffs also contend that failures in non-6F35 Vehicles have merit and

are appropriately joined in these consolidated proceedings.[1]

20.    Many owners and lessees of automatic Fusion transmissions, including Plaintiffs herein, frequently complain their Fusions take an inordinately long time to accelerate from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds, shudder and shake or make a loud clunking or knocking sound when the transmission finally selects the appropriate gear ratio, and often fail to accelerate when needed. Finally, in addition to hesitations, slow response, and jerky/shuddering/bucking behavior, the lifespan of the transmission in Plaintiffs' Vehicles is unreasonably short.

21.    Despite variation in transmission type of their respective Vehicles, the Transmission Defects are inherent in and the same for each of the Plaintiffs' Vehicles and were present, although potentially not symptomatic, at the time of sale.

22.    Ford sold, leased, and continues to sell and lease Fusions despite knowing of the Transmission Defects and the danger they pose to consumers and

---

[1]  Should the Court fail to find sufficient commonality exists with respect to the 6F35 and CVT/Hybrid transmissions, Plaintiffs request an opportunity to dismiss the CVT/Hybrid owners/lessees without prejudice and separately re-file their claims.

other drivers, including Plaintiffs.

23.     Because Ford will not notify the public that the Fusion transmissions are defective, Plaintiffs (as well as members of the public) are subjected to dangerous driving conditions that often occur without warning.

24.     Accordingly, Ford has chosen financial gain at the expense of consumer safety by failing to disclose its knowledge of these critical safety defects to consumers, including Plaintiffs.

25.     As early as 2009, if not before, Ford was aware of material facts regarding the Transmission Defects, but failed to disclose them to consumers. As a result of this failure, Plaintiffs have been damaged.

26.     Moreover, as early as 2009, if not before, Ford knew or should have known about the safety hazard posed by the defective transmissions before the sale/lease of Plaintiffs' Vehicles based on pre-market testing, warranty claims, consumer complaints to NHTSA, consumer complaints made directly to Ford and its dealers, and other sources which drove Ford to issue Technical Service Bulletins ("TSBs") acknowledging the Fusion Transmission Defects. Ford should not have sold, leased, or marketed the Fusion, including Plaintiffs' Vehicles,

without a full and complete disclosure of the Transmission Defects, and Ford should have voluntarily recalled the Fusion long ago.

27.     Each of the Plaintiffs to this Complaint requested or desired that Ford fix the defective transmission in their Vehicle, but Ford could not or would not permanently repair it. Because Ford has not devised a comprehensive and effective solution for the Transmission Defects, any repairs Ford attempted are merely temporary stop-gap measures destined to fail in the future.

### Development of the 6F35 and CVT Transmissions

28.     The predecessor of the 6F35 transmission was the general 6F transmission architecture, which Ford developed with General Motors for production in calendar year 2006 for MY 2007 vehicles. **Exhibit A** at 1, *General Motors Hydra-Matic & Ford New FWD Six-Speed Automatic Transmission Family*; Charles Lewis, General Motors Powertrain; Bryce Bollwahn, Ford Motor Company; SAE 2007 World Congress, Detroit, Michigan; April 16-19, 2007.

29.     The transaxle was developed jointly, with approximately 85 percent of the hardware shared or common. *Id.* The result was described as "a common approach to design and manufacturing engineering. Despite using common

suppliers for a majority of parts to leverage economies of scale, both companies are utilizing unique controls and calibrations to tailor the shift feel of the transaxle to fit their brand characteristics." **Exhibit B**, *New Fuel-Saving 6-Speed Transaxle To Propel Ford Edge To Head Of Crossover Utility Class; Ford Motor Company*; November 9, 2005. Ford's version of this front wheel drive six-speed automatic transmission was the 6F50, and the higher capacity variant, the 6F55. Its initial application was to be the MY 2007 Lincoln MKX and Ford Edge. **Exhibit A,** at 1.

30.     According to a press release introducing the 6F, the new transmission promised better fuel economy and better shifting performance. Ford touted a number of features that purported to make its version of the 6F transmission unique from the competition, representing the transmission as follows:

  a.  A wide span of 6.04 between the transaxle's lowest and highest gear ratio to deliver improved fuel economy and improved acceleration;

  b.  A low 4.48 gear for good acceleration at launch and a tall, 0.74 overdrive, for exceptional fuel economy;

  c.  Smaller ratio step sizes to enable smoother shifts, reduce noise,

vibration and harshness;

d. Extensive use of CAE modeling on the transaxle case, resulting in a solid housing for the transaxle components, that included added strengthening ribs to minimize radiated noise and vibration, and additional thickness in some areas of the case for added strength;

e. Three simple planetary gear sets designed for robustness and to use low-pinion pitch line velocities to reduce noise;

f. All gears were cut using high-precision CNC hobbing, grinding and honing machines. The transfer and final drive gears were hard-treated for strength, and subsequently ground and honed to provide a more precise fit, thus reducing gear whine;

g. First use of an off-axis pump, which takes up much less space in the transaxle.

h. Use of plate clutches only for each shift "to deliver quiet, smooth shifts throughout the entire ratio span; and

i. Ford proprietary control strategies that use powerful adaptive algorithms for fast, responsive shifts.

16

**Exhibit B.**

31.     The following year, Ford installed the 6F50 on the 2008 models of the Ford Taurus, Taurus X, Edge, Mercury Sable, Lincoln MKX and 2009 Ford Flex and Lincoln MKS.

32.     In 2008, Ford announced that it was introducing a new variant, the 6F35, to be initially applied to the 2009 Model Year Ford Escape, Mercury Mariner and Mazda Tribute vehicles. It was also slated to be applied to 2010 Model Year Ford Fusion and Mercury Milan. **Exhibit C,** *Ford Begins Production of New Mid-Range Six Speed Automatic*; Auto Blog; Sam Abuelsamid; May 8, 2008. Ford touted this new 6F35 variant, like the original 6F transmissions, as a boon to fuel economy, while providing smooth efficient shifting: "The new 6F35 front-wheel-drive transmission offers a 4 to 6 percent improvement in fuel economy versus conventional 4- and 5-speed automatics, in addition to improved acceleration." **Exhibit D**, *Ford's New 6-Speed Automatic Transmission Offers 4-6 Percent Fuel Economy Improvement;* press release; Ford Motor Company; May 7, 2008, PDF pg. 3.

33.     Again with the 6F35 transmission, similar to the 6F, Ford boasted a

host of improvements:

    a.  A greater gear span, that allows the engine to operate at more optimum combinations of speed and load;

    b.  Patented one-way rocker clutches allow for smoother, quieter, more precise shifts. Working like a socket wrench, the rocker clutches spin freely one way, but securely lock in the other direction. As result, gears are engaged and disengaged more quickly;

    c.  A chain-driven secondary gear set, with specifically designed with random-size links that reduces noise, vibration and harshness;

    d.  Unique pump-filter interface that eliminates pump whine; and

    e.  Fluid fill for life – a special blend of transmission fluid is maintenance free for the life of the gearbox.

**Exhibit D**, at 3.

34.    The news coverage of this transmission consistently shows that most, if not all, of the 6F variants were produced at the Van Dyke Transmission Plant, including the 6F35 and the CVT.

18

35.    In 2012, Ford also produced a continuously variable transmission ("CVT") for its hybrid vehicles, the Hybrid HF35. The HF35 was introduced in the 2013 C-MAX Hybrid, Plug-In Ford C-MAX Energi, Fusion Hybrid, Ford Fusion Energi, and the Lincoln MKZ. **Exhibit E**, *Ford Says Homegrown CVT Key to Speed, Fuel Economy of New Hybrids*; Ward's Auto; August 17, 2012.

36.    The Transmission Defects are, upon information and belief, part of an aggressive effort by the manufacturer to provide variety to vehicle builds, which has occurred at the expense of reliability. The transmissions used in Plaintiffs' Vehicles failed to provide that reliability due in part to their need to be interchangeable transmissions at the build stage. Ford produced multiple, inadequate transmission solutions that have consistently failed owners and lessees. The effort to build "both HF35 [the hybrid CVT], and 6F35, a conventional six-speed automatic transmission, simultaneously" while using a variety of transmission systems into one common body/unit has been one of several factors resulting in a flawed transmission design. **Exhibit F,** *Ford Celebrates Production of First North American FWD Hybrid Transmission*, Torque News press release; Don Bain; Aug. 2, 2012. These failures manifest in the Transmission Defects,

19

including failing fluid seal integrity, throttle body deficiencies, driveshaft failure and the need for repeat PCM updates to try to limit the problems caused by overall design and architecture issues.

## Ford Aggressively Markets the Fusion and its Transmissions

37.    Ford aggressively marketed the Fusion, particularly its much-touted transmissions, and continued to do so long after discovering, or having sufficient notice to discover, the Transmission Defects.

38.    In touting the 2010 Fusion, Ford further pushed the narrative that customization was critical to its marketing effort on the vehicle: "Manual or automatic – it's time to shift your state of mind. Take the new 6-speed manual for a spirited drive. Pair the smooth-shifting 6-speed automatic with the 2.5L I-4 engine for max mileage. Or let the new 6-speed SelectShift Automatic$^{TM}$ choose the optimal gear for any situation – while giving you the power to shift for yourself whenever you want. It's the best of both worlds." **Exhibit G**, 2010 Marketing Brochure, at 3.

39.    Ford emphasized the new 2010 Fusion transmissions, and variations available, to dealers as a selling point: "New 6-speed automatic transmission

20

includes Grade Assist Mode, is available on the 2.5L Duratec I-4 engine and is standard with the 3.0L V6 engine. All-new 6-speed SelectShift Automatic transmission is standard on Fusion Sport and standard with the 3.0L V6, allowing the driver the choice of a clutchless manual shifting mode." **Exhibit H**, 2010 Tech Info, at 8.

40.     Despite being aware of the Transmission Defects, Ford continued to tout the transmissions in marketing materials for the 2011 Fusion: "Get up to 33 mpg hwy with the I-4 and a smoothshifting 6-speed automatic transmission. . . . The V6 is mated to a 6-speed SelectShift Automatic$^{TM}$ that chooses the optimal gear for any situation, while giving you the power to shift for yourself whenever you want. It's the best of both worlds." **Exhibit I**, Ford 2011 marketing brochure, at 3.

41.     Tech info on the 2011 Fusion also explicitly highlighted the defective six-speed automatic transmission, misrepresenting it as follows:

- Wide 6.04:1 gear ratio delivers good fuel economy and performance;

- Includes Grade Assist Mode;

21

- Short first and second gears provide impressive launch and acceleration;

- Tall overdrive gear is designed to provide better fuel economy;

- Short steps between intermediate gears enhance performance and feel by finding the right gear for the most-efficient operating conditions;

- Every part of the transmission is designed to provide smooth, quiet operation;

- Transmission fluid is "filled for life" to help lower cost of ownership.

**Exhibit J**, 2011 Fusion tech info, at 10.

42.    Ford's 2011 Fleet Guide, which discusses multiple models, also specifically highlights the new six-speed transmissions found in the Ford Fusion. Under the heading, "Interior Quietness," Ford states that its "new 6-speed automatic transmissions are subjected to hundreds of hours of durability and noise, vibration and harshness (NVH) testing." **Exhibit K**, 2011 Fleet Guide, at 4. Ford also claims that it is "boosting transmission efficiency by shifting to advanced

6-speed gearboxes. With more gears, Ford powertrains have a broader range from which to select the optimum mix of engine torque and horsepower for different driving situations. Bottom line: better acceleration, better mileage." *Id.*, at 5. Ford emphasizes that the 2011 Fusion contains Ford's new "6-speed SelectShift Automatic™ transmission." *Id.*, at 14.

43.    Ford's 2012 Fusion marketing brochure touts the six-speed automatic transmission's contribution to "fuel economy a similarly equipped Camry and Altima can't beat," and describes the SelectShift automatic transmission as "the best of both worlds. Shift whenever you want, or let it choose the best gear for you." **Exhibit L**, 2012 Marketing Brochure, at 4, 10.

44.    The tech info for the 2012 Fusion describes the following "key features" of the six-speed automatic transmission: "Engineered for quiet and high quality; Hard-finish gears for precise fit and reduced gear whine; Die-cast aluminum housing helps reduce noise; Optimized pump porting helps reduce transmission fluid pressure "ripple" and noise; SelectShift Manual Mode allows driver to change gears, up or down, without using a clutch and automatically protects against damaging shift scenarios." **Exhibit M**, 2012 Fusion Tech Info, at

10.

45.     Ford continued to tout the Fusion and its transmissions year after year, despite the known-but-concealed Transmission Defects. Ford marketed the 2013 Fusion as possessing "instantaneous low-end torque responsiveness and virtually no turbo lag," and able to "squeeze maximum power and efficiency from each drop of fuel." Ford described the six-speed SelectShift Automatic as an "advanced technolog[y]" that would "help Fusion achieve 37 mpg hwy. A 175-hp 2.5L iVCT I-4 engine with 6-speed SelectShift Automatic is standard, rounding out an impressive gasoline engine lineup." **Exhibit N**, 2013 Fusion Marketing Brochure, at 4 (footnotes omitted).

46.     Again in 2014, Ford pushed the defective transmissions as providing benefits for consumers: "Bridges the gap between power and efficiency. Fusion supplies both. . . . With robust low-end torque and virtually no turbo lag, EcoBoost technology squeezes maximum power from each drop of fuel. Along with impressive efficiency. Equipped with a new 1.5L EcoBoost that's mated to a 6-speed SelectShift® automatic transmission, Fusion has an EPA estimated rating of 36 hwy mpg. . . . For performance-minded drivers, a 240-hp, 2.0L EcoBoost

teams with a SelectShift automatic, whose 6 speeds can be paddle shifted from the steering wheel." **Exhibit O**, 2014 Fusion Marketing Brochure, at 4 (footnotes omitted).

47.    Ford made similarly misleading claims in the marketing brochures for the 2015, 2016, and 2017 Fusions. *See*, *e.g.*, **Exhibit P**, 2015 Fusion Marketing Brochure, at 4 (claiming that the SelectShift transmission would please "performance-minded drivers"); **Exhibit Q**, 2016 Fusion Marketing Brochure, at 3 and 6 (in addition to boosting power and efficiency, SelectShift transmission would "[u]p the fun-to-drive factor even more"); and **Exhibit R**, 2017 Fusion Marketing Brochure, at 5 (listing the "thoughtfully redesigned" SelectShift transmissions as one reason why the "Fusion engine lineup has never been stronger"").

48.    The difference between Ford's representations about the Fusion's transmissions and Plaintiffs' actual customer experience is breathtaking.

### The Transmission Defects Pose an Unreasonable Safety Hazard

49.    The Transmission Defects pose an unreasonable safety hazard. Hesitations, slow/no responses, hard braking or catastrophic transmission failure

impair drivers' control over their vehicles, which significantly increases the risk of accidents. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, brake slowly or accelerate from stop light/sign, and accelerate onto highways or freeways.

## Complaints Lodged with NHTSA

50.     Federal law requires automakers like Ford to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

51.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including and especially those that are safety-related. *Id*.

Thus, Ford knew, or should have known, of the many complaints about the Transmission Defects logged by NHTSA's Office of Defects Investigation ("ODI"), and the content, consistency, and large number of those complaints alerted, or should have alerted, Ford to the Transmission Defects.

52.     For years, owners and lessees of Fusions have publicly complained to the United States government about the Transmission Defects. The ODI is an office within NHTSA. ODI conducts defect investigations and administers safety recalls to support NHTSA's mission to improve safety on the Nation's highways. All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a safety issue exists or, at minimum, if a recall is warranted due to product issues. *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited July 31, 2019). Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government and its consumer-protection entities.

53.     Numerous complaints made to NHTSA and elsewhere online demonstrate that the Transmission Defects in the Fusion are widespread and

dangerous, and that they manifest without warning. The complaints also indicate Ford's awareness of the problems with the transmissions and the Transmission Defects, including how dangerous they are for drivers. Numerous complaints to NHTSA about the Transmission Defects are attached: 423 complaints relating to the 6F35 transmission in **Exhibit S**, and 150 complaints relating to the CVT in **Exhibit T.** These safety complaints detail the same Transmission Defects Plaintiffs complain of. Spelling and grammar mistakes remain as found in the originals.

54.     Plaintiffs point to the numerous reports of similar Transmission Defects contained in the attached NHTSA complaints as evidence of the wide-spread nature of the Transmission Defects and Ford's notice and knowledge regarding same.

**Ford Had Superior and Exclusive Knowledge of the Transmission Defects**

55.     Ford had superior and exclusive knowledge of the Transmission Defects and knew or should have known that the defects were not known or reasonably discoverable by Plaintiffs before they purchased or leased their Vehicles.

56.     Plaintiffs are informed and believe and based thereon allege that

before Plaintiffs purchased/leased their Vehicles, and since at least 2009, Ford knew about the Transmission Defects, through access to pre-release testing data, early consumer complaints to Ford and its dealerships serving as its representatives for warranty-covered repairs, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Ford routinely monitors), by developing Technical Service Bulletins in an effort to address the Transmission Defects, from consumer complaints and discussion data collected and analyzed by Ford at significant cost by the company, and through other aggregate data collected from Ford dealerships.

57.    Ford is uniquely knowledgable in the design and manufacture of consumer vehicles. As an experienced manufacturer, Ford conducts tests, including pre-sale durability testing, on incoming components, including transmissions, to verify the parts are free from defect and align with Ford's specifications. Thus, Ford knew or should have known the transmissions were defective and prone to placing drivers in dangerous positions due to the inherent risk of the defects.

58.     Additionally, on information and belief, Ford knew of the impact of these defects from the sheer number of reports received from its dealerships. Ford interacts with individual dealerships to identify potential common defects and has received numerous reports regarding the Transmission Defects, which led Ford to develop and release (to dealerships—not the public) the related TSBs. Ford also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

59.     Ford maintains a customer service hotline, with dedicated call centers located in Melbourne, FL, and elsewhere to receive and address consumer concerns regarding its products. These calls can result in repair escalations, warranty extensions, buyback reviews, etc. Data collected regarding the nature of calls, the products causing concern and more would be in the exclusive possession of Ford Motor Company, providing the company with notice of the Transmission Defects and the impact thereof on owners and lessees.

60.     Finally, on information and belief, Ford knew of the public's

concerns regarding defects from the sheer number of online postings made about the topic on social media platforms, including forums, blogs, social platforms and more, on which data was collected on behalf of the company by a third-party vendor. Ford regularly interacts with individual posters on these digital landscapes to identify potential common defects and regularly receives reports regarding consumer concerns via the social media customer service programs it actively maintains. On information and belief, Plaintiffs allege Ford also collects and analyzes data from online postings including, but not limited to, product failure rates, concerns regarding failed repair efforts, repair requests made at dealerships, consumer experiences shared with online customer service agents, and more.

61.    Ford's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify repair trends in its vehicles. Upon information and belief, to secure reimbursement for warranty covered repairs, Ford's dealerships must provide the manufacturer with detailed documentation of the problem or condition and the fix employed to correct same.

62.    Indeed, shortly after the Fusion was introduced to consumers,

including Plaintiffs, Ford began rolling out a continuous series of TSBs in respect of the Transmission Defects and/or powertrains. *See* **Exhibit U**, Compilation of Fusion Transmission TSBs.

63.    The TSBs detail the same Transmission Defects that Plaintiffs complain of here, proving that Ford knew well that its Fusion transmissions were not functioning as marketed or expected, and that they were defective and not fit for their intended use. They also suggest that Ford was aware of some potential causes of the Transmission Defects.

64.    To the extent a given transmission model is similar from year to year, and relies on similar components, the TSBs from previous model years did or should have alerted Ford that similar Transmission Defects would manifest in current and future model years using the same transmissions or transmission components. Ford had the superior and exclusive knowledge of the degree to which Fusion transmissions were similar from model year to model year.

65.    One of the earliest TSBs relating to the Transmission Defects was TSB 9-18-13, issued by Ford on September 21, 2009, and entitled, "6F35- Harsh 3-1 or 2-1 Rolling Stop Downshift- Hesitation During Low Speed Maneuvers - 2-3

or 3-4 Upshift Flare Cold Starts -No DTCs."[2] **Exhibit U**, TSB Compliation, at 1. This TSB shows Ford's knowledge that some 2010 Fusions "exhibit harsh 3-1 or 2-1 rolling stop downshift or downshift hesitation during throttle tip-in/tip-out 3-4-2 downshift maneuver at vehicle speeds between 20-40 MPH (32-64 Km/h). Also may have 2-3 or 3-4 upshift flare during cold starts (engine off for 2 or more hours)." Ford suggests reprogramming the powertrain control module ("PCM") to address the problem. *Id.*

66.    Multiple other TSBs were released relating to Transmission Defects in just the 2010 Fusions equipped with 6F35 transmissions:

    a.  TSB 10-1-7, released on February 1, 2010, relating to "Harsh Engagements/Shifts";

    b.  TSB 10-12-12, released on July 5, 2010, relating to "malfunction indicator light on 5th gear drive away (Transmission Failsafe) after using the Grade Assist option on a steep downgrade";

    c.  TSB 10-21-9, released on November 8, 2010, relating to "6F35 Transmission - Harsh 2-3 Upshift - 3-4 Upshift Flare - Harsh

---

[2] DTC stands for Diagnostic Trouble Codes.

Rolling Engagement"; and

    d. TSB 11-12-8, released on December 22, 2011, relating to "Harsh 1-2 Shift, 2-3 Shift Flare or Intermittent Delayed or Harsh First Engagement with No DTCs."

**Exhibit U**.

67.    Other TSBs relate to similar Transmission Defects in other Fusion model years, each showing that Ford knew, from before the TSB's issue date, of the Transmission Defects but did not share that knowledge with Plaintiffs or other prospective consumers. The TSBs in **Exhibit U** describe Ford's knowledge of the following manifestations of the Transmission Defects:

    a. "2-3 Shift Flare Occurs When Vehicle is Cold or an Intermittent Delayed/Harsh First Engagement," TSB 11-9-9 regarding the 2011 Fusion's 6F35, issued on Sept. 20, 2011, *Id.*;

    b. "Intermittent Harsh 1-2 or Harsh 5-6 Shift, Late 4-5 (2.5L) or 4-5 Shift Flare Cold," TSB 12-6-12 regarding the 2011-2012 Fusion's 6F35, issued on June 30, 2012, *Id.*;

    c. "6F35 Transmission - Fluid Leak at Left Side Halfshaft Seal"

"due to wear on the transmission case bushing," TSB 16-0043 regarding the 2010-2014 Fusions, issued on March 15, 2016, *Id.*;

d. "6F35 - Harsh Transmission Engagement During Active Start/Stop Event and DTC P0C27," which "may be caused by air entering the transmission fluid auxiliary pump supply tube," TSB 16-0111, regarding the 2014-2016 Fusions, issued on September 1, 2016, *Id.*;

e. "Rolling Reverse to Drive Engagement Shudder" on 2016 Fusions with a 2.0L gasoline turbocharged direct injection engine, TSB 16-2037, issued on September 14, 2016, *Id.*;

f. "2.5L- Drive to Reverse Delayed Engagement/Shudder" on 2016 Fusions with a 2.5L engine "when the throttle is applied during reverse engagement," TSB 16-0125, issued on September 21, 2016, *Id.*; and

g. "the studs that retain the torque converter to the engine flexplate may have been improperly welded . . . [and] may detach from the torque converter leading to loss of motive power," TSB 17S16 –

35

Supp 2, issued on June 12, 2018, *Id.*

68.    On information and belief, each TSB issued by Ford was approved by managers, directors, and/or other executives at Ford. Therefore, on information and belief, Ford's managers, directors, and/or executives knew, or should have known, about the Transmission Defects, but they refused to disclose the Transmission Defects to prospective purchasers and owners/lessees, and/or otherwise actively concealed the Transmission Defects.

69.    Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defects, and will disclose any such defects to its consumers when it learns of them. Plaintiffs did not expect Ford to fail to disclose the Transmission Defects to them and to continually deny their existence.

### Ford's Failure to Disclose the Transmission Defects

70.    Ford never disclosed the notice and knowledge reflected in its TSBs cited herein to any Plaintiff or other prospective purchaser/lessee of a Fusion.

36

71.     Ford never disclosed the Transmission Defects to Plaintiffs prior to or at any point during the ownership/lease of their Vehicles, and Ford has never instructed its dealerships to disclose the Transmission Defects to drivers or potential purchasers or lessees of Fusions. With respect to those Plaintiffs that purchased a previously owned Fusion with Transmission Defects, which had been repaired for same by a Ford authorized dealership, the existence of said repairs was not disclosed as required to said Plaintiffs.

72.     The Transmission Defects were not known or reasonably discoverable by the Plaintiffs before purchase or lease of their Vehicles; or without experiencing the defects first-hand and exposing themselves to an unreasonable safety risk.

73.     Ford has remained silent even as it issued service bulletins, conducted internal investigations, and witnessed the failure of the transmissions via its dealership service records and documented customer complaints.

74.     Ford's refusal to publicly acknowledge the Transmission Defects created widespread misinformation and confusion. Ford's failure to notify consumers, dealerships, or auto-technicians of known defects in the Fusion transmissions prevented early and effective diagnosis and repair of the

Transmisssion Defects.

75.    As a result of Ford's inaction and silence, Plaintiffs were entirely unaware that they had purchased/leased and continue to drive an unsafe and unreliable vehicle. As Ford knows, a reasonable person would consider the existence of the Transmission Defects to be a material and important fact to be disclosed at the time of purchase/lease; had the Transmission Defects been disclosed prior to the time of purchase/lease, Plaintiffs would not have purchased/leased their Vehicle, or would have paid substantially less for it.

**Ford Has Actively Concealed the Transmission Defects**

76.    Despite its knowledge of the Transmission Defects in the Fusions, Ford actively concealed the existence and nature of the defects from Plaintiffs. Specifically, Ford failed to disclose or actively concealed the following at and after the time of purchase, lease, or repair:

> a.  all known material defects or material nonconformities of the Vehicles, including the defects pertaining to their transmissions;
>
> b.  that the Vehicles, including their transmissions, were not in good working order, were defective, and were not fit for intended

purposes; and

c.  that the Vehicles and their transmissions were defective, despite the fact that Ford learned of such defects as early as 2009, if not before; and

d.  that consumers had expressed directly to Ford, or indirectly through channels monitored by Ford, their concerns about Transmission Defects in their Fusions.

77.    When consumers present their Fusions to an authorized Ford dealer for transmission repairs, rather than repair the problem under warranty, Ford dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the Transmission Defects and fail to provide a permanent fix to the issue.

78.    Ford has caused Plaintiffs to expend money and/or time at its dealerships to diagnose, repair or replace the Vehicles' transmissions and/or related components, despite Ford's knowledge of the Transmission Defects. When the Vehicles are outside of Ford's warranty coverage, significant additional expense is incurred by Plaintiffs.

**Ford's Rich History of Failing to Act Promptly to Remedy Serious Defects**

79.     Ford's failure to act promptly to disclose the Fusion's Transmission Defects, recall affected vehicles, and remedy the problem through a permanent repair or complete resolution for owners and lessees is not a unique situation. In fact, Ford's recent history is rife with examples wherein it was aware of serious defects in design and/or manufacturing, and yet failed to timely act in the best interest of its customers by repairing or buying back the subject vehicles. In many instances, the only means by which owners and lessees became aware of the defect and the extent of Ford's notice and knowledge regarding same were major news stories or governmental investigations.

80.     Despite a class action settlement that left the vast majority of owners without any financial benefit, the public only became aware of the serious defects in Ford's DPS6 transmission utilized in the Focus and Fiesta vehicles after discovery materials from the individual DPS6 lawsuits became part of the public record. **Exhibit V,** *Ford knew Focus, Fiesta models had flawed transmission, sold them anyway*; Detroit Free Press, Sept. 10, 2019.[3]  In fact, Ford's corporate pattern

---

[3]https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-d

of concealing defects is, upon information and belief, the basis for a recent whistleblower disclosure of serious discrepancies in how the manufacturer calculated fuel economy and emissions in their vehicles. *Id.* Through discovery, Plaintiffs will, upon information and belief, identify additional evidence of the manufacturer's concealment and fraud, which was first identified for Plaintiffs after retaining undersigned counsel, who conducted an investigation into customer complaints.

81.    Calls for Fusion recalls and/or investigations once again have shown Ford to be merely reactive rather than proactive, despite the safety risks to customers and the public. The MY 2013 - 2016 Fusions were subject to a recall due to a transmission defect which permitted vehicles to roll away/shift gears due to a "glitch." **Exhibit W**, *Ford recalls 270,000 Fusion cars to fix glitch that can cause vehicles to shift gears and roll away*; CNBC, May 15, 2019**.**[4] Serious brake failures in the Fusion triggered a NHTSA investigation due to dozens of accidents and several injuries. **Exhibit X**, Article: *Feds Investigate Whether Ford Should*

efect/1671198001/

4https://www.cnbc.com/2019/05/15/ford-recalls-fusion-cars-to-fix-glitch-that-can-cause-them-to-roll-away.html

*Recall A Million Sedans Over Break Failures*; Forbes, Apr. 24, 2019[5]; **Exhibit Y**, NHTSA ODI Resume.[6] Airbag failures, while unrelated to the transmission, sparked important and wide-reaching safety concerns. As usual, Ford was slow to react. **Exhibit Z**, Article: *Ford Recalls Fusion and Lincoln MKZ Vehicles*, carcomplaints.com, Nov. 5, 2018[7]; **Exhibit AA**, *Ford Expands Takata Airbag Recalls By 953,000 Vehicles*; carcomplaints.com, Jan. 4, 2019.[8] Even loose steering wheels required a recall due to safety concerns. **Exhibit BB**, Article: *Loose steering wheels trigger Ford recall of 1.4M Fusion, Lincoln MKZ cars*; USA Today, Mar. 14, 2018.[9] And stud fractures resulting in wheel separation and significant safety concerns prompted a recall nearly two years after the vehicles' manufacture date. **Exhibit CC**, Summary: *Ford Recall 11S23: Fracture Wheel*

---

5 https://www.forbes.com/sites/jensen/2018/04/24/brake-failure-feds-investigate-whether-ford-should-recall-one-million-sedans/#64d2275470c6

6 https://static.nhtsa.gov/odi/inv/2016/INOA-PE16017-4745.PDF

7 https://www.carcomplaints.com/news/2018/ford-recalls-fusion-and-lincoln-mkz-vehicles.shtml

8 https://www.carcomplaints.com/news/2019/ford-expands-takata-airbag-recalls-953000-vehicles.shtml

9 https://www.usatoday.com/story/money/cars/2018/03/14/ford-recall-fusion-lincoln-mkz-steering-wheel/423395002/

*Studs*; carcomplaints.com, Dec. 7, 2011.[10] The Fusion's 6F35 transmission was recently subject to a multi-model year recall because improper welding could result in loss of motive power and safety concerns for Fusion, Edge and Lincoln MKX and MKZ owners/lessees. **Exhibit DD**, *Ford recalls Edge, Fusion, Lincoln MKZ for transmission gremlins*; Road Show, July 11, 2017[11]; **Exhibit EE**, *Ford Recalls Edge, Fusion, Lincoln MKX and Lincoln MKZ*; carcomplaints.com, Aug. 31, 2019.[12]

82.     Industry media outlets have widely reported on Transmission Defects in Fusions:

    a.   The automatic transmission may develop shifting concerns. On lower mileage vehicles, upgrading the software in the powertrain control module (PCM) and the transmission control module (TCM) may correct the problem. As the mileage increases, internal transmission damage can occur. Repairs could involve replacement of the valve body or a complete transmission rebuild. Whenever major transmission repairs are made, it is important to be sure the PCM and the TCM have the latest software updates to help prevent these issues

---

10https://www.carcomplaints.com/Ford/Fusion/2011/recalls/fracture-wheel-studs-11v574000.shml

11https://www.cnet.com/roadshow/news/ford-recalls-edge-fusion-lincoln-mkz-for-transmission-gremlins/

12https://www.carcomplaints.com/news/2019/ford-recalls-edge-fusion-lincoln-mkx-lincoln-mkz.shtml

from reoccurring. (1063 people reported this problem)

https://repairpal.com/harsh-or-dalayed-shifting-of-automatic-transmission-727

b. Recall of 2017 Fusion for loss of motive power due to poor manufacturing at the site of the torque converter:

https://www.cnet.com/roadshow/news/ford-recalls-edge-fusion-lincoln-mkz-for-transmission-gremlins/

c. Here are Ford Fusion transmission problems, by model year. The most common Fusion transmission problems cost $2,700 to fix & occur at 43,000 miles. The worst model years for transmission problems are the 2010 Fusion, 2013 Fusion, and the 2012 Fusion.

https://www.carcomplaints.com/Ford/Fusion/transmission/

d. Over the years, Ford has officially recalled certain transmission components for upgrade or repair at dealerships. In 2007, service bulletins were issued to correct PCM calibration devices in the Ford Fusion transmission system. The crankshaft pulleys have also been recalled for malfunctioning transmissions…. While the scope of transmission problems are usually more than individuals can repair on their own, dealerships also have poor track record in resolving Ford Fusion transmission malfunctions. When interacting with a Ford dealer, urge them to research all TSB bulletins on the Fusion as they investigate the problems. TSB 07-26-9, for example, is a notice that may get a dealership working directly with the issue rather than dismissing the symptoms as "normal" behavior.

https://itstillruns.com/ford-fusion-transmission-problems-5672289.html

83.    The common theme across all these issues affecting the Fusion and other Ford vehicles is that Ford, upon information and belief, only recalls vehicles when forced to or when it has an inexpensive 'fix' for a problem. Plaintiffs believe Ford's inaction in recalling Fusions for systemic transmission problems indicates, as it did in Ford's DPS6 transmission fiasco, the absence of a permanent and inexpensive resolution to design and/or manufacturing defects. Plaintiffs believe that, through discovery, Ford's internal documents will demonstrate notice of multiple defects affecting the Fusion transmissions that the manufacturer attempted to resolve quietly and inexpensively, while concealing the scope of the issues from current and prospective owners/lessees. The trail of Fusion-related TSBs for module reprogramming, widely-reported breakdowns involving a diverse range of transmission-related parts, and the overwhelming amount of transmission-related complaints submitted to NHTSA all show that Ford disingenuously represented a level of innovation, quality, reliability, and efficiency that Fusion transmissions simply could not live up to.

84.    Plaintiffs believe Ford may have quietly acknowledged the Fusion Transmission Defects by issuing "Customer Satisfaction Programs" to provide

repairs outside of traditional warranty coverage. To avoid a recall, Ford issued Customer Satisfaction Programs to address PCM defects in 2017 Fusion models, **Exhibit FF**, CSP 17B38,[13] corruption of the Electronic Throttle Body in 2016 Fusions, **Exhibit GG**, CSP 16B32,[14] excessive wear of the transmission solenoid regulator valve on 6F35 2010 Fusions, **Exhibit HH**, CSP 10B15, [15] PCM reprogramming to combat fuel tank issues in 2011-12 Fusions, **Exhibit II**, CSP 16B38,[16] transmission inspection and repairs for 2013-14 Hybrids **Exhibit JJ**, CSP 14B07,[17] and others. Each of these Customer Satisfaction Programs enabled Ford to avoid the costly repair mandate associated with a recall. The issuance of a Customer Satisfaction Program for the Fusion transmissions reflects Ford's knowledge of the Fusion transmissions' inherent defects and systemic *component*

---

[13] https://ford.oemdtc.com/3231/customer-satisfaction-program-17b38-powertrain-control-module-reprogramming-2017-ford-fusion

[14] https://ford.oemdtc.com/2661/16b32-electronic-throttle-body-replacement-2015-2016-ford-lincoln

[15] https://fullerisford.files.wordpress.com/2010/03/r10b15c11.pdf

[16] https://ford.oemdtc.com/2668/16b38-powertrain-control-module-reprogramming-and-canister-purge-valve-inspection-2011-2012-ford-fusion

[17] https://ford.oemdtc.com/2846/customer-satisfaction-program-14b07-transmission-inspection-and-repair-2013-2014-ford-c-max-fusion-hybrid

failures.

85.   Finally, upon information and belief, Ford has significant data in its possession revealing its notice of transmission defects in the Fusions, due in part to Ford's extensive Customer Satisfaction Programs. Beyond the warranty and repair history of each Plaintiff, Defendant has superior control and possession of data from consumer complaints, lodged through Ford's call center, in addition to postings collected from Defendant's online sources. Plaintiffs believe thousands of complaints have been collected by Ford Motor Company, detailing the extensive transmission defects that have plagued the Fusion lineup and Plaintiffs' Vehicles.

**Ford Has Unjustly Retained a Substantial Benefit**

86.   On information and belief, Plaintiffs allege that Ford unlawfully failed to disclose the Transmission Defects to induce them to purchase or lease their Vehicles.

87.   Plaintiffs allege further that Ford engaged in deceptive acts and/or practices pertaining to all transactions involving Plaintiffs' Vehicles.

88.   For all the reasons detailed herein, Plaintiffs further allege that Ford unlawfully induced them to purchase or lease their respective Vehicles by

concealing a material fact (the defective transmission) and that they would have paid substantially less for their Vehicles, or not purchased or leased them at all, had they known of the Transmission Defects.

89.    Ford controls dealership conduct through its Franchise Agreements. Ford does not require that its dealerships permanently retain repair records, and Ford's dealerships frequently refuse to provide repair records requested by owners and lessees upon learning that Plaintiffs are in litigation against Ford. This refusal further impedes efforts to fully document repair histories and details specific to the transmissions in Plaintiffs' Vehicles. **Exhibit KK**, Ford Franchise Agreement, at 27, ¶ 12(a). This causes many Plaintiffs ultimately to have to rely upon the information preserved on the aforementioned information-sharing platforms uniquely accessible to Ford. These platforms are readily searchable using the VIN provided by each Plaintiff herein, and they minimally contain and will reflect the precise subject matter of any and every warranty covered repair; the date of same and mileage accumulated at said time; and any specifics related to the transmission in question and any variations thereof. Plaintiffs also will be serving discovery requests upon Ford to recover this information already in Ford's possession and

searchable by VIN. Ford's responses will enable Plaintiffs to even more specifically identify the details pertaining to each warranty-covered transmission repair at a Ford-authorized dealership and any information relating to transmission types and variations therein.

90.    Given their relationship with authorized dealerships, Ford has received additional financial benefit from the out-of-warranty repair of Vehicles with the Transmission Defects, as well as value received from any trade-in or resale when owners choose to purchase another vehicle from a Ford dealership, prejudicing any future legal claim due to lost evidence and/or causing Plaintiffs to incur additional financial liability (or "double negative equity" in separate vehicles) to Ford through its credit division, Ford Motor Credit.

91.    Accordingly, Ford's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did—and likely will continue to—deceive consumers should be disgorged.

### All Statute of Limitations Periods Are Tolled by the Discovery Rule and the Doctrine of Fraudulent Concealment

92.    Ford misrepresented the qualities of the transmission in Plaintiffs' Vehicles at the time of the sale of the Vehicles. Ford also concealed the fact that

the transmission was defective.

93.    Ford continued to misrepresent its ability to repair Plaintiffs' Vehicles in conformity with the warranty throughout the warranty period.

94.    At all relevant times, Ford was aware of the defects in the transmission.

95.    As described in more detail, *supra*, as early as 2009, if not before, Ford knew or should have known about the safety hazard posed by the defective transmissions, and as early as 2009, Ford began issuing significant TSBs to its authorized dealers explaining the widespread issues with the transmission. At no point prior to the sale or lease of Plaintiffs' Vehicles or during Plaintiffs' ownership or lease of their Vehicles did Ford or an authorized dealer ever inform Plaintiffs of the ongoing Transmission Defects.

96.    Ford had a duty to disclose the concealed facts alleged above because Ford made misrepresentations in its marketing materials and window stickers and through its authorized sales representatives about the quality, characteristics, and safety of the transmission.

97.    Ford had a duty to disclose the concealed facts alleged above because

Ford actively concealed material facts in order to induce a false belief.

98.    For example, Ford drafted, produced, and distributed marketing brochures to the public containing representations about the transmission. Ford's marketing brochure for the Vehicle represented that the non-hybrid transmission was a "smooth-shifting 6-speed automatic." (2010 & 2011 Ford Fusion Brochure).

99.    Such marketing efforts are considered to be transcendent into the purchasing process of those who purchased Fusions secondhand or outside of the Model Year sales cycle.

100.    Unfortunately, Plaintiffs' Vehicles became unresponsive and not "smooth-shifting," as Plaintiffs' drive was repeatedly interrupted by jerky shifts and dangerous hesitations due to Transmission Defects. Plaintiffs did not experience gear changes that were smooth, linear or responsive – they experienced jerky gear changes and hesitation between shifts, which necessitated several repairs and repeated reprogramming of the PCM and/or TCM – none of which were sufficient to resolve the Transmission Defects.

101.    Ford made such representations (and continues to do so) regarding the transmissions in Plaintiffs' Vehicles despite its extensive and exclusive internal

knowledge of the Transmission Defects and other problems.

102.  Ford intended for Plaintiffs to rely on those misrepresentations to conceal the fact that the defective transmissions could not be repaired inexpensively.

103.  Prior to the sale of Plaintiffs' Vehicles, and at all times thereafter, Ford therefore failed to disclose to Plaintiffs the existence of the inherent defects in their Vehicles, and Ford failed to disclose its inability to repair these inherent defects, which prevented Plaintiffs' Vehicles from conforming to their applicable warranties. Further, Ford failed to disclose that symptoms of Transmission Defects do not present every time the Vehicle is driven. As a result, requirements that the symptoms be present when inspected prevented under-warranty repairs due to the inability of dealers to "replicate the issue" during the visit. In effect, Ford fraudulently concealed from purchasers and lessees, including Plaintiffs, the fact that the dealers were not properly repairing the defects to the transmissions, and knew that the limited work that Ford had authorized its dealerships to perform on those Fusions would not properly repair them.

104.  Ford has never acknowledged publicly that defects in the Fusion

transmissions even exist.

105.   Because Ford failed to disclose the foregoing facts to Plaintiffs, all statute of limitations periods with respect to the sale of Plaintiffs' Vehicles were tolled by the doctrines of fraudulent concealment, the delayed discovery rule, and/or equitable tolling. As alleged herein, Ford wrongfully concealed the fact that:

    a.   Plaintiffs' Vehicles are equipped with defective transmissions;

    b.   Ford's dealerships often were making inadequate repairs that were incapable of addressing the root causes of the Transmission Defects; and

    c.   Ford dealerships frequently reported to owners and lessees, acting on information supplied by Ford, that any issues they had with their vehicle were "normal," not "replicable," or insufficient for repair, preventing a fix for the Transmission Defects and a permanent record of the concerns expressed and symptoms experienced.

106.   Plaintiffs did not discover, and should not have discovered, the operative facts that are the bases of their claims alleged herein because Ford

concealed the facts in confidential and privileged documents that a consumer would not know about and could not obtain.

107.   Plaintiffs did not discover, and should not have discovered, that the symptoms they were experiencing with their Vehicles' transmissions were not "normal" or "normal driving characteristics" as represented by Ford but, rather, indicia of defects entitling Plaintiffs to bring claims for relief; Plaintiffs have filed this Complaint within two years of when they discovered or should have discovered the existence of their claims.

108.   Without the benefit of counsel, no amount of diligence by Plaintiffs could have led to the discovery of these facts because they were kept secret by Ford; therefore, Plaintiffs were not at fault for failing to discover these facts sooner.

109.   Plaintiffs did not have actual knowledge of facts sufficient to put them on notice. Plaintiffs did not know, and could not have known, about Ford's inability to repair the defects in its transmissions because, as alleged above, Ford kept this information highly confidential. Moreover, Ford, and its dealership agents relying upon information supplied by Ford, falsely and fraudulently assured

Plaintiffs that its repairs were effective.

110.   Further, the running of the statute of limitations period applicable to Plaintiffs' fraudulent concealment/omission claim continues to be tolled because Ford continues to deny the existence of the Transmission Defects and its duty to disclose them to consumers, including Plaintiffs.

111.   Ford is also equitably estopped from relying on any statute of limitation because of its concealment of the defective nature of Plaintiffs' Vehicles and their transmissions, and because Ford has had notice of the Defective Transmission for years through nation-wide litigation regarding same.

**Ford's Actions Have Damaged Plaintiffs, Who Are Entitled To Redress**

112.   Plaintiffs are entitled to be put into the position they would have been had they not been subjected to Ford's fraud and wrongdoing. At the very least, this would involve repurchase of the Vehicles still owned or leased by Plaintiffs, and reimbursement or adequate alternative compensation to those who were forced into voluntary repossession and/or replacement vehicles.

113.   Plaintiffs are also entitled to recover non-economic damages for Ford's fraud and violation of the Michigan Consumer Protection Act ("MCPA"),

Mich. Comp. Laws §§ 445.901 - 445.922. In addition to Plaintiffs' economic and non-economic damages, Plaintiffs are entitled to recover statutory costs and attorney fees. *Id.*, § 445.911.

114.    Ford's conduct is sufficiently reprehensible to allow an award for punitive damages for those Plaintiffs residing in states that allow them. The issue of punitive damages is considered to be a substantive issue of law, and thus, under the choice of law rules set forth above, the availability of punitive damages would be governed by the law of the state in which Plaintiffs reside.

115.    Economic loss doctrine does not apply to Plaintiffs' claims because Plaintiffs purchased or leased their Vehicles primarily for personal and household use.    Consumers cannot logically be expected to assume that motor vehicles commonly come with defects known to the manufacturer but fraudulently concealed from consumers despite the serious safety risks posed by said concealed defects.

116.    As of the filing of this Second Amended Complaint, Ford has been aware for approximately a year of the breach of warranty alleged by Plaintiffs who purchased or leased defective Fusions, including through numerous individual

communications from Plaintiffs to Ford via Ford's agent-dealerships, the filing of an earlier lawsuit, and earlier iterations of this complaint.   Nevertheless, Ford has never insisted upon or even mentioned in writing any third-party or informal dispute resolution process as contemplated by various warranty laws.   As such, even if any such process exists, Plaintiffs have not received, and could not now receive, timely notice in writing of such a procedure.   At this point, Ford has waived its right to insist on any such process, and Plaintiffs have no obligation to submit to such a procedure before bringing their warranty claims alleged below.

117.   Requiring an informal dispute settlement procedure, or affording Ford further opportunity to cure its breach of written warranties, would be unnecessary and futile.   At the time of sale or lease of each Vehicle, Ford knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Vehicles' inability to perform as warranted, but nonetheless failed to cure the situation and/or disclose the Transmission Defects.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or

afford Ford further opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

118.   Likewise, as of the filing of this Second Amended Complaint,[18] Ford has been on actual and written notice for over a year of the warranty and consumer protection violations alleged by Plaintiffs who purchased or leased defective Fusions.   Nevertheless, Ford has never attempted to cure its violations.

119.   In the following paragraphs, Plaintiffs set forth the facts of their respective purchases or leases of Ford Fusions as known to them or available through reasonable efforts and without the benefit of formal discovery. Ford has, however, superior access to Ford dealerships' detailed warranty-covered repair records for Plaintiffs, and additional information unknown to some Plaintiffs herein regarding transmission type or variations thereto, if any, through one or more of Ford's three electronically accessible information-sharing platforms: Oasis, FMC360, and CuDL. These databases are commonly used by Ford's Customer Service and/or authorized dealership employees to, *inter alia*, document

---

18 Plaintiffs filed a proposed version of this Second Amended Complaint on January 17, 2020 [Dkt. 19-2].

consumer complaints for the ultimate purpose of providing Ford clear details as to public concerns regarding product issues.

## PLAINTIFF-SPECIFIC ALLEGATIONS

120.   Plaintiffs are listed below under the subheading corresponding to their respective states of purchase and/or residence.

### Alabama

121.   Plaintiff Bobby Johnson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Alabama, residing in the City of Deatsville. On or about March 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78DR301960 (for the purpose of this paragraph only, the "Vehicle"), from Long Lewis Ford, located at 1846 Alpine Dr, Deatsville, AL 36022. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around June 2015 at approximately 40,000 miles. Plaintiff has experienced, and

59

continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Gears Slipping, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components. Plaintiff sought transmission repairs from the following dealership: Long Lewis Ford - Prattville, 2091 AL-14, Prattville, AL 36066. Plaintiff has sought repairs six times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in June 2015, August 2015, December 2015, February 2016, July 2016, and January 2017.

122.   Plaintiff Christopher Oliver (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Pensacola. On or about November 14, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR8DR288841 (for the purpose of this paragraph only, the "Vehicle"), from Bondy's Ford, located at 3615 Ross Clark Circle, Dothan, AL 36303.

Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Historical Brand Slogans. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Sustainability/Long-Lasting. Plaintiff first experienced the Transmission Defect on or about December 10, 2018, at approximately 81,448 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Lack of Power, Delayed Downshifts, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: World Ford Pensacola, 6397 Pensacola Blvd, Pensacola, FL 32505. Plaintiff has sought repairs two times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: January 15, 2019, and

July 5, 2019.

123.   Plaintiff Deajia Thompson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Alabama, residing in the City of Huntsville. On or about September 15, 2014, Plaintiff purchased a 2012 Ford Fusion Titanium, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA0CR304466 (for the purpose of this paragraph only, the "Vehicle"). Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to lease the Vehicle: Dealership Salesperson and Consumer Awards/Reviews.

124.   Plaintiff Demarion Whiteside (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Alabama, residing in the City of Anniston. On or about October 19, 2015, Plaintiff purchased a 2016 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G70GR210753 (for the purpose of this paragraph only, the "Vehicle"), from Talladega Ford, located at 723 Battle St. E., Talladega, AL 35160. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle

Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about December 20, 2018, at approximately 70,601 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: Sunny King Ford, 1507 S Quintard Ave, Anniston, AL 36201. Plaintiff has sought repairs two times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

125.   Plaintiff Diane Cardwell (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of Georgia, residing in the City of Riverdale. On or about December 24, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73GR274283 (for the purpose of this paragraph only, the "Vehicle"), from Woody Anderson Madison, located at 1638 Hughes Rd, Madison, AL 35758. Plaintiff first experienced the Transmission Defect in or around January 2019 at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, and Transmission Failures in Traffic. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Allan Vigil Ford of Fayetteville, 275 Glynn St N, Fayetteville, GA 30214. Plaintiff has sought repairs one time under warranty. The Vehicle was repaired in January 2019.

126.   Plaintiff Melinda Callan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Alabama, residing in the City of Gaylesville. On or about May 16, 2010, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number

3FAHP0JA8AR370643 (for the purpose of this paragraph only, the "Vehicle"), from Carl Gregory Ford, located at 1916 Glenn Blvd SW, Fort Payne, AL 35968. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, TV, Radio or Billboard Ads, Dealership Salesperson, and Historical Brand Slogans. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about May 17, 2010, at approximately 100 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Bucking and Kicking on Acceleration (Shuddering or Juddering).    Plaintiff sought transmission repairs from the following dealership: Landers McLarty Ford of Fort Payne, 1916 Glenn Blvd, Fort Payne, AL 35968. Plaintiff has sought repairs four times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The

Vehicle was unsuccessfully repaired in the following: June 2010, August 2010 and March 2011.

127.   Plaintiff Rachel Thomas (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Alabama, residing in the City of Dutton. On or about February 9, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G73GR323516 (for the purpose of this paragraph only, the "Vehicle"), from Woody Anderson Ford, located at 2500 Jordan Lane, Huntsville, AL 35816. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claim or representation to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about October 9, 2019, at approximately 83,293 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Transmission.   Plaintiff sought transmission repairs from the following dealership: Harbin Automotive, 564 Micah Way, Scottsboro, AL

35769. Plaintiff has sought repairs one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired on or around October 9, 2019.

128.   Plaintiff Samantha Louise Tingle (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Alabama, residing in the City of Killen. On or about June 15, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H77DR134670 (for the purpose of this paragraph only, the "Vehicle"), from National Advance Auto Sales, located at 3641 Cloverdale Road, Florence, AL 35633. Plaintiff first experienced the Transmission Defect in October 2017 at approximately 135,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Violent Jerking. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Long-Lewis Ford, 2800 Woodward Avenue, Muscle Shoals, LA 35661. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when

Plaintiff sought transmission repairs to the Vehicle: Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in November 2017.

### Arkansas

129.   Plaintiff Judith Young (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arkansas, residing in the City of Conway. On or about July 1, 2010, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA7AR336327 (for the purpose of this paragraph only, the "Vehicle").

130.   Plaintiff Kenisha Jeffers (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arkansas, residing in the City of Brinkley. On or about October 10, 2015, Plaintiff purchased a 2013 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G71DR110656 (for the purpose of this paragraph only, the "Vehicle"), from Bale Chevrolet, located at 13101 Chenal Pkwy., Little Rock, AR 72211. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to lease the Vehicle:

Internet Marketing. Plaintiff first experienced the Transmission Defect on or about January 2016. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, Gears Slipping, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.

131.   Plaintiff Kim Colbert (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arkansas, residing in the City of Jacksonville. On or about October 3, 2018, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0H92DR134478 (for the purpose of this paragraph only, the "Vehicle"), from Gwantney GMC, located at 5700 Landers Road, Jacksonville, AR 72117. Plaintiff first experienced the Transmission Defect on or about May 21, 2019. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Gears Slipping.   Plaintiff sought transmission repairs from the following dealership: Quality Transmission, 1800 General Samuel Road, Jacksonville, AR 72076. Plaintiff has sought repairs one time under warranty and two times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or

repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

132.  Plaintiff Kimberly Nicholson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arkansas, residing in the City of Conway. On or about September 6, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H72GR323876 (for the purpose of this paragraph only, the "Vehicle"), from Smith Ford, located at 908 E. Oak Street, Conway, AR 72032. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Bucking and Kicking on Acceleration (Shuddering or Juddering).  Plaintiff sought transmission repairs from the

following dealership: Smith Ford, 908 E. Oak Street, Conway, AR 72032. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

133.   Plaintiff Nicholas Burks (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arkansas, residing in the City of Cabot. On or about September 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H91DR249119 (for the purpose of this paragraph only, the "Vehicle").

## Arizona

134.   Plaintiff Henry Woode (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arizona, residing in the City of Tucson. On or about December 1, 2018, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73FR163103 (for the purpose of this paragraph only, the "Vehicle"), from Simple Car Store, located at 1701 W Broadway Rd, Mesa, AZ 85202. Plaintiff first experienced the Transmission Defect in or around October 2018 at

approximately 145,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: AAMCO Transmissions & Total Care, 7120 E Golfinks Rd, Tucson, AZ 85730. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired in December 2018.

135.   Plaintiff Jeb Breese (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arizona, residing in the City of Phoenix. On or about October 1, 2017, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HD3F5131258 (for the purpose of this paragraph only, the "Vehicle").

136.   Plaintiff Jon Madison (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Arizona, residing in the City of Phoenix. On or about January 1, 2015, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35

six-speed automatic transmission, Vehicle Identification Number 3FAHP0HG8CR274251 (for the purpose of this paragraph only, the "Vehicle"), from Earnhardt Ford, located at 7300 W. Orchid Lane, Chandler, AZ 85226. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about January 1, 2015, at approximately 88,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Deceleration/Clunks when Slowing or Accelerating, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: Earnhardt Ford, 7300 W. Orchid Lane, Chandler, AZ

85226. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

137.   Plaintiff Timothy Faith's claim is scheduled to be dismissed without prejudice.

## California

138.   Plaintiff Billy Davidson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of California, residing in the City of Porter Ranch. On or about July 1, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73DR291614 (for the purpose of this paragraph only, the "Vehicle"), from Galpin Ford, located at 15505 Roscoe Blvd, North Hills, CA 91343. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff

first experienced the Transmission Defect in or around November 2017 at approximately 63,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff sought transmission repairs from the following dealership: Galpin Ford, 15505 Roscoe Blvd, North Hills, CA 91343. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was repaired on the following dates: November 29, 2017, June 11, 2018, and January 2019.

139.  Plaintiff Christoper Morss (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of California, residing in the City of Westminster. On or about June 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification

Number 3FA6P0H74DR127921 (for the purpose of this paragraph only, the "Vehicle"), from Enterprise Car Sales, located at 17541 Beach Blvd, Huntington Beach, CA 92647. Plaintiff first experienced the Transmission Defect at approximately 98,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: AAMCO Transmissions and Total Car Care, 7201 Garfield Ave, Huntington Beach, CA 92648. Plaintiff has sought repairs two times outside the warranty. The Vehicle was repaired in March 2018 and April 2018.

140. Plaintiff Dominique Haggard (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of California, residing in the City of Hayward. On or about March 1, 2018, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H79GR147652 (for the purpose of this paragraph only, the "Vehicle"),

from Paul Blanco's Good Car Company, located at 7201 Oakport St, Oakland, CA 94621. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, and Violent Jerking.

141.   Plaintiffs Justin and Crystal Brown (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Nebraska, residing in the City of Tecumseh. On or about September 1, 2016, Plaintiffs purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71GR206810 (for the purpose of this paragraph only, the "Vehicle"), from Future Ford of Madison Avenue, located at 4625 Madison Avenue, Sacramento, CA 95841. Plaintiffs viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting and Free of Transmission Issues. Plaintiffs first experienced the Transmission Defect in or around September 2016 at

approximately 20,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Premature Wear of Internal Components. Plaintiffs sought transmission repairs from the following dealership: Future Ford of Madison Avenue, 4625 Madison Avenue, Sacramento, CA 95841. Plaintiffs sought repairs two times under warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in 2016.

142. Plaintiff Nick Neace (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Roseville. On or about April 24, 2015, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H79FR245899 (for the purpose of this paragraph only, the "Vehicle"), from Lithia Ford Lincoln of Fresno, located at 195 E. Auto Center Dr., Fresno, CA

93710. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Drivability. Plaintiff first experienced the Transmission Defect in November 2015 at approximately 5,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.    Plaintiff sought transmission repairs from the following dealership: AutoNation Ford, 1493 CO Road E. East, White Bear Lake, MN 55110. Plaintiff has sought repairs five times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

## Colorado

143.   Plaintiff Cody Rainwater (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Colorado, residing in the City of Colorado

Springs. On or about January 28, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD6ER107970 (for the purpose of this paragraph only, the "Vehicle"), from Pikes Peak Acura, located at 655 Automotive Dr, Colorado Springs, CO 80905. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Historical Brand Slogans. Plaintiff first experienced the Transmission Defect on or about January 6, 2019, at approximately 98,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Complete Transmission Failure Requiring Repair/Replacement, and Whining.  Plaintiff sought transmission repairs from the following dealership: Phil Long Ford, 7887 W Tufts Ave, Denver, CO 80123. Plaintiff has sought repairs one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions

Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in February 2019.

144.   Plaintiff Daniel Gonzales (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Colorado, residing in the City of Colorado Springs. On or about December 1, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0T92GR268211 (for the purpose of this paragraph only, the "Vehicle"), from Phil Long Ford Motor City, located at 1212 Motor City Dr, Colorado Springs, CO 80905. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to lease the Vehicle: TV, Radio or Billboard Ads and Historical Brand Slogans. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to lease the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect on or about June 20, 2016, at approximately 3,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking,

Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Phil Long Ford Motor City, 1212 Motor City Dr, Colorado Springs, CO 80905. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired on the following dates: June 22, 2016, and September 5, 2016.

145.   Plaintiff Isaac Lopez (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Kansas City. On or about December 13, 2012, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0D90DR184074 (for the purpose of this paragraph only, the "Vehicle"), from Medved Ford, located at 1404 S Wilcox St., Castle Rock, CO 80104. Plaintiff first experienced the Transmission Defect in or around November 2015 at approximately 49,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Bucking and

Kicking on Acceleration (Shuddering or Juddering).    Plaintiff sought transmission repairs from the following dealership: Medved Ford, 1404 S Wilcox St., Castle Rock, CO 80104. Plaintiff has sought repairs one time. The Vehicle was repaired on the following date: December 15, 2015.

146.   Plaintiff Meleesa Genereux's claim is scheduled to be dismissed without prejudice.

147.   Plaintiff Scott Swendsen (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Colorado, residing in the City of Colorado Springs. On or about November 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0D91DR119718 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect in July 2018 at approximately 58,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering and Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in

Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Auto Mall, 1565 Auto Mall Loop, Colorado Springs, CO 80920. Plaintiff has sought repairs one time under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following date: November 20, 2018.

### Delaware

148.   Plaintiff Latisha Clark (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Delaware, residing in the City of Smyrna. On or about February 1, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD0ER210382 (for the purpose of this paragraph only, the "Vehicle").

149.   Plaintiff Sean Quirk (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Delaware, residing in the City of Magnolia. On or about May 20, 2016, Plaintiff purchased a 2013 Ford Fusion Titanium, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number

3FA6P0K92DR152259 (for the purpose of this paragraph only, the "Vehicle"),
from Winner Ford, located at 591 South DuPont Hwy, Dover, DE 19901. Plaintiff
viewed or otherwise received the following advertisements or representations by
Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing
and Dealership Salesperson. Ford dealership sales personnel made the following
claims or representations to Plaintiff, on which Plaintiff relied in deciding to
purchase      the      Vehicle:      Vehicle      Dependability,      Drivability,
Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff
first experienced the Transmission Defect on or about May 20, 2019, at
approximately 21,000 miles. Plaintiff has experienced, and continues to
experience, the following manifestations of the Transmission Defect: Violent
Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed
Acceleration, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks
when Slowing or Accelerating.    Plaintiff sought transmission repairs from the
following dealership: Ford Dealership in Dover, 591 S. Dupont Hwy, Dover, DE
19901. Plaintiff has sought repairs four times under warranty. Plaintiff was charged
a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of

the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: July 10, 2017, February 20, 2018, and February 26, 2018.

### Florida

150.    Plaintiff Abdemner Ortiz Velasquez (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Homestead. On or about June 29, 2017, Plaintiff purchased a 2017 Ford Fusion, SEL FWD, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD4HR166391 (for the purpose of this paragraph only, the "Vehicle").

151.    Plaintiff Amaurys Estrada (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Miami. On or about February 24, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H73E5362508 (for the purpose of this paragraph only, the "Vehicle"),

from Auto Club of Miami, located at 10220 NW 27 Ave, Miami, FL 33176. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to lease the Vehicle: Internet Marketing. Plaintiff first experienced the Transmission Defect in 2017 at approximately 120,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, Gears Slipping, and Hard Decelerations/Clunks when Slowing or Accelerating.

152.   Plaintiff Aimee Boltz-Mielke (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Land O'Lakes. On or about September 1, 2015, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K93ER115836 (for the purpose of this paragraph only, the "Vehicle"), from Brandon Ford, located at 9090 E Adamo Dr, Tampa, FL 33619. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and

Reliability. Plaintiff first experienced the Transmission Defect on or about February 7, 2019, at approximately 98,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Premature Wear of Internal Components, and Transmission Failures in Traffic. Plaintiff sought transmission repairs from the following dealerships: AutoNation Ford, 2525 34th St N, St. Petersburg, FL 33713 and STS Transmission, 325 Cattlemen Rd unit A, Sarasota, FL 34232. Plaintiff has sought repairs three times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is and Drivability is Acceptable. The Vehicle was repaired on the following dates: March 1, 2018, February 7, 2019, and March 18, 2019.

153. Plaintiff Arthur Roberts (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of High Springs. On or about December 20, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a

21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71ER333456 (for the purpose of this paragraph only, the "Vehicle"), from Enterprise Car Sales. Plaintiff first experienced the Transmission Defect at approximately 14,587 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Santa Fe Ford, 16330 NW US Highway 441, Alachua, FL 32615. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following dates: May 7, 2016, September 14, 2016, and November 19, 2016.

154.   Plaintiff Barry Satarsky (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Boynton Beach. On or about November 28, 2018, Plaintiff purchased a 2016 Ford Fusion

SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H77GR243795 (for the purpose of this paragraph only, the "Vehicle"), from Delray Ford, located at 3000 S Federal Hwy, Delray Beach, FL 33483. Plaintiff first experienced the Transmission Defect at approximately 15,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Gears Slipping, Lack of Power, and Transmission Failures in Traffic. Plaintiff experienced a transmission failure that resulted in a collision.

155. Plaintiff Bonnie Foley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Valrico. On or about December 9, 2013, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JG3BR143933 (for the purpose of this paragraph only, the "Vehicle"), from Brandon Ford, located at 9090 Adamo Drive, Tampa, FL 33619. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Dealership Salesperson. Ford dealership sales personnel made

the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in January 1 of2014, at approximately 31,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Delayed Downshifts, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: Brandon Ford, 9090 Adamo Drive, Tampa, FL 33619. Plaintiff has sought repairs five times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired on the following dates: December 21, 2013, January 2, 2014, January 13, 2014, January 27, 2014, and August 12, 2015.

156.   Plaintiff Bryce Johnson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Cassandra. On or about April 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a

21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71DR347419 (for the purpose of this paragraph only, the "Vehicle"), from Sun State Ford, located at 3535 West Colonial Dr., Orlando, FL 32808. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Sustainability/Long-Lasting. Plaintiff first experienced the Transmission Defect at approximately 30,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Difficulty Stopping, Lack of Power, and Delayed Downshifts. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Sun State Ford, 3535 West Colonial Dr., Orlando, FL 32808. Plaintiff has sought repairs two times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the

following dates: May 11, 2016, September 2, 2017, and March 2019.

157.   Plaintiff Deborah Collins (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Jacksonville. On or about March 27, 2015, Plaintiff purchased a 2010 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA2AR155488 (for the purpose of this paragraph only, the "Vehicle"), from March Motors, located at 8505 Atlantic Blvd, Jacksonville, FL 32211. Plaintiff first experienced the Transmission Defect on or about February 15, 2016, at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Difficulty Stopping, Lack of Power, Premature Wear of Internal Components, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: March Motors, 8505 Atlantic Blvd, Jacksonville, FL 32211. Plaintiff has sought repairs two times under warranty and two times outside the warranty. The Vehicle was repaired in February 2016 and March 2016.

93

158.   Plaintiff Diamond Rivera (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Fort Myers. On or about April 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H98DR310577 (for the purpose of this paragraph only, the "Vehicle").

159.   Plaintiffs Eddie and Sue Jinks (for the purpose of this paragraph only, "Plaintiff"), are citizens of the State of Florida, residing in the City of Jacksonville. On or about December 1, 2014, Plaintiffs purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73DR364125 (for the purpose of this paragraph only, the "Vehicle"), from Mike Davidson Ford, located at 9650 Atlantic Blvd, Jacksonville, FL 32225. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Free of Transmission Issues. Plaintiffs first experienced the Transmission Defect on or about October 2017 at approximately 80,000 miles. Plaintiffs have experienced, and continues to experience, the following manifestation(s) of the Transmission Defect: Delayed Acceleration, Difficulty Stopping, Hard Decelerations/Clunks

when Slowing or Accelerating, and Transmission Failures in Traffic. Plaintiffs sought transmission repairs from the following dealership: Mike Davidson Ford, 9650 Atlantic Blvd, Jacksonville, FL 32225. Plaintiffs have sought repairs one time under warranty and two times outside the warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in or around November 2017 and October 2018.

160.   Plaintiff Elizabeth Reyes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Colorado, residing in the City of Thornton. On or about April 1, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H77ER259248 (for the purpose of this paragraph only, the "Vehicle"), from Benji Auto, located at 15060 Durham Ln, Davie, FL 33331. Plaintiff first experienced the Transmission Defect on or about September 15, 2016, at approximately 7,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, and Violent Jerking.   Plaintiff sought transmission repairs from the following dealership: Pines Ford, 8655 Pines Blvd, Pembroke Pines, FL 33024.

Plaintiff has sought repairs one time. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was repaired in or around June 2017.

161.   Plaintiffs Erin and Scott Barranti (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Florida, residing in the City of Malabar. On or about October 15, 2015, Plaintiffs purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G76E5384701 (for the purpose of this paragraph only, the "Vehicle"), from Palm Bay Ford, located at 1202 Malabar Rd SE, Palm Bay, FL 32907. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Lack of Power, and Hard

Decelerations/Clunks when Slowing or Accelerating. Plaintiff sought transmission repairs from the following dealership: Palm Bay Ford. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal."

162. Plaintiffs Frederick Seemann and Frederick Seemann, Jr. (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Florida, residing in the City of Gainesville. On or about November 21, 2012, Plaintiffs purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78DR138274 (for the purpose of this paragraph only, the "Vehicle"), from Parks Ford Lincoln of Gainesville, located at 3333 N Main St., Gainesville, FL 32609.

163. Plaintiff Gayle Jackson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Mulberry. On or about March 24, 2014, Plaintiff purchased a 2012 Ford Fusion Titanium, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA0CR213410

(for the purpose of this paragraph only, the "Vehicle"), from DriveTime, located at 1825 Memorial Blvd., Lakeland, FL 33815. Plaintiff first experienced the Transmission Defect in or around April 2013 at approximately 90,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.

164.   Plaintiff Holley Robertson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Labelle. On or about July 2, 2016, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HGXCR188004 (for the purpose of this paragraph only, the "Vehicle").

165.   Plaintiff James Mcspedon (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of West Palm Beach. On or about July 2, 2016, Plaintiff purchased a 2013 Ford Fusion Titanium, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K91DR206781 (for the purpose of this paragraph only, the

"Vehicle"), from Al Packard Ford, located at 10601 Southern Blvd., Royal Palm Beach, FL 33411. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in 2016 at approximately 51,000. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Hard Decelerations/Clunks when Slowing or Accelerating.  Plaintiff contacted Ford about the Transmission Defect in or around February 2017. Plaintiff sought transmission repairs from the following dealership: Al Packer Ford East, 10601 Southern Blvd., Royal Palm Beach, FL 33411. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

166.   Plaintiff James Watson (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of Florida, residing in the City of Panama City. On or about March 12, 2016, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0H90DR127710 (for the purpose of this paragraph only, the "Vehicle").

167.   Plaintiff Javier Vasquez (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Lakeland. On or about January 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR5DR348400 (for the purpose of this paragraph only, the "Vehicle"), from Jarret Scott Ford, located at 2000 E. Baker St, Plant City, FL 33563. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around December 2017 at approximately 104,000 miles. Plaintiff has experienced, and continues to

100

experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: AAMCO Lakeland, 1301 W Memorial Blvd, Lakeland, FL 33815. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired in January 2018.

168.   Plaintiff Joe Espinosa (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Sunrise. On or about February 7, 2015, Plaintiff purchased a 2015 Ford Fusion S, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H96FR203126 (for the purpose of this paragraph only, the "Vehicle"), from Sawgrass Ford, located at 14501 W. Sunrise Blvd, Sunrise, FL 33323. Plaintiff first experienced the Transmission Defect on or about May 26, 2016, at approximately 11,638 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Difficulty Stopping, and Transmission Failures in Traffic. Plaintiff

101

experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Sawgrass Ford, 14501 W. Sunrise Blvd, Sunrise, FL 33323. Plaintiff has sought repairs one time under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired in May 2016.

169. Plaintiff John Lowe (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of St. Cloud. On or about May 1, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H7XER261950 (for the purpose of this paragraph only, the "Vehicle"), from Greenway Ford, located at 9001 East Colonial Dr., Winter Park, FL 32817. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the

102

Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about October 20, 2016, at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, and Delayed Downshifts. The Vehicle was never successfully repaired.

170. Plaintiff Marion Hand (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Homosassa. On or about February 26, 2016, Plaintiff purchased a 2013 Ford Fusion, Vehicle Identification Number 3FA6P0H7XDR138485 (for the purpose of this paragraph only, the "Vehicle"), from Mullinax, located at 1210 Northlake Blvd, Lake Park, FL 33403. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads, Internet, and Historical Brand Slogans. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle

Dependability, Drivability, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in 2017 at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Gears Slipping, Lack of Power, and Delayed Downshifts. Plaintiff sought transmission repairs from the following dealership: Nick Nicholas Ford Inc, 2901 FL-44, Inverness, FL 34453. Plaintiff has sought repairs four times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal".

171. Plaintiff Mark Phillips (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of St. Petersburg. On or about August 23, 2014, Plaintiff purchased a 2015 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K94FR102059 (for the purpose of this paragraph only, the

"Vehicle"), from AutoNation Ford, located at 2525 34ᵗʰ Street N., St. Petersburg, FL 33713. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to lease the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about October 21, 2014, at approximately 2,800 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Gears Slipping.

172. Plaintiff Marvin Edwards (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Bradenton. On or about December 22, 2018, Plaintiff purchased a 2015 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G7XFR288763 (for the purpose of this paragraph only, the "Vehicle"),

from AutoNation Ford Bradenton, located at 5325 14th Street W., Bradenton, FL 34207. Plaintiff first experienced the Transmission Defect on or about March 20, 2019, at approximately 36,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Hard Shifting. Plaintiff contacted Ford about the Transmission Defect on or about March 20, 2019. Plaintiff has sought repair one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability Concerns Expressed Were "Normal. The Vehicle was never successfully repaired.

173. Plaintiff Matthew Merola (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Orlando. On or about December 15, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0D97GR263827 (for the purpose of this paragraph only, the "Vehicle"), from Sunrise Ford, located at 5435 US-1, Fort Pierce, FL 34982. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, TV, Radio and Billboard Ads, Dealership Salesperson, Internet Marketing, Historical Brand

106

Slogans, and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Lack of Power, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff has sought repairs five times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

174.  Plaintiff Meagan Albin (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Brandon. On or about December 1, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number

3FA6P0H77GR255087 (for the purpose of this paragraph only, the "Vehicle").

175.  Plaintiff Melanie Graham (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Orange Park. On or about November 10, 2016, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HDXF5121178 (for the purpose of this paragraph only, the "Vehicle"), from Miracle Toyota, located at 37048 US-27, Haines City, FL 33844. Plaintiff first experienced the Transmission Defect in March. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration and Lack of Power.

176.  Plaintiff Monica Pickens (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Minneola. On or about March 1, 2012, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JAXCR121912 (for the purpose of this paragraph only, the "Vehicle"), from Peacock Ford, located at 1875 S. Orlando Avenue, Maitland, FL 32751. Plaintiff viewed or otherwise received the following advertisements or

108

representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in 2013 at approximately 12,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Throttle Body Replacement, and Gears Slipping.

177. Plaintiff Robert Nickel (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Leigh Acres. On or about July 4, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR6DR326650 (for the purpose of this paragraph only, the "Vehicle"), from Automatch USA, located at 8900 Colonial Center Drive, Ft. Myers, FL 33905. Plaintiff first experienced the Transmission Defect on or about July 5,

2015, at approximately 52,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, and Gears Slipping.

178.  Plaintiff Roberto Cortez (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Hallandale Beach. On or about October 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR1DR158769 (for the purpose of this paragraph only, the "Vehicle").

179.  Plaintiff Rose Szymanski (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Wauchula. On or about October 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73GR177570 (for the purpose of this paragraph only, the "Vehicle").

180.  Plaintiff Tim Turner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Port Charlotte. On or about January 1, 2012, Plaintiff purchased a 2011 Ford Fusion,

SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA0BR105510 (for the purpose of this paragraph only, the "Vehicle"), from Emporium Auto Mart, located at 6828 N. Florida Avenue, Tampa, FL 33604. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Plaintiff first experienced the Transmission Defect in 2013 at approximately 42,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering and Juddering), Delayed Acceleration, Lack of Power, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Don Gasgarth's Charlotte County Ford, 3156 Tamiami Trail, Port Charlotte, FL 33952. Plaintiff has sought repairs four times outside the warranty. The Vehicle was never successfully repaired.

181.  Plaintiff Trent Turner's claim is scheduled to be dismissed without prejudice

182.   Plaintiff Tyler Deleon (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Jacksonville. On or about February 1, 2016, Plaintiff purchased a 2012 Ford Fusion Titanium, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA4CR254607 (for the purpose of this paragraph only, the "Vehicle"), from Honda of the Avenues, located at 11333 Philips Hwy, Jacksonville, FL 32256. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Plaintiff first experienced the Transmission Defect on or about May 11, 2016, at approximately 69,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components.   Plaintiff contacted Ford about the Transmission Defect in May 2016. Plaintiff has sought repairs three times under warranty. Plaintiff was

112

assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was never successfully repaired.

## **Georgia**

183.   Plaintiff Deborah Engelbracht (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Conyers. On or about June 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G70GR374987 (for the purpose of this paragraph only, the "Vehicle"), from Courtesy Ford Conyers Georgia, located at 1636 Dogwood Drive, Conyers, GA 30013. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about June 15, 2017, at approximately 29,770 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power,

Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Courtesy Ford Conyers Georgia, 1636 Dogwood Drive, Conyers, GA 30013. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: June 14, 2017, August 28, 2018, and September 17, 2019.

184.  Plaintiff Debra Potts (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Stephens. On or about July 20, 2014, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H72GR296503 (for the purpose of this paragraph only, the "Vehicle"), from Athens Ford, located at 4260 Atlanta Highway, Athens, GA 30606 Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or

representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around August 2014 at approximately 2,500 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, and "Would Refuse to Change Gears Completely." Plaintiff sought transmission repairs from the following dealership: Athens Ford, 4260 Atlanta Highway, Athens, GA 30606. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was never successfully repaired.

185.   Plaintiff Gerald Lenz (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Monticello. On or about April 7, 2016, Plaintiff purchased a 2012 Ford Fusion, SEL FWD, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA6CR329043 (for the purpose of this paragraph only, the "Vehicle").

186.   Plaintiff Kimberly Marshall (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of Georgia, residing in the City of Dahlonega. On or about March 8, 2011, Plaintiff purchased a 2010 Ford Fusion, SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JG6AR306394 (for the purpose of this paragraph only, the "Vehicle").

187. Plaintiff Louis King (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Norcross. On or about September 1, 2015, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA8CR296780 (for the purpose of this paragraph only, the "Vehicle"), from Gwinnett Place Ford, located at 3230 Satellite Blvd, Duluth, GA 30096. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about April 16, 2016, at approximately 90,000 miles.

116

Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Transmission Failures. Plaintiff contacted Ford about the Transmission Defect on or about June 15, 2016.

188.   Plaintiff Mike B. Jordan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Warner Robins. On or about March 10, 2012, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA8CR190197 (for the purpose of this paragraph only, the "Vehicle"), from Riverside Ford, located at 2089 Riverside Drive, Macon, GA 31204. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff

117

first experienced the Transmission Defect in or around May 2014 at approximately 32,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Gears Slipping, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff sought transmission repairs from the following dealership: Riverside Ford, 2089 Riverside Drive, Macon, GA 31204. Plaintiff has sought repairs four times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable and Transmission Functions Normally. The Vehicle was never successfully repaired.

189.   Plaintiff Rene Musslewhite's claim is scheduled to be dismissed without prejudice.

190.   Plaintiff Rhonda Levitt (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Atlanta. On or about October 1, 2016, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number

3FA6P0H77GR402427 (for the purpose of this paragraph only, the "Vehicle"), from AutoNation Ford Union City, located at 4355 Jonesboro Road, Union City, GA 30291. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about October 29, 2016, at approximately 15,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect on or about October 29, 2016.

Plaintiff sought transmission repairs from the following dealership: AutoNation Ford Union City, 4355 Jonesboro Road, Union City, GA 30291. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in August 2017 and July 2018.

191.   Plaintiff Russell Maryott (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Jersey City. On or about March 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR0DR165356 (for the purpose of this paragraph only, the "Vehicle"), from Bridgecrest, located at 3525 Satellite Blvd., Duluth, GA 30096. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson and Consumer Awards/Reviews.

192.   Plaintiffs Tamara Neal and Peggy Pelfrey's claim is scheduled to be

dismissed without prejudice.

193.   Plaintiff Tiffeny Miller (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Georgia, residing in the City of Atlanta. On or about September 1, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR2DR236542 (for the purpose of this paragraph only, the "Vehicle"), from CarMax, located at 3100 Mt. Zion Pkwy., Stockbridge, GA 30281. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect on or about January 15, 2015, at approximately 25,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Gears Slipping. Plaintiff sought transmission repairs from the following dealership: Allan Vigil Ford Lincoln, 6790 Mt. Zion Blvd., Morrow, GA 30260. Plaintiff has sought repairs two times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions

121

Normally. The Vehicle was repaired in January 2015 and March 2016.

## Iowa

194.   Plaintiff Cody Kolbe (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Iowa, residing in the City of Urbandale. On or about March 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR7DR144682 (for the purpose of this paragraph only, the "Vehicle"), from Stew Hansen Dodge Ram Chrysler Jeep, located at 7101 Douglas Ave, Urbandale, IA 50322. Plaintiff first experienced the Transmission Defect in or around September 2016 at approximately 56,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering) and Delayed Acceleration.   Plaintiff sought transmission repairs from the following dealership: Stew Hansen Dodge Ram Chrysler Jeep, 7101 Douglas Ave, Urbandale, IA 50322. Plaintiff has sought repairs two times under the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following dates: September 10, 2016.

195.   Plaintiff David Leib (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Iowa, residing in the City of Oskaloosa. On or about July 7, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H98ER317689 (for the purpose of this paragraph only, the "Vehicle"), from Carriker Ford, located at 1209 A Ave W, Oskaloosa, IA 52577. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Reliability. Plaintiff first experienced the Transmission Defect in or around October 2015 at approximately 38,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff has sought repairs two times under warranty.  The Vehicle was repaired in March 2016 and January 2019.

196.   Plaintiff Rooroo Belpoze's claim is scheduled to be dismissed without

prejudice.

## Illinois

197. Plaintiff Azhari Tatum (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Chicago. On or about April 22, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD4ER259598 (for the purpose of this paragraph only, the "Vehicle").

198. Plaintiff Brytney Harrier (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Danville. On or about May 1, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H72E5357851 (for the purpose of this paragraph only, the "Vehicle"), from Courtesy Ford, located at 231 W Main St., Danville, IL, 61832. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, and Reliability. Plaintiff first experienced the

Transmission Defect in or around July 2016 at approximately 51,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff sought transmission repairs from the following dealership: Courtesy Ford, 231 W Main St., Danville, IL, 61832. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

199. Plaintiff Catherine Hellums (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Cisne. On or about July 26, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75ER175249 (for the purpose of this paragraph only, the "Vehicle"),

from Schmidt Ford, located at 1815 W. Main St, Salem, IL 62881. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about January 16, 2017, at approximately 59,306 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration and Delayed Downshifts.   Plaintiff contacted Ford about the Transmission Defect on or about January 16, 2017. Plaintiff sought transmission repairs from the following dealership: Schmidt Ford, 1815 W. Main St, Salem, IL 62881. Plaintiff has sought repairs three times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following dates: January 16, 2017, and January 21, 2017.

200.   Plaintiff Debra Smith (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Chicago. On

126

or about January 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H78E5360169 (for the purpose of this paragraph only, the "Vehicle"), from Haggerty Ford, located at 330 W Roosevelt Rd, West Chicago, IL 60185. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about January 26, 2015, at approximately 5,198 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, and Car Drove Forward when put in Reverse. Plaintiff sought transmission repairs from the following dealership: Fox Ford, 2501 N Elston Ave, Chicago, IL 60647. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the

Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

201.   Plaintiff Doug McGinnis (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Abingdon. On or about December 11, 2018, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H77G5116659 (for the purpose of this paragraph only, the "Vehicle"), from Roanoke Ford, located at 217 W Husseman St, Roanoke, IL 61561. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about January 8, 2019, at approximately 58,316 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking,

128

Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, specifically noting "when shifting from park to reverse or drive it drops RPMS and shutters and the car almost dies also when shifting into reverse or drive it hesitates to shift into gear for a couple seconds." Plaintiff contacted Ford about the Transmission Defect on or about February 18, 2019. Plaintiff sought transmission repairs from the following dealership: Roanoke Ford, 217 W Husseman St, Roanoke, IL 61561, YEMM Ford, 201 W Main St, Galesburg, IL 61401. Plaintiff has sought repairs two times under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

202. Plaintiff Gary Ploense (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of Illinois, residing in the City of Normal. On or about August 1, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75DR357533 (for the purpose of this paragraph only, the "Vehicle"), from Heller Ford, located at 700 W. Main St., El Paso, IL 61738. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issue. Plaintiff first experienced the Transmission Defect in or around July 2018 at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Complete Transmission Failure Requiring Repair/Replacement.

203.   Plaintiff Harry Miyamoto (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Aurora. On or about December 16, 2015, Plaintiff purchased a 2015 Ford Fusion Titanium, with a

21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G78F5115603 (for the purpose of this paragraph only, the "Vehicle"), from Hennessy's Riverview Ford, located at 2200 US Hwy 30, Oswego, IL 60543. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Gears Slipping, and Premature Wear of Internal Components.  Plaintiff sought transmission repairs from the following dealership: Hennessy's Riverview Ford, 2200 US Hwy 30, Oswego, IL 60543. Plaintiff has sought repairs one time under warranty. The Vehicle was repaired on the following date: November 17, 2017.

204. Plaintiff Janae Henry (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Hazel Crest. On or about March 24, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a

23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HD5E5390185 (for the purpose of this paragraph only, the "Vehicle").

205. Plaintiff Kevin Falzone (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of West Chicago. On or about September 5, 2015, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K92ER318054 (for the purpose of this paragraph only, the "Vehicle"), from Jerry Haggerty Chevrolet, located at 300 Roosevelt Road, Glen Elyn, IL 60137. Plaintiff first experienced the Transmission Defect on or about June 10, 2019, at approximately 93,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Quick Lane, 330 W. Roosevelt Road, West Chicago, IL 60185. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired on the following date: September 17, 2019.

206.   Plaintiffs Linda and Benjamin Raynor (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Illinois, residing in the City of Orlando Park. On or about April 1, 2013, Plaintiffs purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JGXBR200550 (for the purpose of this paragraph only, the "Vehicle"), from CarMax Tinley Park, located at 18800 Oak Park Avenue, Tinley Park, IL 60477. Plaintiffs first experienced the Transmission Defect on or about June 1, 2015, at approximately 45,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestation of the Transmission Defect: Delayed Acceleration.   Plaintiffs sought transmission repairs from the following dealership: CarMax Tinley Park, 18800 Oak Park Avenue, Tinley Park, IL 60477. Plaintiffs sought repairs three times under warranty and one time outside the warranty. Plaintiffs were charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs sought transmission repairs to the Vehicle: Transmission Functions Normally and Problems Could Not Be Replicated. The Vehicle was repaired in June 2015, July 2017, June 2018 and August 2019.

207.   Plaintiff Mandy Romero (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Hoffman Estates. On or about August 8, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75DR309434 (for the purpose of this paragraph only, the "Vehicle"), from Castle Chevrolet, located at 400 E. Roosevelt Road, Villa Park, IL 60181. Plaintiff first experienced the Transmission Defect on or about March 17, 2017, at approximately 67,365 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Gears Slipping.   Plaintiff sought transmission repairs from the following dealership: Arlington Heights Ford, 801 W. Dundee Road, Arlington Heights, IL 60004. Plaintiff has sought repairs one time under warranty. The Vehicle was never successfully repaired.

208.   Plaintiff Mildred Tucker (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Chicago. On or about March 7, 2017, Plaintiff purchased a 2017 Ford Fusion, SEL FWD, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification

Number 3FA6P0H97HR271020 (for the purpose of this paragraph only, the "Vehicle"), from Metro Ford, located at 6455 S. Western, Chicago, IL 60636. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about April 3, 2017, at approximately 747 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshift, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff contacted Ford about the Transmission Defect on or about August 21, 2017. Plaintiff sought transmission repairs from the following dealership: McCarthy Ford, 11400 S. Pulaski Road, Chicago, IL 60655. Plaintiff has sought repairs one time under

135

warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was repaired on the following date: October 16, 2017.

209.   Plaintiff Rebecca Geber (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Stickney. On or about December 22, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G78GR276354 (for the purpose of this paragraph only, the "Vehicle").

210.   Plaintiffs Scott and Katlin Adams' Claim is scheduled to be dismissed without prejudice.

211.   Plaintiff Shannon Figures (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Chicago. On or about June 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HRXDR319748 (for the purpose of this paragraph only, the "Vehicle"), from CarMax, located at 1800 South Oak Park, Tinley Park, IL 60477. Plaintiff

first experienced the Transmission Defect in 2017 at approximately 56,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Webb Ford, 9809 Indianapolis Blvd., Highland, IN 46322. Plaintiff has sought repairs one time under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is and Transmission Functions Normally. The Vehicle was repaired in 2016.

212.   Plaintiff Valerie Sevak (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Decatur. On or about February 22, 2018, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number

3FAHP0JG7AR141018 (for the purpose of this paragraph only, the "Vehicle").

213.   Plaintiff William Hasemann (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Merrillville. On or about January 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HDXGR244445 (for the purpose of this paragraph only, the "Vehicle"), from Westfield Ford, Inc., located at 6200 South La Grange Road, Countryside, IL 60525. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Powertrain Control Module Failure.   Plaintiff sought transmission repairs from the following dealership: Art Hill Ford Lincoln, 901 W. Lincoln HWY., Merrillville, IN 46410. Plaintiff has sought repairs two times under warranty. The Vehicle was repaired on the following dates: January 17, 2017, and

June 1, 2017.

## Indiana

214. Plaintiff Aaron Kinner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Indianapolis. On or about November 4, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR9DR196668 (for the purpose of this paragraph only, the "Vehicle"), from The Car Company. Plaintiff first experienced the Transmission Defect in 2017 at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, and Gears Slipping.

215. Plaintiff Ashley Murphy (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Granger. On or about March 16, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76GR197893 (for the purpose of this paragraph only, the "Vehicle"), from Michiana Chrysler Dodge Jeep Ram, located at 120 W. McKinley Ave,

139

Mishawaka, IN 46545. Plaintiff first experienced the Transmission Defect on or about June 1, 2016, at approximately 20,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, Gears Slipping, and Hard Decelerations/Clunks when Slowing or Accelerating.

216. Plaintiff Ben Bergstrom (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Fort Wayne. On or about October 31, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71FR126552 (for the purpose of this paragraph only, the "Vehicle").

217. Plaintiff Bernice Norman (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Lake Station. On or about December 2, 2014, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70FR158103 (for the purpose of this paragraph only, the "Vehicle"), from Webb Ford, located at 9809 Indianapolis Blvd, Highland, IN 46322. Ford dealership sales personnel made the following claims or representations to

Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about March 27, 2013, at approximately 150 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Transmission Failures in Traffic. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Art Hill Ford Lincoln, 901 W Lincoln Hwy, Merrillville, IN 46410. Plaintiff has sought repairs twelve times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in November of 2013.

218.   Plaintiff Elizabeth Stokes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Ladoga. On

or about November 1, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H93ER352611 (for the purpose of this paragraph only, the "Vehicle").

219.    Plaintiff Jeffrey Tumey (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Rockville. On or about February 1, 2017, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K93GR216930 (for the purpose of this paragraph only, the "Vehicle"), from York Chevy Buick GMC, located at 1501 Indianapolis Rd, Greencastle, IN 46135. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, Internet Marketing and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect in or around June 2017. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Hard

Deceleration/Clunks when Slowing or Accelerating, and "Rough Shifting Between 1&2."   Plaintiff sought transmission repairs from the following dealership: Mace Ford, 4501 S US Hwy 41, Terre Haute, IN 47802. Plaintiff has sought repairs two times under warranty. The Vehicle was repaired in December 2017.

220.   Plaintiff Jennifer Grady-Clayborn (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Indianapolis. On or about January 1, 2012, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA9CR165230 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect at approximately 80,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Jerking), Gears Slipping, and Transmission Failures in Traffic. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff contacted Ford about the Transmission Defect on or about June 1, 2014. Plaintiff sought transmission repairs from the following dealership: Tom Wood Ford, 3130 E 96th St, Indianapolis, IN 46240. Plaintiff has

sought repairs two times outside the warranty. The Vehicle was repaired in August 2016.

221. Plaintiff Macie Snyder (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Indiana, residing in the City of Terre Haute. On or about August 1, 2016, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JG7CR350102 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect on or about June 1, 2017, at approximately 95,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.

222. Plaintiff Tabitha Jones (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about October 30, 2016, Plaintiff purchased a 2014 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G75E5269247 (for the purpose of this paragraph only, the "Vehicle"),

from Issacs, located at 133 W. Elm Street, Jeffersonville, IN 47150. Plaintiff first experienced the Transmission Defect on or about November 11th, 2015. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering).

## Kansas

223.    Plaintiff Amber Bradley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kansas, residing in the City of Wichita. On or about September 16, 2015, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JG2BR343542 (for the purpose of this paragraph only, the "Vehicle"), from Prestige Auto Sales, located at 4400 S Broadway, Wichita, KS 67216. Plaintiff first experienced the Transmission Defect in or around December 2015 at approximately 113,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, Gears Slipping, Delayed Downshifts, and Premature Wear of Internal Components.

224. Plaintiff Brenda Kadel (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kansas, residing in the City of Beloit. On or about May 10, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR8DR361092 (for the purpose of this paragraph only, the "Vehicle").

225. Plaintiffs Carolyn Engelbrecht and Victoria Baslee (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Kansas, residing in the City of Wichita. On or about May 31, 2016, Plaintiffs purchased a 2016 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G78GR383288 (for the purpose of this paragraph only, the "Vehicle"), from Ford of Augusta, located at 10004 SW US-54, Augusta, KS 67060. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around March 2017 at approximately 34,000 miles. Plaintiffs have experienced, and continue to experience, the following

manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, and Clunks in Reverse and Jumps.   Plaintiff sought transmission repairs from the following dealership: Ford of Augusta, 10004 SW US-54, Augusta, KS 67060. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

226. Plaintiff Clinton MeGee (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kansas, residing in the City of Bonner Springs. On or about August 21, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73DR135301 (for the purpose of this paragraph only, the "Vehicle").

147

227. Plaintiff Latisha Abele (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kansas, residing in the City of Goddard. On or about November 1, 2011, Plaintiff purchased a 2012 Ford Fusion Titanium, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA2CR205535 (for the purpose of this paragraph only, the "Vehicle"), from Mel Hambelton Ford, located at 11771 W. Kellogg Avenue, Wichita, KS 67209. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around September 2017 at approximately 86,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshift, Hard Deceleration/Clunks when Slowing or Accelerating, and

148

Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect in or around September 2017. Plaintiff sought transmission repairs from the following dealership: AAMCO Transmission & Total Car Care, 703 N. West Street, Wichita, KS 67203. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired in December 2017.

## Kentucky

228. Plaintiff Brittany May (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about July 3, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H92DR132665 (for the purpose of this paragraph only, the "Vehicle"), from Town and Country Ford, located at 6015 S Preston Highway, Louisville, KY 40219. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the

Vehicle: Free of Transmission Issues. Plaintiff first experienced the Transmission Defect at approximately 46,116 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff sought transmission repairs from the following dealership: Town and Country Ford, 6015 S Preston Highway, Louisville, KY 40219. Plaintiff has sought repairs two times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal" The Vehicle was never successfully repaired.

229.   Plaintiff Casey Adair (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about August 6, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71DR335710 (for the purpose of this paragraph only, the "Vehicle"),

from Budget Car Sales, located at 716 S. Dixie Hwy, Muldraugh, KY 40155. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement.    Plaintiff sought transmission repairs from the following dealership: Budget Car Sales, 716 S. Dixie Hwy, Muldraugh, KY 40155. Plaintiff has sought repairs two times under warranty. The Vehicle was never successfully repaired.

230.    Plaintiff Dylan Lear (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about September 28, 2018, Plaintiff purchased a 2016 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K98GR399306 (for the purpose of this paragraph only, the "Vehicle"), from Oxmoore Hyundai, located at 8107 Shelbyville Rd, Louisville, KY 40222. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Plaintiff first experienced the Transmission Defect

in or around October 2018 at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Delayed Downshifts.

231.   Plaintiff Issac Voyles (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Henderson. On or about May 19, 2017, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K97GR361615 (for the purpose of this paragraph only, the "Vehicle").

232.   Plaintiff James Daniel Hayes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Greenville. On or about October 30, 2017, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA9BR328277 (for the purpose of this paragraph only, the "Vehicle"), from Spark's Motors, located at 515 Main Street, Greenville, KY 42345. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them

in deciding to purchase the Vehicle: Internet Marketing. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, and Lack of Power.

233.   Plaintiff Jeremiah Jackson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about July 20, 2017, Plaintiff purchased a 2013 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G78DR211371 (for the purpose of this paragraph only, the "Vehicle").

234.   Plaintiff Kasandra Amboree (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about December 18, 2015, Plaintiff purchased a 2015 Ford Fusion S, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H9XFR269565 (for the purpose of this paragraph only, the "Vehicle"), from Circus Auto Sales, located at 4639 Dixie HWY, Louisville, KY 40216. Plaintiff first experienced the Transmission Defect on or about October 24th, 2016, at approximately 42,464 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and

Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect on or about October 25, 2016. Plaintiff sought transmission repairs from the following dealership: James Collins Ford Downtown Louisville, 809 S. 5th Street, Louisville, KY 40203. Plaintiff has sought repairs one time under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in March 2018 and October 2018.

235. Plaintiff Kathy Johnson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Calhoun. On or about November 1, 2012, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA8AR262822 (for the purpose of this paragraph only, the "Vehicle"), from BF Evan's Ford, located at 270 HWY 431, Livermore, KY 42352. Plaintiff first experienced the Transmission Defect in or around October 2017 at approximately 125,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed

154

Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was never successfully repaired.

236. Plaintiff Machelle Hall's claim is scheduled to be dismissed without prejudice.

237. Plaintiff Marshal Williams (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Scottsville. On or about August 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H72DR106579 (for the purpose of this paragraph only, the "Vehicle"), from Gillie Hyde Auto Group, located at 610A Happy Valley Rd, Glasgow, KY 42141. Plaintiff first experienced the Transmission Defect on or about March 1, 2017, at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff sought

transmission repairs from the following dealership: Curran Automotive, 563 Lovers Ln, Bowling Green, KY 42103. Plaintiff has sought repairs three times outside the warranty. The Vehicle was repaired on the following dates: August 1, 2018, June 20, 2019, and July 8, 2019.

238. Plaintiff Melissa Richards (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Reynolds Station. On or about January 1, 2012, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JGXBR226338 (for the purpose of this paragraph only, the "Vehicle"), from Tapp Motor, located at 4550 KY-54, Owensboro, KY 42303. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Lack of Power, and Dash Caught on Fire Twice.   Plaintiff sought transmission repairs from the following dealership: Tapp Motor, 4550 KY-54, Owensboro, KY 42303. Plaintiff has sought repairs five times outside the warranty. The Vehicle was never successfully repaired.

239. Plaintiff Michelle Coates (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Louisville. On or about May 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H78E5385783 (for the purpose of this paragraph only, the "Vehicle"), from Oxmoor Ford, located at 100 Oxmoor Lane, Louisville, KY 40222. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in 2016. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Deceleration/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought

157

transmission repairs from the following dealership: Oxmoor Ford Lincoln, 100 Oxmoor Lane, Louisville, KY 40222. Plaintiff has sought repairs six times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired multiple times between 2016 and 2017.

240.   Plaintiff Rick Walker (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Kentucky, residing in the City of Science Hill. On or about January 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G70GR300937 (for the purpose of this paragraph only, the "Vehicle"), from Alton Blakley Ford, located at 2130 S. Hwy 27, Somerset, KY 42501. Plaintiff first experienced the Transmission Defect on or about August 3, 2016, at approximately 2,700 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: Alton Blakley Ford, 2130 S.

158

Hwy 27, Somerset, KY 42501. Plaintiff has sought repairs five times under warranty. The Vehicle was repaired on the following dates: August 3, 2016, August 11, 2016, June 28, 2017, June 19, 2018, and September 26, 2019.

## Louisiana

241.   Plaintiff Claudia Franklin (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Louisiana, residing in the City of Baton Rouge. On or about September 24, 2017, Plaintiff purchased a 2013 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G71DR303373 (for the purpose of this paragraph only, the "Vehicle"), from CarMax. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Internet Marketing. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violet Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Lack of Power.

242.   Plaintiff Joseph Milligan (for the purpose of this paragraph only,

159

"Plaintiff"), is a citizen of the State of Louisiana, residing in the City of Extension. On or about October 2, 2015, Plaintiff purchased a 2015 Ford Fusion, SE Hybrid, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73FR261564 (for the purpose of this paragraph only, the "Vehicle"), from Hixson Ford, located at 2506 S. MacArthur Drive, Alexandria, LA 71301. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Downshifts and Erratic Shifting.   Plaintiff sought transmission repairs from the following dealership: Hixson Ford, 2506 S. MacArthur Drive, Alexandria, LA 71301. Plaintiff has sought repairs nine times under warranty. The Vehicle was never successfully repaired.

243.   Plaintiffs Katherine Crab and Chauncey Dupuy (for the purpose of

160

this paragraph only, "Plaintiffs"), are citizens of the State of Louisiana, residing in the City of Moreauville. On or about February 22, 2017, Plaintiffs purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H70F5126030 (for the purpose of this paragraph only, the "Vehicle").

244.   Plaintiff Laura Williams (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Louisiana, residing in the City of Baker. On or about January 31, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70ER126234 (for the purpose of this paragraph only, the "Vehicle").

245.   Plaintiff Russell Guthrie (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Louisiana, residing in the City of Franklinton. On or about February 16, 2019, Plaintiff purchased a 2016 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K92GR287813 (for the purpose of this paragraph only, the "Vehicle"), from Gulf Auto Direct, located at 9050 Highway 603, Waveland, MS 39576.

## Massachusetts

246.   Plaintiff Brian Mclane (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Arlington Heights. On or about December 15, 2012, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71DR166496 (for the purpose of this paragraph only, the "Vehicle").

247.   Plaintiff Carol Vantyne (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Hampshire, residing in the City of Seabrook. On or about September 1, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HRXDR173349 (for the purpose of this paragraph only, the "Vehicle"), from Stoneham Ford, located at 185 Main St, Stoneham, MA 02180. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect on or about November 20, 2018, at

approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Lack of Power, Complete Transmission Failure Requiring Repair/Replacement, and Lost Complete Power/No Warning Lights.

248.   Plaintiff Felipe Fernandes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Massachusetts, residing in the City of Tewksbury. On or about April 1, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD1ER332006 (for the purpose of this paragraph only, the "Vehicle").

249.   Plaintiff James Mylett (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Massachusetts, residing in the City of Lexington. On or about May 25, 2010, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HAXAR364400 (for the purpose of this paragraph only, the "Vehicle"), from Stoneham Ford, located at 185 Main Street, Stoneham, MA 02176. Plaintiff first experienced the Transmission Defect at approximately 50,000 miles. Plaintiff

has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Watertown Ford, 26 Seyon St, Waltham, MA 02453. Plaintiff has sought repairs four times under warranty and one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability You Expressed Were "Normal."

250. Plaintiff James Mylett (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Massachusetts, residing in the City of Lexington. On or about December 21, 2012, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA1BR146461 (for the purpose of this paragraph only, the "Vehicle"), from Herb Chambers Ford, located at 75 Granite Street, Braintree, MA 02184.

Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Premature Wear of Internal Components and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Herb Chambers Ford. Plaintiff has sought repairs one time outside the warranty.

251. Plaintiff Nicholas Merolli (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Massachusetts, residing in the City of New Bedford. On or about July 24, 2018, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H74E5379446 (for the purpose of this paragraph only, the "Vehicle"), from Best Cars, located at 511 Prescott Street, New Bedford, MA 02745. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect on or about August 1, 2018, at approximately 85,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Gears Slipping and

Delayed Downshifts.   Plaintiff contacted Ford about the Transmission Defect in or around August 2018. The Vehicle was never successfully repaired.

252.   Plaintiff Robert Fitts (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Hampshire, residing in the City of Salem. On or about September 1, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H74ER221055 (for the purpose of this paragraph only, the "Vehicle"), from Drum Hill Ford, Inc., located at 1212 Westford Street, Lowell, MA 01851. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiff first experienced the Transmission Defect in June 2016 at approximately 42,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering).   Plaintiff sought transmission repairs from the following dealership:

AutoFair Ford, 1475 S. Willow Street, Manchester, NH 03103. Plaintiff has sought

repairs outside the warranty. Plaintiff was assured of the following when Plaintiff

sought transmission repairs to the Vehicle: Transmission Functions Normally and

Problems Could Not Be Replicated. The Vehicle was repaired in June 2016.

## Maryland

253.   Plaintiff Candith Araceli-Guzman (for the purpose of this paragraph

only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of

Parksley. On or about September 1, 2015, Plaintiff purchased a 2013 Ford Fusion

SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification

Number 3FA6P0HR6DR171257 (for the purpose of this paragraph only, the

"Vehicle"), from The Car Store, located at 2520 N. Salisbury Blvd, Salisbury, MD

21801. Plaintiff first experienced the Transmission Defect in or around November

2015 at approximately 100,000 miles. Plaintiff has experienced, and continues to

experience, the following manifestations of the Transmission Defect: Sudden and

Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration

(Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty

Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when

Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Hertrich Ford Chrysler Dodge Jeep, 1618 Ocean Hwy, Pocomoke City, MD 21851. Plaintiff has sought repairs one time under warranty and five times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in November 2015 and February 2016.

254. Plaintiff Gary Farr (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Maryland, residing in the City of Forest Hill. On or about April 15, 2018, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR9DR349906 (for the purpose of this paragraph only, the "Vehicle"), from National Motors Inc., located at 8528 Baltimore National Pike, Ellicott City, MD 21043. Plaintiff first experienced the Transmission Defect in or around

October 2017 at approximately 96,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealerships: Plaza Ford, 1701 Belair Rd, Bel Air, MD 21014, Forest Hill Automotive, 209 E Jarrettsville Rd, Forest Hill, MD 21050, Harford County Transmissions & Automotive, 521 Underwood Ln, Bel Air, MD 21014, and AAMCO of Bel Air, 320 Baltimore Pike, Bel Air, MD 21014. Plaintiff has sought repairs four times outside the warranty. The Vehicle was repaired in October 2017 and November 2017.

255. Plaintiff John Blake (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Maryland, residing in the City of Baltimore. On or about August 1, 2012, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number

3FAHP0GA0CR135258 (for the purpose of this paragraph only, the "Vehicle"),
from Bob Davidson Ford Lincoln, located at 1845 E. Joppa Road, Baltimore, MD
21234. Plaintiff viewed or otherwise received the following advertisements or
representations by Ford and relied on them in deciding to purchase the Vehicle:
Dealership Salesperson. Ford dealership sales personnel made the following claims
or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the
Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and
Reliability. Plaintiff first experienced the Transmission Defect on or about
September 1, 2012, at approximately 5,000 miles. Plaintiff has experienced, and
continues to experience, the following manifestations of the Transmission Defect:
Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed
Acceleration, Lack of Power, and Delayed Downshifts.

256.   Plaintiff Michele Clarke (for the purpose of this paragraph only,
"Plaintiff"), is a citizen of the State of Maryland, residing in the City of Capitol
Heights. On or about January 24, 2014, Plaintiff purchased a 2014 Ford Fusion SE,
Vehicle Identification Number 3FA6P0HD9ER224846 (for the purpose of this
paragraph only, the "Vehicle"), from Koons Ford of Baltimore, located at 6970

170

Security Blvd, Woodlawn, MD 21244. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around April 2016 at approximately 59,940 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff contacted Ford about the Transmission Defect in or around July 2016. Plaintiff sought transmission repairs from the following dealership: DARCARS Ford Lanham, 9020 Lanham Severn Road, Lanham, MD 20706. Plaintiff has sought repairs one time under warranty. The Vehicle was repaired in July 2017.

257.   Plaintiff Scott Gianforte (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Stephenson. On or about June 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD9ER304728 (for the purpose of this paragraph only, the "Vehicle"), from Sheehy Ford, located at 901 N. Frederick Avenue, Gaithersburg, MD 20879. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about July 16, 2016, at approximately 107,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping,

172

Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff contacted Ford about the Transmission Defect in or around July 2016. Plaintiff sought transmission repairs from the following dealership: Molly Ford, 1911 Valley Avenue, Winchester, VA 22601. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: July 2, 2016, and July 16, 2016.

258.   Plaintiff Selita Janey (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Maryland, residing in the City of Bowie. On or about December 30, 2016, Plaintiff purchased a 2017 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76HR227055 (for the purpose of this paragraph only, the "Vehicle"), from Darcars Lanham Ford, located at 9020 Lanham Severn Road, Lanham, MD

173

20706. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in December of 2018. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Lack of Power, Premature Wear of Internal Components, Complete Transmission Failure Requiring Repair/Replacement, and Complete Breakdown. Plaintiff contacted Ford about the Transmission Defect in December 2018. Plaintiff sought transmission repairs from the following dealership: DARCARS Ford Lanham, 9020 Lanham Severn Road, Lanham, MD 20706. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: April 2018, December 2018 and

174

November 2, 2019.

## Maine

259. Plaintiff Tim Nash (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Maine, residing in the City of Falmouth. On or about May 30, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H79DR185071 (for the purpose of this paragraph only, the "Vehicle"), from Prime Ford, located at 857 Portland Road, Saco, ME 04072. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about June 10, 2016, at approximately 54,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Difficulty Stopping, Delayed Downshift, Hard

175

Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Rowe Ford Westbrook, 91 Main Street, Westbrook, ME 04092. Plaintiff has sought repairs one time under warranty. The Vehicle was repaired in June 2016.

260. Plaintiff Tim Nash (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Maine, residing in the City of Falmouth. On or about September 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H74GR149485 (for the purpose of this paragraph only, the "Vehicle"), from Yankee Ford, located at 165 Waterman Drive, South Portland, ME 04106. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the

176

Transmission Defect on or about January 15, 2017, at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Difficulty Stopping, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Transmission Failures in Traffic.

261.   Plaintiff William Northgraves (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Carolina, residing in the City of Mount Pleasant. On or about September 16, 2015, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K92FR297305 (for the purpose of this paragraph only, the "Vehicle"), from Rowe Ford Westbrook, located at 91 Main Street, Westbrook, ME 04092. Plaintiff first experienced the Transmission Defect in January 2018 at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.   Plaintiff sought transmission repairs from the following dealership:

Rowe Ford Westbrook, 91 Main Street, Westbrook, ME 04092. Plaintiff has sought repairs one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

262.   Plaintiff William Spear (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Maine, residing in the City of Boothbay. On or about July 20, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD7FR210302 (for the purpose of this paragraph only, the "Vehicle").

## Michigan

263.   Plaintiff Amanda Hollister (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Wixom. On or about November 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78ER115577 (for the purpose of this paragraph only, the "Vehicle"), from Lasco Ford, located at 2525 Owen Road, Fenton, MI 48430. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which

Plaintiff relied in deciding to purchase the Vehicle: Free of Transmission Issues. Plaintiff first experienced the Transmission Defect at approximately 40,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, and Delayed Downshifts. Plaintiff experienced a transmission failure that resulted in a collision.

264.   Plaintiff Corey Kopriva (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Redford. On or about July 1, 2016, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA6AR360600 (for the purpose of this paragraph only, the "Vehicle"), from Taylor Ford, located at 13500 Telegraph Rd, Taylor, MI 48180. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Sustainability/Long-Lasting. Plaintiff first experienced the Transmission Defect at approximately 96,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the

Transmission Defect: Delayed Acceleration.

265.   Plaintiff D'Anaeise Williams Ryan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Detroit. On or about March 1, 2015, Plaintiff purchased a 2015 Ford Fusion, SE with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0H75FR162258 (for the purpose of this paragraph only, the "Vehicle"), from Jorgensen Ford, located at 8333 Michigan Ave, Detroit, MI 48210. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about July 15, 2016, at approximately 46,204 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or

Accelerating.   Plaintiff sought transmission repairs from the following dealership: Jorgensen Ford, 8333 Michigan Ave, Detroit, MI 48210. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was never successfully repaired.

266. Plaintiff Delphine Nutt (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Livonia. On or about September 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78ER102439 (for the purpose of this paragraph only, the "Vehicle"), from Avon Ford, located at 29200 Telegraph Road, Southfield, MI 48034. Plaintiff first experienced the Transmission Defect on or about February 14, 2019, at approximately 51,878 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Jerking), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed

Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealerships: USA Transmissions, 38410 Grand River Ave, Farmington Hills, MI 48355. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired on the following date: February 28, 2019.

267. Plaintiff Derrick Ervin (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Lake City. On or about July 1, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H7XDR275488 (for the purpose of this paragraph only, the "Vehicle").

268. Plaintiff Dillon Vansickle (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Waterford. On or about May 1, 2016, Plaintiff purchased a 2013 Ford Fusion Titanium, with a 20/29/23 (AWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0D93DR115914 (for the purpose of this paragraph only, the

"Vehicle"), from Lasco Ford, located at 2525 Owen Rd, Fenton, MI 48430. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads, Dealership Salesperson, Internet Marketing and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, and Drivability. Plaintiff first experienced the Transmission Defect on or about October 16, 2016, at approximately 31,757 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components.  Plaintiff contacted Ford about the Transmission Defect in or around July 2017. Plaintiff sought transmission repairs from the following dealerships: Lasco Ford, 2525 Owen Rd, Fenton, MI 48430. Plaintiff has sought repairs four times under warranty and two times outside the warranty. Plaintiff was assured of the following when Plaintiff

183

sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: October 10, 2016, and June 7, 2017.

269.   Plaintiff Eric Wiltshire (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Toledo. On or about July 29, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H7XDR384436 (for the purpose of this paragraph only, the "Vehicle"), from Victory Chevrolet, located at 1250 Dexter St., Milan, MI 48160. Plaintiff first experienced the Transmission Defect on or about August 5, 2016, at approximately 35,841 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Kistler Ford, 5555 Central Ave, Toledo, OH 43615. Plaintiff has sought repairs 4 times under warranty and one time outside the warranty.

Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated. The Vehicle was repaired on the following dates: August 12, 2016, November 18, 2016, June 22, 2017, November 1, 2017, and March 30, 2018.

270.  Plaintiff Felicia Greene (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Riverview. On or about August 10, 2017, Plaintiff purchased a 2017 Ford Fusion Sport FWD, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K94HR117244 (for the purpose of this paragraph only, the "Vehicle"), from Village Ford, located at 23535 Michigan Ave, Dearborn MI 48124. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Historical Brand Slogans and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following

manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.

271.   Plaintiff Harlene McKinney's claim is scheduled to be dismissed without prejudice.

272.   Plaintiff Jordan Musso (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Lincoln Park. On or about October 1, 2014, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA7AR319544 (for the purpose of this paragraph only, the "Vehicle").

273.   Plaintiff Kelvin Sullivan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Detroit. On or about July 1, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H77DR190916 (for the purpose of this paragraph only, the "Vehicle").

274.   Plaintiff Melissa White (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Flushing.

186

On or about July 14, 2015, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA2BR202374 (for the purpose of this paragraph only, the "Vehicle"), from Lasco Ford, located at 2525 Owen Road, Fenton, MI 48430. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Problems. Plaintiff first experienced the Transmission Defect in 2017 at approximately 95,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Buck and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components.

275. Plaintiff Nathen Horne (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of Michigan, residing in the City of Colon. On or about August 15, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR5DR263220 (for the purpose of this paragraph only, the "Vehicle").

276.   Plaintiff Patricia Hampton (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Redford Twp. On or about August 1, 2017, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA8AR410242 (for the purpose of this paragraph only, the "Vehicle"), from US Auto, located at 25300 Grand River Avenue, Redford Charter Township, MI 48240. Plaintiff first experienced the Transmission Defect on or about September 1, 2018. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Gears Slipping, Difficulty Stopping, Hard Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components.

277.   Plaintiff Tarrell Card (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Madison

Heights. On or about September 19, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75DR387809 (for the purpose of this paragraph only, the "Vehicle"), from Royal Oak Ford Sales, Inc., located at 27550 Woodward, Royal Oak, MI 48067. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect on or about June 24, 2019, at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, Lack of Power, hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff contacted Ford about the Transmission Defect on or about September 24, 2019. Plaintiff sought transmission repairs from the

following dealership: USA Transmission, 20595 Middlebelt Road, Livonia, MI 48152. Plaintiff has sought repairs one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following date: July 1, 2019.

278. Plaintiff Terry Lewis (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Clarkston. On or about March 1, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70DR342048 (for the purpose of this paragraph only, the "Vehicle"), from Randy Wise Ford, Inc., located at 968 S. Ortonville Road, Ortonville, MI 48462. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability and Reliability. Plaintiff first experienced the Transmission Defect in September 2013 at approximately 500 miles. Plaintiff has experienced, and

continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Lag and Loud Noise when Shifting.   Plaintiff contacted Ford about the Transmission Defect in 2013, 2014, 2015, 2016, 2017 and on January 17, 2018. Plaintiff sought transmission repairs from the following dealership: Randy Wise Ford 968 S. Ortonville Road, Ortonville, MI 48462. Plaintiff has sought repairs at least six times, receiving a repair only one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

279.   Plaintiff Tiffany Brockington (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Detroit. On or about December 19, 2015, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K96ER358363 (for the purpose of this paragraph only, the "Vehicle"), from Matthews-Hargreaves Chevrolet, located at 2000 Twelve Mile Road, Royal Oak, MI 48067. Plaintiff first experienced the Transmission Defect in April. Plaintiff has experienced, and continues to

191

experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking, and Kicking on Acceleration (Shuddering and Juddering), Delayed Acceleration, Difficulty Stopping and Transmission Failures in Traffic.

280.   Plaintiff Zachary Stepp (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Michigan, residing in the City of Berkley. On or about December 1, 2016, Plaintiff purchased a 2010 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA1AR146510 (for the purpose of this paragraph only, the "Vehicle"), from Royal Oak Ford, located at 27550 Woodward Avenue, Royal Oak, MI 48067. Plaintiff first experienced the Transmission Defect in 2018 at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Car Leaps When Shifting.

## Minnesota

281.   Plaintiffs Allen and Sally Patovisti (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Michigan, residing in the City of Baraga. On or about June 25, 2012, Plaintiffs purchased a 2011 Ford Fusion, SEL

192

FWD, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JG1BR305977 (for the purpose of this paragraph only, the "Vehicle"), from Apple Ford Shakopee, located at 1624 Weston Court, Shakopee, MN 55379. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiffs first experienced the Transmission Defect on or about May 10, 2016, at approximately 50,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, and experiences wherein the driver "would be driving along and let off gas and it would downshift on me to a really low gear [and] RPM would just go sky high."   Plaintiffs sought transmission repairs from the following dealership: Copper Country Ford, Inc, 47402 M-26, Houghton, MI 49931. Plaintiffs have sought repairs two times under warranty and two times outside the warranty. Plaintiffs were charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is,

193

Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: June 16, 2016, July 1, 2016.

282.   Plaintiff Darlene Winger (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Aurora. On or about April 8, 2011, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA8AR429051 (for the purpose of this paragraph only, the "Vehicle"), from Lundgren Ford, located at 900 US-53, Eveleth, MN 55734. Plaintiff first experienced the Transmission Defect at approximately 300 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, and Bucking and Kicking on Acceleration (Shuddering or Juddering). Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Lundgren Ford, 900 US-53, Eveleth, MN 55734. Plaintiff has sought repairs five times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and

Problems Could Not Be Replicated.

283. Plaintiff David Kettner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Newport. On or about February 23, 2016, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA3CR444490 (for the purpose of this paragraph only, the "Vehicle"), from Maplewood Auto Mall, located at 2529 White Bear Ave, Maplewood, MN 55109. Plaintiff first experienced the Transmission Defect on or about June 6, 2017, at approximately 57,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff has sought repairs two times under warranty The Vehicle was repaired on the following date: July 27, 2017.

284. Plaintiff Donovon Mancilman (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Plainview.

On or about March 1, 2014, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA7CR365331 (for the purpose of this paragraph only, the "Vehicle"), from Zumbrota Ford, located at 1660 S Main St, Zumbrota, MN 55992. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson and Internet Marketing. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components..  Plaintiff sought transmission repairs from the following dealership: Zumbrota Ford, 1660 S Main St, Zumbrota,

MN 55992. Plaintiff has sought repairs three times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: May 27, 2017, and July 14, 2017.

285.   Plaintiff Melvin Harnack (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Eyota. On or about August 27, 2016, Plaintiff purchased a 2017 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71HR105302 (for the purpose of this paragraph only, the "Vehicle"), from Rochester Ford, located at 4900 Highway 52 North, Rochester, MN 55901. Plaintiff first experienced the Transmission Defect on or about August 15, 2017, at approximately 10,902 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Hard Decelerations/Clunks when Slowing or Accelerating, and

Jolting when Shifting from Park to Drive.   Plaintiff sought transmission repairs from the following dealership: Rochester Ford, 4900 Highway 52 North, Rochester, MN 55901. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was unsuccessfully repaired on the following dates: February 1, 2018, and February 8, 2018.

286.   Plaintiff Rhonda Caldwell (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Minneapolis. On or about February 28, 2015, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA1CR143944 (for the purpose of this paragraph only, the "Vehicle"), from Cities Auto, located at 5630 Lakeland Ave, N., Crystal, MN 55429. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect on

or about July 1, 2015, at approximately 76,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Lack of Power, Transmission Failures in Traffic, and Car Would Shut Down Completely While Driving. Plaintiff contacted Ford about the Transmission Defect on or about May 24, 2016.

287. Plaintiff Timothy Phillips (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Andover. On or about December 15, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD5ER354297 (for the purpose of this paragraph only, the "Vehicle"), from Morris's Buffalo Ford, located at 3901 158th Avenue NW, Andover, MN 55304. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability,

Sustainability/Long-Lasting, Reliability and Free of Transmission issues. Plaintiff first experienced the Transmission Defect on or about September 10, 2018, at approximately 98,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff contacted Ford about the Transmission Defect on or about September 11, 2018. Plaintiff sought transmission repairs from the following dealership: Complete Auto Service, 3657 Bunker Lake Blvd. NW., Andover, MN 55304. Plaintiff has sought repairs one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following date: September 11, 2018.

288.   Plaintiff Todd Prekker (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Loretto. On or about August 1, 2014, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JG7AR250403 (for the purpose of this paragraph only, the "Vehicle").

## Missouri

289.   Plaintiff Aaron Gant (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Kansas City. On or about August 1, 2015, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K93FR182390 (for the purpose of this paragraph only, the "Vehicle"), from Dave Littleton Ford, located at 1098 US-169 Smithville, MO 64089. Plaintiff first experienced the Transmission Defect during the first six months after purchase under 10,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following: Certified Transmission, 5700 N. Oak Trafficway, Gladstone, MO 64118. Plaintiff has sought repairs two times under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in

201

March 2019.

290.   Plaintiff Amber Gondran (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of O'Fallon. On or about December 6, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H96DR156578 (for the purpose of this paragraph only, the "Vehicle"), from Schicker Ford of St. Louis (formerly McMahon Ford), located at 3300 S. Kingshighway Blvd, St. Louis, MO 63139. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around April 2017 at approximately 120,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission

Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following: Complete Auto Repair, 4490 N Service Rd, Saint Peters, MO 63376. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired on the following date: April 18, 2017.

291.   Plaintiff Andrew Escutia (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Lee's Summit. On or about January 1, 2014, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K97FR269001 (for the purpose of this paragraph only, the "Vehicle"), from Matt Ford, located at 29906 E US Hwy 24, Buckner, MO 64016. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads, Internet Marketing, and Historical Brand Slogans. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around August

2018 at approximately 63,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Lack of Power, and Power Train Error Code.   Plaintiff sought transmission repairs from the following dealership: Bob Sight Ford, 610 NW Blue Pkwy, Lee's Summit, MO 64063. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired on the following date: September 14, 2018.

292.   Plaintiff Cartez Whitehorn (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Ferguson. On or about June 1, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission from Rock Road Auto Plaza, located at 9440 St. Charles Rock Rd, St. Louis, MO 63114. Plaintiff first experienced the Transmission Defect in or around September 2017 at approximately 64,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Lack of Power, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff has sought repairs

one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was never successfully repaired due to the cost quoted to complete the repair.

293. Plaintiff Greg Staten (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of St. Louis. On or about March 1, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H96DR215113 (for the purpose of this paragraph only, the "Vehicle"), from Suntrup Ford Westport, located at 2020 Kratky Rd, St. Louis, MO 63114. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, and Reliability. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.

Plaintiff contacted Ford about the Transmission Defect in or around January 2014. Plaintiff sought transmission repairs from the following dealerships: Dave Sinclair Ford, 7466 S Lindbergh Blvd, St. Louis, MO 63125. Plaintiff has sought repairs seven times under warranty. The Vehicle was repaired in May 2013, July 2013, January 2014, August 2014, November 2014, March 2015 and September 2015.

294.   Plaintiff Heather Hawley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Warsaw. On or about January 15, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR3DR247629 (for the purpose of this paragraph only, the "Vehicle"), from Rob Sight Ford, located at 13901 Washington St., Kansas City, MO 64145. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Reliability. Plaintiff first experienced the Transmission Defect in or around February 2016. Plaintiff has experienced, and continues to experience, the

following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.

295. Plaintiff Jessica Jones' claim is scheduled to be dismissed without prejudice.

296. Plaintiff Jose Rodriguez (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Desoto. On or about January 1, 2016, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K97GR228028 (for the purpose of this paragraph only, the "Vehicle").

297. Plaintiff Kelli Gilyard (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Ferguson. On or about April 15, 2011, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA7BR152698 (for the purpose of this paragraph only, the "Vehicle"), from Paul Cereme Ford, located at 11400 New Halls Ferry Road, Florissant, MO

207

63033. Plaintiff first experienced the Transmission Defect on or about December 31, 2018, at approximately 98,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.

298. Plaintiff Khalid Sabbah (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of St. Louis. On or about June 22, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H78E5399490 (for the purpose of this paragraph only, the "Vehicle").

299. Plaintiff Lisa Lightfoot (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Kansas City. On or about December 10, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HRXDR378993 (for the purpose of this paragraph only, the

"Vehicle"), from Zack Ford, located at 5824 N. Ava Avenue, Kansas City, MO 64151. Plaintiff first experienced the Transmission Defect in or around October 2017 at approximately 150,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Delayed Downshifts.  Plaintiff has sought repairs one time under warranty and one time outside the warranty. The Vehicle was never successfully repaired.

300.   Plaintiff Marcellius Smith (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Kansas City. On or about July 2, 2017, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75GR303055 (for the purpose of this paragraph only, the "Vehicle").

301.   Plaintiff Michael Hudson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of St. Louis. On or about December 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number

3FA6P0H7XDR327556 (for the purpose of this paragraph only, the "Vehicle").

302.   Plaintiff Sherri Sprenger (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Missouri, residing in the City of Whitewater. On or about March 1, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K9XDR146869 (for the purpose of this paragraph only, the "Vehicle").

## Mississippi

303.   Plaintiff Alexandria Copeland (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Tupelo. On or about August 1, 2017, Plaintiff purchased a 2012 Ford Fusion Titanium, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA5CR232857 (for the purpose of this paragraph only, the "Vehicle"), from American Car Center. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding on Vehicle: Internet Marketing. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Delayed Acceleration.

210

304.   Plaintiff Derrica Holmes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Port Gibson. On or about March 17, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H7XE5378270 (for the purpose of this paragraph only, the "Vehicle"), from Cannon Honda, located at 1006 Elmwood Street, Port Gibson, MS 39150. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to lease the Vehicle: Dealership Salesperson and Internet Marketing. Plaintiff first experienced the Transmission Defect in or around January 2018 at approximately 45,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff has sought repairs three times outside the warranty. The Vehicle was repaired in January 2018.

305.   Plaintiff Jacquline Smith-Harris (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of

Jackson. On or about June 1, 2014, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA8CR360042 (for the purpose of this paragraph only, the "Vehicle"), from Bill Watson Ford, located at 6130 I-55 North, Jackson, MS 39211. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about June 24, 2014, at approximately 150 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration, Delayed Acceleration, Difficulty Stopping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, and Transmission Failures in Traffic. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff contacted Ford about the

Transmission Defect on or about June 29, 2014. Plaintiff sought transmission repairs from the following: Watson Quality Ford Parts Warehouse. Plaintiff has sought repairs one time. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was never successfully repaired.

306. Plaintiff Latanya Jones (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Byhalia. On or about October 29, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HDXER312594 (for the purpose of this paragraph only, the "Vehicle"), from Homer Skelton Ford, located at 6950 Hanna Cove, Olive Branch, MS 38654. Plaintiff first experienced the Transmission Defect at approximately 65,346 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, and Bucking and Kicking on Acceleration (Shuddering or Juddering).

307. Plaintiff Prennatha Lewis (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Union. On or about February 16, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a

23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR7DR203584 (for the purpose of this paragraph only, the "Vehicle"), from Bowers Auto Sale, located at 409 Front Street, Meridian, MS 39301. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Plaintiff first experienced the Transmission Defect in 2016 at approximately 58,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Lack of Power.   Plaintiff sought transmission repairs from the following dealership: Griffin Ford, 1012 Holland Avenue, Philadelphia, MS 39350. Plaintiff has sought repairs one time under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in 2016.

308. Plaintiff Rose Pannell (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Baldwin. On or about July 1, 2017, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35

six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA7AR368467 (for the purpose of this paragraph only, the "Vehicle").

309.  Plaintiff Sophia Bramlett (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Meridian. On or about January 1, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR9DR150192 (for the purpose of this paragraph only, the "Vehicle"), from Massey Super Mart Autosales, located at 1023 MS-39, Meridian, MS 39301. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Violent Jerking. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Massey Super Mart Autosales, 1023 MS-39, Meridian, MS 39301. Plaintiff has sought repairs three times under warranty. The Vehicle was repaired in 2017 and 2018.

310.  Plaintiff Tyler Patin (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Gulfport. On or about August 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a

21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G78GR376020 (for the purpose of this paragraph only, the "Vehicle").

311.   Plaintiff Vertesha Taylor (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Jackson. On or about May 27, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR3DR198173 (for the purpose of this paragraph only, the "Vehicle").

## North Carolina

312.   Plaintiff Angela Locker (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Willow Springs. On or about May 5, 2015, Plaintiff purchased a 2013 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K91DR132617 (for the purpose of this paragraph only, the "Vehicle"), from Crossroads Ford of Fuquay-Varina, located at 217 N Main St, Fuquay-Varina, NC 27526. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability,

Sustainability/Long-Lasting, and Reliability. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, and Delayed Downshifts.   Plaintiff has sought repairs two time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

313. Plaintiff Antonio Garner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Durham. On or about April 1, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78FR241990 (for the purpose of this paragraph only, the "Vehicle"), from University Ford, located at 5001 Durham-Chapel Hill Blvd, Durham, NC 27707. Plaintiff viewed or otherwise received the following

advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Historical Brand Slogans. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiff first experienced the Transmission Defect on or about December 1, 2017, at approximately 80,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Delayed Acceleration.  Plaintiff has sought repairs two times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is. The Vehicle was never successfully repaired.

314.   Plaintiff Breanna Erison (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Raleigh. On or about July 21, 2017, Plaintiff purchased a 2017 Ford Fusion, SEL FWD, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD8HR269362 (for the purpose of this paragraph only, the "Vehicle"), from Crossroads Ford of Cary, located at 2333 Walnut St,

Cary, NC 27518. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about July 8, 2017, at approximately 3,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following: Quicklane Tire and Auto Center, 1640 Piney Plains Rd, Carey, NC 27518. Plaintiff has sought repairs four times under warranty.

315. Plaintiff Casey Stanley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of

Liberty. On or about September 10, 2017, Plaintiff purchased a 2014 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G78E5369164 (for the purpose of this paragraph only, the "Vehicle").

316.   Plaintiff Crystal Rhodes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Barnardsville. On or about August 1, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR4DR389343 (for the purpose of this paragraph only, the "Vehicle"), from Asheville Ford Lincoln, located at 611 Brevard Road, Asheville, NC 28716. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around February 2019 at approximately 63,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or

Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealerships: Ken Wilson Ford, 769 Champion Dr, Canton, NC 28716, and Meineke Car Center. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is and Problems Could Not Be Replicated. The Vehicle was repaired in October 2018.

317.   Plaintiff Damion Greene (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Morganton. On or about August 9, 2017, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HDXFR207104 (for the purpose of this paragraph only, the "Vehicle").

318.   Plaintiff Danny Lassiter (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Kittrell. On or about October 10, 2014, Plaintiff purchased a 2012 Ford Fusion S,

221

with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HG2CR293524 (for the purpose of this paragraph only, the "Vehicle"), from Advantage Ford, located at 1675 Dabney Dr, Henderson, NC 27536. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability.

319. Plaintiff Donna Lindsey (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Louisburg. On or about June 1, 2016, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA8CR112979 (for the purpose of this paragraph only, the "Vehicle"). **Note**: This Plaintiff remains in ill health, is currently hospitalized, and unable to provide further information at this time, necessitating later supplementation.

320. Plaintiff Gregory Aardal (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Creedmoor. On or about October 30, 2013, Plaintiff purchased a 2012 Ford Fusion SE, with a T163313 transmission, Vehicle Identification Number

222

3FAHP0KC8CR153841 (for the purpose of this paragraph only, the "Vehicle").

321.   Plaintiff Harriett Walters (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Fayetteville. On or about January 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR7DR237654 (for the purpose of this paragraph only, the "Vehicle"), from K and K Auto Sales, located at 820 Martin Luther King Jr. Dr, Lumberton, NC 28358. Plaintiff first experienced the Transmission Defect in or around June 2016 at approximately 119,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Jerking), Delayed Acceleration, Gears Slipping, and Lack of Power.   Plaintiff sought transmission repairs from the following dealership: Lafayette Ford Lincoln, 5202 Raeford Rd, Fayetteville, NC 28304. Plaintiff has sought repairs five times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions

Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in July 2017, August 2017, September 2017, November 2018, and October 2019.

322.   Plaintiff Janice Cook (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Nashville. On or about December 1, 2009, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HG2AR354142 (for the purpose of this paragraph only, the "Vehicle"), from Capital Ford, located at 4900 Capital Blvd., Raleigh, NC 27616. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around May 2011 at approximately 6,500 miles. Plaintiff has experienced, and continues to experience, the following

manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff contacted Ford about the Transmission Defect in 2011. Plaintiff sought transmission repairs from the following dealership: Capital Ford, 4900 Capital Blvd., Raleigh, NC 27616. Plaintiff has sought repairs two times. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in or around: June 2011 and October 2011.

323.   Plaintiff Jessica Sailor's claim is scheduled to be dismissed without prejudice.

324.   Plaintiff Justine Nunely (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Garner. On or about April 15, 2016, Plaintiff purchased a 2016 Ford Fusion SE,

with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G73GR374871 (for the purpose of this paragraph only, the "Vehicle"), from Capital Ford, located at 4900 Capital Boulevard, Raleigh, NC 27616. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, and Reliability. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Delayed Downshift, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never

226

successfully repaired.

325.   Plaintiff Lisa Baldwin (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Chandler. On or about April 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H98ER281955 (for the purpose of this paragraph only, the "Vehicle"), from Ashville Ford Lincoln, located at 611 Brevard Road, Ashville, NC 28806. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around August 2014 at approximately 1,500 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, and Bucking and Kicking on Acceleration (Shuddering or Juddering).

Plaintiff contacted Ford about the Transmission Defect in or around August 2018. Plaintiff sought transmission repairs from the following dealership: Auto Body Repair of America, 611 Brevard Road, Asheville, NC 28806. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, and Transmission Functions Normally. The Vehicle was repaired multiple times in: 2015.

326.   Plaintiffs Michael and Tina Oclair (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of North Carolina, residing in the City of Fayetteville. On or about December 31, 2014, Plaintiffs purchased a 2015 Ford Fusion Titanium, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H71FR141424 (for the purpose of this paragraph only, the "Vehicle"), from Crown Ford, located at 256 Swain Street, Fayetteville, NC 28303. Plaintiffs viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, TV, Radio or Billboard Ads, Dealership Salesperson, Internet Marketing, and Historical Brand Slogans. Ford dealership sales personnel made the

following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiffs have experienced, and continue to experience, the following manifestation of the Transmission Defect: Delayed Acceleration.

327. Plaintiff Priscilla Lyman (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Raleigh. On or about September 15, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HDXER372617 (for the purpose of this paragraph only, the "Vehicle"), from Classic Ford of Smithfield, located at 1324 N. Brightleaf Blvd, Smithfield, NC 27577. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff

229

first experienced the Transmission Defect in March 2015 at approximately 5,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration and Lack of Power. The Vehicle has also required a total engine replacement twice.   Plaintiff contacted Ford about the Transmission Defect in March 2015. Plaintiff sought transmission repairs from the following dealership: Classic Ford of Smithfield, 1324 N. Brightleaf Blvd., Smithfield, NC 27577. Plaintiff has sought repairs ten times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

328.   Plaintiff Rita Hinkle (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Statesville. On or about November 1, 2009, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA3AR223412 (for the purpose of this paragraph only, the "Vehicle").

329.   Plaintiff Robert Gough (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of

230

Hampstead. On or about February 7, 2012, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA1CR210192 (for the purpose of this paragraph only, the "Vehicle").

330. Plaintiff William Parra (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Durham. On or about September 1, 2015, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA0BR197739 (for the purpose of this paragraph only, the "Vehicle"), from Jose's Auto Salvage Yard, located at 1220 Wrenn Road, Durham, NC 27703. Plaintiff first experienced the Transmission Defect on or about December 12, 2015, at approximately 98,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, and Hard Decelerations/Clunks when Slowing on Acceleration.

331. Plaintiff Yolanda Danzy (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Carolina, residing in the City of Garner. On or about January 1, 2017, Plaintiff purchased a 2016 Ford Fusion, SEL

FWD, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78GR235575 (for the purpose of this paragraph only, the "Vehicle").

## North Dakota

332.   Plaintiff Nicholas Winkler (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of North Dakota, residing in the City of Bismarck. On or about January 20, 2016, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H96GR304295 (for the purpose of this paragraph only, the "Vehicle"), from Edie Ford Lincoln, located at 800 E. Bismarck Expy, Bismarck, ND 58504. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Historical Brand Slogans and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect in or around May 2017 at approximately 22,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Downshifts, Hard

232

Decelerations/Clunks when Slowing or Accelerating, and Premature Wear of Internal Components. Plaintiff sought transmission repairs from the following dealership: Edie Ford Lincoln, 800 E. Bismark Expy, Bismarck, ND 58504. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

### Nebraska

333. Plaintiff Robert Kargle (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Nebraska, residing in the City of Palmer. On or about February 1, 2017, Plaintiff purchased a 2017 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H74HR274343 (for the purpose of this paragraph only, the "Vehicle"), from Woodhouse Ford, located at 3633 N 72nd St., Omaha, NE 68134. Plaintiff first experienced the Transmission Defect in or around February 2018 at approximately 2,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or

Juddering), Gears Slipping, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.

## New Hampshire

334.   Plaintiff Jason Shedenhelm (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Hampshire, residing in the City of Gilmanton. On or about April 24, 2019, Plaintiff purchased a 2016 Ford Fusion SE, with a 20/29/23 (AWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0T96GR372734 (for the purpose of this paragraph only, the "Vehicle"), from Auto Sense, located at 282 N. Broadway, Salem, NH 03079. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Plaintiff first experienced the Transmission Defect in or around June 2019 at approximately 48,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Delayed Downshifts, also noting that the vehicle, "when first driven in the morning, would shake for the first couple miles."

234

**New Jersey**

335.   Plaintiff David Garcia (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of River Edge. On or about March 15, 2015, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K98ER152624 (for the purpose of this paragraph only, the "Vehicle"), from Lawrenceville Ford Lincoln, located at 2920 Brunswick Pike, Lawrenceville, NJ 08648. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about December 5, 2015, at approximately 30,856 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration

235

(Shuddering or Juddering), Delayed Acceleration, and Gears Slipping.   Plaintiff sought transmission repairs from the following dealership: Lincoln of Paramus, 670 NJ-17, Paramus, NJ 07652. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability Is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

336.   Plaintiff Ernest Hanaway's claim is scheduled to be dismissed without prejudice.

337.   Plaintiffs George and Patricia Merriam (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Connecticut, residing in the City of Oxford. On or about August 1, 2012, Plaintiffs purchased a 2012 Ford Fusion SEL FWD, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA5CR425066 (for the purpose of this paragraph only, the "Vehicle"), from Route 23 Auto Mall, located at 1301 Route 23, Butler, NJ 07405. Plaintiffs first experienced the Transmission Defect on or about July 3, 2017, at

236

approximately 90,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Gears Slipping.   Plaintiffs contacted Ford about the Transmission Defect on or about October 3, 2017. Plaintiffs sought transmission repairs from the following dealership: Stevens Ford Lincoln, 717 Bridgeport Ave, Milford, CT 06460. Plaintiffs have sought repairs four times outside the warranty. Plaintiffs were charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

338.   Plaintiff Karyn Waladkewics (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Clarksburg. On or about September 21, 2016, Plaintiff purchased a 2014 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G75E5384091 (for the purpose of this paragraph

only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect on or about June 30, 2016, at approximately 40,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: The Detail Center, 60 Throckmorton Street, Freehold, NJ 07728. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired in June 2016.

339.   Plaintiffs Leroy and Rebecca Bruce (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of South Carolina, residing in the City of Darlington. On or about November 30, 2016, Plaintiffs purchased a 2015 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD4FR177095 (for the purpose of this paragraph only, the "Vehicle"), from Manahawkin Chrysler Dodge Jeep Ram, located at 500 New Jersey 72 West, Manahawkin, NJ 08050. Plaintiffs have experienced, and continue to experience, the following manifestations of the

Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Transmission Failures in Traffic.   Plaintiff contacted Ford about the Transmission Defect in 2017.

340.   Plaintiff Nicholas Whelan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Pitman. On or about November 1, 2014, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HDXF5108253 (for the purpose of this paragraph only, the "Vehicle"), from Freehold Ford, located at 3572 US 9, Freehold, NJ 07728. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting,

Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about November 30, 2016, at approximately 45,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Gears Slipping.   The Vehicle was never repaired.

341.   Plaintiff Rosaria Morea (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Hamburg. On or about November 1, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 20/29/23 (AWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H94FR100982 (for the purpose of this paragraph only, the "Vehicle"), from Magarino Ford, located at 375 State Rt. 23, Sussex, NJ 07461. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson and Internet Marketing. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability.

Plaintiff first experienced the Transmission Defect in 2016 at approximately 40,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power and Hard Decelerations/Clunks When Slowing or Accelerating.

342.   Plaintiff Srinath Vasireddy (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Parsippany. On or about February 1, 2011, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA5BR193941 (for the purpose of this paragraph only, the "Vehicle"), from Performance Ford, located at 906 NJ-10, Randolph, NJ 07869. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability and Free of Transmission Issues. Plaintiff first experienced the

Transmission Defect on or about June 8, 2018, at approximately 88,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect on or about August 12, 2018. Plaintiff sought transmission repairs from the following dealership: Performance Ford, 906 NJ-10, Randolph, NJ 07869. Plaintiff has sought repairs one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired on the following date: June 8, 2018.

343. Plaintiff Stephen Rust (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Ringwood. On or about January 5, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75ER235899 (for the purpose of this paragraph only, the "Vehicle"), from Maplecrest Ford Lincoln of Union, located at 2800 Springfield Avenue, Suite 1, Vauxhall, NJ 07088. Plaintiff viewed or otherwise received the

following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about March 3, 2016, at approximately 11,372 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff contacted Ford about the Transmission Defect on or about July 5, 2017. Plaintiff sought transmission repairs from the following dealership: Route 23 AutoMall (Ford), 1301 NJ-23, Butler, NJ 07405. Plaintiff has sought repairs five times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated and Drivability Concerns Expressed Were

"Normal." The Vehicle was repaired on the following dates: March 3, 2016, October 24, 2016, November 21, 2016, June 27, 2017, and July 20, 2017.

## New Mexico

344.   Plaintiff Michele Willis Silva (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Mexico, residing in the City of Roswell. On or about April 10, 2014, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JG4CR290425 (for the purpose of this paragraph only, the "Vehicle"), from Roswell Honda, located at 5290 W. Pinelodge, Roswell, NM 88201. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Plaintiff first experienced the Transmission Defect on or about May 10, 2016, at approximately 30,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Gears Slipping, and Delayed Downshifts.

345.   Plaintiff Reema Dsouoza (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Mexico, residing in the City of

Deming. On or about January 1, 2012, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA5CR316970 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect in or around May 2018 at approximately 100,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Delayed Downshifts, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff contacted Ford about the Transmission Defect in or around May 2018.

## Nevada

346.  Plaintiff Jamie Brooks (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Nevada, residing in the City of Henderson. On or about July 13, 2012, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA4BR329532 (for the purpose of this paragraph only, the "Vehicle"), from Jim Marsh Kia, located at

8555 W Centennial Parkway, Las Vegas, NV 89149. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Plaintiff first experienced the Transmission Defect in or around September 2012 at approximately 17,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration, (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, and Lack of Power.  Plaintiff sought transmission repairs from the following dealership: Team Ford Lincoln, 905 Brady Ave, Steubenville, OH 43952. Plaintiff has sought repairs three times. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following date: February 27, 2015.

347.   Plaintiff John Campbell (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Nevada, residing in the City of Las Vegas. On or about February 11, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a

21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78GR291158 (for the purpose of this paragraph only, the "Vehicle"), from Team Ford Lincoln, located at 5445 Drexel Road, Las Vegas, NV 89130. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about June 10, 2016, at approximately 5,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, and Delayed Downshifts.

## New York

348. Plaintiff Alison Palumbo (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of

Tonawanda. On or about December 2, 2014, Plaintiff purchased a 2015 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H98FR191304 (for the purpose of this paragraph only, the "Vehicle"), from Dave Smith Ford, LLC, located at 4045 Transit Rd, Williamsville, NY 14221. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to lease the Vehicle: TV, Radio or Billboard Ad's. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Driveability, Reliability and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Complete Transmission Failure Requiring Repair/Replacement.    Plaintiff sought transmission repairs from the following dealership: Don Smith Ford, LLC, 4045 Transit Rd, Williamsville, NY 14221. Plaintiff has sought repairs one time under warranty The Vehicle was repaired on the following date: November 8, 2016.

349.   Plaintiff Bryan Alderman (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of

248

Gansevoort. On or about October 1, 2014, Plaintiff purchased a 2014 Ford Fusion, Vehicle Identification Number 1FA6P0H75E5383344 (for the purpose of this paragraph only, the "Vehicle").

350.   Plaintiff Christopher Hodge (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Elmira. On or about January 3, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H94ER285579 (for the purpose of this paragraph only, the "Vehicle"), from Simmons-Rockwell, located at 784 County Road 64, Elmira, NY 14903. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Plaintiff first experienced the Transmission Defect at approximately 30,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Delayed Downshifts.   Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle:

Transmission Functions Normally and Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

351.   Plaintiff Corey Passino (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Plattsburg. On or about March 10, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75DR320434 (for the purpose of this paragraph only, the "Vehicle").

352.   Plaintiff Giuseppe Barbieri (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Mt. Sinai. On or about July 14, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K94DR301545 (for the purpose of this paragraph only, the "Vehicle"), from Ramp Ford, located at 4869 Nesconset Hwy, Port Jefferson, NY 11776. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads, Dealership Salesperson, Internet Marketing,

Historical Brand Slogans, and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks When Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Ramp Ford, 4869 Nesconset Hwy, Port Jefferson Station, NY 11776. Plaintiff has sought repairs five times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be

251

Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: July 12, 2016, November 4, 2014, January 16, 2015, November 12, 2016, and January 13, 2017.

353.    Plaintiff Heather Theobald (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Saratoga Springs. On or about July 5, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0D93DR187521 (for the purpose of this paragraph only, the "Vehicle"), from Don's Ford Inc., located at 5712 Horatio Street, Utica, NY 13502. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiff first experienced the Transmission Defect in or around August 2014 at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking,

Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect in or around August 2014. Plaintiff sought transmission repairs from the following dealerships: Carmody Ford, 1111 NY-29, Greenwich Historic District, NY 12834, and ABC Transmission, 1564 U.S.9, Fort Edward, NY 12828. Plaintiff has sought repairs two times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in August 2014.

354. Plaintiff Jack Tawil (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Yonkers. On or about May 1, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD1ER281462 (for the purpose of this paragraph only, the "Vehicle"), from Yonkers Auto Mall, located at 1716 Central Park Ave, Yonkers, NY 10710. Plaintiff has experienced, and continues to experience, the

following manifestation of the Transmission Defect: Delayed Acceleration.

355.   Plaintiff Jennifer Cardinale (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Rensselaer. On or about February 14, 2015, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA5CR102190 (for the purpose of this paragraph only, the "Vehicle").

356.   Plaintiff Jennifer Martin (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Hammondsport. On or about September 28, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H74ER261880 (for the purpose of this paragraph only, the "Vehicle").

357.   Plaintiffs Joe and Jessica Tobias (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Pennsylvania, residing in the City of Bushkill. On or about July 12, 2017, Plaintiffs purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70ER303168 (for the purpose of this paragraph only, the

254

"Vehicle"), from Levittown Ford, located at 3195 Hempstead Turnpike, Levittown, NY 11756. Plaintiffs viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Jerking), Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiffs have sought repairs three time under warranty. Plaintiffs were charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed

Were "Normal."

358.   Plaintiff Lorraine Hodge (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Bath. On or about January 29, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0D99DR206136 (for the purpose of this paragraph only, the "Vehicle"), from Simon-Rockwell, located at 7327 NY-54, Bath, NY 14810. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect in or around December 2013 at approximately 25,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Delayed Downshifts.   Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

359.   Plaintiff Megan Ely (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Beaver Dams. On or about April 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76GR272799 (for the purpose of this paragraph only, the "Vehicle"), from City World Ford, located at 3305 Boston Road, The Bronx, NY 10469. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to lease the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around April 2017 at approximately 15,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Lack of Power, Delayed Downshifts, and Transmission Failures in Traffic.   Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle:

Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

360. Plaintiff Noah Roy (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Freeport. On or about January 1, 2013, Plaintiff purchased a 2014 Ford Fusion, Vehicle Identification Number 3FA6P0H70ER126234 (for the purpose of this paragraph only, the "Vehicle"), from South Shore Hyundai, located at 360 W. Sunrise Hwy, Valley Stream, NY 11581. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Plaintiff first experienced the Transmission Defect in or around July 2016 at approximately 57,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, Lack of Power, and Delayed Downshifts.  Plaintiff sought transmission repairs from the following dealership: South Shore Hyundai. Plaintiff has sought repairs two times under warranty and two times outside the warranty. The Vehicle was

repaired in July 2016, September 2016 and October 2016.

361.  Plaintiff Rebecca Newland (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Tonawanda. On or about December 1, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H75G5121942 (for the purpose of this paragraph only, the "Vehicle").

362.  Plaintiff Rosalind Kirkland (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Camden. On or about January 1, 2013, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA1AR102846 (for the purpose of this paragraph only, the "Vehicle").

363.  Plaintiff Shemaiah Hohn (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Queens Village. On or about November 14, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H74DR327570 (for the purpose of this paragraph only, the

"Vehicle"), from Westbury Jeep, Chrysler, Dodge Inc., located at 100 Jericho Turnpike, Jericho, NY 11753. Plaintiff first experienced the Transmission Defect on or about November 21, 2014, at approximately 35,400 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Difficulty Stopping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect in December 2014. Plaintiff sought transmission repairs from the following dealership: Levittown Ford, 980 S. Broadway, RTE 107, Hicksville, NY 11801. Plaintiff has sought repairs one time under warranty and one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in October 2017.

364. Plaintiff Shirley Palmer (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Amsterdam. On or about December 1, 2016, Plaintiff purchased a 2016 Ford

Fusion, SEL FWD, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H94GR236854 (for the purpose of this paragraph only, the "Vehicle"), from Metro Ford, located at 3601 State Street, Schenectady, NY 12304. Plaintiff first experienced the Transmission Defect in October 2016 at approximately 19,400 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration and Delayed Downshifts.   Plaintiff sought transmission repairs from the following dealership: Metro Ford, 3601 State Street, Schenectady, NY 12304. Plaintiff has sought repairs three times outside the warranty. The Vehicle was repaired in November 2019.

365.   Plaintiff Todd Uresti (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Interlaken. On or about August 1, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76ER278096 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect in 2017 at approximately 80,000 miles. Plaintiff has experienced, and

continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, and Lack of Power. Plaintiff sought transmission repairs from the following dealership: Fuccillo Ford of Seneca Falls, 2027 HWY 20, Seneca Falls, NY 13148. Plaintiff has sought repairs three times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was never successfully repaired.

366.   Plaintiff William Holland (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Levittown. On or about June 7, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H97DR327810 (for the purpose of this paragraph only, the "Vehicle"), from City Mitsubishi, located at 56-15 Northern Blvd., Woodside, NY 11377. Plaintiff first experienced the Transmission Defect on or about July 22, 2016, at approximately 58,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Gears Slipping, Delayed Downshifts, and Premature Wear of Internal Components.

Plaintiff sought transmission repairs from the following dealership: Schultz Ford Lincoln, Inc., 80 NY-304, Nanuet, NY 10954. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Problems Could Not Be Replicated. The Vehicle was unsuccessfully repaired on the following dates: July 22, 2016, and August 19, 2019.

## Ohio

367.   Plaintiff Amanda Soller (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Newark. On or about October 1, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G70DR372037 (for the purpose of this paragraph only, the "Vehicle"), from My EZ Auto, located at 8868 Columbus Rd., Mount Vernon, OH 43050. Plaintiff first experienced the Transmission Defect in or around October 2018 at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration

(Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, and Hard Deceleration/Clunks when Slowing or Accelerating. Plaintiff sought transmission repairs from the following: My EZ Auto, 8868 Columbus Rd., Mount Vernon, OH 43050. Plaintiff has sought repairs two times under warranty and two times outside the warranty.

368. Plaintiff Brittany Opsomer (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Deshler. On or about April 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD3ER102161 (for the purpose of this paragraph only, the "Vehicle"), from Reineke Ford, located at 12000 County Rd 99, Findlay, OH 45840. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect on or about November 17, 2018, at approximately 81,533 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and

Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Lack of Power, Transmission Failures in Traffic, and "Clunk" when put into gear. Plaintiff sought transmission repairs from the following dealership: Thayer Ford, 18039 N Dixie Hwy, Bowling Green, OH 43402. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal" The Vehicle was never successfully repaired.

369. Plaintiffs Carolyn Sue Selander and Christopher Molina (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Ohio, residing in the City of Flint. On or about June 3, 2015, Plaintiffs purchased a 2015 Ford Fusion Titanium, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G76FR291160 (for the purpose of this paragraph only, the "Vehicle"), from Beau Townsend Ford Lincoln, located at 1020 West National Road, Vandalia, OH 45377. Plaintiffs viewed or otherwise received the following advertisement or representation by Ford and relied on them

in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Beau Townsend Ford Lincoln, 1020 West National Road, Vandalia, OH 45377. Plaintiff has sought repairs three times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, and Transmission Functions Normally. The Vehicle was repaired in November 2014 and December 2014.

266

370. Plaintiffs David and Michelle Hobbs (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Pennsylvania, residing in the City of North Versailles. On or about November 1, 2016, Plaintiffs purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0H9XDR139802 (for the purpose of this paragraph only, the "Vehicle"), from AutoNation Westlake, located at 23775 Center Ridge Rd, Westlake, OH 44145. Plaintiffs viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure and Dealership Salesperson. Plaintiffs first experienced the Transmission Defect on or about December 28, 2016, at approximately 52,300 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, and Bucking and Kicking on Acceleration (Shuddering or Juddering). Plaintiffs sought transmission repairs from the following dealership: AutoNation Westlake, 23775 Center Ridge Rd, Westlake, OH 44145. Plaintiffs have sought repairs four times under warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs

267

sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

371. Plaintiff David Helms (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Illinois, residing in the City of Morton. On or about May 18, 2012, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HAXCR197894 (for the purpose of this paragraph only, the "Vehicle"), from Interstate Ford, located at 125 Alexandersville Rd, Miamisburg, OH 45342. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff first experienced the Transmission Defect on or about February 26, 2016, at approximately 46,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Delayed Downshifts. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership Fort

Dodge Ford Toyota Lincoln, 2723 5th Ave. S, Fort Dodge, IA 50501. Plaintiff has sought repairs three times under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: February 26, 2016, September 16, 2016, August 10, 2017, and October 2017.

372.   Plaintiffs Glenna Kretschmar and Samantha Scott (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Ohio, residing in the City of Hamilton. On or about March 14, 2018, Plaintiffs purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H93ER175252 (for the purpose of this paragraph only, the "Vehicle"), from Kerry Ford, located at 155 W. Kemper Rd, Cincinnati, OH 45246. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting,

Reliability, and Free of Transmission Issues. Plaintiffs first experienced the Transmission Defect on or about April 1, 2018, at approximately 44,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiffs sought transmission repairs from the following dealership: Northgate Ford, 8940 Colerian Ave, Cincinnati, OH 45251. Plaintiffs have sought repairs two times under warranty and four times outside the warranty. Plaintiffs were charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in April 2018, June 2018, December 2018, and March 2019.

373. Plaintiffs James Accardi and Florence Accardi (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of South Carolina, residing in the City of North Charleston. On or about March 1, 2014, Plaintiffs purchased a

2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA4AR163506 (for the purpose of this paragraph only, the "Vehicle"), from Ganley Lincoln of Middleburg Hts, located at 6930 Pearl Rd, Middleburg Hts, OH 44130. Plaintiff first experienced the Transmission Defect in or around April 2014 at approximately 59,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff contacted Ford about the Transmission Defect in or around April 2014. Plaintiff sought transmission repairs from the following dealerships: Winebarger Motor Company, 850 N Bridge St, Elkin, NC 28621, and a local AAMCO service center. Plaintiff has sought repairs one time under warranty and one time outside the warranty. The Vehicle was repaired in December 2017.

374.   Plaintiff James Mariotti (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Poland. On or

about November 1, 2014, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA9CR105139 (for the purpose of this paragraph only, the "Vehicle"), from Salem Chrysler Jeep Dodge, located at 400 Legacy Lane, Salem, OH 44460. Plaintiff first experienced the Transmission Defect on or about June 30, 2015, at approximately 35,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration and Gears Slipping.  Plaintiff sought transmission repairs from the following dealership: Pines Ford Lincoln, 8655 Pines Blvd, Pembroke Pines, FL 33024. Plaintiff has sought repairs two times under warranty. The Vehicle was repaired on the following dates: March 30, 2015.

375.   Plaintiff James Sidelka (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Cleveland. On or about July 8, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H79G5113455 (for the purpose of this paragraph only, the "Vehicle"), from John Lance Ford, located at 23775 Canter Ridge Rd., Westlake, OH 44145.

Plaintiff first experienced the Transmission Defect in 2017 at approximately 75,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Transmission Failures in Traffic. Plaintiff sought transmission repairs from the following dealership: John Lance Ford, 23775 Canter Ridge Rd., Westlake, OH 44145. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable. The Vehicle was repaired in 2017.

376. Plaintiff Jamie Sexton (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Cincinnati. On or about January 15, 2019, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR0DR247166 (for the purpose of this paragraph only, the "Vehicle"), from Jeff Wyler Nissan, located at 5815 Dixie Hwy., Fairfield, OH 45014. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect in or around March 2018 at

approximately 91,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Delayed Downshifts. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff contacted Ford about the Transmission Defect in or around April 2018. Plaintiff sought transmission repairs from the following dealership: Northgate Ford, 8940 Colerain Ave, Cincinnati, OH 45251. Plaintiff has sought repairs one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

377. Plaintiffs Jeremy and Kimberly Begley (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Ohio, residing in the City of Cincinnati. On or about March 21, 2015, Plaintiffs purchased a 2015 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G72FR256633 (for the purpose of this paragraph only, the "Vehicle"), from Beechmont Ford, located at 600 Ohio Pike, Cincinnati,

274

OH 45244. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, and Reliability. Plaintiffs first experienced the Transmission Defect in or around April 2015 at approximately 1,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, and Hard Decelerations/Clunks when Slowing or Accelerating.  Plaintiffs have sought repairs two times under warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs sought transmission repairs to the Vehicle: Transmission Functions Normally, Transmission Was "Smart" Transmission Learning Their Driving Style, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

378.   Plaintiffs Jodi and Ken Musser (for the purpose of this paragraph

275

only, "Plaintiffs"), are citizens of the State of Ohio, residing in the City of Norwalk. On or about August 7, 2014, Plaintiffs purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73ER374722 (for the purpose of this paragraph only, the "Vehicle"), from Don Tester Ford, located at 2800 US-250, Norwalk, OH 44857. Plaintiffs first experienced the Transmission Defect in 2016 at approximately 13,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Lack of Power. Plaintiffs sought transmission repairs from the following dealership: Don Tester Ford, 2800 US-250, Norwalk, OH 44857. Plaintiffs have sought repairs four times under warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in 2016, 2017 and 2018.

379. Plaintiff John Arnett (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Vermillion. On or about June 7, 2011, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35

six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA7BR316970 (for the purpose of this paragraph only, the "Vehicle"), from Matthews Ford, located at 610 E. Perkins Avenue, Sandusky, OH 44870. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff first experienced the Transmission Defect in 2012 at approximately 38,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, and Violent Jerking.

380. Plaintiff John Boyd (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Lexington. On or about July 24, 2014, Plaintiff purchased a 2013 Ford Fusion, SEL FWD, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0D92DR203465 (for the purpose of this paragraph only, the "Vehicle"), from Findlay Chrysler Dodge Jeep Ram, located at 10305 U.S. 244 West, Findlay,

OH 45840. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing, Historical Brand Slogans and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect in or around September 2017 at approximately 82,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.    Plaintiff sought transmission repairs from the following dealership: Hutchenson Transmission Services, 65 Martha Avenue, Mansfield, OH 44905. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired on the following date: February 19, 2018.

381.    Plaintiff Joseph Ebert (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Buffalo. On or about August 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78DR322386 (for the purpose of this paragraph only, the "Vehicle"),

from Bob Boyd Ford, located at 2840 N Columbus Street, Lancaster, OH 43130. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff first experienced the Transmission Defect on or about March 1, 2017, at approximately 18,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Difficulty Stopping, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Problems Could Not Be Replicated. The Vehicle was never successfully repaired.

382.  Plaintiff Josh Arthur (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Miamisburg.

On or about March 1, 2016, Plaintiff purchased a 2016 Ford Fusion S, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G70G5126788 (for the purpose of this paragraph only, the "Vehicle"), from Interstate Ford, located at 125 Alexandersville Road, Miamisburg, OH 45342. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboards Ads and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect on or about November 5, 2016, at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Transmission Failure Including Gear Lockout.  Plaintiff contacted Ford about the Transmission Defect on or about November 8, 2016. Plaintiff sought transmission repairs from the following dealership: Interstate Ford, 125 Alexandersville Road, Miamisburg, OH 45342. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of

280

the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was repaired in November 2018 and September 2019.

383.   Plaintiff Matthew DeLuca (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Seven Hills. On or about September 8, 2015, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0H91GR155665 (for the purpose of this paragraph only, the "Vehicle"), from Bob Gillingham Ford, located at 8383 Brookpark Road, Parma, OH 44129. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle:   Vehicle   Dependability,   Drivability,   Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect:

Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.   Plaintiff has sought repairs one time under warranty. The Vehicle was repaired in November 2017.

384.   Plaintiff Nicole Parkinson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of South Charleston. On or about October 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H77DR155082 (for the purpose of this paragraph only, the "Vehicle"), from Jeff Schmitt Chevrolet East, located at 635 S. Orchard Lane, Beavercreek, OH 45434. Plaintiff first experienced the Transmission Defect in or around May 2017 at approximately 30,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Accelerations (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following

282

dealership: Buckeye Ford, 110 US-42, London, OH 43140. Plaintiff has sought repairs one time under warranty. The Vehicle was repaired on the following date: September 20, 2017.

385.   Plaintiff Nicole Walmsley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Lodi. On or about November 28, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H91ER168428 (for the purpose of this paragraph only, the "Vehicle"), from Park Ford, located at 400 West Avenue, Tallmadge, OH 44278. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about December 1, 2016, at approximately 40,000 miles. Plaintiff has experienced, and continues to experience, the following

283

manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Delayed Downshifts, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Park Ford, 400 West Avenue, Tallmadge, OH 44278. Plaintiff has sought repairs six times under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

386.   Plaintiff Ryan Eason (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Cincinnati. On or about June 14, 2018, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR3DR266486 (for the purpose of this paragraph only, the "Vehicle"), from Drivetime, located at 8549 Beechmont Avenue, Cincinnati, OH 45255. Plaintiff first experienced the Transmission Defect on or

about December 28, 2018, at approximately 68,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Gears Slipping, Lack of Power, hard Deceleration/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was repaired in January 2019 and March 2019.

387. Plaintiff Ryan Hill (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Lithopolis. On or about May 17, 2014, Plaintiff purchased a 2014 Ford Fusion S, with 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0G70E5401721 (for the purpose of this paragraph only, the "Vehicle"), from Ricart Ford, located at 4255 S. Hamilton Road, Groveport, OH 43125. Plaintiff viewed or otherwise received the following advertisements or

representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about April 1, 2014, at approximately 3,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering and Juddering), Delayed Acceleration, Delayed Downshift, Hard Decelerations/Clunks When Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Ricart Columbus Ford, 4255 S. Hamilton Road, Groveport, OH 43125. Plaintiff has sought repairs eight times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will be Dependable As-Is, Drivability is Acceptable, Problems Could Not Be Replicated, and Drivability Concerns

286

Expressed Were "Normal." The Vehicle was never successfully repaired.

388.   Plaintiff Tyler Dezso (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Elyria. On or about September 1, 2016, Plaintiff purchased a 2015 Ford Fusion, SE Hybrid, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78FR237633 (for the purpose of this paragraph only, the "Vehicle").

389.   Plaintiff Tyrall A. Butler (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Cincinnati. On or about November 20, 2016, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JG5CR337770 (for the purpose of this paragraph only, the "Vehicle"), from Walter Sweeney Ford, located at 5400 Glenway Ave, Cincinnati, OH 45238. Plaintiff first experienced the Transmission Defect in 2017 at approximately 65,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Violent Jerking.

390.   Plaintiff Zachary Hockensmith (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Ohio, residing in the City of Galion.

On or about May 15, 2013, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA8CR374071 (for the purpose of this paragraph only, the "Vehicle"), from Donley Ford of Galion, located at 702 Charles Street, Galion, OH 44833. Plaintiff first experienced the Transmission Defect on or about July 5, 2011, at approximately 20 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Delayed Downshifting.

## Oklahoma

391.  Plaintiff Alexa Grass (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oklahoma, residing in the City of Konawa. On or about May 4, 2015, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA7CR211718 (for the purpose of this paragraph only, the "Vehicle"), from Seminole Ford, located at 2222 N Milt Phillips Ave, Seminole, OK 74868. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiff first

288

experienced the Transmission Defect in or around June 2014. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering) and Delayed Acceleration.   Plaintiff sought transmission repairs from the following dealership: Seminole Ford, 2222 N Milt Phillips Ave, Seminole, OK 74868. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is. The Vehicle was never successfully repaired.

392.   Plaintiff Bobby Dunahoo (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oklahoma, residing in the City of Muskogee. On or about August 10, 2013, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA2BR271971 (for the purpose of this paragraph only, the "Vehicle"), from James Hodge Ford, located at 1200 N Main St, Muskogee, OK 74401. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiff first experienced the Transmission Defect in 2014 at

289

approximately 130,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Transmission Failures in Traffic, and Caught on Fire.    Plaintiff sought transmission repairs from the following dealership: James Hodge Ford Lincoln, 1200 N Main St, Muskogee, OK 74401. Plaintiff has sought repairs four times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was never successfully repaired.

393. Plaintiff Carey Lester (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oklahoma, residing in the City of Soper. On or about June 10, 2015, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73FR127332 (for the purpose of this paragraph only, the "Vehicle"), from Ed Wallace Ford, located at 1700 E. Jackson St, Hugo, OK 74743. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboards Ads, Historical Brand Slogans and Consumer Awards/Reviews. Ford

dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around October 2015 at approximately 15,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering).

394.   Plaintiffs Charlie and Berlinda Paul (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Oklahoma, residing in the City of Lawton. On or about January 1, 2016, Plaintiffs purchased a 2016 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HD7G5118028 (for the purpose of this paragraph only, the "Vehicle"), from Billingsley Ford Lawton, located at 8209 Quanah Parker Trailway, Lawton, OK 73505. Plaintiffs viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or representations to

Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Lack of Power, and Hard Decelerations/Clunks when Slowing or Accelerating.

395. Plaintiffs Dana Hall and Janice Duncan (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Oklahoma, residing in the City of Yukon. On or about June 1, 2017, Plaintiffs purchased a 2010 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA6AR335048 (for the purpose of this paragraph only, the "Vehicle"), from Joe Cooper Ford of Yukon, located at 1780 Garth Brooks, Yukon, OK 73099. Plaintiff first experienced the Transmission Defect in 2014. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Delayed Downshifts. Plaintiff contacted Ford about the Transmission Defect in 2015Plaintiff has sought repairs one time outside the warranty.

396.   Plaintiff Jonathan Conn (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oklahoma, residing in the City of Stillwater. On or about March 9, 2019, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K91ER258638 (for the purpose of this paragraph only, the "Vehicle").

397.   Plaintiff Kristina Chilton (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oklahoma, residing in the City of Blanchard. On or about February 15, 2019, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H92FR293228 (for the purpose of this paragraph only, the "Vehicle"), from OKC Volkswagen, located at 4710 NW 39th Street, Oklahoma City, OK 73122. Plaintiff first experienced the Transmission Defect in or around February 2019 at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering, Delayed Acceleration, Gears Slipping,

Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Deceleration/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff contacted Ford about the Transmission Defect in or around June 2019. Plaintiff sought transmission repairs from the following dealership: AAMCO Transmission, 2311 S. Air Depot, Midwest City, OK 73110. Plaintiff has sought repairs one time under warranty and two times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: June 2019, August 2, 2019, and September 4, 2019.

398.   Plaintiffs Robert and Charletta Fair (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Oklahoma, residing in the City of Quapaw. On or about January 1, 2015, Plaintiffs purchased a 2013 Ford Fusion SE,

with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H77DR280695 (for the purpose of this paragraph only, the "Vehicle"), from Vance Ford, located at 510 N. Main Street, Miami, OK 74354. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around October 2015 at approximately 60,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Violent Jerking, and Bucking/Kicking on Acceleration (Shuddering or Juddering).

## Oregon

399. Plaintiff Brenda Paul (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oregon, residing in the City of Grants Pass. On or about May 26, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a

21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76DR299576 (for the purpose of this paragraph only, the "Vehicle"), from Schroeder Auto Wholesale, located at 348 N Riverside Ave, Medford, OR 97501. Plaintiff first experienced the Transmission Defect on or about October 16, 2018, at approximately 80,704 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Lack of Power, Delayed Downshifts, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Mock Ford, 913 SE 6th St, Grants Pass, OR 97526. Plaintiff has sought repairs four times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: October 16, 2018, and November 19, 2018.

400.   Plaintiff Jacqueline Wasson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oregon, residing in the City of The Dalles.

On or about August 29, 2010, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JG1AR403728 (for the purpose of this paragraph only, the "Vehicle"), from Ray Schultens Ford Nissan, located at 2400 West 6th Street, The Dalles, OR 97058. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads, Internet Marketing and Historical Brand Slogans. Plaintiff first experienced the Transmission Defect on or about March 29, 2018, at approximately 28,374 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Complete Transmission Failure Requiring Repair/Replacement, and Leaks. Plaintiff sought transmission repairs from the following dealership: Precision Automotive, 825 East 2nd Street, The Dalles, OR 97058. Plaintiff has sought repairs two times outside the warranty. The Vehicle was repaired on the following dates: April 10, 2018, and April 29, 2019, through May 23, 2019.

297

401.   Plaintiff Wyatt Karstetter (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oregon, residing in the City of Sandy. On or about February 1, 2017, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K96ER294230 (for the purpose of this paragraph only, the "Vehicle").

## Pennsylvania

402.   Plaintiff Beth Malafi (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Dornsife. On or about November 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H71E5374057 (for the purpose of this paragraph only, the "Vehicle"), from Selinsgrove Ford, located at 10 N Susquehanna Trail, Selinsgrove, PA 17870. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in

298

deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff first experienced the Transmission Defect in or around November 2015 at approximately 9,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, and Delayed Acceleration.   Plaintiff contacted Ford about the Transmission Defect in or around May 2016. Plaintiff sought transmission repairs from the following dealership: Selinsgrove Ford, 10 N Susquehanna Trail, Selinsgrove, PA 17870. Plaintiff has sought repairs five times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable. The Vehicle was repaired in December 2015, March 2016, April 2016, May 2016, and September 2016.

403.   Plaintiff Brian Shearer (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Harrisburg. On or about January 1, 2016, Plaintiff purchased a 2015 Ford Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K91FR162784 (for the purpose of this paragraph only, the "Vehicle."

404. Plaintiff Carly Goldstein (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Wrightstown. On or about September 3, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR3DR348069 (for the purpose of this paragraph only, the "Vehicle"), from John Kennedy Ford of Phoenixville, located at 730 Valley Forge Rd, Phoenixville, PA 19406. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in 2016. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failure in Traffic, Complete Transmission Failure

Requiring Repair/Replacement, and Gearshift Cable Detached from Transmission. Plaintiff sought transmission repairs from the following dealership: Fred Beans Ford, 10 North Sycamore St, Newton, PA 18840. Plaintiff has sought repairs one time under warranty and eight times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in 2016 and September 2018.

405.    Plaintiff Charles Taylor (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Red Lion. On or about July 1, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H72ER153953 (for the purpose of this paragraph only, the "Vehicle").

406.    Plaintiff Christine Taylor's claim is scheduled to be dismissed without prejudice.

407.    Plaintiff Danny Wagner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of

301

Johnstown. On or about February 6, 2012, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA1BR208683 (for the purpose of this paragraph only, the "Vehicle").

408.   Plaintiff James Harrison (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Wilkes-Barre. On or about March 20, 2017, Plaintiff purchased a 2016 Ford Fusion, SEL FWD, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H79GR160305 (for the purpose of this paragraph only, the "Vehicle").

409.   Plaintiff James Snyder (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Allentown. On or about November 3, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K96DR212298 (for the purpose of this paragraph only, the "Vehicle").

410.   Plaintiff Linda Connelly (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Ruffs

302

Dale. On or about January 1, 2011, Plaintiff purchased a 2010 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA5AR275575 (for the purpose of this paragraph only, the "Vehicle"), from Sendell Motors, Inc., located at 5079 US-30, Greensburg, PA 15601. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Plaintiff first experienced the Transmission Defect in 2011 at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Lack of Power, Delayed Downshifts, Transmission Failures in Traffic, and No Acceleration and Sputtering.  Plaintiff contacted Ford about the Transmission Defect in 2011. Plaintiff sought transmission repairs from the following dealership: Sendell Motors, Inc, 5079 US-30, Greensburg, PA 15601. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problems Could Not Be Replicated. The Vehicle was repaired in 2013.

411. Plaintiff Mark Kehoe (for the purpose of this paragraph only,

303

"Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Collingdale. On or about December 13, 2013, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78ER230437 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Gears Slipping, Lack of Power, and Delayed Downshift.

412. Plaintiff Nona Taylor (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Pittsburgh. On or about July 15, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 6F35 6-Speed Automatic transmission, Vehicle Identification Number 3FA6P0H7XRR374691 (for the purpose of this paragraph only, the "Vehicle"), from Monroeville Kia, located at 3721 William Penn Hwy, Monroeville, PA 15146. Plaintiff first experienced the Transmission Defect in or around September 2018 at approximately 48,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Gears Slipping, Lack

304

of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: Monroeville Kia, 3721 William Penn Hwy, Monroeville, PA 15146. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

413.   Plaintiff Richard Moore (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Hadley. On or about November 16, 2015, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K97ER257428 (for the purpose of this paragraph only, the "Vehicle").

414.   Plaintiff Richard Powers (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of

Whitehill. On or about October 28, 2014, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA5AR146147 (for the purpose of this paragraph only, the "Vehicle"), from Ciocca Subaru, located at 4611 Hamilton Blvd., Allentown, PA 18103. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Gears Slipping and Complete Transmission Failure Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Ciocca Ford of Quakertown, 321 S. West End Blvd., Quakertown, PA 18951. Plaintiff has sought repairs three times under warranty. The Vehicle was repaired in August 2017.

415.   Plaintiff Robin Mirayes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New York, residing in the City of Phillipsburg. On or about March 1, 2015, Plaintiff purchased a 2015 Ford Fusion Titanium, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G78FR230814 (for the purpose of this paragraph only, the "Vehicle"), from Milham Ford, located at 3810 Hecktown Road, Easton, PA 18045. Plaintiff first experienced the Transmission Defect on or about June 16,

2015, at approximately 24,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering and Juddering), Delayed Acceleration, Gears Slipping, and Lack of Power. Plaintiff sought transmission repairs from the following dealership: Ford Smith Motor Company, 359 NJ-31, Washington, NJ 07882. Plaintiff has sought repairs four times under warranty. The Vehicle was repaired on the following dates: May 31, 2018, December 16, 2018, October 17, 2019, and October 31, 2019.

416. Plaintiff Terri Lawrence (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Boothwyn. On or about July 1, 2013, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JG7BR292670 (for the purpose of this paragraph only, the "Vehicle").

417. Plaintiff Victoria Harris (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of New Jersey, residing in the City of Montclair. On or about December 16, 2014, Plaintiff purchased a 2014 Ford

Fusion SE, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0HU1ER125499 (for the purpose of this paragraph only, the "Vehicle"), from Koch Ford, located at 3810 Hecktown Road, Easton, PA 18045. Plaintiff first experienced the Transmission Defect in February 2019 at approximately 150,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, and Delayed Acceleration.   Plaintiff contacted Ford about the Transmission Defect in February 2019. Plaintiff sought transmission repairs from the following dealership: Montclair Motor Works, 40 Claremont Avenue, Montclair, NJ 07042. Plaintiff has sought repairs seven times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired in March 2019, May 2019, June 2019, July 2019, August 2019 and September 2019.

418.   Plaintiff William Schweiger (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Pennsylvania, residing in the City of Baden. On or about May 8, 2014, Plaintiff purchased a 2013 Ford Fusion Titanium, with a 20/29/23 (AWD) 6F35 six-speed automatic transmission, Vehicle Identification

Number 3FA6P0D90DR189923 (for the purpose of this paragraph only, the "Vehicle"), from Woltz and Winn Ford, located at 2100 Washington Pike, Carnegie, PA 15106. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing and Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability. Plaintiff first experienced the Transmission Defect in June 2018 at approximately 52,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Jeff's Transmission Service, 5564 William Flinn HWY, Gibsonia, PA 15044. Plaintiff has sought repairs two times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to

the Vehicle: Transmission Functions Normally. The Vehicle was repaired on the following dates: August 1, 2018, and January 2019.

419. Plaintiff Zakk Agentowicz's claim is scheduled to be dismissed without prejudice.

### South Carolina

420. Plaintiff Andrea Gulley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Carolina, residing in the City of Abbeville. On or about November 1, 2012, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA2BR244439 (for the purpose of this paragraph only, the "Vehicle"), from Ballentine Ford, located at 1305 SC-72, Greenwood, SC 29649. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect at approximately 70,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent

310

Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff sought transmission repairs from the following dealership: Ballentine Ford, 1305 SC-72, Greenwood, SC 29649. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in or around the following: December 2012 and January 2013.

421.   Plaintiff Champaine Wigfall (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Carolina, residing in the City of Goose Creek. On or about December 1, 2015, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA4CR121913 (for the purpose of this paragraph only, the "Vehicle").

422.   Plaintiff Joseph Zappitella (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Carolina, residing in the City of Anderson. On or about October 9, 2014, Plaintiff purchased a 2015 Ford Fusion

SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification

Number 3FA6P0H73FR109560 (for the purpose of this paragraph only, the

"Vehicle"), from Anderson Ford, located at 3900 Clemson Blvd., Anderson, SC

29621. Plaintiff viewed or otherwise received the following advertisements or

representations by Ford and relied on them in deciding to purchase the Vehicle:

Dealership Salesperson. Ford dealership sales personnel made the following claims

or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the

Vehicle: Vehicle Dependability. Plaintiff first experienced the Transmission Defect

in November 2011 at approximately 9,000 miles. Plaintiff has experienced, and

continues to experience, the following manifestations of the Transmission Defect:

Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on

Acceleration (Shuddering or Juddering), Delayed Acceleration, Difficulty

Stopping, Transmission Failures in Traffic, and Loss of Power Steering While

Driving.

423.   Plaintiff Mary Clements (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of South Carolina, residing in the City of

Union. On or about June 18, 2016, Plaintiff purchased a 2014 Ford Fusion SE,

with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70ER307236 (for the purpose of this paragraph only, the "Vehicle"), from Blackwood's Auto Sales, located at 1013 Duncan Bypass, Union, SC 29379. Plaintiff first experienced the Transmission Defect in 2018 at approximately 13,400 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, Lack of Power, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.  Plaintiff contacted Ford about the Transmission Defect in 2018. Plaintiff has sought repairs one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Problem Could Not Be Replicated. The Vehicle was never successfully repaired.

424.    Plaintiff Michelle Rowland (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Carolina, residing in the City of

Greenville. On or about July 10, 2017, Plaintiff purchased a 2015 Ford Fusion, SE Hybrid, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73FR177809 (for the purpose of this paragraph only, the "Vehicle"), from Fairway Ford, located at 2323 Laurens Road, Greenville, SC 29607. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about April 19, 2018, at approximately 30,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts and Shifted into Reverse and the car would not move.   Plaintiff contacted Ford about the Transmission Defect on or about May 25, 2018. Plaintiff sought transmission repairs from the following dealership: Fairway Ford, 2323 Laurens Road,

Greenville, SC 29607. Plaintiff has sought repairs five times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated. and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: April 25, 2018, May 24, 2018, June 8, 2018, June 27, 2018, and July 11, 2018.

425. Plaintiff Pamela Moore (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Florida, residing in the City of Fort Pierce. On or about May 14, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70DR134509 (for the purpose of this paragraph only, the "Vehicle"), from Myrtle Beach Chrysler Jeep, located at 785 Jason Blvd., Myrtle Beach, SC 29577. Plaintiff first experienced the Transmission Defect on or about August 15, 2016, at approximately 41,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration

(Shuddering or Juddering), Delayed Acceleration, Lack of Power, Transmission Failures in Traffic, and Complete Transmission Failure Requesting Repair/Replacement.  Plaintiff sought transmission repairs from the following dealership: Sunrise Ford, 5435 US-1, Fort Pierce, FL 34982. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired in May 2016.

426.  Plaintiff Randy Hoag (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Carolina, residing in the City of Fort Mill. On or about June 1, 2010, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HAXAR420514 (for the purpose of this paragraph only, the "Vehicle"), from Fort Mill Ford, located at 801 Gold Hill Road, Fort Mill, SC 29708. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around March

2016 at approximately 54,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Delayed Downshifts, Hard Deceleration/Clunks When Slowing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Indian Land Transmissions, 144 Marvin Road, Fort Mill, SC 29707. Plaintiff has sought repairs one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally. The Vehicle was repaired in December 2018.

## South Dakota

427.   Plaintiff Gavin Anthony Thomas (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Dakota, residing in the City of Vermillion. On or about August 15, 2015, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number

317

3FAHP0JG6CR310397 (for the purpose of this paragraph only, the "Vehicle"), from Brother's Auto Sales, located at 2100 W 12th St., Sioux Falls, SD 57106. Plaintiff first experienced the Transmission Defect in or around March 2017 at approximately 80,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, and Delayed Downshifts.

428. Plaintiff Jason Lewison (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of South Dakota, residing in the City of Black Hawk. On or about March 1, 2019, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H71E5384605 (for the purpose of this paragraph only, the "Vehicle"), from Wheel City Auto, located at 420 Campbell St., Rapid City, SD 57701. Plaintiff first experienced the Transmission Defect on or about March 13, 2019, at approximately 99,450 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Difficulty Stopping, Lack of Power, Delayed Downshifts, and Hard Deceleration/Clunks when Slowing or Accelerating. Plaintiff has sought repairs

four times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

### Tennessee

429.   Plaintiff Briana Shaw (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Brownsville. On or about April 1, 2014, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HG9AR333370 (for the purpose of this paragraph only, the "Vehicle").

430.   Plaintiffs Candice McGaugh and Carole Johnson (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of Michigan, residing in the City of South Haven. On or about July 20, 2013, Plaintiffs purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G79DR375650 (for the purpose of this paragraph only, the "Vehicle"), from AutoNation Ford, located at 2515 Mt Moriah Rd,

Memphis, TN 38115. Plaintiffs viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiffs first experienced the Transmission Defect in 2014 at approximately 20,000 miles. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, and Delayed Downshifts.  Plaintiff has sought repairs two time under warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. Plaintiffs were assured of the following when Plaintiffs sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

320

431.   Plaintiff Cassie Shorty (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Horn Lake. On or about June 1, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76DR216728 (for the purpose of this paragraph only, the "Vehicle"), from American Car Center, located at 3311 Elvis Presley Blvd, Memphis, TN 38116. Plaintiff first experienced the Transmission Defect in or around June 2017 at approximately 55,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Delayed Acceleration.

432.   Plaintiff Darrell Harvey (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Memphis. On or about April 29, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD4FR202948 (for the purpose of this paragraph only, the "Vehicle"), from SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FAHP0HA8AR429051

321

(for the purpose of this paragraph only, the "Vehicle"), from AutoNation Ford, located at 2515 Mt. Moriah Rd, Memphis, TN 38115. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability, Drivability and Reliability. Plaintiff first experienced the Transmission Defect on or about March 24, 2019, at approximately 40,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Delayed Acceleration, Gears Slipping, Difficulty Stopping, and Lack of Power.

433.   Plaintiff Desiree Walters (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Nashville. On or about April 1, 2017, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K9XER183924 (for the purpose of this paragraph only, the "Vehicle"), from CarMax, located at 2501 Powell Ave, Nashville, TN 37204.

322

Plaintiff first experienced the Transmission Defect on or about May 12, 2017, at approximately 49,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Jerking), Delayed Acceleration, Lack of Power, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, and Transmission Failures in Traffic.  Plaintiff sought transmission repairs from the following dealership: Wyatt Johnson Ford, 646 Thompson Ln, Nashville, TN 37204. Plaintiff has sought repairs one time under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following date: February 22, 2019.

434.   Plaintiff Jennifer Sutton (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Lenoir

City. On or about November 1, 2018, Plaintiff purchased a 2016 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD5GR391871 (for the purpose of this paragraph only, the "Vehicle").

435. Plaintiff Kiara King (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Smyrna. On or about September 30, 2016, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA6AR231322 (for the purpose of this paragraph only, the "Vehicle").

436. Plaintiffs Peyton and Elizabeth Sass (for the purpose of this paragraph only, "Plaintiffs"), are citizens of the State of North Carolina, residing in the City of Clyde. On or about December 15, 2016, Plaintiffs purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H71G5125566 (for the purpose of this paragraph only, the "Vehicle"), from Rusty Wallace Ford, located at 134 Sharon Drive, Dandridge, TN 37725. Plaintiffs viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to lease the Vehicle:

Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiffs, on which Plaintiffs relied in deciding to lease the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiffs have experienced, and continue to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, Premature Wear of Internal Components, and Throttle Boddy Went Out at 14,215 Miles. Plaintiffs contacted Ford about the Transmission Defect in or around August 2016. Plaintiffs sought transmission repairs from the following dealership: Rusty Wallace Ford, 134 Sharon Drive, Dandridge, TN 37725. Plaintiffs have sought repairs one time under warranty. Plaintiffs were not charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following date: September 14, 2016.

437. Plaintiff Rhonda Duncan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Robbins. On or about August 1, 2016, Plaintiff purchased a 2011 Ford Fusion SE, with a

6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA2BR194101 (for the purpose of this paragraph only, the "Vehicle").

438.   Plaintiff Rick Mobley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Knoxville. On or about December 16, 2014, Plaintiff purchased a 2011 Ford Fusion, SEL FWD, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0JA2BR179978 (for the purpose of this paragraph only, the "Vehicle").

439.   Plaintiff Steffanie Gillentine (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Mississippi, residing in the City of Coldwater. On or about February 4, 2016, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K94ER161921 (for the purpose of this paragraph only, the "Vehicle"), from Auto Nation Ford, located at 2515 Mt. Moriah Road, Memphis, TN 38115. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied

in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Knocking Noises and Car Dies When Driving in Slow Speeds. Plaintiff contacted Ford about the Transmission Defect in November 2017. Plaintiff sought transmission repairs from the following dealership: Homer Skelton Ford of Millington, 9030 TN-3, Millington, TN 38053. Plaintiff has sought repairs three times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in December 2017 and November 2018.

440. Plaintiff Takeisha Nicholson-Lockett (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Tennessee, residing in the City of Memphis. On or about July 1, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73GR364128 (for the purpose of this paragraph only, the

"Vehicle").

## Texas

441.   Plaintiff Amanda Forbes (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Wills Point. On or about November 1, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD5ER276944 (for the purpose of this paragraph only, the "Vehicle"), from AutoNation. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff has sought repairs four times outside the warranty.

442.   Plaintiff Benjamin Lazenby (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Mansfield. On or about July 21, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number

3FA6P0H91ER267749 (for the purpose of this paragraph only, the "Vehicle"), from WZ Auto Sales, located at 140 S Bowen Rd, Arlington, TX 76012. Plaintiff first experienced the Transmission Defect on or about July 21, 2017, at approximately 38,468 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking and Bucking and Kicking on Acceleration (Shuddering or Juddering).

443.   Plaintiff Carolyn Kane (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Pearland. On or about February 11, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR2DR201077 (for the purpose of this paragraph only, the "Vehicle"), from Big Star Ford, located at 17717 Highway 288 S, Manvel, TX 77578. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and

Reliability. Plaintiff first experienced the Transmission Defect on or about March 2, 2018, at approximately 78,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Violent Jerking. Plaintiff sought transmission repairs from the following dealership: Christian Brothers Automotive Space Center, 11600 Space Center Blvd, Houston, TX 77059. Plaintiff has sought repairs one time outside the warranty. The Vehicle was repaired on the following date: March 16, 2018.

444. Plaintiff Cheryl Carry (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Beaumont. On or about October 23, 2018, Plaintiff purchased a 2017 Ford Fusion, SEL FWD, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76HR358924 (for the purpose of this paragraph only, the "Vehicle"), from Triplex Auto Exporters Inc., located at 2903 19th St., Port Arthur, TX 77642. Plaintiff first experienced the Transmission Defect on or about October 31, 2018, at approximately 5,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration

(Shuddering or Juddering), Delayed Acceleration, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Energy Country Ford, 4545 Twin City Hwy, Port Arthur, TX 77642. Plaintiff has sought repairs one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in October 2018.

445.   Plaintiff Christian Tietjen (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Saratoga Springs. On or about May 31, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD4ER184157 (for the purpose of this paragraph only, the "Vehicle"), from Grand Prairie Ford, located at 701 E Palace Pkwy, Grand Prairie, TX 75050. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to

purchase the Vehicle: Sales Brochure, TV, Radio or Billboard Ads, Dealership Salesperson, Internet Marketing, Historical Brand Slogans and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect on or about September 10, 2015, at approximately 8,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Larry H. Miller Ford Provo, 1995 N University Pkwy, Provo, UT 84604. Plaintiff has sought repairs 5 times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability

is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: September 12, 2015, and April 10, 2017.

446.   Plaintiff Cynthia Craft (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Amarillo. On or about July 7, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR5DR185294 (for the purpose of this paragraph only, the "Vehicle").

447.   Plaintiff Damion Mullins (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Richmond. On or about June 1, 2016, Plaintiff purchased a 2014 Ford Fusion Titanium, with a 6F35 auto transmission, Vehicle Identification Number 3FA6P0K95ER361383 (for the purpose of this paragraph only, the "Vehicle").

448.   Plaintiff David Glover (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Conroe. On or about July 1, 2016, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JA3CR219373 (for the

purpose of this paragraph only, the "Vehicle"), from USA Autobrokers, located at 1619 N Shepherd Dr, Houston, TX 77008. Plaintiff first experienced the Transmission Defect at approximately 71,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Lack of Power, and Transmission Failures in Traffic.

449. Plaintiff Diane Waggoner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Athens. On or about November 30, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HD4E5000970 (for the purpose of this paragraph only, the "Vehicle").

450. Plaintiff Dualex Soto (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Justin. On or about December 1, 2014, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR6DR290832 (for the purpose of this paragraph only, the "Vehicle").

451. Plaintiff Erasmo Cuba (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Sullivan City. On or about July 5, 2013, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR5DR388170 (for the purpose of this paragraph only, the "Vehicle"), from Spike Ford, located at 805 E. Expressway 83, Mission, TX 78572. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Sustainability/Long-Lasting. Plaintiff first experienced the Transmission Defect under 1,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Difficulty Stopping, Lack of Power, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought

335

transmission repairs from the following dealership: Spike Ford, 805 E. Expressway 83, Mission, TX 78572. Plaintiff has sought repairs twenty times under warranty and three times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is and Transmission Functions Normally. The Vehicle was never successfully repaired.

452.   Plaintiff Gary Marburger (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Austin. On or about June 12, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H72DR291619 (for the purpose of this paragraph only, the "Vehicle"), from CarMax, located at 1300 North I35, Austin, TX 78753. Plaintiff first experienced the Transmission Defect on or about June 27, 2016, at approximately 52,942 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Delayed Downshifts, Premature Wear of Internal Components, and Transmission

336

Failures in Traffic. Plaintiff sought transmission repairs from the following dealership: CarMax, 1300 North I35, Austin, TX 78753. Plaintiff has sought repairs six times under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was never successfully repaired.

453. Plaintiff Gayle Eastlick (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of North Richard Hills. On or about September 29, 2012, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0JG6CR354478 (for the purpose of this paragraph only, the "Vehicle"), from Five Star Ford, located at 6618 Northeast Loop 820, North Richland Hills, TX 86180. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff first experienced the Transmission Defect on or about May 15, 2014, at approximately 9,700 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Delayed Downshifts.

Plaintiff sought transmission repairs from the following dealership: Five Star Ford, 6618 Northeast Loop 820, North Richland Hills, TX 86180. Plaintiff has sought repairs two times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, and Problems Could Not Be Replicated. The Vehicle was repaired in June 2014 and July 2018.

454. Plaintiff Greg Horner (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Cibolo. On or about August 13, 2016, Plaintiff purchased a 2016 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K98GR198084 (for the purpose of this paragraph only, the "Vehicle"), from Lockhart Motor Company, located at 2330 S Colorado St., Lockhart, TX 78664. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, TV, Radio or Billboard Ads, and Internet Marketing. Plaintiff first experienced the Transmission Defect in or around May 2017 at approximately 40,000 miles. Plaintiff has experienced, and continues to

338

experience, the following manifestations of the Transmission Defect: Violent Jerking, Delayed Acceleration, Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff sought transmission repairs from the following dealership: Bluebonnet Ford, 351 I.H. 35 S, New Braunfels, TX 78130. Plaintiff has sought repairs one time under warranty and one time outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired on the following dates: June 2, 2017, and attempted on March 29, 2018.

455. Plaintiff James Blakely (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Rockwall. On or about October 1, 2015, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 1FA6P0HDXE5350166 (for the purpose of this paragraph only, the "Vehicle"), from a private seller. Plaintiff first experienced the Transmission Defect in or around May 2016 at approximately 28,000 miles. Plaintiff has experienced, and continues to experience, the following

339

manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, and Delayed Downshifts.   Plaintiff sought transmission repairs from the following dealership: Rockwall Ford, 990 East I-30, Rockwall, TX 75087. Plaintiff has sought repairs seven times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired for several months, multiple times, beginning in May 2016.

456.   Plaintiff Johnny Hendrix (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Kaufman. On or about August 1, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G77GR193093 (for the purpose of this paragraph only, the "Vehicle"), from Brinson Ford, located at 1722 Oxford Drive, Kaufman, TX 75142. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership

Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around June 2016 at approximately 80,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Premature Wear of Internal Components.   Plaintiff contacted Ford about the Transmission Defect in or around June 2016.

457. Plaintiff Jose Angeles (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Kyle. On or about January 25, 2019, Plaintiff purchased a 2017 Ford Fusion Titanium, with a 21/31/25 (FWD) 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0K94HR120161 (for the purpose of this paragraph only, the "Vehicle"), from South Point Dodge, located at 5210 South IH 35 Frontage Road, Austin, TX 78745. Plaintiff first experienced the Transmission Defect in or around January 2019 at approximately 78,002 miles. Plaintiff has experienced, and

continues to experience, the following manifestation of the Transmission Defect: Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: South Point Dodge, 5210 South IH 35 Frontage Road, Austin, TX 78745. Plaintiff has sought repairs one time under warranty. The Vehicle was never successfully repaired.

458. Plaintiff Juan Veliz (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Mission. On or about May 1, 2015, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G79GR351921 (for the purpose of this paragraph only, the "Vehicle").

459. Plaintiff Lagilda McCarthy (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Houston. On or about January 24, 2015, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA7CR207460 (for the purpose of this paragraph only, the "Vehicle"), from Rhodes Auto Sales, located at 8335 North Fwy., Houston, TX 77037. Plaintiff first experienced the Transmission Defect on or about May 31, 2017.

342

Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Gears Slipping, Difficulty Stopping, Lack of Power, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff contacted Ford about the Transmission Defect on or about July 17, 2017. Plaintiff sought transmission repairs from the following dealership: Helfman Ford, 12220 Southwest Fwy., Stafford, TX 77477. Plaintiff has sought repairs one time under warranty and one time outside the warranty. The Vehicle was never successfully repaired.

460. Plaintiff Maria Nunez (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Luskin. On or about June 1, 2013, Plaintiff purchased a 2011 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA2BR166878 (for the purpose of this paragraph only, the "Vehicle"), from Salty's Auto Sales, located at 306 N. Timberland Drive, Lufkin, TX 75901. Plaintiff first experienced the Transmission Defect in 2015. Plaintiff has experienced, and continues to experience, the following manifestation of the

Transmission Defect: Delayed Acceleration.

461.   Plaintiff Matthew Pierce (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Magnolia. On or about January 1st, 2016, Plaintiff purchased a 2013 Ford Fusion Titanium, with a 43/41/42 Hybrid CVT, Ford HF35 transmission, Vehicle Identification Number 3FA6P0K99DR307017 (for the purpose of this paragraph only, the "Vehicle").

462.   Plaintiff Myeisha Spears (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Houston. On or about April 19, 2014, Plaintiff purchased a 2012 Ford Fusion S, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA8CR238751 (for the purpose of this paragraph only, the "Vehicle"), from DriveTime Used Cars, located at 9645 North FWY., Houston, TX 77037. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to lease the Vehicle: TV, Radio or Billboard Ads. Plaintiff first experienced the Transmission Defect on or about January 15, 2017, at approximately 108,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission

Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.

463. Plaintiff Orin Osbey (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Houston. On or about December 1, 2012, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0G75DR177213 (for the purpose of this paragraph only, the "Vehicle").

464. Plaintiff Terry Cole (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Winona. On or about July 1, 2016, Plaintiff purchased a 2016 Ford Fusion, SE , with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H70G5117989 (for the purpose of this paragraph only, the "Vehicle"), from Arlington Ford, located at 416 Elm Street, Winona, TX 75792. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the

Vehicle:    Vehicle    Dependability,    Drivability,    Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Lack of Power.

465.    Plaintiff Timothy Searcy (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Texas, residing in the City of Sunnyvale. On or about July 1, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD6FR126939 (for the purpose of this paragraph only, the "Vehicle"), from North Central Ford, located at 1819 N. Central Expressway, Richardson, TX 75080. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability and Reliability. Plaintiff first experienced the Transmission Defect in 2016 at approximately 30,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the

346

Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering and Juddering), Gears Slipping, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Town East Ford, 18411 Lyndon B Johnson Freeway, Mesquite, TX 75150. Plaintiff has sought repairs five times under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired between 2017 and 2018.

## Utah

466.   Plaintiff Angela Carlson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Cedar City. On or about July 1, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD7ER316537 (for the purpose of this paragraph only, the "Vehicle"), from Cedar City Motor Company, located at 1100 N. Main St., Cedar City, UT

84721. Plaintiff first experienced the Transmission Defect in or around October 2017 at approximately 36,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff sought transmission repairs from the following dealership: Cedar City Motor Company, 1100 N. Main St., Cedar City, UT 84721. Plaintiff has sought repairs three times under warranty.

467.   Plaintiff Anthony Phillips (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Salt Lake City. On or about February 1, 2017, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR0DR218461 (for the purpose of this paragraph only, the "Vehicle"), from Larry Miller Used Car Supermarket, located at 10910 Auto Mall Dr, Sandy, UT 84070. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering),

348

Delayed Acceleration, Gears Slipping, Lack of Power, Hard Decelerations/Clunks when Slowing or Accelerating, Premature Wear of Internal Components, Transmission Failures in Traffic, and Complete Transmission Failure Requiring Repair/Replacement.   Plaintiff sought transmission repairs from the following dealership: Larry H. Miller Ford Draper, 11442 Lone Peak Pkwy, Draper, UT 84020. Plaintiff has sought repairs two times under warranty and one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problems Could Not Be Replicated. The Vehicle was repaired on the following dates: January 11, 2018, January 8, 2019, and April 19, 2019.

468.   Plaintiff Brayden Wilson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Draper. On or about April 1, 2017, Plaintiff purchased a 2015 Ford Fusion, SE Hybrid, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73FR233151 (for the purpose of this paragraph only, the "Vehicle").

469.   Plaintiff Garrett Schaffer (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of South Webber.

On or about October 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H73ER318389 (for the purpose of this paragraph only, the "Vehicle"), from Murray Auto Car Sales, located at 4315 State St., Salt Lake City, UT 84107. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, TV, Radio or Billboard Ads, Internet Marketing, Historical Brand Slogans, and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect at approximately 20,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating. Plaintiff experienced a transmission failure that resulted in a collision. The Vehicle was never successfully repaired.

470. Plaintiff Ken Borup (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Tremonton. On

or about October 1, 2014, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR0DR313148 (for the purpose of this paragraph only, the "Vehicle"), from Low Book Sales, located at 3371 State Street, Salt Lake City, UT 84115. Plaintiff first experienced the Transmission Defect on or about April 1st, 2016, at approximately 40,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Gears Slipping. Plaintiff sought transmission repairs from the following dealership: Heritage Motor Company, 101 N. 300 East, Tremont, UT 84337. Plaintiff has sought repairs one time under warranty. The Vehicle was repaired on the following date: April 12, 2016.

471. Plaintiff Lance Dean (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Vernal. On or about February 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78DR365285 (for the purpose of this paragraph only, the "Vehicle"), from Top Gear Auto, located at 560 W. State Street, Pleasant Grove, UT 84062.

351

Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration.

472.   Plaintiff Sara Thomson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Utah, residing in the City of Cottonwood Heights. On or about October 1, 2017, Plaintiff purchased a 2010 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA6AR337985 (for the purpose of this paragraph only, the "Vehicle").

## Virginia

473.   Plaintiff Angela Peoples-Hooks (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Chesapeake. On or about December 1, 2013, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78ER199268 (for the purpose of this paragraph only, the "Vehicle").

474.   Plaintiff Carlos Richardson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Cedar Bluff.

On or about January 1, 2014, Plaintiff purchased a 2014 Ford Fusion SE, Vehicle Identification Number 1FA6P0HD8E5368018 (for the purpose of this paragraph only, the "Vehicle"), from Ramey Auto Group, located at 2750 Clinch St., Richlands, VA 24641. Plaintiff first experienced the Transmission Defect on or about April 9, 2018, at approximately 95,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Delayed Downshifts.  Plaintiff has sought repairs three times outside the warranty. The Vehicle was never successfully repaired.

475. Plaintiff Carter Myers (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Norfolk. On or about October 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75DR367477 (for the purpose of this paragraph only, the "Vehicle"), from DriveTime, located at 1705 S. Military Hwy, Chesapeake, VA 23320. Plaintiff has experienced, and continues to experience, the following

manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, and Lack of Power. Plaintiff contacted Ford about the Transmission Defect in or around October 2017. Plaintiff sought transmission repairs from the following dealership: Kool Ford, 31066 Lankford Hwy, Melfa, VA 23410. Plaintiff has sought repairs one time under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally, Problem Could Not Be Replicated. The Vehicle was never successfully repaired.

476. Plaintiff Jazmine Penn (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Virginia Beach. On or about February 20, 2017, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR7DR135027 (for the purpose of this paragraph only, the "Vehicle"), from Pembroke Auto Sales, located at 4753 Virginia Beach Blvd., Virginia Beach, VA 23462. Plaintiff first experienced the Transmission Defect on or about March 12, 2016, at approximately 30,500 miles.

Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), and Delayed Acceleration. Plaintiff sought transmission repairs from the following dealership: Beach Ford, 2717 Virginia Beach Blvd, Virginia Beach, VA 23452. Plaintiff sought repairs eight times. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Transmission Functions Normally and Drivability Concerns Expressed Were "Normal."

477. Plaintiff John Goode (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Triangle. On or about October 1, 2016, Plaintiff purchased a 2012 Ford Fusion SE, with a 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HAXCR141891 (for the purpose of this paragraph only, the "Vehicle"), from Koons Sterling Ford, located at 46869 Harry Byrd Blvd., Sterling, VA 20164. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle:

355

Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about September 15, 2016, at approximately 33,500 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Lack of Power, and Transmission Failures in Traffic. Plaintiff sought transmission repairs from the following dealership: Todd Judy Ford, 1900 Patrick St. Plaza, Charleston, WV 25387. Plaintiff has sought repairs five times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

478. Plaintiff Michael Scott (for the purpose of this paragraph only,

356

"Plaintiff"), is a citizen of the State of Virginia, residing in the City of Boones Mill. On or about December 21, 2015, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H72FR135261 (for the purpose of this paragraph only, the "Vehicle").

479.   Plaintiff Ramona Akers Carter (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Virginia, residing in the City of Ridgeway. On or about December 1, 2015, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78DR230307 (for the purpose of this paragraph only, the "Vehicle"), from Nelson Ford, located at 201 Commonwealth Blvd. W., Martinsville, VA 24112. Plaintiff first experienced the Transmission Defect in 2015 at approximately 68,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Gears Slipping, and Delayed Downshift.   Plaintiff sought transmission repairs from the following dealership: Nelson Ford, 201

357

Commonwealth Blvd., W. Martinsville, VA 24112. Plaintiff has sought repairs four times outside the warranty. The Vehicle was repaired in September 2019.

## Washington

480.   Plaintiff Breeona Applegate (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Washington, residing in the City of Vancouver. On or about August 1, 2015, Plaintiff purchased a 2012 Ford Fusion Titanium, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0GA5CR340705 (for the purpose of this paragraph only, the "Vehicle"), from Vancouver Ford, located at 6801 NE 40th St, Vancouver, WA 98661. Plaintiff viewed or otherwise received the following advertisement or representation by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in 2017 at approximately 89,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the

Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, and Transmission Failures in Traffic.   Plaintiff sought transmission repairs from the following dealership: Vancouver Ford, 6801 NE 40th St, Vancouver, WA 98661. Plaintiff has sought repairs one time under warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in or around: October 2017.

481.   Plaintiff Brian Bennett (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Oregon, residing in the City of Milton-Freewater. On or about June 1, 2015, Plaintiff purchased a 2010 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FAHP0HA0AR211864 (for the purpose of this paragraph only, the "Vehicle"), from McCurley Toyota, located at 606 N Wilbur Ave, Walla Walla, WA 99362. Plaintiff first experienced the Transmission Defect at approximately 130,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Premature Wear of Internal

Components, "Transmission requires fluid flushes once twice a year." Plaintiff sought transmission repairs from the following dealership: Argo Auto & Transmission, 202 E Alder St, Walla Walla, WA 99362. Plaintiff has sought repairs three times outside the warranty. Plaintiff was charged a fee before the Vehicle would be inspected or repaired. The Vehicle was repaired in or around June of 2018.

482. Plaintiff Justin Gethers (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Washington, residing in the City of Seattle. On or about December 21, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR5DR157558 (for the purpose of this paragraph only, the "Vehicle"), from Bill Pierre Ford Commercial Sales, located at 11501 Lake City Way NE, Seattle, WA 98125. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability,

Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect on or about March 12, 2017, at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, and Delayed Downshifts.

483.   Plaintiff Merritt McDowell (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Washington, residing in the City of Naches. On or about October 1, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H75ER130005 (for the purpose of this paragraph only, the "Vehicle"), from Tom Denchel Ford, located at 630 Wine Country Road, Prosser, WA 99350. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Sales Brochure, TV, Radio or Billboard Ads, and Internet Marketing. Plaintiff first experienced the Transmission Defect on or about December 20, 2018, at approximately 60,000 miles. Plaintiff has experienced, and continues to

experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Delayed Acceleration, Delayed Downshift, and Slammed into Reverse Very Violently.

484.   Plaintiff Peggy O'Malley (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Washington, residing in the City of Renton. On or about July 28, 2013, Plaintiff purchased a 2013 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76DR363163 (for the purpose of this paragraph only, the "Vehicle"), from Sound Ford, located at 101 SW Grady Way, Renton, WA 98057. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, Reliability, and Free of Transmission Issues. Plaintiff first experienced the Transmission Defect in or around December 2014 at approximately 35,000 miles. Plaintiff has experienced, and continues to experience, the following

362

manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Delayed Downshifts, hard Decelerations/Clunks when Showing or Accelerating, Premature Wear of Internal Components, and Complete Transmission Failure Requiring Repair/Replacement. Plaintiff experienced a transmission failure that resulted in a collision. Plaintiff sought transmission repairs from the following dealership: Sound Ford, 101 SW Grady Way, Renton, WA 98057. Plaintiff has sought repairs one time outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in December 2018.

## **Wisconsin**

485.   Plaintiff Alexander Pearson (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Minneapolis. On or about February 12, 2016, Plaintiff purchased a 2013 Ford Fusion SE, Vehicle Identification Number 3FA6P0HR7DR385917 (for the purpose

of this paragraph only, the "Vehicle"), from Hudson Ford, located at 2020 Crest View Dr, Hudson, WI 54016. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, and Sustainability/Long-Lasting. Plaintiff first experienced the Transmission Defect in June 2017 at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, and Transmission Light Has Come On.

486.  Plaintiff Clifton Coleman (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Wisconsin, residing in the City of Milwaukee. On or about March 1, 2014, Plaintiff purchased a 2010 Ford Fusion S, with a 6F35 auto transmission, Vehicle Identification Number 3FAHP0HA1AR203434 (for the purpose of this paragraph only, the "Vehicle"), from Heiser Ford, located at 1700 W Silver Spring Dr, Glendale, WI 53209. Plaintiff first experienced the Transmission Defect in 2015. Plaintiff has experienced, and continues to experience, the following manifestations of the

Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Lack of Power, and Transmission Failures in Traffic.   Plaintiff has sought repairs five times under warranty.

487.   Plaintiff Gary Antonich (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Minnesota, residing in the City of Zimmerman. On or about May 19, 2018, Plaintiff purchased a 2014 Ford Fusion SE, Vehicle Identification Number 3FA6P0HD3ER156589 (for the purpose of this paragraph only, the "Vehicle"), from Benna Ford, located at 3022 Tower Ave., Superior, WI 54880. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Dealership Salesperson. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Drivability. Plaintiff first experienced the Transmission Defect in or around April 2019 at approximately 55,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power,

and Transmission Failures in Traffic.    Plaintiff sought transmission repairs from the following dealership: Cornerstone Ford, 17219 US-10, Elk River, MN 55330. Plaintiff has sought repairs two times outside the warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired on the following dates: April 2019 and July 30, 2019.

488.    Plaintiff Gillian Hagan (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Wisconsin, residing in the City of Pardeeville. On or about July 1, 2016, Plaintiff purchased a 2013 Ford Fusion SE, with a 23/36/28 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0HR4DR238101 (for the purpose of this paragraph only, the "Vehicle"), from Goben Cars, located at 2501 East Springs Dr., Madison, WI 53704. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: Internet Marketing, and Consumer Awards/Reviews. Plaintiff first experienced the Transmission Defect on or about September 15, 2016, at approximately 80,000

366

miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Delayed Acceleration, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating, and Transmission Failures in Traffic. Plaintiff sought transmission repairs from the following: Eagan Auto Sales, 7613 County Hwy N, Sun Prairie, WI 53590. Plaintiff has sought repairs two times outside the warranty. The Vehicle was never successfully repaired.

489. Plaintiff Josh Gulke (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Wisconsin, residing in the City of Beaver Dam. On or about November 19, 2014, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H70ER160013 (for the purpose of this paragraph only, the "Vehicle"), from Beaver Dam Ford, located at 100 Summit Drive, Beaver Dam, WI 53916. Plaintiff viewed or otherwise received the following advertisements or representations by Ford and relied on them in deciding to purchase the Vehicle: TV, Radio or Billboard Ads, Dealership Salesperson and Consumer Awards/Reviews. Ford dealership sales personnel made the following claims or

representations to Plaintiff, on which Plaintiff relied in deciding to purchase the Vehicle: Vehicle Dependability, Drivability, Sustainability/Long-Lasting, and Reliability. Plaintiff first experienced the Transmission Defect in or around October 2018 at approximately 85,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, and Delayed Downshifts. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Drivability is Acceptable, Transmission Functions Normally, and Drivability Concerns Expressed Were "Normal." The Vehicle was never successfully repaired.

490.   Plaintiff Sandra Segura (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of Wisconsin, residing in the City of Madison. On or about September 1, 2018, Plaintiff purchased a 2014 Ford Fusion SE, Vehicle Identification Number 1FA6P0HDXE5381790 (for the purpose of this paragraph only, the "Vehicle"), from Schoepp Motors, located at 3440 Tribeca Drive, Middleton, WI 53562. Plaintiff first experienced the Transmission Defect in

January 2018 at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Sudden and Unexpected Shaking, Violent Jerking, Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, Lack of Power, Delayed Downshifts, and Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff contacted Ford about the Transmission Defect in January 2018. Plaintiff sought transmission repairs from the following dealership: Schoepp Motors, 3440 Tribeca Drive, Middleton, WI 53562. Plaintiff has sought repairs one time under warranty. Plaintiff was assured of the following when Plaintiff sought transmission repairs to the Vehicle: Vehicle Will Be Dependable As-Is, Drivability is Acceptable, Transmission Functions Normally, Problems Could Not Be Replicated, and Drivability Concerns Expressed Were "Normal." The Vehicle was repaired in March 2019.

491.   Plaintiff Tonya Terrell's claim is scheduled to be dismissed without prejudice.

## West Virginia

492.   Plaintiff Deidra Marsh (for the purpose of this paragraph only,

"Plaintiff"), is a citizen of the State of West Virginia, residing in the City of Weston. On or about July 1, 2016, Plaintiff purchased a 2014 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H78ER143556 (for the purpose of this paragraph only, the "Vehicle"), from Weston Ford, located at 788 US-33, Weston, WV 26452. Ford dealership sales personnel made the following claims or representations to Plaintiff, on which Plaintiff relied in deciding to lease the Vehicle: Sustainability/Long-Lasting. Plaintiff first experienced the Transmission Defect on or about August 6, 2016, at approximately 60,000 miles. Plaintiff has experienced, and continues to experience, the following manifestation of the Transmission Defect: Delayed Acceleration.

493. Plaintiff Greg Myers (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of West Virginia, residing in the City of Wheeling. On or about February 24, 2017, Plaintiff purchased a 2014 Ford Fusion SE, with a 23/34/27 6F35 six-speed automatic w/start-stop transmission, Vehicle Identification Number 3FA6P0HD8ER239936 (for the purpose of this paragraph only, the "Vehicle").

494.    Plaintiff Melissa Lafritz (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of West Virginia, residing in the City of Rock. On or about June 24, 2016, Plaintiff purchased a 2016 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 3FA6P0H76GR177823 (for the purpose of this paragraph only, the "Vehicle"), from Ramey Ford Princeton, located at 498 Courthouse Rd, Princeton, WV 24739. Plaintiff first experienced the Transmission Defect in or around January 2016 at approximately 50,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Delayed Acceleration, Gears Slipping, and Hard Decelerations/Clunks when Slowing or Accelerating.

495.    Plaintiff Sarah Crouse (for the purpose of this paragraph only, "Plaintiff"), is a citizen of the State of West Virginia, residing in the City of Salem. On or about August 28, 2017, Plaintiff purchased a 2015 Ford Fusion SE, with a 21/32/25 6F35 six-speed automatic transmission, Vehicle Identification Number 1FA6P0H75F5117808 (for the purpose of this paragraph only, the "Vehicle"), from Astro Buick and Old's, located at 250 Fairmount, Fairmount, WV 26554.

371

Plaintiff first experienced the Transmission Defect in or around August 2016 at approximately 77,000 miles. Plaintiff has experienced, and continues to experience, the following manifestations of the Transmission Defect: Bucking and Kicking on Acceleration (Shuddering or Juddering), Difficulty Stopping, Delayed Downshifts, Hard Decelerations/Clunks when Slowing or Accelerating.   Plaintiff sought transmission repairs from the following dealership: Chenoweth Ford, Inc. 1564 E Pike St, Clarksburg, WV 26301. Plaintiff has sought repairs one time under warranty. The Vehicle was never successfully repaired.

**COUNT I**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(BY ALL PLAINTIFFS)**

496.   Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

497.   This Count is asserted by all Plaintiffs.

498.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 pursuant to 28 U.S.C. § 1332 (a)-(d).

499.   Plaintiffs are each a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

372

500.   Ford is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

501.   The Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

502.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

503.   In respect of Plaintiffs' Vehicles, Ford provided Plaintiffs with "written warranties" and "implied warranties."   Ford's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).   The Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

504.   Said warranties issued by Ford covered Plaintiffs' Vehicles, including but not limited to the transmissions, and warranted that Ford would repair or replace any part that is defective in material or workmanship under normal use.

505.   The terms of these warranties became part of the basis of the bargain when Plaintiffs purchased their Vehicles.

506.   Ford breached these warranties as described in more detail above, but generally by not repairing the Vehicles' materials and workmanship defects; providing Vehicles not in merchantable condition and which present an unreasonable risk of manifesting the Transmission Defects and not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified, thereby subjecting the occupants of the Vehicles to damages and risks of loss and injury or possibly death.

507.   Ford's written and implied warranties relate to the future performance of its vehicles because it promised that the drivetrain of Plaintiffs' Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

508.   Ford has breached and continues to breach its written and implied warranties of future performance, and thereby damages Plaintiffs because their Vehicles fail to perform as represented due to an undisclosed transmission defects. Ford fails to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs.

374

509.   Plaintiffs have had sufficient direct dealings with either Ford or its agents (dealerships) to establish privity of contract.   Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.   The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.   Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

510.   Plaintiffs have provided Ford an opportunity to cure before the filing of this Second Amended Complaint, even though no such opportunity is required in these circumstances.

511.   Plaintiffs will suffer irreparable harm if Ford is not ordered to properly repair all of Plaintiffs' Vehicles immediately, offer rescission to Plaintiffs by repurchasing their Vehicles for their full cost, and/or reimburse Plaintiffs for the monies they have paid toward their leases, recall all defective Vehicles that are

375

equipped with the defective transmissions, and cease and desist from marketing, advertising, selling, and leasing defective Fusion Vehicles. Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the defects in Plaintiffs' Vehicles.

512.  Plaintiffs would suffer economic hardship if they returned their Vehicles but did not receive the return of all payments made by them.  Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

513.  Ford is under a continuing duty to inform its customers, including Plaintiffs, of the nature and existence of potential defects in the Vehicles.

514.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.   The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.   *See* 15 U.S.C. § 2310(d)(3).

515.  Plaintiffs seek to revoke their acceptance of the Vehicles, or, in the alternative, seek full compensatory damages allowable by law, attorneys' fees,

costs, punitive damages, restitution, diminution in value, repair or replacement of their Vehicles, refund of money paid to own or lease the Vehicles, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Ford's wrongful acts and practices, and any other relief to which Plaintiffs may be entitled.

## STATE LAW CLAIMS

516.   The state-law claims below are each brought by the individual Plaintiffs listed under the state's corresponding respective subheading above in paragraphs 1- 495, *supra*.

### ALABAMA
### COUNT I
### VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (Ala. Code § 8-19-1, *et seq.*)

517.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

518.   The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate,

377

disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

519.   Ford's actions, as set forth above, occurred in the conduct of trade or commerce.

520.   Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

521.   Plaintiffs were injured as a result of Defendant's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

522.   Ford's conduct proximately caused the injuries to Plaintiffs.

523.   Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

524.   Pursuant to ALA. CODE § 8-19-8, Plaintiffs will serve the Alabama Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Ala. Code § 7-2-313)

525.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

526.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

527.   In the course of selling its vehicles, Ford expressly warranted in writing that the vehicles were covered by a Warranty.

528.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

529.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

530.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote

379

the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

531.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

532.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

533.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

534.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were

inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

535.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

536.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in ALA. CODE § 7-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

537.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
### (Ala. Code § 7-2-314)

538.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

539.    Ford is and was at all relevant times a merchant with respect to motor vehicles.

540.    A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to ALA. CODE § 7-2-314.

541.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

542.    Plaintiffs have had sufficient dealings with either the Ford or their agents (dealerships) to establish privity of contract between Plaintiffs. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.  The

382

dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

543.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
## (Ala. Code § 7-2-608)

544.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

545.   Plaintiffs identified above demanded revocation and the demands were refused.

546.   Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

547.   Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

548.   There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

549.   When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

550.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

551.   Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

552.   Plaintiffs would suffer economic hardship if they returned their Vehicles but did not receive the return of all payments made by them.   Because

Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

553.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in ALA. CODE § 7-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

554.  Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Alabama Law)

555.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

385

556.   To the extent Ford's repair commitment is deemed not to be a warranty under Alabama's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

557.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

558.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT VI
### FRAUD BY CONCEALMENT
### (Based on Alabama Law)

559.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

560.   As set forth above, Ford concealed and/or suppressed material facts

concerning the safety of the subject Fusions and their transmissions.

561.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

562.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles. Defendant possessed exclusive knowledge of the defects rendering the Vehicles inherently more dangerous and unreliable than similar vehicles.

563.   Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease the Vehicles

at a higher price that did not match the Vehicles' true value.

564.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

565.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts and such facts were not known to the public or Plaintiffs.

566.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

567.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Defendant.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII
## UNJUST ENRICHMENT
### (Based on Alabama Law)

568.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

569.   Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

570.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

571.   Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

389

572.    Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**ARIZONA**
**COUNT I**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(Arizona Common Law)**

573.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.   Only Plaintiffs with physical injury to their vehicles assert this claim.

574.    Ford is and was at all relevant times a merchant with respect to motor vehicles.

575.    A warranty that the Vehicles were in merchantable condition is implied by common law in the instant transactions.

576.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

577.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have suffered damage to the property of their vehicles, in an amount to be proven at trial.   Alternatively, Plaintiffs seek rescission.

## COUNT II
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Arizona Law)

578.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

579.   Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

580.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

581.   Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.   There is no justification for

Plaintiffs' impoverishment and Ford's related enrichment.

582.    Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

<h1 style="text-align:center">ARKANSAS<br>COUNT I<br>ARKANSAS PRODUCTS LIABILITY ACT<br>(Ark. Code Ann. § 16-116-101, <em>et seq.</em>)</h1>

583.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

584.    Plaintiffs allege Ford vehicles were defectively designed, manufactured, sold or otherwise placed in the stream of commerce.

585.    Ford is strictly liable in tort for Plaintiffs' injuries and damages and Plaintiffs respectfully rely upon the Doctrine as set forth in RESTATEMENT, SECOND, TORTS § 402(a).

586.    Because of the negligence of the design and manufacture of the Vehicles, by which Plaintiffs were injured and the failure of Ford to warn Plaintiffs of the certain dangers concerning the operation of the Vehicles which were known to Ford but were unknown to Plaintiffs, Ford has committed a tort.

587.   The Vehicles which caused Plaintiffs' injuries were manufactured by Ford.

588.   At all times herein material, Defendant negligently and carelessly did certain acts and failed to do other things, including, but not limited to, inventing, developing, designing, researching, guarding, manufacturing, building, inspecting, investigating, testing, labeling, instructing, and negligently and carelessly failing to provide adequate and fair warning of the characteristics, angers and hazards associated with the operation of the vehicles in question to users of the Vehicles, including, but not limited to, Plaintiffs, and willfully failing to recall or otherwise cure one or more of the defects in the products involved thereby directly and proximately causing the hereinafter described injury.

589.   The Vehicles were unsafe for use by reason of the fact that they were defective.   For example, the Vehicles were defective in their design, guarding, development, manufacture, and lack of permanent, accurate, adequate and fair warning of the characteristics, danger and hazard to the user, prospective user and members of the general public, including, but not limited to, Plaintiffs, and because Defendant failed to recall or otherwise cure one or more defects in the vehicles

involved thereby directly and proximately causing the described injuries.

590.   Defendant, and each of them, knew or reasonably should have known that the Vehicles would be purchased or leased and used without all necessary testing or inspection for defects by Plaintiffs.

591.   Plaintiffs were not aware of those defects at any time before the incident and occurrence mentioned in this complaint, or else Plaintiffs were unable, as a practical matter, to cure that defective condition.

592.   Plaintiffs used the products in a foreseeable manner.

593.   As a proximate result of the negligence of Defendant, Plaintiffs suffered injuries and damages.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ark. Code Ann. §§ 4-2-314)

594.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

595.   In its manufacture and sale of the Vehicles, Ford impliedly warranted to Plaintiffs that its vehicles were in merchantable condition and fit for their ordinary purpose.

394

596.    The Vehicles were defective and unfit for their ordinary use due to the Transmission Defects.

597.    Under the Uniform Commercial Code there exists an implied warranty of merchantability.

598.    Ford has breached the warranty of merchantability by having sold its automobiles with defects such that the vehicles were not fit for their ordinary purpose and Plaintiffs suffered damages as a result.

## COUNT III
## NEGLIGENCE
### (Under Arkansas Law)

599.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

600.    Plaintiffs are the owners of Ford vehicles that were manufactured, assembled, designed, assembled, distributed and otherwise placed in the stream of commerce by Defendant.

601.    Ford had a duty to manufacture a product which would be safe for its intended and foreseeable uses and users, including the use to which it was put by Plaintiffs.   Ford breached its duty to Plaintiffs because it was negligent in the

design, development, manufacture, and testing of the Vehicles.

602.   Ford was negligent in its design, development, manufacture, and testing of the Vehicles because it knew, or in the exercise of reasonable care should have known, that they were prone to sudden and dangerous manifestations of the Transmission Defects.

603.   Ford negligently failed to adequately warn and instruct Plaintiffs of the defective nature of the Vehicles, of the high degree of risk attendant to using them, given that Plaintiffs would be ignorant of the said defects.

604.   Whereupon, the Plaintiffs respectfully rely upon the RESTATEMENT, SECOND, TORTS 395.

605.   Ford further breached its duties to Plaintiffs by supplying Vehicles directly and/or through a third person to be used by such foreseeable persons such as Plaintiffs when:

> a.   Ford knew or had reason to know, that the Vehicles were dangerous or were likely to be dangerous for the use for which they were supplied; and
>
> b.   Ford failed to exercise reasonable care to inform

customers of he dangerous condition, or of the facts under which

the Vehicles are likely to be dangerous.

606.   As a result of Ford's negligence, Plaintiffs suffered damages.

**COUNT IV**
**REVOCATION OF ACCEPTANCE**
**(Ark. Code Ann. § 4-2-608)**

607.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

608.   Plaintiffs identified above demanded revocation and the demands were refused.

609.   Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

610.   Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

611.   There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

612.   When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

613.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

614.   Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

615.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

398

616.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in A.C.A. § 4-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under A.C.A. § 4-2-714(2)-(3).

617.   Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT V**
**NEGLIGENT MISREPRESENTATION/FRAUD**
**(Ark. Code Ann. § 4-2-721)**

618.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

619.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

620.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest

399

corporate priorities.   Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

621.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Defendant possessed exclusive knowledge of the defects rendering the Vehicles inherently more dangerous and unreliable than similar vehicles.

622.   Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease the Vehicles at a higher price that did not match the Vehicles' true value.

623.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts and such facts were not known to the public including Plaintiffs.

624.   As a result of the misrepresentation concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, pursuant to A.C.A. § 4-2-721,   include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages pursuant to A.C.A. § 4-2-721.

625.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on Arkansas Law)

626.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

627.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

628.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

629.   Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## CALIFORNIA
## COUNT I
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY
## ACT FOR BREACH OF EXPRESS WARRANTIES
### (Cal. Civ. Code §§ 1793.2(D) & 1791.2)

630.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

631.   Plaintiffs who purchased or leased the Ford vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791.

632.   The Ford vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

633.   Ford is a "manufacturer" of the Ford vehicles within the meaning of CAL. CIV. CODE § 1791(j).

634.   Plaintiffs bought/leased new motor vehicles manufactured by Ford.

635.   Ford made express warranties to Plaintiffs within the meaning of CAL. CIV. CODE §§ 1791.2 and 1793.2, both in its warranty manual and advertising, as described above.

636.   Fusions had and continue to have transmission defects that were and continue to be covered by Ford's express warranties, and these defects substantially impair the use, value, and safety of Ford's vehicles to reasonable consumers like Plaintiffs.

637.   Ford and its authorized repair facilities failed and continue to fail to

repair the Vehicles to match Ford's written warranties after a reasonable number of opportunities to do so.

638.   Plaintiffs gave Ford or its authorized repair facilities at least two opportunities to fix the defects unless only one repair attempt was possible because the Vehicle was later destroyed or because Ford or its authorized repair facility refused to attempt the repair.

639.   Ford did not promptly replace or buy back the Vehicles of Plaintiffs.

640.   As a result of Ford's breach of its express warranties, Plaintiffs received goods whose dangerous condition substantially impairs their value to Plaintiffs.   Plaintiffs have been damaged as a result of the diminished value of Ford's products, the products' malfunctioning, and the nonuse of their Vehicles.

641.   Pursuant to CAL. CIV. CODE §§ 1793.2 & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Vehicles, or the overpayment or diminution in value of their Vehicles.

642.   Pursuant to CAL. CIV. CODE § 1794, Plaintiffs are entitled to costs and attorneys' fees.

## COUNT II
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
## FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Civ. Code §§ 1792 & 1791.1)

643.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

644.   Plaintiffs who purchased or leased the Ford vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791.

645.   The Ford vehicles are "consumer goods" within the meaning of CIV. CODE § 1791(a).

646.   Ford is a "manufacturer" of the Ford vehicles within the meaning of CAL. CIV. CODE § 1791(j).

647.   Ford impliedly warranted to Plaintiffs that its vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792, however, the Vehicles do not have the quality that a buyer would reasonably expect.

405

648.   CAL. CIV. CODE § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

>    (1)   Pass without objection in the trade under the contract description.
>
>    (2)   Are fit for the ordinary purposes for which such goods are used.
>
>    (3)   Are adequately contained, packaged, and labeled.
>
>    (4)   Conform to the promises or affirmations of fact made on the container or label.

649.   The Ford vehicles would not pass without objection in the automotive trade because of the Transmission Defects and their attendant safety risks.

650.   Because of the Vehicles' Transmission Defects and their attendant safety risks, they are not safe to drive and thus not fit for ordinary purposes.

651.   The Vehicles are not adequately labeled because the labeling fails to disclose the Transmission Defects and their attendant safety risks

652.  Ford breached the implied warranty of merchantability by manufacturing and selling vehicles containing defective transmissions that manifest the Transmission Defects.   Furthermore, these defects have caused Plaintiffs to not receive the benefit of their bargain and have caused vehicles to depreciate in value.

653.  As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs received goods whose dangerous condition substantially impairs their value to Plaintiffs.   Plaintiffs have been damaged as a result of the diminished value of Ford's products, the products' malfunctioning, and the nonuse of their vehicles.

654.  Pursuant to CAL. CIV. CODE §§ 1791.1(d) & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

655.  Pursuant to CAL. CIV. CODE § 1794, Plaintiffs are entitled to costs and attorneys' fees.

## COUNT III
## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

656.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

657.   Ford is a "person" under CAL. CIV. CODE § 1761(c).

658.   Plaintiffs are "consumers," as defined by CAL. CIV. CODE § 1761(d), who purchased or leased one or more Ford Vehicles.

659.   Plaintiffs have previously filed an affidavit that shows venue in this District is proper, to the extent such an affidavit is required by CAL. CIV. CODE § 1780(d).

660.   Ford participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.*, as described above and below.   Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

661.   By failing to disclose and actively concealing the Transmission Defects and attendant safety risks, and by misrepresenting its vehicles as "safe," "reliable," "dependable," and of high quality and by selling vehicles while violating the TREAD Act, Ford engaged in deceptive business practices prohibited by the CLRA,

CAL. CIV. CODE § 1750, *et seq.*, including (1) representing that Ford Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Ford Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Ford Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Ford Vehicles confers or involves rights, remedies, and obligations which it does not, (5) representing that the subject of a transaction involving Ford Vehicles has been supplied in accordance with a previous representation when it has not; and (6) selling vehicles in violation of the TREAD Act.

662.  As alleged above, Ford made numerous material statements about the quality, safety and reliability of Ford Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

663.  Ford knew that the subject Vehicles could manifest the Transmission Defects without warning and were not suitable for their intended use.  Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

664.  A reasonable consumer would not have paid as much as he or she did for his or her Vehicle if Ford had disclosed (i) that its Fusions suffered from the Transmission Defects, (ii) that Ford was unaware of and not adequately investigating the cause of Transmission Defects in its vehicles, (iii) that Ford's software did not comply with safety-related coding standards and contained "major bugs" which are unacceptable in a safety critical environment, and (iv) that Ford's software was such that Transmission Defects could occur that went undetected by Ford's fail-safe systems.

665.  Ford owed Plaintiffs a duty to disclose the defective nature of Fusion vehicles, including the Transmission Defects, attendant safety risks, and facts relating to the quality of the vehicles being manufactured because Ford:

> a.    Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;
>
> b.    Intentionally concealed the hazardous situation with Fusion transmissions through their deceptive marketing campaign and recall program that they designed to hide the

Transmission Defects and attendant safety risks from Plaintiffs; and/or

c.      Made incomplete representations about the quality, safety and reliability of Ford Vehicles generally, and Fusion transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

666.  Ford Fusions equipped with defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of the Transmission Defects.

667.  Each of the Plaintiffs who still own or lease their Vehicles face an increased risk of future harm that would not be present if Ford had not designed, manufactured and sold vehicles that had an unacceptable increased propensity for transmission failure and Transmission Defects.

668.  Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and

reliability of Vehicles.

669.    As a result of its violations of the CLRA detailed above, Ford caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.    The Transmission Defects and the resulting safety risks have impaired the value of Plaintiffs' Vehicles.

670.    Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

671.    Pursuant to CAL. CIV. CODE § 1780(a), Plaintiffs seek monetary relief against Ford for (a) actual damages in an amount to be determined at trial and (b) punitive damages.

672.    Pursuant to CAL. CIV. CODE § 1780(b), Plaintiffs seek an additional award against Ford of up to $5,000 for each Plaintiff who qualifies as a "senior citizen" or "disabled person" under the CLRA.    Ford knew or should have known that its conduct was directed to one or more of the Plaintiffs who are senior citizens or disabled persons.    Ford's conduct caused senior citizens or disabled persons to

suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.   One or more of the Plaintiffs who are senior citizens or disabled persons are substantially more vulnerable to Ford's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them actually suffered substantial physical, emotional, or economic damage resulting from Ford's conduct.

673.   Plaintiffs also seek punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result.   Ford intentionally and willfully misrepresented the safety and reliability of Ford Fusions, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a potentially deadly flaw in the Vehicles it repeatedly promised Plaintiffs were safe. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

674.   The recalls and repairs instituted by Ford have not been adequate.

Ford Vehicles still are defective and dangerous.

675.    Repairs have also been incomplete.   Transmission Defects continue to manifest after cars have been "repaired."

676.    Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices and awarding restitution, punitive damages, costs of Court, attorney's fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

## COUNT IV
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
## (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

677.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

678.    California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."   Ford has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

679.    Ford has violated the unlawful prong of section 17200 by its violations of the Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.*, as set forth in Count I by the acts and practices set forth in this Complaint.

680.    Ford has also violated the unlawful prong because Ford has engaged in business acts or practices that are unlawful because they violate the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act"), codified at 49 U.S.C. § 30101, *et seq*., and its regulations.

681.    Ford violated 49 U.S.C. § 30112(a)(1) by manufacturing for sale, selling, offering for introduction in interstate commerce, or importing into the United States, Fusions equipped with transmissions that failed to comply with applicable Federal Motor Vehicle Safety Standards ("FMVSS").

682.    Ford violated 49 U.S.C. § 30115(a) by certifying that Vehicles equipped with defective transmissions complied with applicable FMVSS when, in the exercise of reasonable care, Ford had reason to know that the certification was false or misleading because the defective Fusion transmissions led to manifestations of the Transmission Defects and created attendant safety risks when the Vehicles were in operation.

683.    Ford also violated the "TREAD Act," 49 U.S.C. §§ 30101-30170, when it failed to timely inform NHTSA of the defective Fusion transmissions and allowed cars to be sold with these defects.

684.   Ford has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of Plaintiff's Vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

685.   Ford has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of Fusions with defective transmissions, and Ford's failure to adequately investigate, disclose, and remedy same, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.   Ford's conduct has also impaired competition within the automotive vehicles market by preventing Plaintiffs from making fully informed decisions about whether to purchase or lease their Vehicles and/or the price to be paid to purchase or lease Vehicles.

686.   Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Ford's unfair, unlawful and/or deceptive practices.   As set forth in the allegations concerning each plaintiff, in purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with

respect of the quality, safety and reliability of the vehicles.   Ford's representations turned out not to be true because the Vehicles manifest the Transmission Defects. Had Plaintiffs known this they would not have purchased or leased their Vehicles and/or paid as much for them.

687.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.   Ford's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

688.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Ford from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs any money Ford acquired by unfair competition, including through restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief set forth below.

## COUNT V
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

689.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

690.   California Business and Professions Code § 17500 states:   "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

691.   Ford caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Ford to be untrue and misleading to consumers and Plaintiffs.

692.   Ford has violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this

Complaint were material and likely to deceive a reasonable consumer.

693.   Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Ford's unfair, unlawful and/or deceptive practices.   In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect to the safety and reliability of the vehicles. Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously manifest the Transmission Defects.   Had Plaintiffs known this, they would not have purchased or leased their Ford Vehicles and/or paid as much for them.

694.   Accordingly, Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain.

695.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.   Ford's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

696.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or

deceptive practices and to restore to Plaintiffs any money Ford acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
## (CAL. COM. CODE § 2313)

697.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

698.   This Count is asserted on behalf of those Plaintiffs who sought repairs pursuant to the recalls or who sought repairs for transmission-related issues.

699.   Ford is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2104.

700.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by warranty.

701.   Ford breached the express warranty to repair defects. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

702.   In addition to this Warranty, Ford expressly warranted several

attributes, characteristics and qualities, including the warranties detailed *supra*, Sections IV.A.

703.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Sections IV.A. and I., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

704.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

705.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a

reasonable time.    Further,  the  repairs  Ford  offers  do  not  fix  the  defective transmissions  or  prevent  manifestations  of  the  Transmission  Defects  and  are  not adequate, hence bringing a vehicle in for repair is a futile act.

706.   Accordingly,  recovery  by  Plaintiffs  is  not  limited  to  the  limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

707.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were  inherently  defective,  and  Ford  wrongfully  and  fraudulently  misrepresented and/or concealed material facts regarding the Fusions.   In particular, Ford failed to assemble and manufacture the Fusion transmissions in such a way as to prevent manifestations  of  Transmission  Defects.    Plaintiffs  were  therefore  induced  to purchase or lease the Vehicles under false and/or fraudulent pretenses.   Under these circumstances,  any  limitations  whatsoever  precluding  the  recovery  of  incidental and/or consequential damages are unenforceable under CAL. CIV. CODE § 1670.5 and/or § 1668.

708.   Moreover, many of the damages flowing from the Vehicles cannot be

422

resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to its failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

709.   For Plaintiffs who brought their Vehicles in for repair, Ford has not repaired their Vehicles and addressed all transmission defects.   Plaintiffs who could have but did not bring their Vehicles in for repair should be excused as Ford does not yet have a complete repair solution for the defective transmissions.

710.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT VII**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

711.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

712.   Ford is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2104.

423

713.   A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to CAL. COM. CODE § 2314.

714.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic, and the transmissions were not adequately designed, manufactured, and tested.

715.   Plaintiffs have had sufficient direct dealings with either Ford or its agents (dealerships) to establish privity of contract.   Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.   The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.   Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

716.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT VIII
## BREACH OF CONTRACT/COMMON LAW WARRANTY

717.   The California Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

718.   To the extent Ford's repair commitment is deemed not to be a warranty under California's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford and/or warranted the quality or nature of those services to Plaintiffs.

719.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

720.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT IX**
**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

721.   The California Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

722.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety, quality, dependability and reliability of their vehicles.

723.   Ford had a duty to disclose these safety, quality, dependability and reliability issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, quality, dependability and reliability Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

724.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or

426

reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety, quality and reliability of the Vehicles.   Whether a vehicle is a quality and reliable product and has been manufactured and designed according to industry standards are material facts for a reasonable consumer.   Ford possessed exclusive knowledge of the defects and quality control issues rendering Ford Vehicles inherently more dangerous and unreliable than similar vehicles.

725.   Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Ford Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

726.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

727.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

728.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages,

pursuant to CAL. CIV. CODE § 3343, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages pursuant to CAL. CIV. CODE § 1692.

729. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COLORADO
## COUNT I
## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (Col. Rev. Stat. § 6-1-101. et seq.)

730. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

731.  Ford is a "person" under § 6-1-102(6) of the Colorado Consumer

Protection Act ("Colorado CPA"), COL. REV. STAT. § 6-1-101 *et seq*.

732.  Plaintiffs are "consumers" for purposes of § 6-1-113(1)(a) of the

Colorado CPA who purchased or leased one or more Vehicles.

733.  In the course of its business, Ford participated in deceptive trade

practices that violated the Colorado CPA, as described above and below.   Ford is

directly liable for these violations of law, and Ford also is liable for Ford

dealerships' violations because Ford dealerships act as Ford's agents in the United

States for purposes of sales and marketing.

734.  As alleged above, Ford made numerous material statements about the

safety and reliability of the Vehicles that were either false or misleading.   Each of

these statements contributed to the deceptive context of Ford's unlawful advertising

and representations as a whole.   Ford also failed to disclose and actively concealed

the dangerous risk of Transmission Defects.

735.  Ford engaged in deceptive trade practices prohibited by the Colorado

CPA, including (1) knowingly making a false representation as to the

characteristics, uses, and benefits of the Vehicles that had the capacity or tendency to

deceive Plaintiffs; (2) representing that the Vehicles are of a particular standard, quality, and grade even though Ford knew or should have known they are not; (3) advertising the Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Vehicles that was known to Ford at the time of advertisement or sale with the intent to induce Plaintiffs to purchase or lease the Vehicles.

736.    Defendant knew that the transmissions in the Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable fortheir   intended use.   Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

737.    Ford's practices pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because the Vehicles are susceptible to sudden manifestations of the Transmission Defects.

738.    Whether or not a vehicle's transmission is designed and manufactured properly and functions safely as intended are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.   When Plaintiffs

bought a Fusion for personal, family, or household purposes, they reasonably expected its transmission was designed and manufactured properly and would function safely as intended.

739. Ford's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Vehicles.

740. Plaintiffs suffered injury-in-fact to their legally protected property interests as a result of Ford's violations of the Colorado CPA detailed above. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, the Vehicles that are defective and inherently unsafe. The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

741. Pursuant to § 6-1-113(2) of the Colorado CPA, Plaintiffs seek monetary relief against Ford measured as the greater of (a) the amount of actual damages sustained, (b) statutory damages in the amount of $500 for each Plaintiff, or (c) three times the amount of actual damages if Plaintiffs establish that Ford engaged in bad faith conduct, plus interest as allowed by law.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Col. Rev. Stat. § 4-2-313)

742.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

743.   Ford is and was at all relevant times a merchant with respect to motor vehicles under COL. REV. STAT. § 4-2-104.

744.   In the course of selling its vehicles, Ford expressly warranted in writing that the vehicles were covered by a Warranty.

745.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

746.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

747.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards,

and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

748.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

749.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

750.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

751.   Also, as alleged in more detail herein, at the time that Ford warranted

433

and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.   Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

752.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

753. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in COL. REV. STAT. § 4-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under COL. REV.

434

STAT. §§ 4-2-711 and 4-2-608.

754. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT III
### BREACH OF THE IMPLIED WARRANTY OF
### MERCHANTABILITY
### (Col. Rev. Stat. § 4-2-314)

755. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

756. Ford is and was at all relevant times a merchant with respect to motor vehicles under COL. REV. STAT. § 4-2-104.

757. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to COL. REV. STAT. § 4-2-314.

758. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

759. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

435

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (Col. Rev. Stat. § 4-2-608)

760.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

761.   Plaintiffs identified above demanded revocation and the demands were refused.

762.   Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

763.   Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

764.   There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

765.   When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

766.   Plaintiffs would suffer economic hardship if they returned their

vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

767.   Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

768.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

769.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in COL. REV. STAT. § 4-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs

437

of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under COL. REV. STAT. § 4-2-711.

770.   Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT V**
**BREACH OF COMMON LAW WARRANTY**
**(Based on Colorado Law)**

771.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

772.   To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted by Colorado, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

773.   Ford breached this warranty or contract obligation by failing to repair

or replace the Vehicles evidencing the Transmission Defects.

774.  As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
## (Based on Colorado Law)

775.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

776.  As set forth above, Ford concealed and/or suppressed material facts concerning the safety of its vehicles that in equity and good conscience should be disclosed.

777.  Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which

materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

778.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

779.   Ford actively and knowingly concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase the Vehicles at a higher price for the vehicles, which did not match the Vehicles' true value.

780.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

781.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

782.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  Plaintiffs reserve their right to elect either to (a) rescind their purchase or lease of the Vehicles and obtain restitution or (b) affirm their purchase or lease of the Vehicles and recover damages.

783.   Ford's acts were done fraudulently, maliciously, or willfully for purposes of COL. REV. STAT. § 13-21-102.   Ford's conduct warrants an assessment of exemplary damages in an amount which is equal to the amount of the actual damages awarded to Plaintiffs.

## COUNT VII
## UNJUST ENRICHMENT
### (Based on Colorado Law)

784.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

785.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies

which rightfully belong to Plaintiffs.

786.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for Vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

787.   Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**DELAWARE**
**COUNT I**
**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT**
**(6 Del. Code § 2513, et seq.)**

788.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

789.   The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."   6 DEL. CODE

442

§ 2513(a).

790.   Ford is a person with the meaning of 6 DEL. CODE § 2511(7).

791.   As described herein Ford made false representations regarding the safety and reliability of its vehicles and concealed important facts regarding the tendency of its Fusion transmissions to exhibit the Transmission Defects.  Ford intended that others rely on these misrepresentations and omissions in connection with the sale and lease of its vehicles.

792.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

793.   Ford's conduct proximately caused injuries to Plaintiffs.

794.   Plaintiffs were injured as a result of Ford's conduct in that Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

795.   Plaintiffs are entitled to recover damages, as well as punitive damages for Ford's gross and aggravated misconduct.

## COUNT II
## VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
## (6 Del. Code § 2532, *et seq.*)

796.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

797.    Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes: "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(9) Advertis[ing] goods or services with intent not to sell them as advertised"; or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

798.    Ford is a person with the meaning of 6 Del. Code § 2531(5).

799.    In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions.

Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; advertising Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

800.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

801.   Ford's conduct proximately caused injuries to Plaintiffs.

802.   Plaintiffs were injured as a result of Ford's conduct in that Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.   These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

803.   Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 DEL. CODE § 2533(c).

804.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Ford's conduct and its high net worth.

## COUNT III
## BREACH OF EXPRESS WARRANTY
## (6 Del. Code § 2-313)

805.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

806.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

807.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

808.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

809.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities.

810.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote

446

the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

811.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

812.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

813.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

814.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were

447

inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

815.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

816.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in 6 DEL. CODE. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

817.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT IV**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(6 Del. Code § 2-314)**

818.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

819.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

820.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

821.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

822.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT V**
**REVOCATION OF ACCEPTANCE**
**(6 Del. Code § 2-608)**

823.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

824.   Plaintiffs identified above demanded revocation and the demands were refused.

825.   Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

826.   Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

827.   There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

828.   When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

829.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

830.   Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

831.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

832.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in 6 DEL. CODE § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

833.   Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages,

including the costs associated with purchasing or leasing safer vehicles, and all other

damages allowable under law, all in amounts to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Delaware Law)

834.    Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

835.    To the extent Ford's repair commitment is deemed not to be a warranty

under Delaware's Commercial Code, Plaintiffs plead in the alternative under

common law warranty and contract law.  Ford limited the remedies available to

Plaintiffs to just repairs needed to correct defects in materials or workmanship of any

part supplied by Ford, and/or warranted the quality or nature of those services to

Plaintiffs.

836.    Ford breached this warranty or contract obligation by failing to repair

or replace the Vehicles evidencing the Transmission Defects.

837.    As a direct and proximate result of Ford's breach of contract or

common law warranty, Plaintiffs have been damaged in an amount to be proven at

trial, which shall include, but is not limited to, all compensatory damages, incidental

452

and consequential damages, and other damages allowed by law.

## COUNT VII
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Delaware Law)

838.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

839.   Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

840.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

841.   Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.   There is no justification for Plaintiffs' impoverishment and Ford's resulting enrichment.

842.   Plaintiffs, therefore, are entitled to restitution and seek an order

establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**FLORIDA**
**COUNT I**
**VIOLATION OF FLORIDA'S UNFAIR &**
**DECEPTIVE TRADE PRACTICES ACT**
**(Fla. Stat. § 501.201, *et seq.*)**

843.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

844.   This Count and all Counts asserted Florida law are associated on behalf of Plaintiffs who experienced the Transmission Defects.

845.   The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

846.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

847.   Ford's actions impact the public interest because Plaintiffs were injured

in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

848.   Plaintiffs were injured as a result of Ford's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

849.   Ford's conduct proximately caused the injuries to Plaintiffs.

850.   Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

851.   Pursuant to FLA. STAT. § 501.201, Plaintiffs will serve the Florida Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Fla. Stat. § 672.313)

852.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

853.   This Count is asserted on behalf of Plaintiffs who experienced the

Transmission Defects and who presented their Vehicle for repair.

854. Ford is and was at all relevant times a merchant with respect to motor vehicles.

855. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

856. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

857. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

858. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of

456

the basis of the bargain between the parties.

859.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

860.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

861.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

862.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

457

863. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

864. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Florida Law)

865. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

866. To the extent Ford's repair commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to

Plaintiffs.

867.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

868.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV
## FRAUD BY CONCEALMENT
### (Based on Florida Law)

869.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

870.   Ford had a duty to disclose the safety, quality and reliability issues because they consistently marketed their vehicles as safe, reliable and of high quality and proclaimed that safety is one of Ford's highest corporate priorities.   Once Defendant made representations to the public about safety, reliability and quality, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify

those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

871.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety, quality and reliability of the Vehicles.   Defendant possessed exclusive knowledge of the facts rendering Ford Vehicles inherently more dangerous and unreliable than similar vehicles.

872.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

873.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

874.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material

facts, and such facts were not known to the public or Plaintiffs.

875.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

876.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## GEORGIA
## COUNT I
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (Ga. Code Ann. § 10-1-370, *et seq.*)

462 of 841

877.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

878.   The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

879.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

880.   Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

881.   Plaintiffs were injured as a result of Defendant's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

462

882.   Ford's conduct proximately caused the injuries to Plaintiffs.

883.   Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

884.   Pursuant to GA. CODE ANN. § 10-1-370, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (Ga. Code Ann. § 10-1-390, *et seq.*)

885.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

886.   The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

887.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

463

888.   Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

889.   Plaintiffs were injured as a result of Defendant's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

890.   Ford's conduct proximately caused the injuries to Plaintiffs.

891.   Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

892.   Pursuant to GA. CODE ANN. § 10-1-390, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

### COUNT III
### BREACH OF EXPRESS WARRANTY
### (Ga. Code Ann. § 11-2-313)

893.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

464

though herein fully restated and re-alleged.

894.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

895.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

896.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

897.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

898.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the

basis of the bargain between the parties.

899.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

900.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

901.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

902.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

466

903.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

904.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in GA. CODE ANN. § 11-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

905.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Ga. Code Ann. § 11-2-314)

906.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

907.   Ford is and was at all relevant times a merchant with respect to motor

467

vehicles.

908.    A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to GA. CODE ANN. § 11-2-314.

909.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

910.    Plaintiffs have had sufficient dealings with either the Defendant or their agents (dealerships) to establish privity of contract between Plaintiffs. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.   The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

911.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
## REVOCATION OF ACCEPTANCE
## (Ga. Code Ann. § 11-2-608)

912.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

913.   Plaintiffs identified above demanded revocation and the demands were refused.

914.   Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

915.   Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

916.   There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

917.   When Plaintiffs sought to revoke acceptance, Ford refused to accept

469

return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

918.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

919.   Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

920.   Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

921.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs

470

assert as an additional and/or alternative remedy, as set forth in GA. CODE ANN. § 11-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

922.   Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Georgia Law)

923.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

924.   To the extent Ford's repair commitment is deemed not to be a warranty under Georgia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

925.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

926.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VII
## FRAUD BY CONCEALMENT
### (Ga. Code Ann. § 51-6-2)

927.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

928.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

929.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which

472

materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

930.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

931.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

932.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

933.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material

473

facts, and such facts were not known to the public or Plaintiffs.

934.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

935.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(Based on Georgia Law)**

936.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

937. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

938. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

939. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

940. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**ILLINOIS**
**COUNT I**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(815 Ill. Comp. Stat. 505/1, *et seq*.)**

941. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

942. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce. Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

943. Ford is a "person" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(c).

944. Plaintiffs are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(e).

945. Ford's conduct caused Plaintiffs' damages as alleged.

946. As a result of the foregoing wrongful conduct of Defendant, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 ILL. COMP. STAT. 505/1, *et seq.*

**COUNT II**
**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE**
**PRACTICES ACT**
**(815 Ill. Comp. Stat. 510/1, *et. seq.*)**

947.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

948.   815 ILL. COMP. STAT. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following:   "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; … (9) advertises goods or services with intent not to sell them as advertised; … [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

949.   Ford is a "person" within the meaning of 815 ILL. COMP. STAT.

477

510/1(5).

950.   The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by Defendant.

951.   The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Defendant.

952.   Defendant's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

953.   As a result of the foregoing wrongful conduct of Ford, Plaintiffs have been damaged in an amount to proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (810 Ill. Comp. Stat. 5/2-314
### and 810 Ill. Comp. Stat. 5/2A-212)

954.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

955.   Ford impliedly warranted that their vehicles were of good and

merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

956.   Ford breached the implied warranty that the vehicle was merchantable and safe for use as public transportation by marketing, advertising, distributing and selling vehicles with the common design and manufacturing defect, without incorporating adequate electronic or mechanical fail-safes, and while misrepresenting the dangers of such vehicles to the public.

957.   These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs.

958.   These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

## COUNT IV
## BREACH OF EXPRESS WARRANTIES
### (810 Ill. Comp. Stat. 5/2-313)

959.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

960.   Ford expressly warranted – through statements and advertisements –

479

that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

961.   Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

962.   Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT V
## NEGLIGENCE
### (Based on Illinois Law)

963.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

964.   Ford is a manufacturer and supplier of automobiles.

965.   Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the Vehicles against foreseeable hazard and malfunctions including uncontrollable Transmission Defects.

966.   Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care in designing, engineering, and manufacturing the Vehicles so that they would function normally, including their transmissions.

967.   Ford also owed – and owe – a continuing duty to notify Plaintiffs of the problem at issue and to repair the dangerous defects.

968.   Ford breached these duties of reasonable care by designing, engineering and manufacturing vehicles that exhibits the Transmission Defects, and breached their continuing duty to notify Plaintiffs of these defects.

969.   Plaintiffs did not and could not know of the intricacies of these defects and their latent and dangerous manifestations, or the likelihood of harm there from arising in the normal use of their vehicles.

970.   At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.   Further, any alleged benefits associated with the defective designs are vastly outweighed by the real risks associated with sudden Transmission Defects.

971.   The Vehicles were defective as herein alleged at the time they left Ford's factories, and the Vehicles reached Plaintiffs without substantial change in

the condition in which they were sold.

972.   As a direct and proximate result of Ford's breaches, Plaintiffs have suffered damages and are entitled to remedies, including, but not limited to, diminution in value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

## COUNT VI
## STRICT PRODUCT LIABILITY (DEFECTIVE DESIGN)
### (Based on Illinois Law)

973.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

974.   Ford is and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

975.   Ford knew and anticipated that the vehicles owned or leased by Plaintiffs would be sold to and operated by purchasers and/or eventual owners or leasors of Ford's vehicles, including Plaintiffs. Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their condition from the time

the vehicles departed Ford's assembly lines.

976.   Ford designed the Vehicles defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

977.   Ford had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

978.   The risks inherent in the design of Vehicles outweigh significantly any benefits of such design.

979.   Plaintiffs could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems of the Vehicles.

980.   As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have suffered damages, including, but not limited to, diminution in value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

981.   Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable

483

damages and declaratory relief in an amount to be proven at trial.

## COUNT VII
## STRICT PRODUCT LIABILITY (FAILURE TO WARN)
### (Based on Illinois Law)

982.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

983.   Ford is and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

984.   Ford, at all times pertinent to this Complaint, knew and anticipated that the Vehicles and their component parts would be purchased, leased and operated by consumers, including Plaintiffs.

985.   Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their conditions from the time that the vehicles departed Ford's assembly lines.

986.   Ford knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Vehicles, defective design, manufacturing and

lack of sufficient warnings which caused them to have an unreasonably dangerous propensity to sudden and unintended manifestation of Transmission Defects.

987.   Ford failed to adequately warn Plaintiffs when they became aware of the defect that caused Plaintiffs' Vehicles to be prone to exhibiting the Transmission Defects.

988.   Ford also failed to timely recall the vehicles or take any action to timely warn Plaintiffs of these problems and instead continues to subject Plaintiffs to harm.

989.   Ford knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

990.   Ford should have reasonably foreseen that the sudden and unintended defect in the Vehicles would subject Plaintiffs to harm resulting from the defect.

991.   Plaintiffs have used the Vehicles for their intended purpose and in a reasonable and foreseeable manner.

992.   As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory

relief in an amount to be proven at trial.

## COUNT VIII
## UNJUST ENRICHMENT
### (Based on Illinois Law)

993.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

994.   Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

995.   Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

996.   Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

997.   As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

998.   As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies,

including, but not limited to, restitution of all amounts by which Ford was enriched

through its misconduct.

## COUNT IX
## FRAUDULENT CONCEALMENT / FRAUD BY OMISSION
### (Based on Illinois Law)

999.   Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1000. Ford intentionally concealed the above-described material safety

information, or acted with reckless disregard for the truth, and denied Plaintiffs

information that is highly relevant to their purchasing decision.

1001. Ford further affirmatively misrepresented to Plaintiffs in advertising

and other forms of communication, including standard and uniform material

provided with each car that the vehicles they were selling were new, had no

significant defects and would perform and operate properly when driven in normal

usage.

1002. Ford knew these representations were false when made.

1003. Plaintiffs' Vehicles were, in fact, defective, unsafe, and unreliable,

because they were subject to sudden manifestations of the Transmission Defects.

1004. Ford had a duty to disclose that these Vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the Vehicles they were purchasing were safe and free from defects.

1005. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1006. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Ford knew or recklessly disregarded that its representations were false. Ford intentionally made the false statements in order to sell vehicles.

1007. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1008. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1009. Ford's conduct was knowing, intentional, with malice, demonstrated a

complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

**COUNT X**
**BREACH OF LEASE / CONTRACT**
**(Based on Illinois Law)**

1010. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1011. Plaintiffs entered into lease agreements with Ford.  Plaintiffs entered into agreements to purchase Ford vehicles which also directly or indirectly benefited Ford.

1012. The leases and purchase agreements provided that Plaintiffs would make payments and in return would receive a new vehicle that would operate properly.

1013. Ford breached their agreements with Plaintiffs, because the vehicles sold or leased to Plaintiffs were defective and not of a quality that reasonably would be expected of a new automobile.

1014. Plaintiffs have fully performed their duties under the purchase and lease agreements.

1015. Ford is liable for all damages suffered by Plaintiffs caused by such breaches of contract.

**INDIANA**
**COUNT I**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(Ind. Code § 24-5-0.5-3)**

1016. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1017. Indiana's Deceptive Consumer Sales Act prohibits a person from engaging in a "deceptive trade practice," which includes representing:   "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any

490

representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

1018. Ford is a person with the meaning of IND. CODE § 24-5-0.5-2(2).

1019. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of the Transmission Defects.  Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; advertising Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

1020. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1021. Ford's conduct proximately caused injuries to Plaintiffs.

1022. Plaintiffs were injured as a result of Ford's conduct in that Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

1023. Plaintiffs seek injunctive relief and, if awarded damages under Indiana Deceptive Consumer Protection Act, treble damages pursuant to IND. CODE § 24-5-0.5-4(a)(1).

1024. Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Ford's conduct and its high net worth.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(Ind. Code § 26-1-2-313)**

1025. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1026. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1027. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

492

1028. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1029. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities.

1030. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1031. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

493

1032. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1033. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1034. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1035. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient

to make Plaintiffs whole.

1036. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in IND. CODE § 26-1-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1037. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (Ind. Code § 26-1-2-314)

1038. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1039. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1040. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1041. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1042.  As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (Ind. Code § 26-1-2-608)

1043.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1044.  Plaintiffs identified above demanded revocation and the demands were refused.

1045.  Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1046.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1047.  There has been no change in the condition of Plaintiffs' vehicles not

caused by the defects and nonconformities.

1048. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1049. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1050. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

1051. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative

497

means of transport for an uncertain and substantial period of time.

1052. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in IND. CODE § 26-1-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1053. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Indiana Law)

1054. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1055. To the extent Ford's repair commitment is deemed not to be a warranty under Indiana's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part

supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1056. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1057. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Indiana Law)

1058. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1059. Ford had knowledge of the safety defects in its vehicles, which it failed to, disclose to Plaintiffs.

1060. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford

obtained monies which rightfully belong to Plaintiffs.

1061. Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.  There is no justification for Plaintiffs' impoverishment and Ford's related enrichment.

1062. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**COUNT VII**
**FRAUDULENT CONCEALMENT**
**(Based on Indiana Law)**

1063. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1064. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

1065. Defendant further affirmatively misrepresented to Plaintiffs in

500

advertising and other forms of communication, including standard and uniform material provided with each car that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

1066. Defendant knew these representations were false when made.

1067. Plaintiffs' Vehicles were, in fact, defective, unsafe, and unreliable, because they were subject to sudden manifestations of the Transmission Defects.

1068. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the vehicles they were purchasing were safe and free from defects.

1069. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1070. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Ford knew or recklessly disregarded that its representations were false, and Ford intentionally made the false statements in order to sell vehicles.

1071. Plaintiffs relied on Ford's reputation – along with Ford's failure to

disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1072. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1073. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

**IOWA**
**COUNT I**
**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(Iowa Code § 714H.1, *et seq.*)**

1074. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1075. Ford is a "person" under IOWA CODE § 714H.2(7).

1076. Plaintiffs are "consumers," as defined by IOWA CODE § 714H.2(3), who

purchased or leased one or more Vehicles.

1077. Ford participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), IOWA CODE § 714H.1, *et seq.*, as described above and below.   Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

1078. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in deceptive business practices prohibited by the Iowa CFA, IOWA CODE § 714H.1, *et seq.*, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

1079. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading.   Each of these

statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1080. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

1081. Ford owed Plaintiffs a duty to disclose the defective nature of Vehicles, including the dangerous risk of Transmission Defects suddenly manifesting while in operation, because it:

    a. Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

    b. Intentionally concealed the hazardous situation with Vehicles through their deceptive marketing campaign and recall program that they designed to hide the potentially life-threatening problems from Plaintiffs; and/or

    c. Made incomplete representations about the safety and reliability of

504

Vehicles generally, and the Vehicles' transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1082. Vehicles equipped with the defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of the Transmission Defects.

1083. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

1084. As a result of its violations of the Iowa CFA detailed above, Ford caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.   Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.   The Transmission Defects have impaired the value of Plaintiffs' Vehicles.

1085. Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the Iowa CFA, and these violations present a continuing risk to

Plaintiffs as well as to the general public.

1086.  Plaintiffs sustained damaged as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa CFA.  Because Ford's conduct was committed willfully, Plaintiffs seek treble damages as provided in IOWA CODE § 714H.5(4).

1087. Plaintiffs also seek court costs and attorneys' fees as a result of Defendant's violation of Chapter 714H as provided in IOWA CODE § 714H.5(2).

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Iowa Code § 554.2313)

1088.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1089.  Ford is and was at all relevant times a merchant with respect to motor vehicles under IOWA CODE § 544.2104.

1090.  In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1091. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired,

and has been unable to repair, the Vehicles' materials and workmanship defects.

1092. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements of all types and in uniform statements provided by Ford to be made by dealership salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

1093. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1094. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1095. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1096. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1097. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1098. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs

assert as an additional and/or alternative remedy, as set forth in IOWA CODE § 554.2711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under IOWA CODE §§ 544.2711and 544.2608.

1099.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Iowa Code § 544.2314)

1100. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1101. Ford is and was at all relevant times a merchant with respect to motor vehicles under IOWA COM. CODE § 544.2104.

1102. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to IOWA CODE § 544.2314.

1103. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1104. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
## (Iowa Code § 544.2608)

1105. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1106. Plaintiffs identified above demanded revocation and the demands were refused.

1107. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1108. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1109. There has been no substantial change in the condition of Plaintiffs'

510

vehicles not caused by the defects and nonconformities.

1110. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1111. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1112. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief. In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

1113. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative

means of transport for an uncertain and substantial period of time.

1114. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in IOWA CODE § 544.2711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under IOWA CODE § 544.2711.

1115. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Iowa Law)

1116. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1117. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Iowa, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the

512

remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1118. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1119. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VI**
**FRAUD BY CONCEALMENT**
**(Based on Iowa Law)**

1120. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1121. Ford had a duty to disclose the above-described safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where

one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1122. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1123. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

1124. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1125. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1126.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.

1127. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII
## UNJUST ENRICHMENT
### (Based on Iowa Law)

1128. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1129. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

515

1130. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1131. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**KANSAS**
**COUNT I**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**(Kan. Stat. Ann. § 50-623, *et seq*.)**

1132. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1133. Ford is a "supplier" under § 50-624(*l*) of the Kansas Consumer Protection Act ("Kansas CPA")

1134. Plaintiffs are "consumers," as defined by § 50-624(b) of the Kansas CPA, who purchased or leased one or more Vehicles.

1135. Ford participated in deceptive acts or practices that violated the Kansas CPA, as described above and below.   Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships

516

act as Ford's agents in the United States for purposes of sales and marketing.

1136. Ford engaged in deceptive acts or practices prohibited by the Kansas CPA, including (1) representing that Vehicles have characteristics, uses, and benefits that they do not have and (2) representing that Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation. Specifically, as alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1137. Ford knew or had reason to know that its representations were false. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

1138. Ford engaged in further deceptive acts or practices prohibited by the Kansas CPA by willfully failing to disclose or willfully concealing, suppressing, or omitting material facts about Vehicles. Specifically, Ford failed to disclose and

actively concealed the dangerous risk of transmission failure in Fusions equipped with 6F35 and CVT transmissions.   Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use.   Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

1139. Ford's acts or practices alleged above are unconscionable because, among other reasons, Ford knew or had reason to know they had had made misleading statements of opinion on which Plaintiffs were likely to rely to their detriment.

1140. Ford's deceptive and unconscionable acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles as a result of Ford's violations of the Kansas CPA.

1141. Plaintiffs suffered loss as a result of Ford's violations of the Kansas CPA detailed above.   Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe. The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

518

1142. Pursuant to § 50-634(b) of the Kansas CPA, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) civil penalties provided for by § 50-636 of the Kansas CPA.

1143. Plaintiffs also seek punitive damages against Ford because they acted willfully, wantonly, fraudulently, or maliciously.   Ford intentionally and willfully misrepresented the safety and reliability of Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Vehicles it repeatedly promised Plaintiffs were safe.   Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1144. Plaintiffs risk irreparable injury as a result of Ford's deceptive and unconscionable acts or practices in violation of the Kansas CPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

1145. The recalls and repairs instituted by Ford have not been adequate. Ford Vehicles still are defective and dangerous.

1146. Plaintiffs further seek an order enjoining Ford's deceptive and

unconscionable acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Kansas CPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Kan. Stat. Ann. § 84-2-313)

1147. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1148. Ford is and was at all relevant times a merchant with respect to motor vehicles under KAN. STAT. ANN. § 84-2-104.

1149. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1150. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1151. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities as set forth above.

1152. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined

in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

1153. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1154. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1155. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1156. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1157. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1158. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in KAN. STAT. ANN. § 84-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other

incidental and consequential damages as allowed under KAN. STAT. ANN. §§ 84-2-711 and 84-2-608.

1159. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Kan. Stat. Ann. § 84-2-314)

1160. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1161. Plaintiffs are "natural persons" within the meaning of KAN. STAT. ANN. § 84-2-318.

1162. Ford is and was at all relevant times a merchant with respect to motor vehicles under KAN. STAT. ANN. § 84-2-104.

1163. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to KAN. STAT. ANN. § 84-2-314.

1164. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of

the Transmission Defects may occur suddenly and without warning in traffic.

1165. Privity is not required because the Vehicles are inherently dangerous.

1166. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT IV**
**REVOCATION OF ACCEPTANCE**
**(Kan. Stat. Ann. § 84-2-608)**

1167. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1168. Plaintiffs identified above demanded revocation and the demands were refused.

1169. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1170. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1171. There has been no change in the condition of Plaintiffs' vehicles not

caused by the defects and nonconformities.

1172. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1173. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1174. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief. In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

1175. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative

means of transport for an uncertain and substantial period of time.

1176. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in KAN. STAT. ANN. § 84-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under KAN. STAT. ANN. § 84-2-711.

1177. To the extent such allegations are necessary, Plaintiffs allege that authorized Ford dealers from whom Plaintiffs purchased or leased defective vehicles acted as the agents of Ford.   Plaintiffs further allege, to the extent such allegations are necessary, that Ford's warranties failed of their essential purpose.   Plaintiffs further allege, to the extent such allegations are necessary, that Ford's warranty and the purchase contracts for Vehicles were received by Plaintiffs as a single agreement.

1178. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other

damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Kansas Law)

1179. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1180. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Kansas, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1181. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1182. To the extent such allegations are necessary, Plaintiffs allege that they relied on Ford's common law warranties.

1183. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at

trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Kansas Law)

1184. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1185. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1186. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1187. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior

528

knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1188. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

1189. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1190. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1191. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   Plaintiffs reserve their right to elect either to (a) rescind their purchase or lease of Vehicles and obtain restitution (b) affirm their purchase or lease

of Vehicles and recover damages.

1192. Ford's acts were done willfully, wantonly, fraudulently, or maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII
## UNJUST ENRICHMENT
### (Based on Kansas Law)

1193. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1194. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1195. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained

530

profits.

1196. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## KENTUCKY
## COUNT I
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### (Ky. Rev. Stat. § 367.110, *et seq.*)

1197. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1198. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1199. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1200. Through those misleading and deceptive statements and false promises, Ford violated the Kentucky Consumer Protection Act ("KCPA").

1201. The KCPA applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Kentucky and affected Plaintiffs.

1202. Ford also failed to advise NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

1203. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

1204. As a direct and proximate result of Ford's deceptive conduct and violation of the KCPA, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Ky. Rev. Stat. § 355.2-313)

1205. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1206. Ford expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

1207. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1208. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT III
## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
### (Ky. Rev. Stat. § 335.2-314)

1209. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1210. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1211. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased.

1212. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their

bargain and the Vehicles have suffered a diminution in value.

1213. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

## COUNT IV
## FRAUDULENT CONCEALMENT
### (Based on Kentucky Law)

1214. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1215. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

1216. Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

1217. Ford knew these representations were false when made.

1218. Plaintiffs' Vehicles were, in fact, defective, unsafe, and unreliable,

because they were subject to sudden manifestations of the Transmission Defects.

1219. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the vehicles they were purchasing were safe and free from defects.

1220. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1221. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1222. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1223. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

# COUNT V
# UNJUST ENRICHMENT
## (Based on Kentucky Law)

1224. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1225. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

1226. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

1227. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

1228. As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain such benefits

1229. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies,

536

including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## LOUISIANA
## COUNT I
## LOUISIANA PRODUCTS LIABILITY ACT
### (La. Rev. Stat. § 9:2800.51, *et seq.*)

1230. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1231. Plaintiffs allege that Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce Vehicles as set forth above.

1232. The product in question is unreasonably dangerous for the following reasons:

   a. It is unreasonably dangerous in construction or composition as provided in LA. REV. STAT. § 9:2800.55;

   b. It is unreasonably dangerous in design as provided in LA. REV. STAT. § 9:2800.56;

   c. It is unreasonably dangerous because an adequate warning about the product was not provided as required by LA. REV. STAT. § 9:2800.57; and

    d.  It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product that render it unreasonably dangerous under LA. REV. STAT. § 9:2800.55, *et seq*., that existed at the time the product left the control of the manufacturer.

1233. Ford knew and expected for the Vehicles to eventually be sold to and operated by purchasers and/or eventual owners of the Vehicles, including Plaintiffs; consequently, Plaintiffs were an expected user of the product which Ford manufactured.

1234. The Vehicles reached Plaintiffs without substantial changes in their condition from time of completion of manufacture by Ford.

1235. The defects in the Vehicles could not have been contemplated by any reasonable person expected to operate the Vehicles, and, therefore, presented an unreasonably dangerous situation for expected users of the Vehicles even though the Vehicles were operated by expected users in a reasonable manner.

1236. As a direct and proximate cause of Ford's design, manufacture, assembly, marketing, and sales of the Vehicles, Plaintiffs have sustained and will

continue to sustain the loss of use of his/her vehicle, economic losses and consequential damages, and are therefore entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Ford is liable to Plaintiffs for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.   Plaintiffs allege that the Transmission Defects events are the type of occurrences which would not happen in the absence of a defective product.   Plaintiffs allege the application of res ipsa loquitur under Louisiana Products Liability Law.

**COUNT II**
**REDHIBITION**
**(LA. Civ. Code Art. 2520, *et seq*. and 2545)**

1237. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1238. Plaintiffs allege that Ford defectively designed, manufactured, sold or otherwise placed in the stream of commerce vehicles that are defective.

1239. Plaintiffs allege that the Transmission Defects are the type of occurrences which would not happen in the absence of a defective product. Plaintiffs allege the application of res ipsa loquitur under Louisiana Products

Liability Law.

1240. Plaintiffs allege that Ford has known about safety hazards that result from unexpected Transmission Defects for a number of years and has failed to adequately address those safety concerns.

1241. Ford, as manufacturer of the Vehicles, are responsible for damages caused by the failure of its product to conform to well-defined standards. In particular, the vehicles contain vices or defects which rendered them useless or their use so inconvenient and unsafe that a reasonable buyer would not have purchased or leased them. Ford manufactured, sold and promoted the vehicles and placed the vehicles into the stream of commerce. Under Louisiana Law, the seller and manufacturer warrants the buyer against redhibitory defects or vices in the things sold. LA. CODE CIV. P. Art. 2520. The vehicles as sold and promoted by Ford possessed redhibitory defects because they were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which rendered the vehicles useless or their use so inconvenient and unsafe that it must be presumed that a buyer would not have bought the vehicles had he/she known of the defect. Pursuant to LA. CODE CIV. P. Art. 2520, Plaintiffs

are entitled to obtain a rescission of the sale of the subject product.

1242. The vehicles alternatively possess redhibitory defects because the vehicles were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which diminished the value of the vehicles so that it must be presumed that a reasonable buyer would still have bought the vehicles, but for a lesser price, had the redhibitory defects been disclosed. In this instance, Plaintiffs are entitled to a reduction of the purchase price.

1243. As the manufacturer of the vehicle, under Louisiana Law, Ford is deemed to know that the vehicle contained redhibitory defects pursuant to LA. CODE CIV. P. Art. 2545.   Ford is liable as a bad faith seller for selling a defective product with knowledge of defects and thus is liable to Plaintiffs for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorney's fees.

1244. Due to the defects and redhibitory vices in the Fords sold to Plaintiffs, they have suffered damages under Louisiana Law.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR ORDINARY USE
### (La. Civ. Code Art. 2524)

1245. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1246. At all relevant times, Ford marketed, sold and distributed the automobile for use by Plaintiffs, knew of the use for which the Vehicles were intended, and impliedly warranted them to be fit for ordinary use.

1247. The Vehicles, when sold, were defective, unmerchantable, and unfit for ordinary use.

1248. The Vehicles contain vices or defects which render them either absolutely useless or render their use inconvenient, imperfect, and unsafe such that Plaintiffs would not have purchased or leased the Vehicles had they known of the vices or defects.

1249. The damages in question arose from the reasonably anticipated use of the product in question.

1250. Ford breached the implied warranties of merchantability and fitness for ordinary use when the Vehicles were sold to Plaintiffs because they have a tendency

542

to exhibit the Transmission Defects.

1251. As a direct and proximate cause of Ford's breach of the implied warranties of merchantability and fitness for ordinary use, Plaintiffs have suffered injuries and damages.

## COUNT IV
## NEGLIGENCE
### (La. Civ. Code Art. 2315)

1252. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1253. Ford had a duty to Plaintiffs to provide a safe product in design and manufacture, to notify NHTSA, and to warn NHTSA of the defective nature of the Vehicles.

1254. Ford breached its duty of reasonable care to Plaintiffs by designing the Vehicles in such a manner that they are prone to exhibit the Transmission Defects.

1255. Ford breached its duty of reasonable care to Plaintiffs by manufacturing and/or assembling the Vehicles in such a manner that they are prone exhibit the Transmission Defects.

1256. Ford breached its duty of reasonable care to Plaintiffs by failing to

recall the Vehicles at the earliest possible date.

1257. Ford breached its duty of reasonable care to Plaintiffs by failing to exercise due care under the circumstances.

1258. As a direct and proximate result of Ford's negligence as set forth in the preceding paragraphs, Plaintiffs have sustained and will continue to sustain the loss of use of their vehicles, economic losses, consequential damages and other damages and are entitled to compensatory damages, and equitable and declaratory relief according to proof.

1259. Ford's egregious misconduct alleged above warrants the imposition of punitive damages against Ford to prevent such future behavior.

## MAINE
## COUNT I
## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
### (Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq*.)

1260. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1261. The Maine Unfair Trade Practices Act ("UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." per ME. REV. STAT. ANN. TIT. 5 § 207.

544

1262.  The advertising and sale of motor vehicles by Ford constitutes "trade or commerce" within the meaning of UTPA per ME. REV. STAT. ANN. TIT. 5 § 206(3).

1263. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. This was a deceptive act in that Ford represented that Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that Vehicles are of a particular standard and quality when they are not; and advertised Vehicles with the intent not to sell them as advertised.   Ford knew or should have known that its conduct violated the UTPA.

1264. Ford engaged in a deceptive trade practice when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1265. Ford's conduct has caused or is to cause a substantial injury that is not reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition

1266. As a result of Ford's deceptive and unfair practices, Plaintiffs have suffered loss of money or property.  Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.   The value of their Fords have diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1267. Plaintiffs are entitled to actual damages, restitution and such other equitable relief, including an injunction, as the Court determines to be necessary and proper.

1268. Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213(3), Plaintiffs will mail a copy of the complaint to Maine's Attorney General.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Me. Rev. Stat. Ann. tit. 11 § 2-314)

1269. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1270. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1271. A warranty that the Vehicles were in merchantable condition is implied

by law in the instant transactions.

1272. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1273. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT III
## REVOCATION OF ACCEPTANCE
## (Me. Rev. Stat. Ann. tit. 11 § 2-608)

1274. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1275. Plaintiffs demanded revocation and the demands were refused.

1276. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1277. Acceptance was reasonably induced by the difficulty of discovering the

defects and nonconformities before acceptance.

1278. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1279. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1280. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1281. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1282. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any

payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1283. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT
### (Based on Maine Law)

1284. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1285. To the extent Ford's repair commitment is deemed not to be a warranty under Maine's Commercial Code, Plaintiffs plead in the alternative under common law contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1286. Ford breached this contractual obligation by failing to repair or replace

the Vehicles evidencing the Transmission Defects.

1287. As a direct and proximate result of Ford's breach of contract warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT V**
**UNJUST ENRICHMENT**
**(Based on Maine Law)**

1288. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1289. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1290. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1291. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher

price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1292. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

## MARYLAND
## COUNT I
## VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT
### (Md. Code Com. Law § 13-101, *et seq.*)

1293. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1294. Plaintiffs are persons within the meaning of the Maryland Consumer Protection Act (the "Act") for all purposes therein.

1295. Ford is a person within the meaning of the Act for all purposes therein.

1296. The false, deceptive and misleading statements and representations made by Ford alleged above and below are Unfair, Abusive, and Deceptive Trade Practices within the meaning of the Act.

1297. Ford participated in unfair or deceptive acts or practices that violated the Act, as described above and below, and those unfair and deceptive trade

practices occurred or were committed in the course, vocation or occupation of Ford's businesses.   Ford engaged in the unfair and deceptive trade practices and is directly liable for these violations of law. Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

1298. The Unfair and Deceptive Trade Practices as alleged above and below significantly impact the public as actual or potential customers of Ford.

1299. By failing to disclose and actively concealing the dangerous risk of the Transmission Defects, Ford engaged in deceptive business practices prohibited by the Act, including, but not limited to, (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

552

1300. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1301. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

1302. As a direct and proximate result of their unfair and deceptive business practices, and violations of the Act detailed above, Ford caused actual damages, injuries, and losses to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe. The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

1303. Plaintiffs are entitled to all damages permitted by M.R.S § 13-101, *et seq.*, including actual damages sustained, civil penalties, attorneys' fees, and costs of this action.  Also, the State of Maryland is entitled to statutory penalties from defendants for each violation of the Act.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Md. Code Com. Law § 2-313)

1304. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1305. Ford is and was at all relevant times a merchant as defined by the Uniform Commercial Code.

1306. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1307. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1308. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1309. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote

the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1310. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1311. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1312. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1313. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were

inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1314. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1315. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in MD. CODE COM. LAW § 2-608 for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of their Vehicles.

1316. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Md. Code Com. Law § 2-314)

1317. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1318. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1319. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transactions.

1320. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1321. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (Md. Code Com. Law § 2-608)

1322. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

557

though herein fully restated and re-alleged.

1323. Plaintiffs identified above demanded revocation and the demands were refused.

1324. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1325. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1326. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1327. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1328. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1329. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1330. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1331. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in MD. CODE COM. LAW § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1332. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages,

including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Maryland Law)

1333. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1334. To the extent Ford's repair commitment is deemed not to be a warranty under the Maryland Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1335. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1336. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Maryland Law)

1337. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1338. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

1339. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1340. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because

they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1341. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1342. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1343. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1344. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud,

compensation for loss of use and enjoyment of the property, and/or lost profits.   For

those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to

restitution and consequential damages.

1345. Ford's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

### COUNT VII
### NEGLIGENCE
### (Based on Maryland Law)

1346. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1347. Ford had a duty to Plaintiffs to provide a safe product in design and

manufacture, to notify NHTSA, and to warn NHTSA of the heightened propensity

of the Vehicles to unexpectedly exhibit the Transmission Defects.

1348. Ford breached its duty of reasonable care to Plaintiffs by designing the

Vehicles in such a manner that they have a heightened propensity to exhibit

Transmission Defects.

1349. Ford breached its duty of reasonable care to Plaintiffs by manufacturing and/or assembling the Vehicles in such a manner that they were prone to the Transmission Defects.

1350. Ford breached its duty of reasonable care to Plaintiffs by failing to recall the Vehicles at the earliest possible date when they knew that the Fusion transmissions were defective.

1351. Ford breached its duty of reasonable care to Plaintiffs by failing to exercise due care under the circumstances.

1352. As a direct and proximate result of Ford's negligence as set forth in the preceding paragraphs, Plaintiffs have sustained and will continue to sustain the loss of use of their vehicles, economic losses, consequential damages and other damages and are entitled to compensatory damages and equitable and declaratory relief according to proof.

1353. Plaintiffs demand judgment against Ford for negligence as prayed below.

## COUNT VIII
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT
## (Based on Maryland Law)

1354. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1355. At all times relevant hereto, Ford was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing Ford vehicles in the United States, including, but not limited to, the Vehicles.

1356. Ford knew and expected for the Vehicles to eventually be sold to and operated by consumers and/or eventual owners of the Vehicles, including Plaintiffs. Consequently, Plaintiffs were foreseeable users of the products which Ford manufactured.

1357. The Vehicles reached Plaintiffs without substantial change in condition from the time they were manufactured by Ford.

1358. The propensity of the Vehicles to suddenly and unexpectedly experience the Transmission Defects could not have been contemplated by any reasonable person expected to operate the Vehicles, and for that reason, presented an

unreasonably dangerous situation for foreseeable users of the Vehicles even though the Vehicles were operated by foreseeable users in a reasonable manner.

1359. Ford should have reasonably foreseen that the dangerous conditions of the Vehicles' defective transmissions would subject Plaintiffs to harm.

1360. As a result of these defective designs, the Vehicles are unreasonably dangerous.

1361. Plaintiffs have used the Vehicles reasonably and as intended, to the fullest degree possible given their defective nature, and, nevertheless, have suffered damages through no fault of their own.

1362. Safer, alternative designs existed for the Vehicles.

1363. As a direct and proximate result of Ford's design, manufacture, assembly, marketing, and sales of the Vehicles, Plaintiffs have sustained and will continue to sustain the loss of the use of their vehicles, economic losses, and consequential damages, and are, therefore, entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Ford is liable to Plaintiffs for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.   Plaintiffs are therefore entitled to equitable relief

as described below.

1364. Plaintiffs demand judgment against Ford for design defects as prayed for below.

**COUNT IX**
**STRICT PRODUCTS LIABILITY – DEFECTIVE**
**MANUFACTURING**
**(Based on Maryland Law)**

1365. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1366. Ford is the manufacturer, designer, distributor, seller, or supplier of the Vehicles.

1367. The Vehicles manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Ford were defective in their manufacture and construction such that they were unreasonably dangerous, were not fit for the ordinary purposes for which they were intended, and/or did not meet the reasonable expectations of any consumer.

1368. The Vehicles manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Ford, were defective in their manufacture and construction as described at the time they left Ford's control.

1369. The Vehicles are unreasonably dangerous due to their defective manufacture.

1370. As a direct and proximate result of Plaintiffs' purchase and use of the Vehicles as manufactured, designed, sold, supplied and introduced into the stream of commerce by Ford, Plaintiffs suffered economic losses, and will continue to suffer such damages and economic losses in the future.

1371. Plaintiffs demand judgment against Ford for manufacturing defects as prayed for below.

**COUNT X**
**STRICT PRODUCTS LIABILITY –**
**DEFECT DUE TO NONCONFORMANCE WITH**
**REPRESENTATIONS**
**(Based on Maryland Law)**

1372. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1373. Ford is the manufacturer, designer, distributor, seller, or supplier of the Vehicles, and Ford made representations regarding the character or quality of the Vehicles.

1374. The Vehicles manufactured and supplied by Ford were defective in

that, when they left the hands of Ford, they did not conform to the representations made by Ford concerning the Vehicles.

1375. Plaintiffs justifiably relied upon Ford's representations regarding the Vehicles when they purchased or leased and used the Vehicles.

1376. As a direct and proximate result of their reliance on Ford's representations regarding the character and quality of the Vehicles, Plaintiffs suffered damages and economic losses, and will continue to suffer such damages and economic losses in the future.

1377. Plaintiffs demand judgment against Ford for manufacturing defects as prayed for below.

**COUNT XI**
**UNJUST ENRICHMENT**
**(Based on Maryland Law)**

1378. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1379. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies

which rightfully belong to Plaintiffs.

1380. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1381. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**MASSACHUSETTS**
**COUNT I**
**VIOLATION OF THE MASSACHUSETTS**
**CONSUMER PROTECTION ACT**
**(Chapter 93A)**

1382. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1383. The conduct of Ford as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate,

570

disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency to deceive.

1384. Ford engages in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

1385. In satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), Plaintiffs have made demand on Ford more than 30 days prior to this filing by numerous letters sent by Plaintiffs.   These letters asserted that rights of consumers as claimants had been violated, described the unfair and deceptive acts committed by Ford, and specified the injuries that Plaintiffs have suffered and the relief they seek.   Thus, these letters satisfy section 9(3).

1386. As a result of Ford's unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, MASS. GEN. L. CH. 93A, Plaintiffs suffered injury as described herein.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## (ALM GL ch. 106, § 2-313)

1387. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1388. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1389. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1390. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1391. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1392. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote

572

the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

1393. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1394. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1395. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1396. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were

573

inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1397.  Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1398.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in ALM GL ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1399.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

574

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (ALM GL ch. 106, § 2-314)

1400. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1401. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1402. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1403. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1404. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
## (ALM GL ch. 106, § 2-608)

1405. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1406. Plaintiffs identified above demanded revocation and the demands were refused.

1407. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1408. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1409. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1410. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1411. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1412. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1413. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1414. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in ALM GL ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1415. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages,

including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Massachusetts Law)

1416. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1417. To the extent Ford's repair commitment is deemed not to be a warranty under Massachusetts's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1418. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1419. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

578

and consequential damages, and other damages allowed by law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Based on Massachusetts Law)**

1420. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1421. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1422. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1423. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1424. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus

interest.

## MICHIGAN
## COUNT I
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (Mich. Comp. Laws § 445.901, *et seq.*)

1425. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1426. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1427. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1428. Through those misleading and deceptive statements and false promises, Ford violated the Michigan Consumer Protection Act.

1429. The Michigan Consumer Protection Act applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Michigan and affected Plaintiffs.

1430. Ford also failed to advise NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

1431. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

1432. As a direct and proximate result of Ford's deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Mich. Comp. Laws § 440.2313)

1433. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1434. Ford expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

1435. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1436. Plaintiffs have been damaged as a direct and proximate result of the

breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mich. Comp. Laws § 440.2314)

1437. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1438. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonably safety during normal operation, and without unduly endangering them or members of the public.

1439. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

1440. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

582

## MINNESOTA
## COUNT I
## VIOLATION OF MINNESOTA FALSE STATEMENT
## IN ADVERTISING STATUTE
## (Minn. Stat. §§ 325F.67 *et seq*.)

1441. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1442. Ford produced and published advertisements and deceptive and misleading statements on the safety and reliability of the Vehicles, even after learning of their defects, with the intent to sell the Vehicles.

1443. Ford continue to represent or otherwise disseminate misleading information about the defect and cause of the defect with the intent to induce the public to by the Vehicles.

1444. Ford concealed their deceptive practices in order to increase the sale of and profit from the Vehicles.

1445. Ford violated the Minnesota False Statements in Advertising Act, MINN. STAT. § 325F.67, *et seq*., by publicly misrepresenting safety of the Vehicles, including the cause of the sudden transmission problems.

1446. Ford also failed to advise the NHTSA and the public about what it

knew about the Transmission Defects.

1447. The Minnesota False Statements in Advertising Act applies to Plaintiffs' transactions with Defendant because Ford's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1448. As a direct and proximate result of Ford's deceptive, unfair, and fraudulent conduct and violations of MINN. STAT. § 325F.67, *et seq*., Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (Minn. Stat. § 325D.43-48, *et seq*.)

1449. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1450. Ford engaged in – and continue to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, MINN. STAT. § 325D.44, *et seq*.   The violations include the following:

a. Ford violated MINN. STAT. § 325D.44(5) by representing the

584

Vehicles as having characteristics, uses, and benefits of safe and mechanically sound vehicles while knowing that the statements were false and the Vehicles contained defects;

b. Ford violated MINN. STAT. § 325D.44(7) by representing the Vehicles as a non-defective product of a particular standard, quality, or grade while knowing the statements were false and the Vehicles contained defects;

c. Ford violated MINN. STAT. § 325D.44(9) by advertising, marketing, and selling the Vehicles as reliable and without a known defect while knowing those claims were false; and

d. Ford violated MINN. STAT. § 325D.44(13) by creating a likelihood of confusion and/or misrepresenting the safety of the Vehicles.

1451. Ford's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1452. Ford also failed to advise the NHSTA and the public about what it knew about the Transmission Defects.

1453. As a direct and proximate result of Ford's deceptive conduct and

violation of MINN. STAT. § 325D.44, *et seq.*, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### COUNT III
### VIOLATION OF MINNESOTA PREVENTION OF
### CONSUMER FRAUD ACT
### (Minn. Stat. § 325F.68, *et seq.*)

1454. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1455. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1456. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1457. Through these misleading and deceptive statements and false promises, Ford violated MINN. STAT. § 325F.69.

1458. The Minnesota Prevention of Consumer Fraud Act applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in

Minnesota and affected Plaintiffs.

1459. Ford also failed to advise the NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

1460. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

1461. As a direct and proximate result of Ford's deceptive conduct and violation of MINN. STAT. § 325F.69, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT IV
## FRAUDULENT MISREPRESENTATION &
## FRAUDULENT CONCEALMENT
### (Based on Minnesota Law)

1462. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1463. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

587

1464. Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

1465. The vehicles purchased or leased by Plaintiffs were, in fact, defective, unsafe and unreliable, because the vehicles were subject to sudden Transmission Defects.

1466. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the vehicles they were purchasing were safe and free from defects.

1467. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1468. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1469. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1470. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (Minn. Stat. § 325G.19 Express Warranties)

1471. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1472. Ford is and at all relevant times was a merchant as defined by the Uniform Commercial Code ("UCC").

1473. Ford expressly warranted – through uniform statements, marketing materials, and advertisements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely. These warranties became part of the basis of the bargain.

1474. Ford breached this warranty by knowingly selling to Plaintiffs vehicles

with dangerous defects, and which were not of high quality.

1475. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

1476. Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased or leased their vehicles from Ford.

1477. Plaintiffs are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair, in addition to any costs associated with purchasing or leasing safer vehicles, incidental an consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (STRICT LIABILITY)
### (Minn. Stat. § 336.2-314 Implied Warranty;
### Merchantability; Usage Of Trade)

1478. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1479. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1480. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased, including, but not limited to, Transmission Defects.

1481. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs.   Furthermore, because of these dangerous defects, Plaintiff did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

1482. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Based on Minnesota Law)**

1483. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

591

1484. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

1485. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

1486. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

1487. As such, Plaintiffs conferred a windfall upon Ford., which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

1488. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## COUNT VIII
## STRICT LIABILITY (DESIGN DEFECT)
### (Based on Minnesota Law)

1489. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1490. Ford is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

1491. Ford knew and anticipated that the vehicles owned or leased by Plaintiffs would be sold to and operated by purchasers and/or eventual owners or leasors of Ford's vehicles, including Plaintiffs.   Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their condition from the time the vehicles departed Ford's assembly lines.

1492. Ford designed the Vehicles defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

1493. Ford had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

1494. The risks inherent in the design of the Vehicles outweigh significantly any benefits of such design.

1495. Plaintiffs could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems with the Vehicles.

1496. As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT IX**
**STRICT LIABILITY (FAILURE TO WARN)**
**(Based on Minnesota Law)**

1497. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1498. Ford is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

1499. Ford, at all times pertinent to this Complaint, knew and anticipated that the Vehicles and their component parts would be purchased, leased and operated by

594

consumers, including Plaintiffs.

1500. Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their conditions from the time that the vehicles departed Ford's assembly lines.

1501. Ford knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Vehicles, defective design, manufacturing and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to exhibit the Transmission Defects.

1502. Ford failed to adequately warn Plaintiffs when they became aware of the defect that caused Plaintiffs vehicles to be prone to exhibiting the Transmission Defects.

1503. Ford also failed to timely recall the vehicles or take any action to timely warn Plaintiffs of these problems and instead continues to subject Plaintiffs to harm.

1504. Ford knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

1505. Ford should have reasonably foreseen that the sudden and unintended

595

defect in the Vehicles would subject Plaintiffs to harm resulting from the defect.

1506. Plaintiffs have used the Vehicles for their intended purpose and in a reasonable and foreseeable manner.

1507. As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## MISSISSIPPI
## COUNT I
## MISSISSIPPI PRODUCTS LIABILITY ACT
### (Miss. Code Ann. § 11-1-63, *et seq.*)

1508. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1509. Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce Vehicles.

1510. Ford is strictly liable in tort for Plaintiffs' injuries and damages and Plaintiffs respectfully rely upon the Doctrine as set forth in RESTATEMENT, SECOND, TORTS § 402(a).

1511. Because of the negligence of the design and manufacture of the

596

Defective Vehicle, by which Plaintiffs were injured and the failure of Ford to warn

Plaintiffs of the certain dangers concerning the operation of the Vehicles which were

known to Ford but were unknown to Plaintiffs, Ford has committed a tort.

1512. The Vehicles which caused Plaintiffs' injuries were manufactured by

Ford.

1513. At all times herein material, Ford negligently and carelessly did certain

acts and failed to do other things, including, but not limited to, inventing,

developing, designing, researching, guarding, manufacturing, building, inspecting,

investigating, testing, labeling, instructing, and negligently and carelessly failing to

provide adequate and fair warning of the characteristics, angers and hazards

associated with the operation of the vehicles in question to users of the Vehicles,

including, but not limited to, Plaintiffs, and willfully failing to recall or otherwise

cure one or more of the defects in the product involved thereby directly and

proximately causing the hereinafter described injury.

1514. The Vehicles were unsafe for their use by reason of the fact that they

were defective.   For example, the Vehicles were defective in their design, guarding,

development, manufacture, and lack of permanent, accurate, adequate and fair

warning of the characteristics, danger and hazard to the user, prospective user and members of the general public, including, but not limited to, Plaintiffs, and because Ford failed to recall or otherwise cure one or more defects in the vehicles involved thereby directly and proximately causing the described injuries.

1515. Ford knew or reasonably should have known that the above-mentioned product would be purchased or leased and used without all necessary testing or inspection for defects by Plaintiffs.

1516. Plaintiffs were not aware of those defects at any time before the incident and occurrence mentioned in this complaint, or else Plaintiff was unable, as a practical matter, to cure that defective condition.

1517. Plaintiffs used the product in a foreseeable manner.

1518. As a proximate result of the negligence of Ford, Plaintiffs suffered injuries and damages.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Miss. Code Ann. §§ 75-2-314)

1519. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1520. Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce defective vehicles as set forth above.

1521. Ford impliedly warranted that the Vehicles were merchantable and for the ordinary purpose for which they were designed, manufactured, and sold.

1522. The Vehicles were not in merchantable condition or fit for ordinary use due to the defects described above and as a result of the breach of warranty of merchantability by Ford, Plaintiffs sustained injuries and damages.

## COUNT III
## NEGLIGENCE
## (Under Mississippi Law)

1523. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1524. Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce defective vehicles as set forth above.

1525. Ford had a duty to manufacture a product which would be safe for its intended and foreseeable uses and users, including the use to which it was put by Plaintiff.   Ford breached its duty to Plaintiffs because it was negligent in the design, development, manufacture, and testing of the Vehicles.

1526. Ford was negligent in its design, development, manufacture, and testing of the Vehicles because it knew, or in the exercise of reasonable care should have known, that they were prone to sudden unintended and dangerous Transmission Defects.

1527. Ford negligently failed to adequately warn and instruct Plaintiffs of the defective nature of the Vehicles, of the high degree of risk attendant to the using them, given that the users of the Vehicles would be ignorant of the said defective.

1528. Whereupon, Plaintiffs respectfully rely upon the RESTATEMENT, SECOND, TORTS § 395.

1529. Ford further breached its duties to Plaintiffs by supplying directly and/or through a third person to be used by such foreseeable persons such as Plaintiffs when:

> a. Ford knew or had reason to know, that the Subject Vehicle was dangerous or was likely to be dangerous for the use for which it was supplied; and
>
> b. Ford failed to exercise reasonable care to inform customers of the dangerous condition, or of the facts under which the Subject Vehicle

is likely to be dangerous.

1530. As a result of Ford's negligence, Plaintiffs suffered damages.

**COUNT IV**
**REVOCATION OF ACCEPTANCE**
**(Miss. Code Ann. § 75-2-608)**

1531. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1532. Plaintiffs identified above demanded revocation and the demands were refused.

1533. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1534. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1535. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1536. When Plaintiffs sought to revoke acceptance, Ford refused to accept

return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1537. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1538. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1539. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1540. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs

assert as an additional and/or alternative remedy, as set forth in MISS. CODE ANN.

§ 75-2-602, for a revocation of acceptance of the goods, and for a return to Plaintiffs

of the purchase or lease price of all vehicles currently owned and for such other

incidental and consequential damages as allowed under MISS. CODE ANN.

§ 75-2-602

1541. Consequently, Plaintiffs are entitled to revoke their acceptances, receive

all payments made to Ford, and to all incidental and consequential damages,

including the costs associated with purchasing or leasing safer vehicles, and all other

damages allowable under law, all in amounts to be proven at trial.

**COUNT V**
**NEGLIGENT MISREPRESENTATION/FRAUD**
**(Based on Mississippi Law)**

1542. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1543. As set forth above, Ford concealed and/or suppressed material facts

concerning the safety of their vehicles.

1544. Ford had a duty to disclose these safety issues because they consistently

marketed their vehicles as safe and proclaimed that safety is one of Ford's highest

603

corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1545. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1546. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1547. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1548. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1549. As a result of the misrepresentation concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, under Mississippi law, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages under Mississippi law.

1550. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on Mississippi Law)

1551. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1552. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1553. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1554. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

# MISSOURI
## COUNT I
## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.010, *et seq.*)

1555. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1556. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

1557. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1558. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1559. Plaintiffs were injured as a result of Ford's conduct. Plaintiffs

607

overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1560. Ford's conduct proximately caused the injuries to Plaintiffs.

1561. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1562. Pursuant to MO. REV. STAT. § 407.010, Plaintiffs will serve the Missouri Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(Mo. Rev. Stat. § 400.2-313)**

1563. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1564. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1565. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1566. Ford breached the express warranty to repair to correct defects in

materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1567. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1568. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1569. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1570. Furthermore, the limited warranty of repair fails in its essential purpose

because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1571. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1572. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1573. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1574. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in Mo. Rev. Stat. § 400.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1575. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(Mo. Rev. Stat. § 400.2-314)**

1576. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1577. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1578. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Mo. Rev. Stat. § 400.2-314.

1579. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of

611

the Transmission Defects may occur suddenly and without warning in traffic.

1580. Plaintiffs have had sufficient dealings with either Ford or their agents (dealerships) to establish privity of contract between Plaintiffs.  Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.   The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.   Finally, privity is also not required because Plaintiffs' Fords are dangerous instrumentalities due to the aforementioned defects and nonconformities.

1581. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (Mo. Rev. Stat. § 400.2-608)

1582. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

612

1583. Plaintiffs identified above demanded revocation and the demands were refused.

1584. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1585. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1586. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1587. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1588. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1589. Plaintiffs provided notice of their intent to seek revocation of

acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief. In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

1590. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1591. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in MO. REV. STAT. § 400.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1592. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other

damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Missouri Law)

1593. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1594. To the extent Ford's repair commitment is deemed not to be a warranty under Missouri's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1595. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1596. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Missouri Law)

1597. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1598. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

1599. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1600. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because

they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1601. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1602. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1603. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1604. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud,

compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1605. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.   Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII
## UNJUST ENRICHMENT
### (Based on Missouri Law)

1606. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1607. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1608. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford

obtained monies which rightfully belong to Plaintiffs.

1609. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1610. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

## NEBRASKA
## COUNT I
## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (Neb. Rev. Stat. § 59-1601, *et seq.*)

1611. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1612. The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

1613. "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

1614. The conduct of Ford as set forth herein constitutes unfair or deceptive

acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

1615. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1616. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1617. Plaintiffs were injured as a result of Ford's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1618. Ford's conduct proximately caused the injuries to Plaintiffs, who are entitled to recover actual damages, as well as enhanced damages pursuant to

§ 59-1609.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (Neb. Rev. Stat. Neb. § 2-314)

1619. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1620. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1621. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1622. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1623. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**REVOCATION OF ACCEPTANCE**
**(Nev. Rev. Stat. NEB. § 2-608)**

1624.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1625.  Plaintiffs identified above demanded revocation and the demands were refused.

1626.  Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1627.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1628.  There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1629.  When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1630.  Plaintiffs  would  suffer  economic  hardship  if  they  returned  their

vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1631. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1632. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1633. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in R.R.S. Neb. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the

purchase or lease price of all vehicles currently owned.

1634. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT IV**
**IN THE ALTERNATIVE, UNJUST ENRICHMENT**
**(Based on Nebraska Law)**

1635. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1636. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1637. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1638. Ford received and retained benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which

actually had lower values.   It would be inequitable and unconscionable for Ford to retain these wrongfully obtained profits.

1639. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

## NEVADA
## COUNT I
## VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### (Nev. Rev. Stat. § 598.0903, *et seq.*)

1640. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1641. Ford is a "person" as required under the statute.

1642. Ford's actions as set forth above occurred in the course of business.

1643. The Nevada Deceptive Trade Practices Act, NEV. REV. STAT. § 598.0903, *et seq.*, prohibits unfair or deceptive consumer sales practices.

1644. The NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she does any of the following, including: "5. Knowingly makes a false

625

representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; " 8 Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "10. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1645. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford engaged in deceptive trade practices, including making false representation as to the characteristics, uses, and benefits of the Vehicles; representing that Vehicles are of a particular standard and quality when they are not; advertising Vehicles with the intent not to sell them as advertised; and knowingly made numerous other false representations as further described during the fact section of this complaint.

626

1646. Ford knowingly made false representations to consumers with the intent to induce consumers into purchasing Ford vehicles.  Plaintiffs reasonably relied on false representations by Ford and were induced to each purchase a Ford vehicle, to his/her detriment.   As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

1647. Plaintiffs suffered ascertainable loss caused by Ford's false representations and failure to disclose material information.   Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.   The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Nev. Rev. Stat. § 104.2313)

1648. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1649. Ford is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

1650. In the course of selling its vehicles, Ford expressly warranted in writing

that the Vehicles were covered by a Warranty.

1651. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1652. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1653. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

1654. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale,

and has not provided since then, vehicles conforming to these express warranties.

1655. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1656. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1657. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1658. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable

time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1659. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Nev. Rev. Stat. § 104.2314)

1660. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1661. Ford is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

1662. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to the Uniform Commercial Code.

1663. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1664. As a direct and proximate result of Ford's breach of the warranties of

630

merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (Nev. Rev. Stat. § 104.2608)

1665.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1666.  Plaintiffs identified above demanded revocation and the demands were refused.

1667.  Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1668.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1669.  There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1670.  When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1671. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1672. Plaintiffs, within a reasonable amount of time, provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief. In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

1673. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1674. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages,

632

including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT V**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based on Nevada Law)**

1675. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1676. To the extent Ford's repair commitment is deemed not to be a warranty under Nevada's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1677. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1678. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

633

and consequential damages, and other damages allowed by law.

## COUNT VI
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING
## (Based on Nevada Law)

1679. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1680. As set forth above, Plaintiffs have entered into individual sales transactions and agreements with Ford for the purchase Ford vehicles.

1681. Plaintiffs have fully performed their obligations with Ford under such transactions and agreements.

1682. At all times, Ford owed Plaintiffs a duty to exercise and act in good faith and deal fairly with them in the performance of repairs of Vehicles.

1683. Ford has breached these duties and obligations in the manner and particulars set forth above, including, but not limited to, failing to repair or replace the Vehicles evidencing the Transmission Defects.

1684. As a direct and proximate result of Ford's failure to abide and comply with their obligations and duties, Plaintiffs have suffered pecuniary damages in an amount that has not yet been determined.

## COUNT VII
## FRAUD BY CONCEALMENT
### (Based on Nevada Law)

1685. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1686. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1687. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1688. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because

635

they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1689. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1690. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1691. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1692. Plaintiffs would not have purchased or leased the vehicles sold by Ford or would have not paid as much for the vehicles had they known the full truth about the vehicles being sold by Ford.

1693. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.

1694. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VIII
## UNJUST ENRICHMENT
### (Based on Nevada Law)

1695. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1696. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1697. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1698. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## NEW HAMPSHIRE
## COUNT I
## VIOLATION OF N.H. CONSUMER PROTECTION ACT
### (N.H. Rev. Stat. Ann. § 358A:1, *et seq.*)

1699. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1700. The New Hampshire Consumer Protection Act ("CPA") prohibits a person, in the conduct of any trade or commerce, from doing any of the following: "(V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have; … (VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another; … and (IX) Advertising goods or services with intent not to sell them as advertised."   N.H. REV. STAT. § 358-A:2.

1701. Ford is a person within the meaning of the CPA.   *See* N.H. REV. STAT. § 358A:1(I).

1702. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions.

Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; and advertising Vehicles with the intent not to sell them as advertised.   Ford knew or should have known that its conduct violated the OUTPA.

1703. Ford engaged in a deceptive trade practice when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1704. The propensity of the Fusions to manifest the Transmission Defects was material to Plaintiffs.   Had Plaintiffs known that their Fords had these serious safety defects, they would not have purchased or leased their Fords.

1705. Ford's failure to disclose material information has injured Plaintiffs. Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1706. Plaintiffs are entitled to recover the greater of actual damages or $1,000 pursuant to N.H. REV. STAT. § 358-A:10. Plaintiffs are also entitled to treble damages because Ford acted willfully in its unfair and deceptive practices.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (N.H. Rev. Stat. Ann. § 382-A:2-313)

1707. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1708. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.H. REV. STAT. § 382-A:2-313.

1709. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1710. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1711. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities.

1712. These warranties are only a sampling of the numerous warranties that

Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1713. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1714. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1715. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek

all remedies as allowed by law.

1716. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.   Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1717. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1718. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in N.H. REV. STAT. §§ 382-A:2-608 and 382-A:2-711, for a revocation of acceptance of the goods, and

for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.H. REV. STAT. §§ 382-A:2-608 and 382-A:2-711.

1719.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.H. Rev. Stat. Ann. § 382-A:2-314)

1720.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1721.  Ford is and was at all relevant times a merchant with respect to motor vehicles.

1722.  A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1723.  These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1724. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (N.H. Rev. Stat. Ann. § 382-A:2-608)

1725. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1726. Plaintiffs identified above demanded revocation and the demands were refused.

1727. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased or leased their automobiles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1728. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1729. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1730. When Plaintiffs sought to revoke acceptance, Ford refused to accept

return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1731. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1732. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief. In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

1733. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1734. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs

assert as an additional and/or alternative remedy, as set forth in N.H. Stat. § 382-A:2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1735. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

### COUNT V
### BREACH OF COMMON LAW WARRANTY
### (Based on New Hampshire Law)

1736. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1737. To the extent Ford's repair commitment is deemed not to be a warranty under New Hampshire's Commercial Code, Plaintiffs plead in the alternative under common law contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1738. Ford breached this contractual obligation by failing to repair or replace

the Vehicles evidencing the Transmission Defects.

1739. As a direct and proximate result of Ford's breach of contract, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Based on New Hampshire Law)**

1740. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1741. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1742. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1743. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher

price for vehicles which actually had lower values.   It would be unconscionable for Ford to retain these wrongfully obtained profits.

1744. To the extent that no contract applies between the parties, Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**NEW JERSEY**
**COUNT I**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. Stat. Ann. § 56:8-1, *et seq.*)**

1745. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1746. The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…"   N.J. STAT. ANN. § 56:8-2.

1747. Ford is a person within the meaning of the CFA.   N.J. STAT. ANN. § 56:8-1(d).

1748. In the course of Ford's business, it knowingly failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. This was an unlawful practice in that Ford represented that Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that Vehicles are of a particular standard and quality when they are not; and advertised Vehicles with the intent not to sell them as advertised.   Ford knew or should have known that its conduct violated the CFA.

1749. Ford engaged in an unlawful practice under the CFA when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1750. Ford's unlawful practices cause substantial injury to consumers.

1751. The propensity of the Fusions to manifest the Transmission Defects was material to Plaintiffs.   Had Plaintiffs known that their Fords had these serious

safety defects, they would not have purchased or leased their Fords.

1752. Plaintiffs suffered ascertainable loss of money or property caused by Ford's unlawful practices.   Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.   The value of their Fords has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1753. Plaintiffs are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19.

1754. Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiffs will mail a copy of the complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (N.J. Stat. Ann. § 12A:2-313)

1755. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1756. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1757. In the course of selling its vehicles, Ford expressly warranted in writing

650

that the Vehicles were covered by a Warranty.

1758. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1759. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1760. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

1761. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale,

and has not provided since then, vehicles conforming to these express warranties.

1762. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1763. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1764. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1765. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies

would render them insufficient to make Plaintiffs whole.

1766. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set for in N.J. STAT. ANN. § 12A:2-608, for revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1767. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amounted to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.J. Stat. Ann. § 12A:2-314)**

1768. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1769. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1770. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1771. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1772. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT IV**
**REVOCATION OF ACCEPTANCE**
**(N.J. Stat. Ann. § 12A:2-608)**

1773. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1774. Plaintiffs identified above demanded revocation and the demands were refused.

1775. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1776. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1777. There has been no change in the condition of Plaintiffs' vehicles not

654

caused by the defects and nonconformities.

1778. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1779. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1780. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1781. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative

means of transport for an uncertain and substantial period of time.

1782. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT V**
**BREACH OF CONTRACT**
**(Based on New Jersey Law)**

1783. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1784. To the extent Ford's repair commitment is deemed not to be a warranty under New Jersey's Commercial Code, Plaintiffs plead in the alternative under common law contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1785. Ford breached this contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1786. As a direct and proximate result of Ford's breach of contract, Plaintiffs

have been damaged in an amount to be proven at trial, which shall include, but is not

limited to, all compensatory damages, incidental and consequential damages, and

other damages allowed by law.

### COUNT VI
### IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on New Jersey Law)

1787. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1788. Ford had knowledge of the safety defects in its vehicles, which it failed

to disclose to Plaintiffs.

1789. As a result of its wrongful and fraudulent acts and omissions, as set

forth above, pertaining to the design defect of their vehicles and the concealment of

the defect, Ford charged a higher price for its vehicles than the vehicles' true value.

Ford accordingly received a benefit from Plaintiffs to Plaintiffs' detriment.

1790. Ford appreciated, accepted and retained the benefits conferred by

Plaintiffs, who without knowledge of the safety defects paid a higher price for

vehicles which actually had lower values.  It would be inequitable and unjust for

Ford to retain these wrongfully obtained profits.

1791. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

## NEW MEXICO
## COUNT I
## BREACH OF EXPRESS WARRANTY
### (N.M. Stat. Ann. § 55-2-313)

1792. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1793. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.M. STAT. ANN. § 55-2-104.

1794. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1795. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1796. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1797. These warranties are only a sampling of the numerous warranties that

658

Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

1798. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1799. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1800. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek

all remedies as allowed by law.

1801. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1802. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1803. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in N.M. STAT. ANN. § 55-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs

660

of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.M. STAT. ANN. §§ 55-2-711 and 55-2-608.

1804.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT II
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.M. Stat. Ann. § 55-2-314)

1805.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1806.  Ford is and was at all relevant times a merchant with respect to motor vehicles under N.M. STAT. ANN. § 55-2-104.

1807.  A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to N.M. STAT. ANN. § 55-2-314.

1808.  These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

661

1809. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT III
## REVOCATION OF ACCEPTANCE
## (N.M. Stat. Ann. § 55-2-608)

1810. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1811. Plaintiffs identified above demanded revocation and the demands were refused.

1812. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1813. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1814. There has been no substantial change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1815. When Plaintiffs sought to revoke acceptance, Ford refused to accept

return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1816. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1817. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

1818. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1819. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs

assert as an additional and/or alternative remedy, as set forth in N.M. STAT. ANN. § 55-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.M. STAT. ANN. § 55-2-711.

1820. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on New Mexico Laws)

1821. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1822. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in New Mexico, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials

664

or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1823. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1824. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

1825. Ford's breaches were malicious, fraudulent, oppressive, or committed recklessly with wanton disregard for the rights of Plaintiffs.   Accordingly, as Ford has acted with the requisite culpable state of mind, Plaintiffs seek exemplary damages against Ford in an amount to be determined at trial.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on New Mexico Law)

1826. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1827. As set forth above, Ford concealed and/or suppressed material facts

concerning the safety of the subject Fusions and their transmissions.

1828. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1829. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1830. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their

Vehicles at a higher price, which did not match the Vehicles' true value.

1831. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1832. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1833. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1834. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on New Mexico Law)

1835. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1836. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1837. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. Ford knowingly benefited at the expense of Plaintiffs.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1838. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT VII
## VIOLATIONS OF THE NEW MEXICO
## UNFAIR TRADE PRACTICES ACT
### (N.M. Stat. Ann. §§ 57-12-1, *et seq.*)

1839. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1840. Ford's above-described acts and omissions constitute unfair or deceptive acts or practices under the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. §§ 57-12-1, *et seq.* ("New Mexico UTPA").

1841. By failing to disclose and actively concealing the dangerous defective transmissions, Ford   engaged in deceptive business practices prohibited by the New Mexico UTPA, including (1) representing that Vehicles have characteristics and benefits, which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) using exaggeration as to a material fact and by doing so deceiving or tending to deceive, (4) failing to state a material fact and by doing so deceiving or tending to deceive, and (5) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not.

1842. As alleged above, Ford made numerous material statements about the

safety and reliability of Vehicles that were either false or misleading.   Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1843.  Ford took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiffs to a grossly unfair degree.   Ford's actions resulted in a gross disparity between the value received and the price paid by Plaintiffs.   Ford's actions constitute unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

1844.  Plaintiffs sustained damages as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-12-10 of the New Mexico UTPA.   Because Ford's conduct was committed willfully, Plaintiffs seek treble damages.

1845.  Plaintiffs also seek court costs and attorneys' fees under § 57-12-10(C) of the New Mexico UTPA.

## COUNT VIII
## VIOLATIONS OF THE NEW MEXICO
## MOTOR VEHICLE DEALERS FRANCHISING ACT
## (N.M. Stat. Ann. §§ 57-16-1, *et seq.*)

1846. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

670

1847. As alleged above, Ford used false, misleading, and deceptive advertising in connection with their business in violation of the New Mexico Motor Vehicle Dealers Franchising Act, N.M. STAT. ANN. §§ 57-16-1, *et seq.* ("New Mexico MVDFA").

1848. Plaintiffs sustained damages as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-16-13 of the New Mexico MVDFA.   Because Ford's conduct was committed maliciously, Plaintiffs seek treble damages.

1849. Plaintiffs also seek court costs and attorneys' fees under § 57-16-13 of the New Mexico MVDFA.

**NEW YORK**
**COUNT I**
**DECEPTIVE ACTS OR PRACTICES**
**(N.Y. Gen. Bus. Law § 349)**

1850. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1851. This Count is asserted by Plaintiffs who (a) suffered a Transmission Defects event or (b) sold their vehicle at a loss.

1852. New York General Business Law ("G.B.L.") § 349 makes unlawful

671

"[d]eceptive acts or practices in the conduct of any business, trade or commerce."

1853. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts.

1854. Ford engaged in a deceptive acts or practices when it failed to disclose material information concerning the subject Fusion which was known to Ford at the time of the sale.   Ford deliberately withheld the information about the Transmission Defects, and the vehicle's quality, reliability and safety issues in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1855. The propensity of the Vehicles to experience the Transmission Defects and the related issues regarding quality, reliability and safety were material to Plaintiffs.   Had Plaintiffs known that their Vehicles had these serious safety, quality and reliability issues, they would not have purchased or leased them.

1856. Because Ford's deception takes place in the context of automobile safety, that deception affects the public interest.

672

1857. Ford's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

1858. Plaintiffs suffered injury caused by Ford's failure to disclose material information.   Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.   The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1859. Pursuant to G.B.L. § 349, Plaintiffs are entitled to recover the greater of actual damages or $50.   Because Ford acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $1,000.

## COUNT II
## FALSE ADVERTISING
### (N.Y. Gen. Bus. Law § 350)

1860. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1861. This Count is asserted by Plaintiffs who (a) suffered a Transmission Defect event or (b) sold their Vehicle at a loss.

1862. New York G.B.L. § 350 makes unlawful "[f]alse advertising in the

conduct of any business, trade or commerce.…"   False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity.…"   N.Y. G.B.L. § 350-a.

1863. Ford caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Ford to be untrue and misleading to consumers and Plaintiffs.

1864. Ford has violated § 350 because the misrepresentations and omissions regarding the safety, quality and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

1865. Plaintiffs have suffered an injury, including the loss of money or property, as a result of Ford's false advertising.   In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect to the safety, quality and reliability of the vehicles.   Ford's representations

turned out not to be true because the vehicles can unexpectedly and dangerously exhibit the Transmission Defects.   Had Plaintiffs known this, they would not have purchased or leased their Vehicles and/or paid as much for them.

1866. Accordingly, Plaintiffs overpaid for their Vehicles and did not receive the benefit of the bargain for their Vehicles, which have also suffered a diminution in value.

1867. Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Ford from continuing their unfair, unlawful, and/or deceptive practices.   Plaintiffs are also entitled to recover their actual damages or $500, whichever is greater.   Because Ford acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $10,000.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (N.Y. U.C.C. § 2-313)

1868. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1869. This Count is asserted by Plaintiffs who (a) experienced the Transmission Defect, or (b) sold at a loss, and (c) presented their Vehicle to a dealer

for repair.

1870. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. § 2-313.

1871. The vehicles sold by Ford are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

1872. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by warranty.

1873. Ford breached the express warranty to repair and correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1874. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1875. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened,

676

superior, and state-of-the-art safety, reliability, performance standards, and promote

the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in

advertisements, in Ford's marketing materials, and in uniform statements provided

by Ford to be made by salespeople.   These affirmations and promises were part of

the basis of the bargain between the parties.

1876. These additional warranties were also breached because the Vehicles

were not fully operational, safe, or reliable, nor did they comply with the warranties

expressly made to purchasers or lessees.   Ford did not provide at the time of sale,

and has not provided since then, vehicles conforming to these express warranties.

1877. Furthermore, the limited warranty of repair fails in its essential purpose

because the contractual remedy is insufficient to make Plaintiffs whole and because

Ford has failed and/or refused to adequately provide the promised remedies within a

reasonable time.

1878. Accordingly, recovery by Plaintiffs is not limited to the limited

warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek

all remedies as allowed by law.

1879. Also, as alleged in more detail herein, at the time that Ford warranted

and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1880. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1881. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.Y. U.C.C. § 2-314)

1882. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1883. This Count is asserted on behalf of Plaintiffs who (a) suffered the Transmission Defects or (b) sold their vehicle at a loss, and (c) who presented their vehicle for repair.

1884. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1885. The vehicles sold by Ford are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

1886. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1887. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1888. As a direct and proximate result of Ford's breach of the warranties of

merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on New York Law)

1889. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1890. This Count is asserted on behalf of Plaintiffs who (a) suffered the Transmission Defects or (b) sold their Vehicle at a loss, and (c) who presented their Vehicle for repair.

1891. To the extent Ford's repair commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1892. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1893. As a direct and proximate result of Ford's breach of contract or

common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on New York Law)

1894. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1895. This Count is brought by Plaintiffs who experienced the Transmission Defects and/or who sold at a loss.

1896. Ford had a duty to disclose the quality, reliability and safety issues because they consistently marketed their vehicles as safe, reliable and of high quality and proclaimed that safety, reliability and quality were among Ford's highest corporate priorities.   Once Ford made representations to the public about safety, quality and reliability, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

681

1897. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety, quality and reliability of the Vehicles.   Whether or not a vehicle has been designed and manufactured according to safety and company standard is material to a reasonable consumer.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1898. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Fords at a higher price for the vehicles, which did not match the vehicles' true value.

1899. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1900. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material

facts, and such facts were not known to the public or Plaintiffs.

1901.  As a result of the concealment and/or suppression of the facts, Plaintiffs

sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages,

include the difference between the actual value of that which Plaintiffs paid and the

actual value of that which they received, together with additional damages arising

from the sales transaction, amounts expended in reliance upon the fraud,

compensation for loss of use and enjoyment of the property, and/or lost profits.   For

those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to

restitution and consequential damages.

1902. Ford's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Ford. Ford's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

**NORTH CAROLINA**
**COUNT I**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(N.C. Gen. Stat. § 25-2-314)**

683

1903. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1904. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.C. GEN. STAT. § 25-2-314.

1905. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to N.C. GEN. STAT. § 25-2-314.

1906. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1907. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT II**
**FRAUD BY CONCEALMENT**
**(Based on North Carolina Law)**

1908. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1909. As set forth above, Ford concealed and/or suppressed material facts

concerning the safety of their vehicles, which they were legally obligated to disclose.

1910. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1911. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1912. Ford actively concealed and/or suppressed these material facts, in

whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1913. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1914. Plaintiffs were unaware of these omitted material facts and would not have acted as it did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or to Plaintiffs.

1915.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1916. Ford's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## UNJUST ENRICHMENT
### (Based on North Carolina Law)

1917. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1918. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1919. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1920. Plaintiffs, therefore, are entitled to restitution and seek an order

establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

### COUNT IV
### BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on North Carolina Law)

1921. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1922. To the extent Ford's repair commitment is deemed not to be a warranty under North Carolina's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1923. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1924. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

and consequential damages, and other damages allowed by law.

## NORTH DAKOTA
## COUNT I
## BREACH OF EXPRESS WARRANTY
### (N.D. Cent. Code. § 41-02-30)

1925. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1926. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1927. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1928. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1929. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1930. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability,

performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1931. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1932. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1933. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1934. Also, as alleged in more detail herein, at the time that Ford warranted

and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1935. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1936. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in N.D. CENT. CODE § 41-02-71 (2-608), for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1937. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(N.D. Cent. Code § 41-02-31)**

1938. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1939. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1940. A warranty that the Vehicles were merchantable is implied by law in the instant transactions.

1941. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1942. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(Based on North Dakota Law)**

1943. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

1944. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1945. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford was enriched.

1946. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Plaintiffs were impoverished.

1947. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford obtained monies which rightfully belong to Plaintiffs.

1948. No justification exists for Ford's enrichment at the expense of Plaintiffs' impoverishment.

1949. There is an absence of an equal or better remedy at law for Ford's

actions.

## COUNT IV
## VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. Cent. Code § 51-15-02)

1950. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1951. The conduct of Ford as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions which Ford failed to adequately investigate, disclose and remedy, and Ford's misrepresentations and omissions regarding the safety and reliability of its vehicles.

1952. Plaintiffs were injured as a result of Defendant's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1953. Ford's conduct proximately caused the injuries to Plaintiffs.

1954. Further, Ford knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, Ford is liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and

disbursements.

## COUNT V
## REVOCATION OF ACCEPTANCE
### (N.D. Cent. Code § 41-02-71 (2-608))

1955.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1956.  Plaintiffs identified above demanded revocation and the demands were refused.

1957.  Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

1958.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

1959.  There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

1960.  When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

1961.  Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.  Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

1962.  Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.  In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.  Plaintiffs hereby demand revocation and tender their Vehicles.

1963.  Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.  Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

1964.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy for a revocation of acceptance of

696

the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1965.  Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on North Dakota Law)

1966.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1967.  To the extent Ford's repair commitment is deemed not to be a warranty under North Dakota's Century Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1968.  Ford breached this warranty or contract obligation by failing to repair

or replace the Vehicles evidencing the Transmission Defects.

1969. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VII**
**FRAUD BY CONCEALMENT**
**(Based on North Dakota Law)**

1970. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1971. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1972. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling

of a half-truth calculated to deceive is fraud.

1973. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1974. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1975. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1976. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

699

1977.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1978. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## OHIO
## COUNT I
## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code Ann. § 1345.01, *et seq.*)

1979. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1980. The Ohio Consumer Protection Act, OHIO REV. CODE § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.   Specifically, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.   The Act also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

1981. Ford is a "supplier" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(C).

1982. Plaintiffs are "consumers" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(D).

1983. The conduct of Ford alleged above constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02 because Ford represented through advertising and other marketing communications that the vehicles were new and free from defects and could be driven safely in normal operation.   Instead, the vehicles were not of the standard, quality or grade of new vehicles.

1984. Ford's conduct caused Plaintiffs' damages as alleged.

1985. Plaintiff specifically does not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

1986. As a result of the foregoing wrongful conduct of Ford, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and statutory damages, treble damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, *et seq*.

## COUNT II
## VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
### (Ohio Rev. Code Ann. § 4165.01, *et seq*.)

1987. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1988. OHIO REV. CODE § 4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following:   "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or

702

connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [and] (11) Advertises goods or services with intent not to sell them as advertised."

1989. Ford is a "person" within the meaning of OHIO REV. CODE § 4165.01(D).

1990. The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Ford.

1991. The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Ford.

1992. Ford made false or misleading statements of fact concerning the vehicles Plaintiffs purchased or leased – *i.e.*, that such vehicles were suitable for ordinary use – when Ford, in fact, knew that they were defective and not suitable for ordinary use.

1993. These statements materially influenced Plaintiffs' decision to purchase or lease the Vehicles, in that Ford's statements caused Plaintiffs to purchase or lease

vehicles that they otherwise would not have had they known of the dangerous defect.

1994. Ford's deceptive trade practices caused Plaintiffs' damages as alleged.

1995. Ford's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

1996. As a result of the foregoing wrongful conduct of Ford, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(Ohio Rev. Code Ann. § 1302.26, *et seq.* (U.C.C. § 2-313))**

1997. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

1998. Ford expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely.

1999. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

704

2000. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT IV
## OHIO BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY STRICT LIABILITY
## (Ohio Rev. Code Ann. § 1302.27 (U.C.C. § 2-314))

2001. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2002. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

2003. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased, including, but not limited to the Transmission Defects.

2004. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs.

2005. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

## COUNT V
## OHIO NEGLIGENT DESIGN, ENGINEERING & MANUFACTURE
### (Based on Ohio Law)

2006. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2007. Ford is a manufacturer and supplier of automobiles.

2008. Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the vehicles against foreseeable hazards and malfunctions including Transmission Defects.

2009. Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care in designing, engineering and manufacturing the vehicles so that they would function normally.

2010. Ford also owed – and owe – a continuing duty to notify Plaintiffs of the problem at issue and to repair the dangerous defects.

2011. Ford breached these duties of reasonable care by designing, engineering and manufacturing vehicles that contained the defective transmissions

and breached their continuing duty to notify Plaintiffs of these defects.

2012. The foreseeable hazards and malfunctions include, but are not limited to, the sudden and unanticipated manifestations of the Transmission Defects.

2013. Plaintiffs did not and could not know of the intricacies of these defects and their latent and dangerous manifestations, or the likelihood of harm therefrom arising in the normal use of their vehicles.

2014. At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.   Further, any alleged benefits associated with the defective designs are vastly outweighed by the real risks associated with sudden manifestation of the Transmission Defects.

2015. The vehicles were defective as herein alleged at the time they left Ford's factories, and the vehicles reached Plaintiffs without substantial change in the condition in which they were sold.

2016. As a direct and proximate result of Ford's breaches, Plaintiffs have suffered damages.

2017. Accordingly, Plaintiffs are entitled to recover appropriate damages including, but not limited to, diminution of value, return of lease payments and

penalties, and injunctive relief related to future lease payments or penalties.

## COUNT VI
## FRAUD & FRAUDULENT CONCEALMENT
### (Based on Ohio Law)

2018. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2019. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

2020. Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

2021. The vehicles purchased or leased by Plaintiffs were, in fact, defective, unsafe and unreliable, because the vehicles exhibited the Transmission Defects.

2022. Ford had a duty to disclose this material safety information.

2023. The aforementioned concealment was material because if it had been

disclosed Plaintiffs would not have bought or leased the vehicles.

2024. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

2025. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

2026. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## COUNT VII
## UNJUST ENRICHMENT
### (Based on Ohio Law)

2027. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2028. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

2029. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

2030. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

2031. As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

2032. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

**OKLAHOMA**
**COUNT I**
**VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
**(Okla. Stat. tit. 15 § 751, *et seq.*)**

2033. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2034. The conduct of Ford as set forth herein constitutes unfair or deceptive

acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

2035. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2036. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

2037. Plaintiffs were injured as a result of Defendant's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2038. Ford's conduct proximately caused the injuries to Plaintiffs.

2039. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

2040. Pursuant to OKLA. STAT. tit. 15 § 751, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**COUNT II**
**VIOLATION OF OKLAHOMA DECEPTIVE TRADE PRACTICES ACT**
**(78 Okla. Stat. Ann. § 51, *et seq*.)**

2041. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2042. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

2043. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2044. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful

conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

2045. Plaintiffs were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2046. Ford's conduct proximately caused the injuries to Plaintiffs.

2047. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

2048. Pursuant to OKLA. STAT. tit. 78 § 51, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(12A Okla. Stat. Ann. § 2-313)**

2049. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2050. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2051. In the course of selling its vehicles, Ford expressly warranted in writing

that the Vehicles were covered by a Warranty.

2052. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2053. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2054. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

2055. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale,

and has not provided since then, vehicles conforming to these express warranties.

2056.  Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2057. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2058. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2059. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable

time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2060. Finally, due to Ford's breach of warranties as set forth herein,

2061. Plaintiffs assert as an additional and/or alternative remedy, as set forth in 12A OKLA. STAT. ANN. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2062. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT IV**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(12A Okla. Stat. Ann. § 2-314)**

2063. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2064. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2065. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to 12A OKLA. STAT. ANN. § 2-314.

2066. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2067. Plaintiffs have had sufficient dealings with either Ford or their agents (dealerships) to establish privity of contract between Plaintiffs.   Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.   The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.   Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

2068. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
## REVOCATION OF ACCEPTANCE
### (12A Okla. Stat. Ann. § 2-608)

2069.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2070.  Plaintiffs identified above demanded revocation and the demands were refused.

2071.  Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2072.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2073.  There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2074.  When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2075.  Plaintiffs  would  suffer  economic  hardship  if  they  returned  their

vehicles but did not receive the return of all payments made by them.  Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2076. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.  In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.  Plaintiffs hereby demand revocation and tender their Vehicles.

2077. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.  Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2078. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in 12A OKLA. STAT. ANN. § 2-608, for a revocation of acceptance of the goods, and for a return to

Plaintiffs of the purchase or lease price of all vehicles currently owned.

2079.  Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Oklahoma Law)

2080.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2081.  To the extent Ford's repair commitment is deemed not to be a warranty under Oklahoma's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2082.  Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2083. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VII
## FRAUD BY CONCEALMENT
### (Based on Oklahoma Law)

2084. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2085. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

2086. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2087. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2088. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2089. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2090. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2091.  As a result of the concealment and/or suppression of the facts, Plaintiffs

722

sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages,

include the difference between the actual value of that which Plaintiffs paid and the

actual value of that which they received, together with additional damages arising

from the sales transaction, amounts expended in reliance upon the fraud,

compensation for loss of use and enjoyment of the property, and/or lost profits.   For

those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to

restitution and consequential damages.

2092. Ford's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(Based on Oklahoma Law)**

2093. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2094. Ford had knowledge of the safety defects in its vehicles, which it failed

to disclose to Plaintiffs.

2095. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

2096. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2097. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**OREGON
COUNT I
VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES
ACT
(Or. Rev. Stat. §§ 646.605, *et seq.*)**

2098. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

724

2099. The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; and (i) Advertis[ing] … goods or services with intent not to provide them as advertised."   OR. REV. STAT. § 646.608(1).

2100. Ford is a person within the meaning of OR. REV. STAT. § 646.605(4).

2101. The Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

2102. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; and advertising Vehicles with the intent not to sell them as advertised.   Ford knew or should have known that its conduct violated the OUTPA.

2103. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

2104. Ford engaged in a deceptive trade practice when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale.   Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

2105. The propensity of the Fusions to manifest the Transmission Defects was material to Plaintiffs.   Had Plaintiffs known that their Fords had these serious safety defects, they would not have purchased or leased their Fords.

2106. Plaintiffs suffered ascertainable loss caused by Ford's failure to disclose material information.   Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.   The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

2107. Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).   Plaintiffs are also entitled to punitive damages because Ford engaged in conduct amounting to a particularly aggravated,

726

deliberate disregard of the rights of others.

2108. Pursuant to OR. REV. STAT. § 646.638(2), Plaintiffs will mail a copy of the complaint to Oregon's attorney general.

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(Or. Rev. Stat. § 72.3140)**

2109. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2110. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2111. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

2112. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2113. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT III
## REVOCATION OF ACCEPTANCE
### (Or. Rev. Stat. § 72.6080)

2114. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2115. Plaintiffs identified above demanded revocation and the demands were refused.

2116. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2117. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2118. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2119. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2120. Plaintiffs would suffer economic hardship if they returned their

vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2121. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

2122. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2123. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in OR. REV. STAT. § 72.6080, for a revocation of acceptance of the goods, and for a return to Plaintiffs

of the purchase or lease price of all vehicles currently owned.

2124.  Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT IV
## FRAUD BY CONCEALMENT
### (Based on Oregon Law)

2125.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2126.  As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

2127.  Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling

730

of a half-truth calculated to deceive is fraud.

2128. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2129. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2130. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2131. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2132.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

2133. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Oregon Law)

2134. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

732

2135. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2136. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

2137. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2138. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

## PENNSYLVANIA
## COUNT I
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 P.S. § 201-1, *et seq.*)

2139. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2140. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

2141. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2142. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

2143. Plaintiffs suffered ascertainable loss as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2144. Ford's conduct proximately caused the injuries to Plaintiffs.

2145. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## (13 Pa. Cons. Stat. Ann. § 2313)

2146. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2147. Ford is and was at all relevant times a seller with respect to motor vehicles.

2148. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2149. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2150. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2151. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined

735

in Section IV.A., of the MCC.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

2152. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2153. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2154. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2155. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2156. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2157. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in 13 PA. CONS. STAT. § 2608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2158. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (13 Pa. Cons. Stat. Ann. § 2314)

2159.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2160.  Ford is and was at all relevant times a merchant with respect to motor vehicles.

2161.  A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

2162.  These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2163.  As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT
## (Based on Pennsylvania Law)

2164.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2165. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2166. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

2167. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2168. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**COUNT V**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based on Pennsylvania Law)**

2169. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

739

though herein fully restated and re-alleged.

2170.  To the extent Ford's repair commitment is deemed not to be a warranty under Pennsylvania's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2171.  Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2172.  As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**SOUTH CAROLINA**
**COUNT I**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(S.C. Code § 36-2-314)**

2173.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2174. Ford is and was at all relevant times a merchant with respect to motor vehicles under S.C. CODE § 36-2-314 .

2175. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to S.C. CODE § 36-2-314.

2176. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2177. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT II
## UNJUST ENRICHMENT
### (Based on South Carolina Law)

2178. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2179. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same,

Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2180. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2181. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

### COUNT III
### VIOLATIONS OF THE SOUTH CAROLINA
### UNFAIR TRADE PRACTICES ACT
### (S.C. Code Ann. § 39-5-10, *et seq.*)

2182. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2183. Ford is a "person" under S.C. CODE ANN. § 39-5-10.

2184. Ford participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. CODE ANN. § 39-5-10, *et seq.*, as described above and below.  Ford is directly liable for these

violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2185. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in unfair or deceptive practices prohibited by the Act, S.C. CODE ANN. § 39-5-10, *et seq.*, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

2186. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2187. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

2188. Ford owed Plaintiffs a duty to disclose the defective nature of Vehicles, including the dangerous risk of transmission failure, the Transmission Defects, and the lack of adequate fail-safe mechanisms, because they:

2189. Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

2190. Intentionally concealed the hazardous situation with Vehicles through their deceptive marketing campaign and recall program that they designed to hide the dangerous transmission problems from Plaintiffs; and/or

2191. Made incomplete representations about the safety and reliability of Fusions generally, and their transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2192. Vehicles equipped with defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists,

pedestrians, and the public at large, because they are susceptible to manifestations of the Transmission Defects.

2193. Ford's unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

2194. As a result of its violations of the Act detailed above, Ford caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.   The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

2195. Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs as well as to the general public.

2196. Pursuant to S.C. CODE ANN. § 39-5-140, Plaintiffs seek monetary relief against Ford to recover for their sustained losses.

2197. Plaintiffs further allege that Ford's malicious and deliberate conduct warrants an assessment of punitive damages because Ford carried out despicable

conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Ford's intentionally and willfully misrepresented the safety and reliability of Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Vehicles they repeatedly promised Plaintiffs were safe. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

2198. The recalls and repairs instituted by Ford have not been adequate. Ford Vehicles still are defective and dangerous.

2199. Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

## COUNT IV
## VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT
### (S.C. Code Ann. § 56-15-10, *et seq.*)

2200. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2201. Ford is a "manufacturer" as set forth in S.C. CODE ANN. § 56-15-10, as

they are engaged in the business of manufacturing or assembling new and unused motor vehicles.

2202. Ford participated in unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. CODE ANN. § 56-15-30.   Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2203. Ford has engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs and to the public.   Ford has directly participated in the wrongful conduct.

2204. Ford's bad faith and unconscionable actions include, but are not limited to:   (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and

(5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

2205. Ford has resorted to and used false and misleading advertisement in connection with their business.  As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading.   Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2206. Plaintiffs are entitled to double the actual damages, the cost of the suit, attorney's fees pursuant to S.C. CODE ANN. § 56-15-110, and   Plaintiffs also seek injunctive relief under S.C. CODE ANN. § 56-15-110.   Plaintiffs also seek treble damages because Ford has acted maliciously.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on South Carolina Law)

2207. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2208. To the extent Ford's repair commitment is deemed not to be a warranty under South Carolina's Commercial Code, Plaintiffs plead in the alternative under

748

common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2209. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2210. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## SOUTH DAKOTA
## COUNT I
## BREACH OF EXPRESS WARRANTY
### (S.D. Codified Laws § 57A-2-313)

2211. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2212. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2213. Under S.D. CODIFIED LAWS § 57A-2-318, Plaintiffs have the same

749

standing as any direct purchaser of a vehicle from Ford.

2214.  In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2215.  Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2216.  In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2217.  These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

2218.  These additional warranties were also breached because the Vehicles

750

were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2219. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2220. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2221. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2222. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential

damages have already been suffered due to Ford's fraudulent conduct as alleged

herein. and due to their failure to provide such limited remedy within a reasonable

time, and placing any limitation on Plaintiffs' remedies would render them

insufficient to make Plaintiffs whole.

2223.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs

assert as an additional and/or alternative remedy, as set forth in S.D. CODIFIED LAWS

§ 57A-2-608, for a revocation of acceptance of the goods, and for a return to

Plaintiffs of the purchase or lease price of all vehicles currently owned.

2224.  As a direct and proximate result of Ford's breach of express warranties,

Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (S.D. Codified Laws § 57A-2-314)

2225.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2226.  Ford is and was at all relevant times a merchant with respect to motor

vehicles.

2227.  A warranty that the Vehicles were merchantable is implied by law in

752

the instant transactions.

2228. Under S.D. CODIFIED LAWS § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Ford.

2229. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2230. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(Based on South Dakota Law)**

2231. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2232. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2233. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same,

Ford charged a higher price for their vehicles than the vehicles' true value and Ford received such higher price as a benefit.

2234. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford knew that it had received such higher price as benefit.

2235. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford was able to charge a higher price for their vehicles than the vehicles' true value, and the benefit it received as a result unjustly enriches Ford unless and until such benefit is reimbursed to Plaintiff.

2236. No justification exists for Ford to keep such benefit without reimbursing it to Plaintiffs.

**COUNT IV**
**VIOLATION OF THE SOUTH DAKOTA**
**DECEPTIVE TRADE PRACTICES ACT**
**(S.D. Codified Laws § 37-24-6)**

2237. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2238. The conduct of Ford as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions which Ford failed to adequately investigate, disclose and remedy, and Ford's misrepresentations and omissions regarding the safety and reliability of its vehicles.

2239. Plaintiffs were injured as a result of Defendant's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2240. Ford's conduct proximately caused the injuries to Plaintiffs.

2241. Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs are entitled to a recovery of their actual damages suffered as a result of Ford's acts and practices.

## COUNT V
## REVOCATION OF ACCEPTANCE
### (S.D. Codified Laws § 57A-2-608)

2242. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2243. Plaintiffs identified above demanded revocation and the demands were refused.

2244. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2245.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2246. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2247. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2248. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2249. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their

vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

2250. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2251. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2252. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on South Dakota Law)

2253. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2254. To the extent Ford's repair commitment is deemed not to be a warranty under South Dakota's Codified Laws, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2255. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2256. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**TENNESSEE**
**COUNT I**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
**(Tenn. Code Ann. § 47-18-101, *et seq*.)**

2257. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2258. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

2259. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

2260. Through these misleading and deceptive statements and false promises, Ford violated the Tennessee Consumer Protection Act.

2261. The Tennessee Consumer Protection Act applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Tennessee and affected Plaintiffs.

2262. Ford also failed to advise the NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

2263. Plaintiffs relied on Ford's silence as to known defects in connection

759

with their decision regarding the purchase, lease and/or use of the Vehicles.

2264. As a direct and proximate result of Ford's deceptive conduct and violation of the Tennessee Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## FRAUDULENT MISREPRESENTATION &
## FRAUDULENT CONCEALMENT
### (Based on Tennessee Law)

2265. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2266. As described above, Ford made material omissions and affirmative misrepresentations regarding the Vehicles.

2267. Ford knew these representations were false when made.

2268. The vehicles purchased or leased by Plaintiffs were, in fact, defective, unsafe and unreliable, because the vehicles were subject to sudden manifestations of the Transmission Defects.

2269. Ford had a duty to disclose that these vehicles were defective, unsafe

760

and unreliable because Plaintiffs relied on Ford's representations that the Vehicles they were purchasing were safe and free from defects.

2270. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

2271. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the defective transmissions and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

2272. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

2273. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(Tenn. Code Ann. § 47-2-313)**

2274. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2275. Ford is and at all relevant times was a "seller" as defined by TENN. CODE ANN. § 47-2-103.

2276. Ford expressly affirmed – through uniform statements, marketing materials, and advertisements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely. These affirmations became part of the basis of the bargain.

2277. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

2278. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

2279. Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased or leased their vehicles from Ford.

2280. Plaintiffs are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair,

in addition to any costs associated with purchasing or leasing safer vehicles, incidental and consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Tenn. Code Ann. § 47-2-314)**

2281. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2282. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

2283. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased, including, but not limited to the Transmission Defects.

2284. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their

763

bargain and the vehicles have suffered a diminution in value.

2285. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Tennessee Law)

2286. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2287. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

2288. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

2289. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

2290. As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

2291. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## TEXAS
## COUNT I
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

2292. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2293. Ford's above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Texas Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, *et seq.* ("Texas DTPA").

2294. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in deceptive business practices prohibited by the Texas DTPA, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles

with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) failing to disclose information concerning Vehicles with the intent to induce consumers to purchase or lease the Vehicles.

2295. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2296. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

2297. In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect of the safety and reliability of the vehicles. Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously manifest the Transmission Defects. Had Plaintiffs known this they would not have purchased or leased their Vehicles and/or paid as much for them.

2298. Ford also breached express and implied warranties to Plaintiffs, as set out above, and are, therefore liable to Plaintiffs for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA.    Ford's actions also constitute an unconscionable action or course of action under § 17.50(a)(3) of the Texas DTPA.

2299. Plaintiffs sustained damages as a result of Ford unlawful acts and are, therefore, entitled to damages and other relief provided for under § 17.50(b) of the Texas DTPA.    Because Ford's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

2300. For those Plaintiffs who wish to rescind their purchases, they are entitled under § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

2301. Plaintiffs also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Tex. Bus. & Com. Code § 2.313)

2302. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

767

though herein fully restated and re-alleged.

2303. Ford is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

2304. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2305. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2306. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities as set forth above.

2307. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the

768

basis of the bargain between the parties.

2308. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2309. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2310. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2311. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.   Under

these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2312. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2313. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in TEX. BUS. & COM. CODE § 2.711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under  TEX. BUS & COM. CODE §§ 2.711 and 2.608.

2314. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Tex. Bus. & Com. Code § 2.314)

2315. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2316. Ford is and was at all relevant times a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

2317. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to TEX. BUS. & COM. CODE § 2.314.

2318. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2319. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT IV**
**REVOCATION OF ACCEPTANCE**
**(Tex. Bus. & Com. Code § 2.608)**

2320. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2321. Plaintiffs identified above demanded revocation and the demands were refused.

2322. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2323. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2324. There has been no substantial change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2325. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2326. Plaintiffs would suffer economic hardship if they returned their

vehicles but did not receive the return of all payments made by them.    Because Ford
is refusing to acknowledge any revocation of acceptance and return immediately any
payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2327. Plaintiffs provided notice of their intent to seek revocation of
acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking
such relief.    In addition, Plaintiffs have requested that Ford accept return of their
vehicles and return all payments made.    Plaintiffs hereby demand revocation and
tender their Vehicles.

2328. Plaintiffs would suffer economic hardship if they returned their
vehicles but did not receive the return of all payments made by them.    Because Ford
is refusing to acknowledge any revocation of acceptance and return immediately any
payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as
they must continue using them due to the financial burden of securing alternative
means of transport for an uncertain and substantial period of time.

2329. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs
assert as an additional and/or alternative remedy, as set forth in TEX. BUS. & COM.
CODE § 2.711, for a revocation of acceptance of the goods, and for a return to

Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under TEX. BUS. & COM. CODE § 2.711.

2330. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Texas Law)

2331. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2332. To the extent Ford's repair commitment is deemed not to be a warranty under the Texas Business and Commerce Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

774

2333. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2334. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Texas Law)

2335. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2336. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

2337. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify

those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2338. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2339. Ford was deliberately silent and actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2340. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2341. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

Plaintiffs' actions were reasonable and justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2342.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

2343. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Based on Texas Law)**

2344. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2345. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2346. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable, unjust, and unconscionable for Ford to retain these wrongfully obtained profits.

2347. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## UTAH
## COUNT I
## BREACH OF EXPRESS WARRANTY
### (Utah Code Ann. § 70A-2-313)

2348. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2349. Ford is and was at all relevant times a merchant as defined by the

Uniform Commercial Code.

2350. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2351. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2352. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2353. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

2354. These additional warranties were also breached because the Vehicles

779

were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2355.  Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2356.  Accordingly,  recovery  by  Plaintiffs  is  not  limited  to  the  limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2357.  Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2358.  Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential

damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2359.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in U.C.A. § 70A-2-608 for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of their Vehicles.

2360.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (Utah Code Ann. § 70A-2-314)

2361.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2362.  Ford is and was at all relevant times a merchant with respect to motor vehicles.

2363.  A warranty that the Vehicles were in merchantable condition was

781

implied by law in the instant transactions.

2364. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2365. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**REVOCATION OF ACCEPTANCE**
**(Utah Code Ann. § 70A-2-608)**

2366. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2367. Plaintiffs identified above demanded revocation and the demands were refused.

2368. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2369. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2370. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2371. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2372. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2373. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

2374. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford

is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2375.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in U.C.A § 70A-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2376.  Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT IV**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based on Utah Law)**

2377.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2378.  To the extent Ford's repair commitment is deemed not to be a warranty

784

under the Utah Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2379. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2380. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Utah Law)

2381. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2382. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies

which rightfully belong to Plaintiffs.

2383. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2384. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## VIRGINIA
## COUNT I
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTIONS
### (Va. Code § 59.1-196 *et seq*.)

2385. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2386. Plaintiffs are or were at all relevant times "persons" within the meaning of Virginia Consumer Protection Act ("Virginia CPA") for all purposes therein.

2387. Ford is and was at all relevant times a "person" within the meaning of the Virginia CPA for all purposes therein.

2388. Ford is and was at all relevant times a "supplier" under § 59.1-198 of the Virginia CPA.

2389. Ford participated in deceptive acts or practices that violated the Virginia CPA, as described above and below. Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2390. Ford engaged in deceptive acts or practices prohibited by the Virginia CPA, including among others (1) representing that Vehicles have characteristics, uses, and benefits that they do not have and (2) representing that Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2391. Ford knew or had reason to know that its representations were false. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended

787

use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having duty to do so.

2392. Ford engaged in further deceptive acts or practices prohibited by the Virginia CPA by willfully failing to disclose or willfully concealing, suppressing or omitting material facts about Vehicles. Specifically, Ford failed to disclose and actively concealed the dangerous risk of transmission failure in Fusions equipped with 6F35 and CVT transmissions. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

2393. Ford's acts or practices alleged herein are unconscionable because among other reasons, Ford knew or had reason to know they had made misleading statements of fact and opinion on which Plaintiffs were likely to rely to their detriment.

2394. Ford's deceptive and unconscionable acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true

788

safety and reliability of Vehicles as a result of Ford's violations of the Virginia CPA.

2395. Plaintiffs suffered loss as a result of Ford's violations of the Virginia CPA detailed above. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe. The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

2396. Pursuant to § 59.1-204 of the Virginia CPA, Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs and treble damages.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Va. Code § 8.2-313)

2397. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2398. Ford is and was at all relevant time a "merchant" with respect to motor vehicles under VA. CODE § 8.2-104.

2399. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2400. Ford breached the express warranty to repair to correct defects in material and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2401. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities as set forth above.

2402. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, inter alia, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

2403. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the

warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2404. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2405. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2406. Also, as alleged in more detailed herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these circumstances, any limitations whatsoever

791

precluding the recovery of incidental and/or consequential damages are unenforceable.

2407. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2408. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs asserts as an additional and/or alternative remedy, as set forth in VA. CODE § 8.2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under VA. CODE §§ 8.2-711 and 8.2-608.

2409. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**

792

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Va. Code § 8.2-314)

2410. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as through herein fully restated and re-alleged.

2411. Plaintiffs are or were at all relevant times "natural persons" within the meaning of VA. CODE § 8.2-318.

2412. Ford is and was at all relevant times a merchant with respect to motor vehicles under VA. CODE § 8.2-104.

2413. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to VA. CODE § 8.2-314.

2414. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2415. Privity is not required because the Vehicles are inherently dangerous.

2416. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE
### (Va. Code § 8.2-608)

2417. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2418. Plaintiffs identified above demanded revocation and the demands were refused.

2419. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles. On the other hand, Ford was aware of the defects and nonconformities at the time of sale/lease and thereafter.

2420. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2421. There has been no change in the condition of Plaintiffs' Vehicles not caused by the defects and nonconformities.

2422. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

794

2423. Plaintiffs would suffer economic hardship if they returned their Vehicles but did not received the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2424. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief. In addition, Plaintiffs have requested that Ford accept return of their Vehicles and return all payments made. Plaintiffs hereby demand revocation and tender their Vehicles.

2425. Plaintiffs would suffer economic hardship if they return their Vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2426. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in VA. CODE § 8.2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under VA. CODE § 8.2-711.

2427. To the extent such allegations are necessary, Plaintiffs allege that authorized Ford dealers from whom Plaintiffs purchased or leased defective vehicles acted as the agents of Ford. Plaintiffs further allege, to the extent such allegations are necessary, that Ford's warranties failed of their essential purpose. Plaintiffs further allege, to the extent such allegations are necessary, that Ford's warranty and the purchase contracts for Vehicles were received by Plaintiffs as a single agreement.

2428. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT V**

796

## NEGLIGENCE
## (Based on Virginia Law)

2429. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2430. Plaintiffs are or were at all relevant times the owners or lessees of Ford vehicles that were manufactured, assembled, designed, distributed and otherwise placed in the stream of commerce by Ford.

2431. Ford had a duty to manufacture a product which would be safe for its intended and foreseeable uses and users, including the use to which it was put by Plaintiffs. Ford breached its duty to Plaintiffs because it was negligent in the design, development, manufacture, and testing of the Vehicles.

2432. Ford was negligent in its design, development, manufacture, and testing of the Vehicles because it knew, or in the exercise of reasonable care should have known, that they were prone to sudden and dangerous manifestations of the Transmission Defects.

2433. Ford negligently failed to adequately warn and instruct Plaintiffs of the defective nature of the Vehicles, of the high degree of risk attendant to using them, given that Plaintiffs would be ignorant of the said defects.

797

2434. Ford further breached its duties to Plaintiffs by supplying Vehicles directly and/r through a third person to be used by such foreseeable persons such as Plaintiffs when:

      a.      Ford knew or had reason to know, that the Vehicles were dangerous or were likely to be dangerous for the use for which they were supplied; and

      b.      Ford failed to exercise reasonable care to inform customers of the dangerous condition, or of the facts under which the Vehicles are likely to be dangerous.

2435. As a result of Ford's negligence, Plaintiffs suffered damages.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Virginia Law)

2436. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2437. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of its vehicles that in equity and good conscience should be disclosed.

798

2438. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2439. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2440. Ford actively and knowingly concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase

the Vehicles at a higher price for the vehicles, which did not match the Vehicles' true value.

2441. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2442. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2443. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. Plaintiffs reserve their right to elect either to (a) rescind their purchase or lease of the Vehicles and obtain restitution or (b) affirm their purchase or lease of the Vehicles and recover damages.

2444. Ford's conduct warrants an assessment of exemplary damages in an amount which is equal to the amount of the actual damages awarded to Plaintiffs.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Based on Virginia Law)**

2445. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2446. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2447. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

2448. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2449. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**WASHINGTON**
**COUNT I**
**VIOLATION OF THE CONSUMER PROTECTION ACT**
**(Rev. Code Wash. Ann. §§ 19.86.010, *et seq*.)**

2450. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2451. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

2452. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2453. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

2454. Plaintiffs were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2455. Ford's conduct proximately caused the injuries to Plaintiffs.

2456. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

2457. Pursuant to WASH. REV. CODE. ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Rev. Code Wash. § 62A.2-313)

2458. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2459. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2460. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2461. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2462. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2463. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

2464. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2465. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2466. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2467. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2468. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them

insufficient to make Plaintiffs whole.

2469.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in REV. CODE WASH. § 62A.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2470.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (Rev. Code Wash. § 62A.2-614)

2471. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2472. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2473.  A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

2474. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used.   Specifically, the Vehicles are inherently defective in that manifestations of

the Transmission Defects may occur suddenly and without warning in traffic.

2475. Privity is not required in this case because Plaintiffs are intended

third-party beneficiaries of contracts between Ford and its dealers; specifically, they

are the intended beneficiaries of Ford's implied warranties.   The dealers were not

intended to be the ultimate consumers of the Vehicles and have no rights under the

warranty agreements provided with the Vehicles; the warranty agreements were

designed for and intended to benefit the ultimate consumers only.

2476. As a direct and proximate result of Ford's breach of the warranties of

merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT IV**
**REVOCATION OF ACCEPTANCE**
**(Rev. Code Wash. § 62A.2-608)**

2477. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2478. Plaintiffs identified above demanded revocation and the demands were

refused.

2479. Plaintiffs had no knowledge of such defects and nonconformities, were

807

unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2480.  Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2481.  There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2482.  When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2483.  Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2484.  Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and

tender their Vehicles.

2485. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2486.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in REV. CODE WASH. § 62A.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2487. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Washington Law)

2488. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2489.  To the extent Ford's repair commitment is deemed not to be a warranty under Washington's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2490. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2491. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT VI
### FRAUD BY CONCEALMENT
### (Based on Washington Law)

2492. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2493. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

2494. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2495. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2496. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2497. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.   For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud,

compensation for loss of use and enjoyment of the property, and/or lost profits.   For

those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to

restitution and consequential damages.

2498. Ford's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Ford. Ford's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Based on Washington Law)**

2499. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as

though herein fully restated and re-alleged.

2500. Ford had knowledge of the safety defects in its vehicles, which it failed

to disclose to Plaintiffs.

2501. As a result of its wrongful and fraudulent acts and omissions, as set

forth above, regarding the Transmission Defects and Ford's concealment of same,

Ford charged a higher price for their vehicles than the vehicles' true value and Ford

812

obtained monies which rightfully belong to Plaintiffs.

2502. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2503. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

## WEST VIRGINIA
## COUNT I
## VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT
### (W. Va. Code § 46A-1-101, *et seq.*)

2504. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2505. Ford is a "person" under W.VA. CODE § 46A-1-102(31).

2506. Plaintiffs are "consumers," as defined by W.VA. CODE §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Vehicles.

2507. Ford participated in unfair or deceptive acts or practices that violated

813

the Consumer Credit and Protection Act ("CCPA"), W. V<small>A</small>. C<small>ODE</small> § 46A-1-101, *et seq.* as described above and below. Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2508. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in deceptive business practices prohibited by the CCPA, W. V<small>A</small>. C<small>ODE</small> § 46A-1-101, *et seq.*, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

2509. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and

representations as a whole.

2510. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

2511. Ford owed Plaintiffs a duty to disclose the defective nature of Vehicles, including the dangerous risk of transmission failure and sudden manifestation of the Transmission Defects while in operation because Ford:

  a. Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

  b. Intentionally concealed the hazardous situation with Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiffs; and/or

  c. Made incomplete representations about the safety and reliability of Fusions generally, and Fusion transmissions in particular, while

purposefully withholding material facts from Plaintiffs that
contradicted these representations.

2512. Ford's unfair or deceptive acts or practices were likely to deceive
reasonable consumers, including Plaintiffs, about the true safety and reliability of
Vehicles.

2513. Ford has also engaged in business acts or practices that are unlawful
because they violate the National Traffic and Motor Vehicle Safety Act of 1996 (the
"Safety Act"), codified at 49 U.S.C. § 30101, *et seq*., and its regulations.

2514. Ford violated 49 U.S.C. § 3-112(a)(1) by manufacturing for sale,
selling, offering for introduction in interstate commerce, or importing into the
United States, Vehicles equipped with defective transmissions that failed to comply
with applicable FMVSS.

2515. Ford violated 49 U.S.C. § 30115(a) by certifying that Vehicles
equipped with defective transmissions complied with applicable FMVSS when, in
the exercise of reasonable care, Ford had reason to know that the certification was
false or misleading because the defective Fusion transmissions led to manifestations
of the Transmission Defects and created attendant safety risks when the Vehicles

were in operation.

2516. As a result of its violations of the CCPA detailed above, Ford caused ascertainable loss to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.

2517. Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the CCPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

2518. Pursuant to W. VA. CODE § 46A-6-106, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the CCPA for each Plaintiff.

2519. Plaintiffs also seek punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Ford intentionally and willfully misrepresented the safety and reliability of Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it

knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Vehicles it repeatedly promised Plaintiffs were safe. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

2520. The recalls and repairs instituted by Ford have not been adequate. Ford Vehicles still are defective and dangerous.

2521. Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. VA. CODE § 46A-5-101, *et seq.*, and any other just and proper relief available under the CCPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (W. Va. Code § 46-2-313)

2522. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2523. Ford is and was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-313, and is also a "merchant" as the term is used in W. VA. CODE § 46A-6-107.

2524. In the course of selling its vehicles, Ford expressly warranted in writing

that the Vehicles were covered by a Warranty.

2525. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2526. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2527. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

2528. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale,

and has not provided since then, vehicles conforming to these express warranties.

2529. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2530. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2531. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2532. Additionally, the enforcement under these circumstances of any limitations on the recovery of incidental and/or consequential damages, or indeed

any limitations whatsoever on any express warranty, is unenforceable pursuant to W. Va. Code § 46A-6-107(a)(2).

2533. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2534. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in W. Va. Code § 46A-6A-4, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under W. Va. Code § 46A-6A-1, *et seq*.

2535. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(W. Va. Code § 46-2-314)**

2536. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2537. Ford is and was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-314, and is also a "merchant" as the term is used in W. VA. CODE § 46A-6-107 and § 46-2-314.

2538. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to W. VA. CODE § 46-2-314.

2539. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2540. Plaintiffs have had sufficient direct dealings with either Ford or their agents (dealerships) to establish privity of contract between Plaintiffs and Ford. Notwithstanding this, privity is not required in this case for Plaintiffs pursuant to W. VA. CODE § 46A-6-107.   Moreover, privity is not required as to any Plaintiff

because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate users or owners only.  Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

2541. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE/STATUTORY CLAIM
## FOR DIMINISHED VALUE
## (W. Va. Code § 46A-6A-1, *et seq.* and W. Va. Code § 46-2-608)

2542. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2543. Plaintiffs are "consumers," as defined by W.Va. Code §§ 46A-1-102(12), 46A-6-102(2) and 46A-6A-2 who purchased or leased one or more Vehicles.

2544. Ford is and was at all relevant times a "manufacturer" of motor vehicles under W. VA. CODE § 46A-6A-2.

2545. The warranties described in Count III, above, are "manufacturer's express warrant[ies]" under W. VA. CODE § 46A-6A-2.

2546. The Vehicles are "motor vehicles" under W. VA. CODE § 46A-6A-2.

2547. As set forth above, the defective vehicles do not conform to all applicable express warranties.

2548. Ford was provided notice of these nonconformities by numerous complaints filed against it, including earlier iterations of the instant complaint, and by numerous individual letters and communications sent by Plaintiffs before or within a reasonable amount of time after Ford issued a recall and/or the allegations of vehicle defects became public.

2549. Ford has been unable or unwilling to repair the Vehicles so as to conform to the Vehicles to its warranties.   Additionally, Ford has refused to replace the Vehicles with new motor vehicles which are not defective.

2550. Ford has had at least one opportunity to conform the Vehicles to the express warranties, but failed to do so.

2551. Pursuant to W. Va. Code § 46A-6A-4, Plaintiffs seek:  (a) revocation of acceptance and refund of the vehicle purchase price and all fees paid, (b) in the alternative to revocation of acceptance, damages for diminished value of the Vehicles, (c) damages in the amount of the cost to repair the vehicle so that it conforms to the warranties, (d) damages for loss of use and annoyance and inconvenience, and (e) attorney fees.

2552. As of the time of the filing of this pleading, Ford has been aware for approximately a year of the breach of warranty claims alleged by West Virginians who purchased or leased defective Fusions.   Nevertheless, Ford has never insisted, or even mentioned, in writing any "third party dispute resolution process" as contemplated by W. Va. Code § 46A-6A-8.   As such, under W. Va. Code § 46A-6A-8(b), even if any "qualified third party dispute resolution process" exists (which Plaintiffs deny), Plaintiffs have not received, and could not now receive, timely notice in writing of such a procedure, and they have no obligation to submit to such a procedure before bringing a claim pursuant to W. Va. Code § 46A-6A-4.

**COUNT V**
**UNJUST ENRICHMENT**
**(Based on West Virginia Law)**

2553. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2554. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2555. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2556. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY/BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### (Based on West Virginia Law)

2557. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2558. To the extent Ford's repair commitment is deemed not to be a warranty under West Virginia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2559. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2560. Moreover, all contracts in West Virginia carry with them an implied duty of good faith and fair dealing.   Ford breached that duty by failing to repair or replace the Vehicles evidencing the Transmission Defects, and in other ways.

2561. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**WISCONSIN**
**COUNT I**
**VIOLATIONS OF THE WISCONSIN**
**DECEPTIVE TRADE PRACTICES ACT**
**(Wisc. Stat. § 110.18)**

2562. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2563. Ford's above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Wisconsin Deceptive Trade Practices Act § 110.18 ("Wisconsin DTPA").

2564. By failing to disclose and misrepresenting the risk of the defective transmissions, Ford engaged in deceptive business practices prohibited by the Wisconsin DTPA,  including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has

not.

2565. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2566. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

2567. In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect of the safety and reliability of the vehicles. Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously exhibit the Transmission Defects. Had Plaintiffs known this they would not have purchased or leased their Vehicles and/or paid as much for them.

2568. Plaintiffs sustained damages as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 110.18(11)(b)(2) of the Wisconsin DTPA. Because Ford's conduct was committed knowingly

and/or intentionally, Plaintiffs are entitled to treble damages.

2569. Plaintiffs also seek court costs and attorneys' fees under § 110.18(11)(b)(2) of the Wisconsin DTPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Wisc. Stat. § 402.313)

2570. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2571. Ford is and was at all relevant times a merchant with respect to motor vehicles under WISC. STAT. § 402.104.

2572. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2573. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2574. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2575. These warranties are only a sampling of the numerous warranties that

Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

2576. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2577. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2578. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek

831

all remedies as allowed by law.

2579. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2580. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2581. Plaintiffs had sufficient direct dealings with Ford to establish privity of contract. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers;

specifically, they are the intended beneficiaries of Ford's warranties.   The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

2582.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in WISC. STAT. § 402.608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Wisc. Stat. §§ 402.711 and 402.608.

2583.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## REVOCATION OF ACCEPTANCE
### (Wisc. Stat § 402.608)

2584.  Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2585.  Plaintiffs identified above demanded revocation and their demands

were refused.

2586. Plaintiffs had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

2587. Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

2588. There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

2589. When Plaintiffs sought to revoke acceptance, Ford refused to accept return of the Vehicles and to refund Plaintiffs' purchase price and monies paid.

2590. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them.

2591. Plaintiffs provided notice of their intent to seek revocation of acceptance by filing an earlier lawsuit and earlier iterations of this complaint seeking

such relief.   In addition, Plaintiffs have requested that Ford accept return of their vehicles and return all payments made.   Plaintiffs hereby demand revocation and tender their Vehicles.

2592. Plaintiffs would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.   Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

2593. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in WISC. STAT.§ 402.711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under WISC. STAT. § 402.711.

2594. Consequently, Plaintiffs are entitled to revoke their acceptances, receive all payments made to Ford, and to all incidental and consequential damages,

including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Wisconsin Law)

2595. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2596. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Wisconsin, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2597. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2598. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental

and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Wisconsin Law)

2599. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2600. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

2601. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2602. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who have superior knowledge and access to the facts, and Ford knew they were not known to or

reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2603. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2604. Ford still have not made full and adequate disclosure and continue to defraud Plaintiffs.

2605. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.   Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2606. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.

2607. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to

enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Based on Wisconsin Law)**

2608. Plaintiffs incorporate herein by reference paragraphs 1 through 495 as though herein fully restated and re-alleged.

2609. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2610. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2611. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Honorable Court enter the following relief:

A.    A judgment against Ford and in favor of each Plaintiff on each count;

B.    Monetary relief as available on each count by law, including direct and consequential damages, actual damages, punitive damages, statutory damages, and other monetary relief due as established at trial;

C.    Equitable relief, including but not limited to, disgorgement and restitution of Ford's wrongful profits, revenues, and benefits, to the extent and in the amount deemed appropriate by the Court;

D.    Costs, attorney fees, pre- and post-judgment interest; and

E.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in the above-entitled cause.

Respectfully submitted,
STERN LAW, PLLC

840

BY:/s/ Kenneth A. Stern
KENNETH A. STERN (P30722)
41850 W. Eleven Mile Road, Suite 121
Novi, MI 48375-1857
(248) 347-7315
ken@sternlawonline.com

MARINO LAW, PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste 100E
Southfield, Michigan 48075
Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*

DATED: May 29, 2020

## **PROOF OF SERVICE**

The undersigned attorney certifies that, on May 29, 2020, she filed a copy of the foregoing document using the CM/ECF system, which will send notice of such filing to all attorneys of record.

/s/ *Amy L. Marino*
Amy L. Marino (P76998)
amy@marinopllc.com

841