## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON GANT, *et al*.,

    Plaintiffs,

v.

FORD MOTOR COMPANY,

    Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

_____

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

NOW COME Plaintiffs, Aaron Gant, *et al*. ("Plaintiffs"), by and through their counsel, Stern Law, PLLC, and Marino Law, PLLC, pursuant to Federal Rules of Civil Procedure 8, 9, and 12, respectfully submit this response in opposition to Defendant Ford Motor Company's ("Ford") motion to dismiss (ECF No. 42) the Second Amended Complaint (ECF No. 38) ("SAC") pursuant to Federal Rule of Civil Procedure 12(b).

Since October of 2019 concerning the initial complaint in this matter, Ford has been retreading the same tired arguments that consistently misinterpret and

misrepresent Plaintiffs' legal positions and factual allegations; thus, spilling significant ink contesting arguments that Plaintiffs do not make, as well as bypassing clear contextual statements and explanations. Moreover, Ford continues to focus on the length of the complaint as a default basis for dismissal, overstating the strictures of the shotgun pleading doctrine and ignoring the mass action nature of the case (i.e., the fact that there are hundreds of plaintiffs) necessitating an expansive factual universe.

As set forth herein, Plaintiffs' complaint is admittedly long, but it is necessarily so, as well as cogent, organized, and, most importantly, compliant with the pleading standards in federal court, such that it, as a matter of law, states causes of action under state and federal law for which relief can be granted. While Ford paints a picture of a sprawling, disordered action, it fails to recognize its own "kitchen sink" approach to contesting the SAC, which prioritizes questionably broad, sweeping statements of law over thorough analysis of the content of the SAC.

Accordingly, for the reasons set forth in the accompanying memorandum of law, Ford's motion to dismiss the SAC must be denied.

Respectfully submitted this 9th day of September, 2020.

STERN LAW, PLLC

/s/ Kenneth A. Stern
Kenneth A. Stern (P30722)

2

41850 W. Eleven Mile Road, Suite 121
Novi, Michigan 48375-1857
(248) 347-7315
ken@sternlawonline.com

MARK GRANZOTTO, P.C.
Mark Granzotto (P31492)
2684 Eleven Mile Road, Ste 100
Berkley, Michigan 48072
(248) 546-4649
mgranzotto@granzottolaw.com

MARINO LAW PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste 100E
Southfield, Michigan 48075
Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON GANT, *et al*.,

     Plaintiffs,

v.

FORD MOTOR COMPANY,

**SUPPORT OF**
     Defendant.

Case No. 2:19-cv-12533-SFC-DRG

Hon. Sean F. Cox

Magistrate Judge David R. Grand

**PLAINTIFFS' BRIEF IN**

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

_____
____

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………...………iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY………………...ix

COUNTERSTATEMENT OF ISSUES PRESENTED……………………………x

BRIEF IN OPPOSITION TO MOTION TO DISMISS……………………………1

    I.    Background…………………………………………………………...1

    II.   Introduction………………………………………………………...2

    III.  Legal Standards for Consideration of a Motion to Dismiss…………..3

    IV.  Legal Argument……………………………………………………5

         A. "Shotgun Pleading"……………………………………………5

            1. "Shotgun Pleadings" Do Not Necessarily Warrant Dismissal...5

            2. Ford Depends upon Inapplicable and Unreliable Legal

               Authority……………………………………………………8

         B. Most of the Claims Are Not Time-Barred Under Michigan

           Procedural Law………………………………………………9

            1. The warranty claims are not time-barred………………………9

         C. Plaintiffs plausibly plead facts supporting tolling………………10

         D. The express warranty claims are properly pled…………………13

         E. The implied warranty claims are properly pled…………………17

         F. The Magnuson-Moss Warranty Act claims remain valid………..31

         G. The revocation of acceptance claims are properly pled…………31

         H. The fraud and consumer protection claims are sufficiently pled...34

            1. Consumer protection claims are actionable…………………..34

            2. Fraud claims are sufficiently pled……………………………41

               a. Plaintiffs sufficiently pleaded the "who" and "what"…44

               b. Affirmative fraud claims are pled sufficiently………..48

               c. The economic loss doctrine does not bar these claims...50

         I. The unjust enrichment claims are properly pled…………………51

          J. The product liability-based claims (including negligence) and

           miscellaneous claims are properly pled…………………………54

    V.   Conclusion………………………………………………………..55

PROOF OF SERVICE……………………………………………………57

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. General Motors, LLC*,
  2013 WL 5670888 (C.D. Cal. Oct. 16, 2013) ....................................................40
*Anderson v. Dist. Bd. of Trustees of Cent. Fl. Cmty. Coll.*,
  77 F.3d 364 (11th Cir. 1996) ...................................................................................8
*Annunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) .................................................................21
*Arnold v. Dow Chemical Co.*,
  91 Cal. App. 4th 698 (2001) ..................................................................................22
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................10, 3
*Atlas Technologies, LLC v. Levine*,
  268 F. Supp. 3d 950 (E.D. Mich. 2017) ................................................................43
*Att'y Gen. v. Diamond Mortgage*,
  327 N.W.2d 805 (Mich. 1982) ...................................................................30, 31, 32
*Baker v. DEC Int'l*,
  458 Mich. 247 .........................................................................................................8
*Beck v. FCA US LLC*,
  273 F.Supp.3d 735 (E.D. Mich. 2017) ..................................................................38
*Bobb Forest Prods. v. Morbark Indus.*,
  783 N.E.2d 560 (Ohio Ct. App. 2002) ..................................................................24
*Cain v. Redbox Automated Retail, LLC*,
  981 F.Supp.2d 674 (E.D. Mich. 2013) ..................................................................45
*Cameron v. Seitz*,
  38 F.3d 264 (6th Cir. 1994) .....................................................................................4
*Cartwright v. Viking Indus., Inc.*,
  249 F.R.D. 351 (E.D. Cal. 2008) ..........................................................................22
*Cataldo v. U.S. Steel Corp.*,
  676 F.3d 542 (6th Cir. 2012) .................................................................................42
*Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs., Inc.*,
  444 So. 2d 1068 (Fla. Dist. Ct. App. 1984) ....................................................19, 20
*Chaffin v. Atlanta Coca Cola Bottling Co.*,
  194 S.E.2d 513 (Ga. Ct. App. 1972) .....................................................................19
*Chestnut v. Ford Motor Co.*,
  445 F.2d 967 (4th Cir.1971) ............................................................................17, 20
*Cholakyan v. Mercedes-Benz USA, LLC*,

796 F. Supp. 2d 1220 (C.D. Cal. 2011) .................................................................40
*Christelles v. Nissan Motor Corp., USA,*
    701 A.2d 1317 (N.J. Super. App. Div. 1997) .......................................................13
*Chrysler Corp. v. Wilson Plumbing Co.,*
    208 S.E.2d 321 (Ga. Ct. App. 1974)..............................................................18, 19
*Cline v. DaimlerChrysler Corp.,*
    115 P.3d 468 (Okla. Civ. App. 2005) ..................................................................13
*Coffey v. Foamex L.P.,*
    2 F.3d 157 (6th Cir. 1993) ...................................................................................36
*Colonial Dodge, Inc. v. Miller,*
    362 N.W.2d 704 (Mich. 1985) .............................................................................27
*Columbia Nat'l Res., Inc. v. Tatum,*
    58 F.3d 1101 (6th Cir. 1995) .................................................................................3
*Conley v. Gibson,*
    355 U.S. 41 (1957)..................................................................................................3
*Consol. Rail. Corp. v. Grand Trunk Western. R.R. Co.,*
    2009 WL 3460334 (E.D. Mich. Oct. 22, 2009)...................................................10
*Cooper v Pickett,*
    137 F3d 616 (9th Cir 1997) .................................................................................39
*Cyr v. Ford Motor Co.,*
    2019 W.L. 7206100 (Mich. Ct. App. December 26, 2019)...................................32
*Davis v. Forest River, Inc.,*
    774 N.W.2d 327 (Mich. 2009) .............................................................................27
*Davis v. LaFontaine Motors, Inc.,*
    719 N.W.2d 890 (Mich. App. 2006).....................................................................12
*Ebrahimi v. City of Huntsville Bd. of Educ.,*
    114 F.3d 162 (11th Cir. 1997) ...............................................................................5
*Eggl v. Letvin Equipment Co.,*
    632 N.W.2d 435 ...................................................................................................28
*Experian Marketing Solutions, Inc. v. Lehman,*
    2015 WL 5714541 (W.D. Mich. Sept. 29, 2015)...................................................8
*Feldman v Mercedes-Benz USA, LLC,* No. 2:11-CV-00984 WJM,
    2012 WL 659830 (D.N.J. Dec. 18, 2012) ............................................................40
*Flamenbuam v. Orient Lines, Inc.,*
    2004 WL 1773207 (S.D. Fla. 2004) ...........................................................10, 4, 5
*Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.,*
    2013 WL 4401437 (S.D. Cal. Aug. 15, 2013)......................................................40
*Gambrill v. Alfa Romeo, Inc.,*
    696 F. Supp. 1047 (E.D. Pa. 1998).......................................................................13
*General Motors Acceptance Corp. v. Anaya,*

103 N.M. 72, 703 P.2d 169 (N.M. 1985) ............................................................48

*Genetti v. Caterpillar, Inc.,*
621 N.W.2d 529 (Neb. 2001) ..............................................................................13

*Gigandet v. Third Nat. Bank of Nashville, Tennessee,*
333 So.2d 557 (Ala. 1976 ) ...............................................................................29

*Gilbert Fin. Corp. v. Steelform Contracting Co.,*
82 Cal. App. 3d 65 (1978) ..................................................................................22

*Greifenstein v. Estee Lauder Corp., Inc.,*
2013 WL 3874073 (N.D. Ill. Mar. 31, 2016) ....................................................43

*Griffith v. Stovall Tire & Marine, Inc.,*
329 S.E.2d 234 (Ga. App. 1985) ........................................................................28

*Grosse Pointe Law Firm, PC v. Jaguar Land Rover N Am, LLC,*
894 NW2d 700 (Mich. App. 2016)...................................................................9, 13

*Guaranteed Constr. Co. v. Gold Bond Products,*
395 N.W.2d 332 (Mich. App. 1986)...................................................................15

*Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.,*
209 Mich. App. 365, 532 N.W.2d 541 (1995) ...................................................44

*In re Auto. Parts Antitrust Litig.,*
2017 WL 7689654 (E.D. Mich. May 5, 2017) .................................................9, 10

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.,*
2019 WL 3000646 (C.D. Cal. May 22, 2019)....................................................12

*In re Ford Speed Control Deactivation Switch,*
2007 WL 2421480 (E.D. Mich. Aug. 24, 2007).............................................25, 26

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,* No. 05 C,
2009 WL 937256 (N.D. Ill. Apr. 6, 2009)......................................................42, 43

*In re Sony VAIO Computer Notebook Trackpad Litig.,*
2010 U.S. Dist. LEXIS 115142, at *3 (S.D. Cal. Oct. 28, 2010)......................22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
Prods. Liab. Litig.,*
754 F. Supp. 2d 1145 (C.D. Cal. 2010)..................................................21, 22, 23

*Integrated Title Data Systems v. Dulaney,*
800 S.W.2d 336 (Tex. App.-El Paso 1990).........................................................17

*JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC,*
997 F. Supp. 2d 710 (E.D. Mich. 2014) .............................................................44

*Jimmy Smith Racing Tires, Inc. v. Ashleman,*
2006 WL 2699127 (N.D. Ga. Sept. 19, 2006)......................................................4

*Jones v. City of Cincinnati,*
521 F.3d 555 (6th Cir. 2008) .........................................................................10, 3

*Kabco Equipment Specialists v. Budgetel, Inc.,*
440 N.E.2d 611 (Ohio App. 1981) .....................................................................28

*Kadiak Fisheries Co. v. Murphy Diesel Co.*,
  422 P.2d 496 (Wash. 1967) ................................................................24, 25
*Krupp PM Eng'g, Inc. v. Honeywell, Inc.*,
  530 N.W.2d 146 (Mich. App. Ct. 1995).............................................14, 15
*Liss v. Lewiston-Richards, Inc.*,
  732 N.W.2d 514 (Mich. 2007) ....................................................................31
*MacDonald v Ford Motor Co*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014)...........................................39, 40
*Mason v. Porsche Cars of N. Am., Inc.*,
  688 So.2d 361 (Fla. Dist. Ct. App. 1997)..............................................13
*Matanky v. General Motors*, L.L.C
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ........................................11, 45
*McKee v. General Motors L.L.C.*,
  376 F.Supp.3d 751 (E.D. Mich. 2019) ...........................................12, 13
*Mercedes-Benz of North America Inc. v. Norman Gershman's Things to Wear, Inc.*,
  596 A.2d 1358 (Del. Supr. 1991) .............................................................29
*Mertik v. Blalock*,
  983 F.2d 1353 (6th Cir. 1993) .....................................................................3
*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
  848 F.2d 674 (6th Cir. 1988) ...........................................................36, 37
*Miller v. Currie*,
  50 F.3d 373 (6th Cir. 1995) ..................................................................3, 4
*Miller v. Gen. Motors, LLC*,
  2018 WL 2740240 (E.D. Mich. June 7, 2018) ........................38, 40, 42
*Ordon v. Johnson*,
  77 N.W.2d 377 (Mich. 1956) ....................................................................46
*O'Shea v. Hatch*,
  640 P.2d 515 (N.M. App. 1982)...............................................................28
*Pelletier v. Zweifel*,
  921 F.2d 1465 (11th Cir. 1991) ..................................................................4
*Phelps v. Lengyel*,
  237 F.Supp.2d 829 (N.D. Ohio 2002) .......................................................9
*Republic Bank & Tr. Co. v. Bear Stearns Co.*,
  683 F.3d 239 (6th Cir. 2012) .....................................................................38
*Risner v. Regal Marine Indus.*,
  2013 U.S. Dist. LEXIS 58690, at *37 (S.D. Ohio Apr. 24, 2013) ......................18
*Saglioccolo v. Eagle Ins. Co.*,
  112 F.3d 226 (6th Cir. 1997) ......................................................................3
*Sanchez-Knutson v. Ford Motor Co.*,
  52 F. Supp. 3d 1223 (S.D. Fla. 2014)...........................................23, 24

*Sauers v. Tibbs*,
  363 N.E.2d 444 (Ill. App. 4 Dist. 1977) .................................................29
*Scheuer v. Rhodes*,
  416 U.S. 232 (1974)..................................................................................4
*Shoop v. DaimlerChrysler Corp.*,
  864 N.E.2d 785 (Ill. App. Ct. 2007) ................................................18, 20
*Smith v. Globe Life Ins. Co.*,
  597 N.W.2d 28 (Mich 1999) ...............................................................31, 32
*Sutton v. Community Health Systems, Inc.*,
  2017 WL 3611757 (E.D. Tenn. Aug. 22, 2017).................................10, 7
*T.D.S., Inc. v. Shelby Mut. Ins. Co.*,
  760 F.2d 1520 (11th Cir. 1985) ................................................................5
*Taylor v. Volvo N. Am. Corp.*,
  451 S.E.2d 618 (N.C. 1994) ...................................................................13
*Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*,
  96 F.3d 174 (6th Cir. 1996) ...............................................................45, 46
*Thornton v. State Farm Mut. Auto Ins. Co.*,
  2006 WL 3359448 (N.D. Ohio Nov. 17, 2006)........................................9
*Tkachik v. Mandeville*,
  790 N.W.2d 260 (Mich. 2010) ...........................................................44, 45
*Touchet Valley Grain Growers v. Opp & Seibold Gen. Constr.*,
  831 P.2d 724 (Wash. 1992) ................................................................24, 25
*U.S. Fid. & Guar. Co. v. Black*,
  313 N.W.2d 77 (Mich. 1981) .................................................................10
*U.S. Sec. Exch. Comm'n v. Kilpatrick*,
  2012 WL 4839868 (E.D. Mich. Oct. 11, 2012)..................................3, 4
*United States v. Layne*,
  192 F.3d 556 (6th Cir. 1999) .........................................17, 35, 44, 47
*United States v. Williams*,
  544 F.3d 683 (6th Cir. 2008) .........................................17, 35, 44, 47
*Van Hoven v. Buckles & Buckles, P.L.C.*,
  947 F.3d 889 (6th Cir. 2020) ..................................................................32
*VanderHoef v. Parker Bros Co.*,
  255 N.W. 449 (Mich. 1934) ....................................................................46
*Weiland v. Palm Beach County Sheriff's Office*
  792 F.3d 1313 (11th Cir. 2015) ................................................................7
*Welch v. Fitzgerald-Hicks Dodge, Inc.*,
  430 A.2d 144 (N.H. 1981) ......................................................................29
*Westlake v. Lucas*,
  537 F.2d 857 (6th Cir. 1976) ....................................................................3

*Wozniak v. Ford Motor Co.*,
  2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ...................................46, 47
*Wysocki v. Int'l Bus. Mack Corp.*,
  607 F.3d 1102 (6th Cir. 2010) .........................................................10, 3
*Yagman v. General Motors*,
  2014 WL 4177295 ....................................................................................40
*Young v. Donahoe*,
  2013 WL 5332109 (M.D. Tenn. Sept. 20, 2013) ...................................7
*Zaluski v. United Am. Healthcare Corp.*,
  527 F.3d 564 (6th Cir. 2008) ...........................................................3, 4

## **Statutes**

Cal. Com. Code § 2314............................................................21, 22
Mass. Gen. Laws Ann. ch. 93A, § 3 ...................................................33
MICH. COMP. LAWS § 440.2314(2) ......................................................15
MICH. COMP. LAWS § 440.2725(2) ........................................................8
MICH. COMP. LAWS § 445.902(1)(g)......................................................35
MICH. COMP. LAWS § 440.2608(1) ......................................................26
MICH. COMP. LAWS § 440.2714(2) ......................................................27
MICH. COMP. LAWS § 445.903(1) ........................................................35
MICH. COMP. LAWS § 445.904(1)(a)......................................................29
MICH. COMP. LAWS § 600.6013(8) ......................................................27
N.M. Stat. Ann. § 57-16-5(G)............................................................47
Neb. Rev. Stat. Ann. § 59-1617...........................................................33
NMSA 1978, §§  57-16-1 to 57-16-16 ................................................48
Ohio Rev. Code Ann. § 4165.04............................................................33
Okla. Stat. Ann. tit. 15, § 754 ......................................................33, 34
Tenn. Code Ann. § 47-18-111 .......................................................33, 34
U.C.C. § 2-607(3)(a) ....................................................................17, 28

## **Rules**

Fed. R. Civ. P. 8, 9, and 12 .................................................1, 2, 36, 37
Fed. R. Civ. P. 9(b) .................................................................. Passim
Fed. R. Civ. P. 12(b)(6).................................................................10, 3
Fed. R. Civ. P. 12(e)..........................................................................8

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility" as long as "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

*Attorney General v. Diamond Mortgage Co.*, 327 N.W.2d 805 (Mich. 1982) (to claim an exemption to the MCPA on the basis of §4(1)(a) of that Act, a defendant would have to demonstrate that a federal or state law or regulation "specifically authorize[s] the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act.")

*Davis v. Forest River, Inc.*, 774 N.W.2d 327 (Mich. 2009) (intent of UCC remedies is to allow the wronged buyer to be made whole. Thus, the Court concluded under Mich. Comp. Laws § 440.2714(2), where the usual "difference in value" damages would not suffice, "the plaintiff should be allowed to relinquish title.")

*McKee v. General Motors LLC*, 376 F.Supp.3d 751 (E.D. Mich. 2019) (in a breach of express warranty claim, a plaintiff may also properly plead a cause of action by pleading "abnormal characteristics of the vehicle related to materials or workmanship.")

## <u>COUNTERSTATEMENT OF ISSUES PRESENTED</u>

1.     <u>All Counts</u> – Pleading rules require complaints to be simple, concise, and direct, showing the claim which relief can be granted. The second amended complaint here does just that, organizing the 360 plaintiffs regarding their individual purchases of vehicles over the course of 10 years, across various states. This second amended complaint demonstrates superior organization and conciseness. All the claims alleged are under applicable laws and rely on the same facts regarding Ford's knowledge of the "Transmission Defects" and their attempts to fraudulently deceive customers into purchasing them. Should the Court deny the motion to dismiss the amended complaint? *Plaintiffs' Answer:* Yes.

2.     <u>All Counts as to Certain Plaintiffs</u> – There are 360 Plaintiffs that are not all governed by Michigan statutes of limitation. The jurisdictions for the claims of the Plaintiffs are unique to each claimant as set out in the second amended complaint. Moreover, those plaintiffs who are subject to Michigan's statutes of limitations do not aver breaches of express warranties, and, concerning implied warranties, Michigan law is clear that the statute of limitations only begins to run upon presentation of the defect. Moreover, concerning each matter where the statute of limitations may arise, the Plaintiffs alleged the specific rule and doctrine that tolled the statutes of limitations. Should the Court deny the motion to dismiss these claims where Plaintiffs have pled proper claims by their respective state laws? *Plaintiffs' Answer:* Yes.

3.     <u>Express Warranty Claims</u> – Plaintiffs' pled facts that support their express warranty claims because the transmissions did not meet the "essential purpose" that warranted the existence of the warranty. Ford is unable to repair, replace, or adjust these transmissions to make them acceptable and fit for their intended purpose. All Plaintiffs have pled these requirements and further discovery can address any specific individual claim. Should the Court deny the motion to dismiss regarding the express warranty claims? *Plaintiffs' Answer:* Yes.

4.     <u>Implied Warranty Claims</u> – Plaintiffs' pled facts supporting lack of merchantability, including the proper identification of a transmission defect, and also alleged timely notice to Ford where required. Moreover, where required, Plaintiffs satisfied vertical privity for their claims under the applicable states' laws. Should the Court deny the motion to dismiss regarding the implied warranty claims? *Plaintiffs' Answer:* Yes.

5.      <u>Revocation Claims</u> – Plaintiffs have properly pled claims for revocation of acceptance under various state laws because the Ford transmissions are nonconforming and impair the value of the vehicles to the plaintiffs. Ford is a proper manufacturer under these state laws and Plaintiffs' pleadings are sufficient notice of revocation of acceptance. Should the Court deny the motion to dismiss regarding the revocation claims as to all plaintiffs? *Plaintiffs' Answer:* Yes.

6.      <u>Fraud- and Consumer Protection-Based Claims</u> – In accordance with Rule 9(b) requiring particularity for allegations of fraudulent misrepresentation, Plaintiffs plead a simple, concise statement to allow Ford "fair notice" of the substance of Plaintiffs' claims. Moreover, Ford's conduct is prohibited by the variously-stated consumer protection acts for the sale of new and used vehicles. Plaintiffs plead sufficient facts to support their claims for violations of those acts. Should the Court deny the motion to dismiss regarding the fraud- and consumer protection-based claims as to all plaintiffs? *Plaintiffs' Answer:* Yes.

7.      <u>Unjust Enrichment Claims</u> – Plaintiffs' properly plead that Ford has profited and benefitted from the purchase and leasing of the subject vehicles when it knew that the transmissions were defective. Plaintiffs need not establish the elements for fraud to establish a claim for unjust enrichment. Unjust enrichment is a claim that stands on its own and is not barred by the economic-loss rule. Should the Court deny the motion to dismiss these claims as to all plaintiffs? *Plaintiffs' Answer:* Yes.

8.      <u>Miscellaneous New Product Liability and Other Claims</u> – Plaintiffs adequately plead sufficient facts showing common law and statutory liability, as well as dealer/franchise laws. The Plaintiffs adequately plead damages to their property in the form of the transmission defects and have pled sufficient facts to support a transmission defect in the vehicles at issue. Moreover, under the state product liability laws pled in the SAC, the claims are not barred by the economic-loss doctrine. Should the Court deny the motion to dismiss these claims as to all plaintiffs? *Plaintiffs' Answer:* Yes.

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

### I.  Background

In general, this lawsuit is a breach of warranty/fraud case based on defective transmissions that Ford installed in Fusion brand cars with model years between 2010 and 2017, inclusive. These transmissions were defectively designed and/or defectively manufactured, forced into a manufacturing effort to provide more options than transmission design constraints permitted, and they failed to operate as Ford represented to consumers relying upon said representations. Ford, however, continued to install these defective transmissions in Fusion cars, even though Ford knew of their defects, which were undisclosed to owners, lessees and prospective purchasers and lessees. Even worse, Ford repeatedly lied to consumers as to the reasons for the problems consumers experienced. As a result, consumers were and are stuck in unsafe Fusion autos with costly repairs and minimal resale value due to the widely discussed transmission defects, with used Fusion sticker prices indicating the market's awareness of the transmission defects alleged herein. Due to the defects in the transmissions, Ford's failure to remedy these problems, and Ford's fraud on consumers, Plaintiffs have been forced to join the ranks of tens of thousands of consumers who have sued Ford in courts nationwide for several years.

The causes of action arise out of the warranty obligations of Ford for Fusions purchased or leased by Plaintiffs and for which Ford issued a written warranty.

Plaintiffs also allege that Ford concealed from Plaintiffs known defects in the transmissions integrated into Plaintiffs' Fusions. The causes of action are all alleged under state law, in addition to a claim based upon violations of the Magnuson-Moss Warranty Act.

## II.   **Introduction**

Ford moves to dismiss the SAC for failure to state a claim as to all counts, as well as for alleged deficiencies in pleading under Federal Rules of Civil Procedure 8 and 9. In particular, Ford avers that the SAC constitutes an impermissible "shotgun pleading" warranting dismissal of all counts based upon form alone. Furthermore, Ford claims that Plaintiffs fail to plead all fraud counts with sufficient particularity, that Plaintiffs' warranty claims are barred by applicable statutes of limitations, that recovery under certain causes of action is barred by the "economic loss doctrine," that Plaintiffs do not plead sufficient facts to support revocation claims or that there is a defect in the transmissions altogether, that unjust enrichment claims are insufficiently pled as well as barred in these circumstances, and that there are no facts pled to support any causes of action for products liability.

For the reasons that follow, Ford's arguments are without merit. Plaintiffs' pleading, on its face, sets forth actionable, discernable claims for relief. While the pleadings in this matter are long, they are necessarily so due solely to the number of parties involved. And as the Plaintiffs hail from numerous jurisdictions, the causes

of action for each of these parties are averred in state-specific manners, detailing the particular laws on which each plaintiff relies, as well as framing the facts of each Plaintiff's case under the law of the state. Moreover, Plaintiffs specifically identify the fraud at issue and its underlying elements, as well as particularly plead the tolling of the limitations asserted for all warranty actions.

Finally, Ford's discussion of "mass misjoinder" in the motion to dismiss is only mentioned in passing in the introduction and has no place in the substantive arguments for dismissal. As a half-baked, incoherent plea for dismissal on grounds outside of the substance of the actual motion that disappears after the one page in the introduction, the court should rightfully ignore in order to address the facts actually placed before it.

## III.  <u>Legal Standards for Consideration of a Motion to Dismiss</u>

As the Sixth Circuit has repeatedly emphasized, "[o]n a Fed. R. Civ. P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir. 1993); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). "Dismissal under Fed. R. Civ. P. 12(b)(6) is warranted 'only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief.'" *U.S. Sec. Exch. Comm'n v.*

*Kilpatrick*, No. 12-12109, 2012 WL 4839868, *1 (E.D. Mich. Oct. 11, 2012) (quoting *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008)). *See also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (same). "A plaintiff must include in the complaint enough facts which 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Kilpatrick*, 2012 WL 4839868 at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2010)). Further, consideration of a motion to dismiss under Rule 12(b)(6) is confined strictly to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), and the facial sufficiency of the complaint is assessed without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mack Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

In applying this standard, "'[a] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.'" *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). As the United States Supreme Court has explained, "[the district court's] task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Miller*, 50 F.3d at 377 (quoting Scheuer).

In sum, "[i]t is not the function of the court to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)). "The court treats all well-pleaded allegations in the complaint as true." *Kilpatrick*, 2012 WL 4839868 at *1 (citing *Zaluski*, 527 F.3d at 570). Thus, in evaluating Defendant's Motion, the SAC's allegations must be viewed in the light most favorable to Plaintiffs, and inferences from those allegations also must be drawn strictly in Plaintiff's favor.

## IV. Legal Argument

### A. "Shotgun Pleading"

#### 1. *"Shotgun Pleadings" Do Not Necessarily Warrant Dismissal*

In the broadest meaning of the term, a "shotgun pleading" can include any pleading in which each count incorporates all of the factual allegations of the previous count. *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991). Arguably, Plaintiffs' complaint meets this inclusive definition.

Ford is mistaken, however, to imply that the presence of a "shotgun pleading" necessarily (or even typically) warrants dismissal. *See Jimmy Smith Racing Tires, Inc. v. Ashleman*, No. CIVA 1:05CV0970 JEC, 2006 WL 2699127 (N.D. Ga. Sept. 19, 2006). *See also Flamenbaum v. Orient Lines, Inc.*, No. 03–22549–CIV, 2004 WL 1773207, *15 (S.D. Fla. 2004) ("It is hardly a violation in every case for several counts to adopt by reference paragraphs describing the same set of circumstances.").

*Impermissible* shotgun pleading occurs when the incorporation "makes it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.*

Faced with a shotgun pleading, a district court must "narrow and define the issues" sufficient to ensure "the orderly, efficient, and economic disposition of disputes." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997). The purpose of the rule against shotgun pleading is:

> to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*T.D.S., Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting). Here, the SAC does not incorporate preceding paragraphs in a manner that prevents Ford from readily discerning the claims against it and responding. Indeed, Ford has identified each and every claim without issue and responded with a focused set of substantive arguments for dismissal concerning them.

Here, Plaintiffs divide their allegations by "FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS" (ECF No. 38, ¶¶ 6-119) and "PLAINTIFF-SPECIFIC ALLEGATIONS" (*Id.*, ¶¶ 120-495). The former section addresses the general circumstances underlying this action, which, as described above boils down

to a breach of warranty/fraud case based on defective transmissions that Ford installed in Fusion brand cars with model years between 2010 and 2017. Within this section, Plaintiffs break down the facts further into subsections, which walk the reader through the relevant facts at issue here: For instance, what transmissions were defective; what was the effect of those defects; when did Ford recognize the defects; how has Ford previously addressed similar circumstances (i.e., does it have a history of deceptive conduct rendering the mindset of fraud more likely); what warranties were in effect; and what effect does Ford's behavior have on the limitations inherent in those warranties. (*Id.*, ¶¶ 6-119). This section is long because it outlines the general factual allegations concerning defects to vehicles over a period of eight years and how this history translates into nine separate causes of action for misconduct.

The latter primary section provides the details of each Plaintiff's circumstances, including the vehicle on which they are making a claim, the damages they have incurred, and other relevant facts establishing their recognition of and reliance upon warranties and promises from Ford. (*Id.*, ¶¶ 120-495). Most importantly, this section is broken down by the state in which each Plaintiff resides under whose law the claims are made. This section is long because of the number of Plaintiffs. The allegations, however, are straightforward: each Plaintiff purchased a certain vehicle, relied on a certain warranty, and was damaged by a certain faulty transmission. The incorporation of this section into the counts does not render the

SAC as a whole or any of its claims undiscernible—to the contrary, it provides

further detail for the claims into which it is incorporated. This is particularly so

where the individual claims made are also delineated by the state under which they

arise, as the section of "STATE LAW CLAIMS" explicitly notes:

> The state-law claims below are each brought by the individual Plaintiffs
> listed under the state's corresponding respective subheading above in
> paragraphs 1- 495, *supra*.

(ECF No. 38, ¶ 516).

Because the SAC does not incorporate factual allegations in a manner that

renders the claims themselves incomprehensible or undiscernible, the Court must

reject Ford's assertion that the SAC constitutes an impermissible shotgun pleading.

### 2. *Ford Depends upon Inapplicable and Unreliable Legal Authority.*

Ford relies almost exclusively on out-of-circuit precedent to support its

contention that the SAC constitutes an impermissible shotgun pleading, particularly

the Eleventh Circuit's "thirty-year salvo of criticism aimed at shotgun pleadings."

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

"Defendant has not cited, nor is the undersigned aware of, any Sixth Circuit

precedent that permits dismissal of a 'shotgun' pleading without allowing the

plaintiff to replead her case." *Young v. Donahoe*, No. 1:11-0105, 2013 WL 5332109,

at *8 (M.D. Tenn. Sept. 20, 2013). "On the contrary, at least one district court in the

Sixth Circuit has explicitly said that 'shotgun' complaints should not be dismissed." *Id.* (collecting authority). *See also Sutton v. Community Health Systems, Inc.*, No. 1:16-cv-01318-STA-egb, 2017 WL 3611757 (E.D. Tenn. Aug. 22, 2017) (rejecting shotgun pleading argument on the basis that it is unfounded in the Sixth Circuit).

If Ford is uncertain about any particular claim, the Federal Rules provide a remedy; it can move for a more definite statement pursuant to Rule 12(e). *See Anderson v. Dist. Bd. of Trustees of Cent. Fl. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Ford did not do so.

> The Court does not find Plaintiff's complaint to be improper as a whole. Although it is lengthy, it is not unmanageable. In most cases, it is not difficult for the Court to discern what is being claimed or what allegations are relevant to each claim.

*Experian Marketing Solutions, Inc. v. Lehman*, No. 1:15–CV–476, 2015 WL 5714541 (W.D. Mich. Sept. 29, 2015). Thus, this Court, too, should not be persuaded that the SAC should be dismissed in its entirety on account of its length and complexity.

**B.   Most of the Claims Are Not Time-Barred Under Michigan Procedural Law.**

   **1.   *The warranty claims are not time-barred.***

Plaintiffs' express warranty claims are not time-barred. As the Michigan Court of Appeals wrote:

Accordingly, we adopt the approach that promises to repair or replace defective goods are contractual promises under Article 2, but are not warranties. To conclude otherwise would require us to reach "the perverse conclusion that the statute of limitations began to run before the breach occurred." *Baker v. DEC Int'l,* 458 Mich. 247, 249 n. 4, 580 N.W.2d 894 (1998) (citation and quotation marks omitted).[10] That conclusion would also render repair-or-replace promises extending beyond four years meaningless because any claim for breach of the promise would be time-barred four years after the tender of delivery, and it would further give sellers an incentive to stall repairs until the limitations period expired. Because remedial promises are not warranties, a claim for breach of a remedial promise "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." MCL 440.2725(2). It seems unremarkable to state that *a promise to repair or replace defective goods is breached when the seller either fails or refuses to repair or replace the defect, and that the statute of limitations begins to run at that time*. Therefore, the trial court erred by concluding that plaintiff's claim accrued on tender of delivery.

*Grosse Pointe Law Firm, PC v. Jaguar Land Rover N Am, LLC*, 894 NW2d 700, 706–07 (Mich. App. 2016) (emphasis supplied). Further, as alleged in the initial complaint, the statutes of limitations on all claims were tolled by Ford's fraudulent concealment.

## C. **Plaintiffs plausibly plead facts supporting tolling.**

Moreover, Plaintiffs pled sufficient facts to support tolling of the statutes of limitations by the doctrines of fraudulent concealment, the delayed discovery rule, and/or equitable tolling. (ECF No. 38, ¶¶ 92-111).

Fraudulent concealment tolling requires three elements pled with Rule 9(b) particularity: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause

of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL 7689654, at *4 (E.D. Mich. May 5, 2017). For fraudulent concealment to toll the statute of limitations, Plaintiffs must show Ford took affirmative acts which were "designed to prevent, and which [did] prevent, discovery of the cause of action." *See Phelps v. Lengyel*, 237 F.Supp.2d 829, 836 (N.D. Ohio 2002); *Thornton v. State Farm Mut. Auto Ins. Co.*, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006) ("fraudulent concealment requires some affirmative act by the defendant designed to prevent discovery of the cause of action").

The SAC includes substantial specific allegations to support tolling: that Ford misrepresented the qualities of the transmissions at sale; that it misrepresented its ability to repair the Vehicles per the warranties; that it was aware of the defects and concealed them despite duties to disclose same; that it intended for Plaintiffs to rely on its misrepresentations; that Plaintiffs could not discover the operative facts during the limitations period, regardless of diligence, due to Ford's concealment; and that *Ford continues in this course of conduct*, which earns it significant profits. (ECF No. 38, ¶¶ 92-111). These allegations satisfy the elements of fraudulent concealment tolling set forth in *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL 7689654, at *4 (E.D. Mich. May 5, 2017).

Plaintiffs have pled Ford's affirmative acts designed to prevent subsequent discovery, and the statutes of limitations should be tolled. Specifically, as early as 2009, if not before, Ford knew or should have known about the safety hazard posed by the defective transmissions, and as early as 2009, Ford began issuing significant TSBs to its authorized dealers explaining the widespread issues with the transmission. (*Id.*, ¶ 95). At no point prior to the sale or lease of Plaintiffs' Vehicles or *during Plaintiffs' ownership or lease of their Vehicles* did Ford or an authorized dealer ever inform Plaintiffs of the ongoing Transmission Defects. (*Id.*). Ford had a duty to disclose these concealed facts because Ford made misrepresentations in its marketing materials and window stickers and through its authorized sales representatives about the quality, characteristics, and safety of the transmission.

While Ford avers that the only misrepresentations and nondisclosures alleged are those that Plaintiffs relied upon in purchasing their vehicles, this argument ignores the clear allegations that Ford continued in this same course of conduct *after* purchase of the vehicles, including: (1) Ford continued to misrepresent its ability to repair Plaintiffs' Vehicles in conformity with the warranty throughout the warranty period (EF No. 38, ¶ 93); (2) Ford failed to disclose that symptoms of Transmission Defects do not present every time the Vehicle is driven, and, as a result, requirements that the symptoms be present when inspected prevented under-warranty repairs due to the inability of dealers to "replicate the issue" during the visit; (3) Ford

fraudulently concealed from purchasers and lessees, including Plaintiffs, the fact that the dealers were not properly repairing the defects to the transmissions, and knew that the limited work that Ford had authorized its dealerships to perform on those Fusions would not properly repair them; and (4) Ford concealed the above facts in confidential and privileged documents that consumers would not know about and could not obtain. (*See* ECF No. 38, ¶¶ 92-111). All of these actions occurred after purchase of the Vehicles and are not the same misrepresentations relied upon by these consumers in purchasing their vehicles. As such, Ford's argument for dismissal based upon *Matanky v. General Motors L.L.C.*, 370 F. Supp. 3d 772, 802 (E.D. Mich. 2019), must be rejected because the allegations in the SAC are sufficient to support tolling the limitations periods.

### D.   The express warranty claims are properly pled.

It is undisputed that Defendant issued a written warranty with respect to vehicles that included a powertrain warranty of 60 years/60,000 miles and Plaintiffs have so pleaded. (SAC, ¶ 13). The warranty promises that Ford will repair any defects in covered parts, i.e. the transmission. (*Id.*). Defendant does not deny the existence of an express warranty, rather it argues that Plaintiffs have failed to sufficiently plead a breach.

Relying heavily on *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, No. CV-1706656, 2019 WL 3000646 (C.D. Cal. May 22, 2019),

Defendant argues that Plaintiffs have failed to sufficiently plead a cause of action for breach of express warranty, but it incorrectly relies on the standard set forth for fraudulent omission. The *In re Ford Motor Co.* court stated that in order to support a fraudulent concealment claim, "a plaintiff must describe the content of the omission and where the omitted information should or could have been revealed" because fraudulent concealment was subject to the heightened pleading requirements of Rule 9(b). *In re Ford Motor Co.*, *supra*, at *7. However, breach of express warranty claims are not subject to Rule 9(b) because they are treated as typical contract claims. *See*, *Davis v. LaFontaine Motors, Inc.*, 719 N.W.2d 890, 894 -895 (Mich. App. 2006).

Defendant next argues that Plaintiffs have failed to plead a defect in both design and manufacturing. However, in a breach of express warranty claim, a plaintiff may also properly plead a cause of action by pleading "abnormal characteristics of the vehicle related to materials or workmanship." *McKee v. General Motors L.L.C.*, 376 F.Supp.3d 751, 759 (E.D. Mich. 2019). Furthermore, "[i]n light of the technological complexity of most automobiles currently on the market, forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons the Warranty Act was

meant to aid." *Mason v. Porsche Cars of N. Am., Inc.*, 688 So.2d 361, 367 (Fla. Dist. Ct. App. 1997).[1]

Defendant attempts to argue that the warranty does not cover the complained-of problems because the warranty only covers defects in material and workmanship and does not apply to design defects. (ECF No. 42, PageID.5932.) The Defendant in *McKee* made a similar argument, which was soundly rejected by the court. In ruling against the defendant, the court stated that to accept the defendant's argument that the design defects must be separated from abnormal characteristics of the vehicle related to materials or workmanship would require the defendant to adopt the argument that "it intended for the . . . transmission to slip, buck, kick, jerk, and harshly engage," among a list of additional problems. *McKee*, *supra*, at 759. One cannot reasonably conclude that Ford intended for its transmission to display the problems about which Plaintiffs have complained.

---

[1] Other courts have held similarly: *Taylor v. Volvo N. Am. Corp.*, 451 S.E.2d 618, 625 (N.C. 1994) (buyer not required to prove the cause of the nonconformity or identify any specific defect related to the nonconformity); *Cline v. DaimlerChrysler Corp.*, 115 P.3d 468, 477-78 (Okla. Civ. App. 2005) (majority of courts do not require proof of a specific defect under either the UCC or lemon law); *Genetti v. Caterpillar, Inc.*, 621 N.W.2d 529, 542 (Neb. 2001) (proof may be circumstantial and may be inferred from the evidence); *Gambrill v. Alfa Romeo, Inc.*, 696 F. Supp. 1047, 1050 (E.D. Pa. 1998) (plaintiff need not prove with specificity the existence of a manufacturing defect); *Christelles v. Nissan Motor Corp., USA,* 701 A.2d 1317, 1321 (N.J. Super. App. Div. 1997) ("forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons such legislation was meant to aid").

A "repair or replace" is breached "when the seller either fails or refuses to repair or replace the defect." *Grosse Pointe Law Firm, P.C. v. Jaguar Land Rover N. Am., L.L.C.*, 894 N.W.2d 700, 707 (Mich. App. 2016), *app. den.* 896 N.W.2d 421 (Mich. 2017). The "essential purpose" of a repair or replace warranty is to provide the consumer with a properly functioning product within a reasonable time. "Even where a valid limitation of liability in a warranty exists, a buyer is entitled to pursue other remedies where the seller takes too long to complete the repairs or replacements promised in the warranty." *Krupp PM Eng'g, Inc. v. Honeywell, Inc.*, 530 N.W.2d 146, 149 (Mich. App. 1995).

In the case of Plaintiffs' transmissions, there simply is no fix. Furthermore, prior to out-and-out failure, the transmissions exhibit the undesirable—and often dangerous—characteristics previously described. Again, there is no fix. Therefore, under Ford's own definition, the written warranty has failed of its essential purpose because Ford is not able to repair, replace, or adjust these transmissions to make them acceptable and fit for their intended purpose.

Ford next attempts to simply ignore the well-pleaded facts common to all Plaintiffs, in favor of selectively choosing limited Plaintiffs' facts. The SAC contains a set of allegations common to all Plaintiffs. Indeed, paragraphs 6 through 27 contain allegations that properly set forth a cause of action for breach of warranty. As such, any facts specific to an individual plaintiff should be considered in addition to the

common allegations. Plaintiffs have alleged that the vehicles came with express warranties, that Plaintiffs relied upon these warranties when deciding to purchase their vehicles and suffered damage as a result, that the transmissions displayed a variety of problems that are not consistent with a properly functioning transmission, and that the Plaintiffs presented their vehicles for repair under the warranty, but that the problems were not fixed. (*See* ECF No. 38, ¶¶ 6-27). Stated differently, they never received a properly functioning vehicle within a reasonable amount of time.

Since these allegations are common to all Plaintiffs, the pleading requirements for breach of express warranty have been met. Whether any specific individual will ultimately be successful on its claims is an issue to be addressed after sufficient discovery has been conducted, not at the motion to dismiss stage.

### E.   <u>The implied warranty claims are properly pled.</u>

Ford avers that Plaintiffs plead no facts plausibly supporting that any of their vehicles are unmerchantable.

MICH. COMP. LAWS § 440.2314(2), defines "merchantability" as follows:

Goods to be merchantable must be at least all of the following:

> (a) pass without objection in the trade under the contract description; and
> * * *
>  (c) are fit for the ordinary purposes for which such goods are used;

*Id.*

> To establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller. Under implied warranty theory, a defect is established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use. Merchantable is not a synonym for perfect. The warranty of merchantability is that goods are of average quality in the industry.

*Guaranteed Constr. Co. v. Gold Bond Products*, 395 N.W.2d 332, 336 (Mich. App. 1986) (citations omitted).

According to Ford, Plaintiffs merely present boilerplate definitions under the guise of factual allegations. (ECF No. 42, PageID.5935-5939.) This claim, however, omits the extremely detailed list of issues with the transmissions. The allegations in the SAC make clear that transmissions are subject to:

> sudden and unexpected shaking, violent jerking, bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"), delayed acceleration (especially from a complete stop), gears slipping, hesitation on acceleration, difficulty stopping the vehicle, lack or loss of motive power, delayed downshifts, hard decelerations or 'clunks' when slowing down or accelerating at low speeds, premature wear of the internal components, transmission failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident, and/or catastrophic failures necessitating replacement, attributable to one or more of the following: failing fluid seal integrity, throttle body deficiencies, failed torque converter welds, driveshaft failure, and failed Transmission Control Module ("TCM") or Powertrain Control Module ("PCM") updates to limit problems associated with transmission design and/or manufacture, or caused by the vehicle's design and architecture issues (collectively, the "Transmission Defects").

(ECF No. 38, ¶ 9). Transmissions subject to these issues clearly are not fit for their ordinary purpose; this is surely not the "intended, anticipated or reasonably

foreseeable use." Plaintiffs sufficiently allege that Ford violated its obligations under this warranty.

Ford also avers that the Plaintiff-Specific Allegations undermine the claim because of delays between repair attempts and the symptoms of the Transmission Defect. (ECF No. 42, PageID.5920-5921). This argument is made without any citation to legal authority -- i.e., there is no case cited that such delays warrant a finding that the goods were, by default, merchantable. Moreover, these facts do nothing to undermine the clearly stated underlying issue with each and every defective transmission produced and put into the marketplace by Ford.

Additionally, Ford avers that under U.C.C. § 2-607(3)(a), "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy", and, in this case, no Plaintiff has sufficiently pled these facts. (ECF No. 42, PageID.5921). First, Ford does not demonstrate that allegations of notice are a *pleading* requirement concerning a breach of implied warranty. For instance, in many jurisdictions, notice is explicitly a defense to an implied warranty claim to be raised by the seller. *See, e.g., Chestnut v. Ford Motor Co.*, 445 F.2d 967, 969 (4th Cir.1971) (observing generally that lack of notice of a breach is a *defense* to a warranty claim*); Integrated Title Data Systems v. Dulaney*, 800 S.W.2d 336 (Tex. App.-El Paso 1990) (Buyer's alleged failure to give notice of breach of warranty by imperfect, nonconforming

tender and to afford sellers opportunity to cure deficiency was affirmative defense that should have been raised by answer or tried by consent). In fact, here, Ford does not cite to the law of any particular jurisdiction in making this assertion, thus, it is impossible to defend the motion to dismiss because of the lack of particularity. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) (it is appropriate to refuse to address an issue where a party "failed to develop or support his argument with any legal authority."); *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Finally, Ford avers that the implied warranty claim must fail because of a lack of privity between Plaintiffs and Ford. To be sure, many states do require privity to assert an implied warranty claim (Ford lists 12 states that do -- Alabama, Arizona, California, Connecticut, Florida, Illinois, Indiana, New York, North Carolina, Ohio, Washington, Wisconsin) (ECF 42, PageID.5937). Here, however, Plaintiffs assert repeatedly the connections between Plaintiffs and Ford and/or its agents throughout the pleading in a manner sufficient to satisfy the pleading standard.[2]

---

[2] *E.g.*, SAC, ¶¶ 26 (consumer complaints made directly to Ford dealers were one factor driving Ford to issue TSBs acknowledging the Fusion Transmission Defects); 39 and Exhibit H to SAC (Ford emphasized to dealers to use the MY 2010 Fusion transmissions as a selling point); 41 and 42 and Exhibits J & K (same as to MY

First, Plaintiffs adequately allege direct contacts with Ford as set forth by Georgia, Florida, Illinois, and Ohio courts to establish those states' recognized exception to the privity requirement for Breach of Implied Warranty claims. As a practical matter, courts recognize that privity is established between a manufacturer and a remote purchaser under circumstances such as those presented in this case. By

---

2011); 56 (Ford knew about Transmission Defects since at least 2009 based on its dealerships serving as its representatives for warranty-covered repairs and through aggregate data collected from Ford dealerships); 58 (Ford knew of impact of Defects based on reports from dealerships, and Ford disclosed its transmission-related TSBs to the dealerships but not the public); 61 (Ford's warranty department collects and analyzes dealership data to identify repair trends, and dealers provide Ford details of the Defects in order to secure warranty reimbursement); 71 (Ford has not instructed dealerships to disclose the Defects to customers); 77 (dealers participate in Ford's concealment of the Defects by telling customers the vehicle is functioning properly or masking the problem with temporary repairs); 78 (Ford's concealment of the Defects causes Plaintiffs to spend money at its dealerships); 89 (Ford controls dealerships through Franchise Agreements, and fails to require dealerships to permanently retain repair records); 90 (given the relationship between Ford and dealers, Ford profits from out-of-warranty repairs and trade-in or resale revenues when owners of unfixable Fusions buy another Ford, while potential claimants lose evidence of their legal claims in the process); 91 (all of these actions and omissions, in which dealers participate as outlined above, accrue to Ford's financial benefit); 103 (Ford knew that the limited work it authorized dealerships to perform on Fusions with defective transmissions would not repair the problem); 105 (dealerships repeated to customers Ford's cover story of "normal" operation or non-replicable problems); 109 (dealerships relied on false information from Ford to fraudulently assure Plaintiffs that the repairs would be effective); 119 (Ford, through its dealerships and three information-sharing platforms have superior and unique access to the details of Plaintiffs' repair and warranty records, as well as additional information unknown to Plaintiffs); and 509, 542, 715, 910, 1580, 2067, 2475, 2540, and 2581 (Plaintiffs are the intended beneficiaries of Ford's implied warranties and its contracts with its dealerships).

acting through a dealer and by making the warranties part of the sale between the dealer and purchaser, the manufacturer evinces an intent to contract with the remote purchaser and receives consideration in the form of direct profits from its dealers. *See Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. App. Ct. 2007); *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974). The manufacturer therefore bridges the privity gap that would otherwise bar the remote purchaser's implied warranty claim. *Risner v. Regal Marine Indus.*, 2013 U.S. Dist. LEXIS 58690, at *37 (S.D. Ohio Apr. 24, 2013) ("[W]hen the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer, then the manufacturer and the ultimate consumer are in privity of contract."). The reason for this exception, explains one Florida court, is that when there is direct contact between the manufacturer and the ultimate consumer, "[r]equiring the purchaser to go against the seller, who must proceed in indemnification against the distributor, who must proceed against the manufacturer, is wasteful and inefficient." *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs., Inc.*, 444 So. 2d 1068, 1072 (Fla. Dist. Ct. App. 1984).

In Georgia, there is ordinarily no implied warranty existing between a manufacturer and an ultimate consumer. This is due to the fact that no privity of contract exists between the two. *See Chaffin v. Atlanta Coca Cola Bottling Co.*, 194 S.E.2d 513 (Ga. Ct. App. 1972). However, where an automobile manufacturer,

through its authorized dealer, issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists and Ga. Code Ann. § 109A-2--314 becomes operative. *Chrysler Corp.*, 208 S.E.2d at 323. Here, most Plaintiffs making claims under Georgia law adequately allege to have made their purchase through a Ford dealer in reliance upon promises made by Ford. (ECF No. 38, ¶¶ 183-93).

Likewise, Florida recognizes that there is an exception to the privity requirement where a buyer relies on "direct contacts" with a manufacturer in purchasing a product. In *Cedars of Lebanon Hosp. Corp.*, 444 So. 2d at 1072, the Court of Appeals of Florida found that privity existed between a manufacturer and a buyer, notwithstanding that the seller was a third-party distributor, where the manufacturer's representative made direct contact with the buyer and where the buyer relied on representations directly from the manufacturer's representative in purchasing the product from the distributor. Here, as in *Cedars of Lebanon Hosp. Corp.*, most Plaintiffs allege that they made direct contact with the manufacturer by viewing advertisements and statements made by the manufacturer's agents (ECF No. 38, ¶¶ 150-82), and that they relied on representations made directly to them by Ford (*id.*).

Similarly, the privity requirement for implied warranty of merchantability claims is relaxed under Illinois law when (1) the manufacturer extended a written

warranty with the product, and (2) a consumer brought an action under Magnuson-Moss. *Shoop*, 864 N.E.2d at 792 (holding that buyer was in privity with car manufacturer because the manufacturer issued a written warranty and the buyer brought a Magnuson-Moss claim). Plaintiffs satisfy this requirement by alleging that Ford issues an express warranty in connection with the purchase or lease of each one of its new vehicles (¶ 13), and by bringing an action under the Magnuson-Moss Act (¶¶ 496-515).

And Ohio law recognizes that the manufacturer is in privity with the remote purchaser where it is so involved with the sales transaction that the dealer is merely an agent of the manufacturer. *Risner*, 2013 U.S. Dist. LEXIS 58690, at *37. Under these circumstances, the manufacturer and ultimate customer are in privity. *Id.* Plaintiffs here adequately allege that they purchased vehicles from authorized Ford dealer representatives who provided them with the express warranty. (ECF No. 38, ¶¶ 367-90). Plaintiffs relied on these representations when purchasing their vehicles. Here again, these allegations support direct privity with Ford and its agents by creating an express warranty by representation. Further, Plaintiffs allege that Ford issues an express warranty in connection with the purchase or lease of each one of its new vehicles. (*Id.*, ¶ 13). Plaintiffs have thus also closed the "privity gap" between themselves and Ford under Ohio law.

Second, in California, Florida, Ohio, Utah, and Washington, courts recognize an exception to the privity requirement for claims alleging breach of the implied warranty of merchantability where plaintiffs allege that they are intended third-party beneficiaries. Plaintiffs here allege that they are intended, not merely incidental, beneficiaries of the contracts for sale between Ford and its dealerships. Plaintiffs specifically allege that they are intended beneficiaries of Ford's implied warranties. (e.g., SAC, ¶¶ 509). The facts are clear that dealers were not intended to be the ultimate consumers of the defective vehicles and have no rights under the warranty agreements provided with the defective vehicles. The warranties are therefore designed for and intended to benefit consumers only, and the third-party beneficiary exception to the privity requirement applies.

Under Cal. Com. Code § 2314, a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant. *See Annunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005). However, California courts recognize a well-established exception to the privity requirement where the consumer is a third-party beneficiary of the contract between the manufacturer and a third-party. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) ("*Toyota Unintended Acceleration MDL*") ("[W]here a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of

merchantability, he or she may assert a claim for the implied warranty's breach."); *In re Sony VAIO Computer Notebook Trackpad Litig.*, 2010 U.S. Dist. LEXIS 115142, at *3 (S.D. Cal. Oct. 28, 2010) (holding that the facts as pled by plaintiffs--that the retailer from which they purchased defective products was manufacturer's authorized retailer and service facility--precluded dismissal of a breach of implied warranty claim for lack of privity); *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008) (concluding that plaintiffs were, as third-party beneficiaries, entitled to maintain a breach of implied warranty claim against the manufacturer where plaintiffs, not the distributors, were the intended consumers); *Arnold v. Dow Chemical Co.*, 91 Cal. App. 4th 698, 720 (2001) (finding, based on the fact that distributors and retailers were not intended to be the ultimate consumers, that plaintiff could maintain breach of implied warranty claim notwithstanding the lack of privity with manufacturer of pesticide).

In California, courts specifically "permit a third party to bring an action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract." *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978) (emphasis added). Here, there can be no real dispute that the California Plaintiffs more than incidentally benefitted from the contract between Ford and its authorized dealerships, and, thus, may assert breach of implied warranty claims under Cal. Com. Code § 2314 as third-party beneficiaries. *See Toyota*

*Unintended Acceleration MDL*, 754 F. Supp. 2d at 1185 (holding that consumers were intended third-party beneficiaries where they "pled that they purchased vehicles from a network of dealers who are agents of [Toyota]," that the "dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles," and "the warranty agreements were designed for and intended to benefit the ultimate consumers only").

As did the plaintiffs in *Toyota Unintended Acceleration MDL*, Plaintiffs here allege that they purchased their vehicles from a network of dealers who are agents of Ford. (ECF No. 38, ¶¶ 138-40). Plaintiffs also allege that they are intended third-party beneficiaries of the contracts between Ford and its dealers, and specifically, of Ford's implied warranties. (*Id.*). Dealers were not intended to be the ultimate consumers of the defective vehicles and have no rights under the warranty agreements provided with the defective vehicles. *Id.* The warranties are therefore designed for and intended to benefit consumers only. *Id.*

In *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014), a federal district court in Florida, relying on *Toyota Unintended Acceleration MDL*, held that the consumer plaintiffs' implied warranty claims were not precluded based on their lack of privity with the defendant car manufacturer, based on allegations that the plaintiffs were the intended beneficiaries of the

warranty agreements. As here, the plaintiff in Sanchez-Knutson alleged that the warranties "were designed for and intended to benefit the ultimate consumers." *Id.* at 1234. Plaintiffs here allege that they are intended third-party beneficiaries of the contracts between Ford and its dealers, and specifically, of Ford's implied warranties. Dealers were not intended to be the ultimate consumers of the defective vehicles and have no rights under the warranty agreements provided with the defective vehicles. *Id.* The warranties are therefore designed for and intended to benefit consumers only. *Id.* The Florida Plaintiffs' implied warranty claims are therefore well pled.

The Ohio Court of Appeals has likewise held that a "consumer may also have privity of contract with the manufacturer if that consumer is an intended third-party beneficiary to a contract." *Bobb Forest Prods. v. Morbark Indus.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002). *Bobb Forest Prods.* is instructive. There, the manufacturer knew that it was manufacturing a sawmill for the plaintiff's ultimate use. *Id.* Adopting the "intent to benefit" test to determine whether a party is an intended, or merely an incidental, third-party beneficiary, the Ohio Court of Appeals held that the plaintiff was an intended third-party beneficiary with rights under a sales contract between the manufacturer and distributor. *Id.* Likewise, the Ohio Plaintiffs here have alleged that the dealers were not intended to be the ultimate consumers of the defective vehicles and have no rights under the warranty

agreements provided with the defective vehicles. The warranties were therefore designed for and intended to benefit the consumers only, and the Ohio Plaintiffs' implied warranty claims are well pled.

Plaintiffs here also satisfy the Washington state third-party beneficiary exception to privity. *See Touchet Valley Grain Growers v. Opp & Seibold Gen. Constr.*, 831 P.2d 724, 730 (Wash. 1992) (citing *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496 (Wash. 1967)). In *Kadiak*, the Supreme Court of Washington held that a purchaser of a specially built marine diesel motor could sue the manufacturer for breach of implied warranties even though the purchaser bought the diesel motor from a retail dealer. The court found that the manufacturer's implied warranties of merchantability and fitness for a particular purpose given to its purchaser (the dealer) extended to the end user. The decision relied on the sum of interaction and expectations between the purchaser and the manufacture, including that the manufacturer knew that the dealer was not the ultimate consumer. As in *Kadiak*, Plaintiffs here allege that they are intended third-party beneficiaries of the contracts between Ford and its dealers, and specifically, of Ford's implied warranties. (ECF No. 38, ¶¶ 480-84). Dealers were not intended to be the ultimate consumers of the defective vehicles and the warranties are therefore designed for and intended to benefit consumers only. *Id.*

Moreover, Ford avers that it is insufficiently pled that Ford dealerships are agents of Ford, citing a single district court decision that, in two sentences, uses the word "independent" in describing some Ford dealerships. *In re Ford Speed Control Deactivation Switch*, 2007 WL 2421480, at *2 (E.D. Mich. Aug. 24, 2007). The first sentence in question simply states that, in addition to Ford, some named defendants in the action were "independent and authorized" dealerships. *Id.* The second sentence states that five "independent" dealerships were named as defendants. *Id.* It is unclear what about these two sentences Ford believes supports the theory that the particular Ford dealerships in question here are not agents of Ford in its tortious activities of delivering automobiles with defective transmissions to the public. In the context of the case, the Court simply uses the adjective "independent" to describe a certain type of dealership. *Id.* Furthermore, the word "independent" certainly does not undermine the existence of an agency relationship, as the law of agency is clear that an "independent contractor" is more than capable of carrying on an agency function.

In the instant case, Plaintiffs have pleaded that the transmissions in question lack fitness for their intended use as demonstrated by the many problems, such as those set forth in the SAC, paragraphs 8, 9, 11, and 19. Thus, for purposes of the breach of implied warranty counts, the problems themselves establish the actionable defect, and Plaintiffs have met their burden for pleading.

**F.    The Magnuson-Moss Warranty Act claims remain valid.**

Ford contends that Plaintiffs' Magnuson-Moss claims "fail" because the state warranty claims fail. Though Plaintiffs agree that Magnuson-Moss claims rise and fall with warranty claims, as argued *supra*, Plaintiffs have sufficiently pled state warranty claims, and the Magnuson-Moss claims accordingly survive.

**G.    The revocation of acceptance claims are properly pled.**

Even if Plaintiffs' breach of warranty claims were to fail, Plaintiffs may revoke acceptance on other grounds, as well. The UCC provides that revocation is available to a buyer when the product's "non conformity impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his accepted was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." MICH. COMP. LAWS § 440.2608(1).

The plain language of the revocation statute makes no mention of breach or express or implied warranty. It only states a "non-conformity that impairs the value" to the buyer. Under the statute, impairment of use or value is a subjective test, to be measured from the point of view of the actual consumer, rather than the hypothetical "reasonable consumer." *Colonial Dodge, Inc. v. Miller*, 362 N.W.2d 704 (Mich. 1985) (holding that lack of spare tire was sufficient to justify revocation where

plaintiff testified that he was concerned about being stranded on Detroit freeways without a spare).

Defendant argues that Plaintiffs have no right to revoke against a remote manufacturer. (ECF No. 42, PageID.5940). However, Ford's authority in support thereof goes squarely against the Michigan Supreme Court's position as set forth in *Davis v. Forest River, Inc.*, 774 N.W.2d 327 (Mich. 2009). There, the Court reiterated that the intent of UCC remedies is to allow the wronged buyer to be made whole. Thus, the Court concluded under MICH. COMP. LAWS § 440.2714(2), where the usual "difference in value" damages would not suffice, "the plaintiff should be allowed to relinquish title." *Id.*, 774 N.W.2d at 328. The Court then went on to find that the trial court's judgment allowing revocation against the manufacturer was consistent with the damages allowable under MICH. COMP. LAWS § 440.2714(2), holding that "[t]hese damages include the purchase price of the vehicle less the sum paid to the plaintiff pursuant to case evaluation, and repayment of interest paid on the loan and statutory interest pursuant to MICH. COMP. LAWS § 600.6013(8), to the extent that such awards of interest are not duplicative." *Id.*

Defendant next argues that Plaintiffs failed to timely revoke acceptance. (ECF No. 42, PageID.5940-5941). Section 2-608(2) requires that revocation "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is

not caused by their own defects. It is not effective until the buyer notifies the seller

of it." This argument must fail, however, because it is premature to judge whether

the notice given in this case was sufficient to satisfy the various state requirements.

As with its argument under U.C.C. § 2-607(3)(a), Ford fails to provide any legal

authority for the requirement that timeliness is a *pleading* requirement as opposed to

an affirmative defense. Moreover, the issue of timeliness is properly left for the trier

of fact, not decided in a motion to dismiss. *See, e.g., Kabco Equipment Specialists*

*v. Budgetel, Inc.*, 440 N.E.2d 611 (Ohio App. 1981) (Determination of reasonable

time and adequacy of notice to seller of buyer's nonacceptance or revocation of

acceptance of goods are ordinarily questions of fact); *Eggl v. Letvin Equipment Co.*,

632 N.W.2d 435 (N.D. 2001) (questions of a product's nonconformity with a

contract, substantial impairment of value, and timely notice of revocation are

questions of fact); *O'Shea v. Hatch*, 640 P.2d 515 (N.M. App. 1982) (sufficiency of

notice of revocation of acceptance and what is considered reasonable time within

which to give notice of breach of warranty are ordinarily questions of fact, based on

circumstances of each case); *Griffith v. Stovall Tire & Marine, Inc.*, 329 S.E.2d 234

(Ga. App. 1985) (issues such as whether an effective revocation of acceptance was

made, whether reasonable notice of revocation was given to the seller, and whether

the value of the goods was substantially impaired are ordinarily matters for

determination by trier of fact, even where buyer has continued to use nonconforming

goods after alleged revocation of acceptance); *Mercedes-Benz of North America Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358 (Del. Supr. 1991) (whether notice of revocation of acceptance is given within "reasonable time" is generally question of fact for jury); *Welch v. Fitzgerald-Hicks Dodge, Inc.*, 430 A.2d 144 (N.H. 1981) (reasonableness of buyers' delay in revoking acceptance is question of fact for jury); *Sauers v. Tibbs*, 363 N.E.2d 444 (Ill. App. 4 Dist. 1977) (determination of reasonable time and adequacy of notice to seller of revocation of acceptance of items purchased are ordinarily questions of fact); *Gigandet v. Third Nat. Bank of Nashville, Tennessee*, 333 So.2d 557 (Ala. 1976 ) (under Uniform Commercial Code, question of what is a reasonable time for giving notice is a question for jury, or trier of facts).

Based on the cited authority, Plaintiffs have sufficiently pleaded that they are entitled to revocation and/or rescission damages. Any questions regarding whether a party properly revoked acceptance under his specific circumstances are best decided by a finder of fact and are not suitable for a motion to dismiss.

### H.   **The fraud and consumer protection claims are sufficiently pled.**

#### 1.   *Consumer protection claims are actionable.*

The MCPA contains a safe harbor provision which provides that a transaction or conduct that would otherwise be in violation of the Act's provisions cannot be the basis for a claim if that transaction or conduct is specifically authorized by federal or

state law. The MCPA's safe harbor provision is found in §4(1)(a) of the Act, MICH. COMP. LAWS § 445.904(1)(a), which provides:

> (1) This act does not apply to . . . the following:
>
>> (a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

In its motion to dismiss, Ford argues that §4(1)(a) of the MCPA exempts from the Act's coverage all new vehicle purchases and it claims that all of the plaintiffs who purchased their vehicles new have no claim under that Act. For the reasons that follow, Ford's argument should be rejected.

The meaning of §4(1)(a) first came before the Michigan Supreme Court five years after the MCPA was enacted in *Att'y Gen. v. Diamond Mortgage*, 327 N.W.2d 805 (Mich. 1982). In *Diamond Mortgage*, the Attorney General brought an action based on the MCPA against a licensed real estate broker claiming that it had engaged in various deceptive practices associated with mortgage loans that violated the MCPA.

Among the defenses that Diamond Mortgage raised to the Attorney General's claim was that it was exempt from the coverage of the MCPA under §4(1)(a) based on the real estate brokers license that was issued to it. The Michigan Supreme Court rejected that defense:

> We agree with the plaintiff that Diamond's real estate broker's license does not exempt it from the Michigan Consumer Protection Act. While

the license generally authorizes Diamond to engage in the activities of a real estate broker, *it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct*. In so concluding, we disagree that the exemption of §4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States". For this case, we need only decide that a real estate broker's license is not specific authority for all the conduct and transactions or the licensee's business.

327 N.W.2d at 811 (emphasis supplied). What the Michigan Supreme Court held in *Diamond Mortgage* was that, to claim an exemption to the MCPA on the basis of §4(1)(a) of that Act, a defendant would have to demonstrate that a federal or state law or regulation "specifically authorize[s] the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act." 327 N.W.2d at 811. Thus, under the principle of law announced in *Diamond Mortgage,* Ford in this case would have a valid defense to plaintiffs' MCPA claims only if it could demonstrate that it was authorized by some law or regulation to engage in the specific conduct that Plaintiffs allege in their complaint as violations of the Act.

Ford makes no such claim in this case. Ford does not assert that its conduct that resulted in the violations of the MCPA alleged in Plaintiffs' complaint was specifically authorized under a state or federal law or regulation.

Since *Diamond Mortgage* was decided, the Michigan Supreme Court has

twice revisited §4(1)(a). See *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich 1999); *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007). Neither of these cases overruled the explicit holding in *Diamond Mortgage* regarding the scope of §4(1)(a). But, in both *Smith* and *Liss,* the Michigan Supreme Court offered a far different interpretation of the exclusion to the MCPA provided in §4(1)(a).

While the express holding in *Diamond Mortgage* was that §4(1)(a) provided a safe harbor from a possible MCPA claim where a federal or state law "specifically authorize[s] the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act," 327 N.W.2d at 811, the Supreme Court reached a dramatically different conclusion in *Smith.* There, the Supreme Court ruled that "the relevant inquiry [for purposes of §4(1)(a)] is not whether the specific misconduct alleged by the plaintiff is 'specifically authorized'. Rather it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." 597 N.W.2d at 38.

Since the Michigan Supreme Court has never overruled its 1982 decision in *Diamond Mortgage,* there exist at present two very different strands of Michigan Supreme Court precedent with respect to the meaning of §4(1)(a). This presents a somewhat difficult question for a federal court which is placed in the position of attempting to predict how the Michigan Supreme Court would at present decide this question. *Cf.*, *Van Hoven v. Buckles & Buckles, P.L.C.,* 947 F.3d 889, 897 (6th Cir.

2020).[3]

But even if this Court were to conclude that *Smith* and *Liss* represent the appropriate interpretation of §4(1)(a), there is reason to reject Ford's argument in this case. In both *Smith* and *Liss*, the Supreme Court cited to specific statutes that regulated the defendant's general conduct. Here, Ford asserts that its general conduct in this case is "specifically authorized by law." But it cites to no law that provides such authorization. Absent such statutory or regulatory authorization, Ford is not entitled to a defense under §4(1)(a) even under the analysis employed in the Michigan Supreme Court's decisions in *Smith* and *Liss*.

In addition to its specific argument concerning the MCPA, Ford avers that five other states -- Massachusetts, Nebraska, Ohio, Oklahoma and Tennessee -- each have similarly-worded exemptions in their consumer protection laws. (ECF No. 42, PageID.5942) (citing Mass. Gen. Laws Ann. ch. 93A, § 3; Neb. Rev. Stat. Ann. § 59-1617; Ohio Rev. Code Ann. § 4165.04; Okla. Stat. Ann. tit. 15, § 754; Tenn. Code Ann. § 47-18-111). While it is true that each of these statutes provides a similarly-

---

[3] In its brief (PageID.5942), Ford makes reference to a recent unpublished decision rendered by the Michigan Court of Appeals, *Cyr v. Ford Motor Co.*, No. 345751, 2019 W.L. 7206100 (Mich. Ct. App. December 26, 2019), which considered the reach of §4(1)(a) of the MCPA. The court should be aware of the fact that an application for leave to appeal has been filed in the Michigan Supreme Court in the *Cyr* case. *Cyr v. Ford Motor Co.*, Michigan Supreme Court No. 160927. In that application, which remains pending, the Supreme Court has been asked to address the confusion that its prior decisions regarding § 4(1)(a) have created.

phrased exemption from the consumer protection for certain regulated transactions, none of the cited statutes explicitly include automobile sales as such regulated transactions. *See* Mass. Gen. Laws Ann. ch. 93A, § 3 (generally stating "[n]othing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." No mention of automobile sales is made in the statute or any case citing the statute.); Neb. Rev. Stat. Ann. § 59-1617 (generally stating "the Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of Insurance, the Public Service Commission, the Federal Energy Regulatory Commission, or any other regulatory body or officer acting under statutory authority of this state or the United States." No mention of automobile sales is made in the statute or any case citing the statute.); Ohio Rev. Code Ann. § 4165.04 (Generally stating "This chapter does not apply to . . . [c]onduct that is in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency". No mention of automobile sales is made in the statute or any case citing the statute.); Okla. Stat. Ann. tit. 15, § 754 (Generally stating "Nothing in the Oklahoma Consumer Protection Act shall apply to . . . [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United

States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter[.]" No mention of automobile sales is made in the statute or any case citing the statute.); Tenn. Code Ann. § 47-18-111 (Generally stating "This part does not apply to . . . [a]cts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States[.]" No mention of automobile sales is made in the statute or any case citing the statute.).

Additionally, after seeking the dismissal of all of the Plaintiffs' claims that are the result of new vehicle purchases, Ford asserts that the Plaintiffs who purchased used vehicles have no claim under the MCPA or other consumer protection acts either. Ford announces this position without citation to any authority and in a single sentence of its brief. (ECF No. 42, PageID.5942). Thus, after claiming that new vehicle purchases are excluded from the MCPA's coverage based on §4(1)(a), Ford merely adds: "Moreover, those plaintiffs who bought used vehicles (including from non-Ford affiliated entities or persons) had no transaction—even indirectly—with Ford, and therefore no basis to assert a consumer protection claim." (*Id.*).

This argument must be rejected for multiple reasons. First, the Sixth Circuit has ruled that it is appropriate to refuse to address an issue where a party "failed to

develop or support his argument with any legal authority." *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008); *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). For this reason alone, the Court should decline to address Ford's one-sentence argument.

But even if this argument regarding the MCPA's coverage of used car sales were properly preserved, Ford's argument would still have to be rejected. There is nothing in the text of the MCPA or any other cited consumer protection act that specifies or even suggests that such sales would be exempted from the Act's coverage. (*See supra*). The statutes themselves make no distinction between new and used sales. More importantly, the MCPA is broadly written to include numerous examples of "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." MICH. COMP. LAWS § 445.903(1) (2018). Moreover, the term "trade or commerce" is itself defined broadly in the Act to include "conduct of a business providing goods, property, or service primarily for personal, family, or household purposes. MICH. COMP. LAWS §445.902(1)(g). As such, Ford's perfunctory argument must be rejected.

### 2. *Fraud claims are sufficiently pled.*

Fed. R. Civ. P. 9(b) requires that averments of fraud must be stated with particularity. However, the Sixth Circuit reads this rule liberally. *Coffey v. Foamex*

*L.P.*, 2 F.3d 157, 161 (6th Cir. 1993). Allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made. The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiff's claim of fraud. *Id.*, at 162.

However, Fed. R. Civ. P. 8 requires a "short and plain statement of the claim" and calls for "simple, concise, and direct" allegations in pleading. In ruling upon a motion under Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity, a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules of Civil Procedure codified in Fed. R. Civ. P. 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988). Fed. R. Civ. P. 9(b)'s particularity requirement does not countermand the general principles set out in Fed. R. Civ. P. 8; rather, the two rules must be read in harmony. *Id.* It is inappropriate to focus exclusively on the fact that Fed. R. Civ. P. 9(b) requires particularity in pleading fraud. *Id.* Given this backdrop admonition of simplicity in pleading, it is notable that the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. *Id.* at 679.

Plaintiffs have pled the SAC to achieve a harmony between Fed. R. Civ. P. 8, by keeping its pleading simple and concise, and Fed. R. Civ. P. 9(b), by pleading with more than enough particularity to allow Ford sufficient notice of the fraud, and to allow Ford to answer, addressing in an informed way Plaintiffs' claims of fraud. Plaintiffs' SAC has provided Ford with "fair notice" of the substance of Plaintiffs' claims.

Moreover, Fed. R. Civ. P. 9(b) may be relaxed where information is only within the opposing party's knowledge. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d at 680. It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out its claim through evidence that surfaces in discovery. *Id.* Thus, Fed. R. Civ. P. 9(b) does not require omniscience; rather, the rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim. *Id.* Furthermore, Fed. R. Civ. P. 9(b) requires only that the circumstances of the fraud be pled with particularity, not the evidence of the case. While circumstances may consist of evidence, the rule does not mandate the presentation of facts and evidence in a complaint. *Id.*, n.9.

In a lawsuit as complex as this, Plaintiffs have attempted to plead the SAC with enough particularity to put Ford on notice of the allegations against it, but with enough simplicity to allow the SAC to be workable and not convoluted and confusing. Discovery may be used in this instance as a tool to clarify any allegations

in the SAC. Thus, based on the foregoing, Plaintiffs requests that this Court deny the motion to dismiss on this ground.

### a. Plaintiffs sufficiently pleaded the "who" and "what"

For claims involving fraudulent omissions, however, Fed. R. Civ. P. 9(b) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission." *Miller v. Gen. Motors, LLC*, No. 17-cv-14032, 2018 WL 2740240, at *14 (E.D. Mich. June 7, 2018) (quoting *Republic Bank & Tr. Co. v. Bear Stearns Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). Specifically, a plaintiff pleading a fraudulent omission must allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 256). A complaint may suffice if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect. *See Beck v. FCA US LLC,* 273 F.Supp.3d 735, 751–52 (E.D. Mich. 2017).

Without any citation to legal authority defining the "who" to be identified in a fraud claim, Ford avers that Plaintiffs failed to identify to whom they particularly received misrepresentations concerning the transmissions at issue. Plaintiffs identify

the source of the representation upon which they relied as coming from Ford, whether it was in the form of an advertising campaign or from an individual sales representative. Ford, however, attempts to raise the bar on Plaintiffs by claiming that more is needed in the complaint to satisfy the Rule 9(b) pleading standard. This, however, is unfounded in the rule itself, as well as in the case law, which is conspicuously absent within Ford's argument. (*See* ECF No. 42, PageID.5943-5944 (citing to no authority)).

Because Ford fails to adequately support its argument with legal support, Plaintiffs have insufficient grounds on which to respond and assess the law further. Accordingly, this argument must be denied, as each Plaintiff identifies Ford as the source of the misrepresentation, whether it be "dealership personnel" or an advertising campaign.

In yet another case where Ford sought to escape the consequences of its fraud, *MacDonald v Ford Motor Co*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014), the Court reiterated the maxim that "[a]verments of fraud must be accompanied by 'the who what when where, and how' of the misconduct charged,' but claims based on omission 'can succeed without the same level of specificity required by a normal fraud claim.'" *Id.*, at 1096 (quoting *Cooper v Pickett*, 137 F3d 616, 627 (9th Cir 1997)). The Court thus rejected essentially the same argument Ford has recycled here, holding that plaintiffs' complaint, which was pled similarly to the case at bar,

was adequate: "In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles." *MacDonald*, at 1096.

Indeed, a review of the case law concerning claims arising out of fraud by omission in the context of vehicle defects, indicates that there are simply no cases supporting Ford's argument in this case. Rather, the case law follows the rationale reiterated in *MacDonald*, *supra*. This rationale extends even to the issue of pleading reliance, which may be pled generally. *See, e.g., Feldman v Mercedes-Benz USA, LLC*, No. 2:11-CV-00984 WJM, 2012 WL 659830 (D.N.J. Dec. 18, 2012), where the Court denied Mercedes' motion to dismiss on pleadings similar to the Complaint at issue here, holding:

> Plaintiffs adequately state a claim of fraud by omission. They allege specific facts showing Defendants' knowledge and concealment of the alleged defect. They allege that Defendants were obligated to, but did not, disclose specific material facts about the AIS from 2005 onward for specified model years of specified vehicles. They alleged justifiable reliance in that a reasonable customer would not have purchased the car or would have paid less for it had the defect been disclosed, and they allege actual damages for the expense of repairing the AIS and related damage.

*Id.* at *10 (internal citations omitted).

A court does not necessarily expect all plaintiffs to have to "plead the mechanical details" of a defect in order to state a claim. *See Cholakyan v. Mercedes-*

*Benz USA, LLC*, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011). However, the level of specificity required appears to directly correlate to the complexity of the machinery in question. *See, e.g., Yagman v. General Motors*, No. CV-14-4696, 2014 WL 4177295 at (C.D. Cal. Aug. 22, 2014) (requiring more detailed factual allegations where either engine or electrical system could have possibly been defective); *Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, 2013 WL 4401437 at *4 (S.D. Cal. Aug. 15, 2013) (allegations about a "wide array of parts" that made helicopter defective were insufficient to state claims for strict products liability, negligence, and breach of warranty). In *Aguilar v. General Motors, LLC*, No. 1:13-CV-00437, 2013 WL 5670888, *7 (C.D. Cal. Oct. 16, 2013), an allegation of a "steering defect that can result in potential failure of power steering . . . and loss of steering control during the normal course of driving" sufficient to survive a motion under Rule 12(b)(6).

In this case, Plaintiffs go beyond merely stating the "what" as "transmission defects" and, instead, provide a detailed description of the defect identified by the parties:

> [P]roblems, including, but not limited to the following defects known to Ford: sudden and unexpected shaking, violent jerking, bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"), delayed acceleration (especially from a complete stop), gears slipping, hesitation on acceleration, difficulty stopping the vehicle, lack or loss of motive power, delayed downshifts, hard decelerations or 'clunks' when slowing down or accelerating at low speeds, premature wear of the internal components, transmission

> failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident, and/or catastrophic failures necessitating replacement, attributable to one or more of the following: failing fluid seal integrity, throttle body deficiencies, failed torque converter welds, driveshaft failure, and failed Transmission Control Module ("TCM") or Powertrain Control Module ("PCM") updates to limit problems associated with transmission design and/or manufacture, or caused by the vehicle's design and architecture issues (collectively, the "Transmission Defects").

(ECF No. 38, ¶ 9.)

Plaintiffs identify Ford's "knowledge of the defect" as the "what" of their fraud claim. Plaintiffs also argue that Ford knew of the defect before the sale of the Fusions and that the various channels through which Ford sold the vehicles failed to disclose the defect. Based upon these allegations, Ford has more than sufficient information on which to defend the claim of a defect in its product.

### b.    *Affirmative fraud claims are pled sufficiently.*

For affirmative misrepresentations, Fed. R. Civ. P. 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Miller v. Gen. Motors, LLC,* No. 17-cv-14032, 2018 WL 2740240, at *11 (E.D. Mich. June 7, 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012)).

Ford relies, in part on *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 2623, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009), to

support its position that Plaintiffs only vaguely refer to "many representations about the quality, smooth shifting capabilities, efficiency, power, and reliability" of Ford's transmissions, without identifying which Plaintiffs were exposed to and relied on which statements, by whom, when, and how those statements were supposedly false as to them. (ECF No. 42, PageID. 5949-5950). According to Ford, Plaintiffs have the burden of alleging specifically which commercials they saw and the content of those commercials.

In *Sears*, though, the complaint simply alleged that the plaintiffs relied on advertising for an entire line of tools. 2009 WL 937256, at *4. Because the complaint itself acknowledged that ads for certain tools within that line were not deceptive, the court held that the complaint was factually deficient for failing to identify which specific tool advertisements the plaintiffs viewed. *See id.* at *4, 6. Thus, where the complaint impermissibly lumps together ads for an entire group of products—some ads possibly fraudulent, some not—without specifying which ads caused the plaintiffs to purchase which products, the allegations are insufficient.

In contrast, here, Plaintiffs identify only advertisements associated with a single, specific product -- the Ford Fusion and its transmission. And each named Plaintiff specifically lays out the particular misrepresentation he or she viewed before making the purchase of a Ford Fusion; namely, the Plaintiffs identified particular commentary about the Fusion's transmission as a selling point. This

distinction renders the logic in *Sears* inapplicable to the present case. *See Greifenstein v. Estee Lauder Corp., Inc.*, No. 12–cv–09235, 2013 WL 3874073 (N.D. Ill. Mar. 31, 2016).[4]

### c.   The economic loss doctrine does not bar these claims.

Ford next avers that the fraud claims are barred under the economic loss doctrine. Ford's assertion, however, is belied by the exceptions inherent in law. First, for claims arising in Michigan (notably, this is the only jurisdiction specifically cited by Ford concerning this argument (*see* ECF No. 42 at 5951)), Michigan's construction of the economic loss doctrine does not bar claims for fraudulent concealment premised on "fraud in the inducement" or deceit intended to entice a party to engage in a transaction. *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 963-64 (E.D. Mich. 2017) ("Michigan courts have recognized an exception to the economic loss doctrine for the intentional tort of fraud in the inducement. 'Fraud in the inducement . . . addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the

---

[4] "Greifenstein complains only about the advertising associated with a single, specific product-Plantscription Anti-aging serum. *See, e.g.*, Compl. ¶¶ 1, 10, 12–14, 19. And she specifically lays out the four alleged misrepresentations she viewed before making her purchase: (1) '88% of the visible wrinkle-reducing power of a prescription,' (2) 'clinically proven to help visibly repair 4 major signs of aging' 'in just 4 weeks," (3) repairs 'vertical fret lines' and 'stubborn furrows,'and (4) 'help[s] rebuild natural collagen and elastin fibers,' making skin 'clinically firmer, smoother, and more lifted-looking.'" 2013 WL 3874073, **3-4.

law, a recognized tort.'") (quoting *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 371, 532 N.W.2d 541, 544 (1995)); *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 732 (E.D. Mich. 2014) (same). For the same reasons relied upon by the Court in those cases, the request to dismiss this count should be denied.

Concerning other jurisdictions, the argument is too vague to respond to, as Ford merely states: "Under numerous applicable states' laws, the economic loss rule serves to bar the plaintiffs' tort-based claims, as shown in Exhibit 1.1." (ECF No. 42, PageID.5951). Exhibit 1.1, however, does not point to any actual laws or legal arguments. The Sixth Circuit has ruled that it is appropriate to refuse to address an issue where a party "failed to develop or support his argument with any legal authority." *Williams*, 544 F.3d at 690; *Layne*, 192 F.3d at 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). For this reason alone, the Court should decline to address Ford's one-sentence argument referring to unknown and unstated law in numerous states concerning this doctrine.

## I.      The unjust enrichment claims are properly pled.

Unjust enrichment is defined as the unjust retention of "money or benefits which in justice and equity belong to another." *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010). The Court must consider both law and equity, and a

defendant may be unjustly enriched even where it lawfully obtained the money or benefit in question. Id., at 266 - 267.

Plaintiffs' SAC alleges that Ford has profited and benefitted from the Plaintiffs' purchasing and leasing the subject vehicles when it knew that the transmission was defective. Specifically, "benefitted" because it sold them "defective products for the price of non-defective products." (ECF No. 38, ¶ 994). Meanwhile, Ford has been charging Plaintiffs fees for transmission inspections and continuing its "blame the consumer" strategy.

Ford avers that the unjust enrichment claim relies on alleged fraud, so, therefore, the heightened pleading standard under Rule 9(b) applies. However, a claim for unjust enrichment is not a claim where the elements of fraud need be established. Accordingly, this argument is without merit.

Ford next claims that unjust enrichment claims must be dismissed where there is an express contract governing the subject matter, such as an express warranty. *Matanky*, 370 F. Supp. 3d at 803. Generally, however, plaintiffs may plead breach of contract and unjust enrichment, based on quasi-contract, in the alternative. *Cain v. Redbox Automated Retail, LLC*, 981 F.Supp.2d 674, 688 (E.D. Mich. 2013). Accordingly, Plaintiffs' assertion of express warranty claims does not preclude their unjust enrichment claims. Plaintiffs have, in so many words, "kept [their] options

open [for the possibility that Defendant] . . . may deny the existence of a contract."

*Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996).

Further, Ford claims that because an adequate remedy exists at law here, Plaintiffs are barred from pursuing unjust enrichment as an equitable alternative. While courts have acknowledged the general rule that a claim for unjust enrichment cannot survive when there exists an express contract covering the same subject matter, that case law also provides that if the contract is void or unenforceable, the rule does not apply. *See Terry*, 96 F.3d at 182 (reinstating dismissal of quasi-contract claims and noting that if the defendant admits the existence of a valid contract, "it will be appropriate for the district court to dismiss [plaintiffs]' claims for unjust enrichment and promissory estoppel at that time."); *Ordon v. Johnson*, 77 N.W.2d 377, 382-383 (Mich. 1956); *VanderHoef v. Parker Bros Co., Ltd.*, 255 N.W. 449, 452-453 (Mich. 1934). Accordingly, Plaintiffs' assertion of the validity of express warranty claims does not necessarily render unjust enrichment claims barred.

Next, Ford claims that this claim lacks "facts sufficient to establish that Ford obtained any benefit from the complained-of conduct." *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *4 (E.D. Mich. Jan. 4, 2019). Specifically, because the SAC asserts Ford "benefitted" because it sold them "defective products for the price of non-defective products," (ECF No. 38, ¶ 994), Ford avers that Plaintiffs have failed to identify what these "non-defective products" are and their

relative cost. *Wozniak*, 2019 WL 108845, at *4. The plain language of the claim, however, sets forth that Ford has sold defective vehicles at the same full price of non-defective vehicles. This argument is, therefore, without merit.

> **J.**     **The product liability-based claims (including negligence) and miscellaneous claims are properly pled.**

Finally, Ford avers that all product liability and/or negligence claims must fail because certain, unnamed product liability statutes preclude their use for non-product liability claims like these, and the economic-loss rule. (ECF No. 42, PageID.5938). Notably, Ford provides not a single legal citation to support this position, nor does it specify which statutes preclude coverage of these claims and how the economic-loss rule plays into these claims. (*Id.*). As averred multiple times above concerning Ford's half-baked arguments, this assertion must fail for lack of specificity. *Williams*, 544 F.3d at 690 (it is appropriate to refuse to address an issue where a party "failed to develop or support his argument with any legal authority."); *Layne*, 192 F.3d at 566 ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Moreover, as explained in detail above, the economic-loss rule does not preclude recovery and should not bar these claims.

Additionally, Ford avers that the New Mexico Motor Vehicle Dealers Franchising Act is inapplicable here because it does not provide a cause of action

against a manufacturer by a consumer. This is contrary to the plain language of the statute, however, which states that: "It is unlawful for a manufacturer, distributor or representative to . . . use false, deceptive or misleading advertising in connection with the manufacturer's, distributor's or representative's business". N.M. Stat. Ann. § 57-16-5(G). The SAC explicitly states that "Ford used false, misleading, and deceptive advertising in connection with their business[.]" (ECF No. 38, ¶ 1847). Moreover, the explicit legislative objective, under the Motor Vehicle Dealer's Franchising Act, NMSA 1978, §§ 57-16-1 to 57-16-16, is of insuring "a sound system" of motor vehicle sale and distribution within the state, and the intent to provide a remedy for warranty abuse, implied a retail buyer's cause of action against a manufacturer for such abuse, and thus automobile buyers had standing to invoke protection of the Act against automobile manufacturer. *See General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 703 P.2d 169 (N.M. 1985). Accordingly, Plaintiffs' claims may proceed under this statute.

## V.   <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' SAC is sufficient to state plausible claims for relief. Therefore, Plaintiffs request that this Court deny Ford's motion to dismiss.

Respectfully submitted this 9th day of September, 2020.

STERN LAW, PLLC

/s/ Kenneth A. Stern
Kenneth A. Stern (P30722)
41850 W. Eleven Mile Road,
Suite 121
Novi, Michigan 48375-1857
(248) 347-7315
ken@sternlawonline.com

MARK GRANZOTTO, P.C.
Mark Granzotto (P31492)
2684 Eleven Mile Road, Ste 100
Berkley, Michigan 48072
(248) 546-4649
mgranzotto@granzottolaw.com

MARINO LAW PLLC
Amy L. Marino (P76998)
18977 W. Ten Mile Road, Ste
100E
Southfield, Michigan 48075
Tel.: (248) 797-9944
Fax.: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*

## <u>PROOF OF SERVICE</u>

I hereby certify that on September 9, 2020, I electronically filed the foregoing paper, PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, with the Clerk of the Court using the ECF System, which will notify all counsel of record.

<u>/s/ Amy L. Marino</u>
Amy L. Marino
amy@marinopllc.com
Counsel for Plaintiffs
