UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON GANT, et al.,

      Plaintiffs,

v.

FORD MOTOR COMPANY,

      Defendant.

Case: 2:19-cv-12533

Honorable Sean F. Cox

Magistrate Judge David R. Grand

## JOINT RULE 26(f) REPORT

The parties met and conferred to prepare and discuss the joint discovery plan on March 25, 2021 and on April 19, 2021, and they now submit this Rule 26(f)(3) Discovery Plan for the Court's consideration, including discussion of seven topics outlined in the Court's March 9, 2021 Notice.

### 1.  A brief summary of the case and issues.

Plaintiffs' Second Amended Complaint alleges that approximately 360 Plaintiffs purchased or leased 2010-2017 Ford Fusion vehicles. (ECF 38 ⁋ 1.) Plaintiffs allege that Ford breached its warranty, committed fraud, violated other state laws, and violated the Magnuson-Moss Warranty Act due to defects in the vehicles' transmission. Ford denies Plaintiffs' allegations, and states affirmatively

that the vehicles were properly designed, tested and manufactured, they are

reasonably safe, and Ford complied with its warranty and any other obligations.

The parties have identified the following issues:

a.   Whether the subject vehicles and in particular the transmissions, were defectively designed and/or manufactured when first sold, which Plaintiffs assert and Ford denies.

b.   If a design and/or manufacturing defect in the transmission is found, whether such defect was a legal cause of Plaintiffs' damages, which Plaintiffs assert and Ford denies.

c.   Whether Ford knew or should have known of the alleged defects in design and/or manufacture, which Plaintiffs assert and Ford denies.

d.   Whether Ford concealed its knowledge, if any, of the alleged defects in design and/or manufacture from Plaintiffs, regulators, and/or the general public, which Plaintiffs assert and Ford denies.

e.   Whether Plaintiffs have proof that feasible alternative designs existed for the transmission that would have prevented Plaintiffs' alleged damages, or whether Ford knew or should have known of such designs, which Plaintiffs assert and Ford denies.

f.   Whether there is merit to Plaintiffs' claims that Ford breached an express or implied warranty, or other state and/or federal law, with regard to the maintenance, repair, quality and safety of the subject vehicles and said transmissions, which Plaintiffs assert and Ford denies.

g.   Whether Ford fraudulently concealed or failed to disclose defects or problems with the performance, reliability and ability to repair the transmissions in the subject vehicles, which Plaintiffs assert, and Ford denies.

h.   Whether Plaintiffs would have purchased or leased the subject vehicles if Ford had fully disclosed (i) defects or problems with

2

the performance or reliability of the transmissions in the subject vehicles, or (ii) an inability to reasonably repair the subject vehicles, which Plaintiffs assert, and Ford denies.

i.     Whether Ford violated its duty to provide Plaintiffs with a properly functioning and safe transmission, which Plaintiffs assert, and Ford denies.

j.     Whether Ford violated its duty to provide its authorized dealerships with appropriate parts, components and instruction concerning how to reasonably repair the transmissions in the subject vehicles to avoid repeat repair attempts, which Plaintiffs assert, and Ford denies.

k.     Whether Ford failed to comply with its warranty obligations, which Plaintiffs assert and Ford denies.

l.     Whether Plaintiffs gave Ford proper notice of the alleged breach(es) of warranty.

m.     Whether Plaintiffs purchased/leased their vehicles after Ford's applicable New Vehicle Limited Warranty had expired.

n.     Whether Plaintiffs complied with their obligations under Ford's applicable New Vehicle Limited Warranty, which Plaintiffs assert and Ford denies.

o.     Whether Plaintiffs were required to utilize and/or did utilize the BBB Autoline prior to filing the instant lawsuit.

p.     Whether any modifications, improper maintenance, misuse, or improper storage or transport are the proximate cause of Plaintiffs' defect claims or damages.

q.     Whether a non-party or non-parties is/are at fault.

r.     Which states' laws apply to each of Plaintiffs' respective state law claims, and whether Ford has committed violations of same.

s.    The nature and extent of Plaintiffs' cognizable damages and remedies, which Ford denies.

## 2.  Subject matter jurisdiction.

The District Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d), commonly known as the Class Action Fairness Act ("CAFA"). Pursuant to 28 U.S.C. §1332(d)(2)(A), the district courts shall have original jurisdiction over any civil action in which the matter in controversy is claimed to exceed the sum or value of $5,000,000, exclusive of interest and costs, and is a class or mass action in which any of the plaintiffs is a citizen of a State different from any defendant.

Pursuant to 28 U.S.C. §1332(d)(11)(B)(i), the term "mass action" means "any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."

Plaintiffs' Second Amended Complaint names approximately 360 Plaintiffs from 42 states. Ford is a corporation organized and existing under the laws of Delaware, with its principal place of business in Dearborn, Michigan. (ECF 38 ¶ 3.) Therefore, minimal diversity jurisdiction exists under the CAFA statute as well as a number of plaintiffs greater than 100. Moreover, the amount in controversy claimed

4

exceeds $5,000,000 because each of the 360 Plaintiffs "seeks damages in excess of $25,000."[1]

**3. Relationship to other cases.**

There are no related cases pending at this time.

*Kinner v. Ford Motor Co.*, No. 2:19-cv-10583-SFC-DRG (ECF No. 1) (E.D. Mi. Feb. 26, 2019), voluntarily dismissed June 14, 2019 [Dkt. 10].

**4. Necessity of amendments to pleadings, additional parties, third-party complaint or other additional information.**

At this time, the parties have not identified any amendments that are necessary.

**5. Discovery.**

    **a. Discovery Status:**

        *i. Introduction*

The parties agree there are numerous substantive and factual issues to be discovered in this matter. Summarily, there are certain issues that should be addressed early in discovery that are specific to the individual Plaintiffs and their vehicles. These include, by way of example: (1) the Plaintiffs' actual driving experiences and issues with their vehicles; (2) the current condition of Plaintiffs' vehicles, including their service and maintenance history and any relevant vehicle

---

[1] Ford's agreement that jurisdiction lies under 28 U.S.C. section 1332(d) is not a concession that the Plaintiffs are entitled to recover any amount whatsoever from Ford, but instead is merely an acknowledgement that on the facts alleged and the claims asserted, which Ford expressly denies, jurisdiction nonetheless exists.

modifications or alterations; (3) whether each Plaintiff has experienced any alleged issues with his or her vehicle's transmission; (4) whether the Plaintiffs have attempted to have their transmissions adjusted, repaired or modified two or more times by a Ford dealership, or through other means, and the reasons for those attempts; (5) the purchase history for Plaintiffs' vehicles; (6) the alleged representations made to Plaintiffs, or information which Ford, its representatives or authorized dealerships allegedly failed to disclose to Plaintiffs; and (7) whether Plaintiffs would have purchased their vehicles if they had known of the alleged defects or Ford's alleged inability to reasonably repair the subject vehicles.

### ii. Timeline of Discovery History

On December 20, 2019 and before Rule 12 motion activity was completed, Plaintiffs served Ford with their first set of discovery requests, consisting of 25 interrogatories, 141 requests for production of documents, and 15 requests to admit. Ford objected to the discovery as premature, irrelevant and overly broad. The parties met and conferred with Plaintiffs on whether discovery had opened on January 6, 2020, and attended an informal conference with the Court on January 13, 2020. Ford timely served objections to each written request on January 21, 2020, and on January 24th offered to produce a focused set of documents regarding each Plaintiff's vehicle. The parties met and conferred again on March 12th. Plaintiffs filed a motion to compel on March 18, 2020. Magistrate Judge Grand held an informal telephone

conference with counsel on March 30, 2020, and on April 6th ordered the parties to meet and confer further.  On April 16, 2020, the parties were able to reach agreement on a production of documents sufficient to resolve the pending motion to compel.

Ford has begun to, and will continue to produce the agreed upon documents or categories of documents related to 2010-2017 Ford Fusion vehicles to Plaintiffs (which will also be described in its Initial Disclosures) as set forth below:

1.    Representative print and/or video advertising for 2010-2017 Ford Fusion vehicles, in general, Bates Nos. Gant0000001 – Gant0000631;

2.    Representative showroom brochures for 2010-2017 Ford Fusion vehicles, in general, Bates Nos. Gant0000632 - Gant0000864;

3.    Dealer Source Books for 2010-2017 Ford Fusion vehicles, in general, Bates Nos. Gant0000865 - Gant0001325;

4.    Order Guides for 2010-2017 Ford Fusion vehicles, in general, Bates Nos. Gant0001326 - Gant0002363;

5.    Workshop Manual Tables of Contents for 2010-2017 Ford Fusion vehicles, in general, Bates Nos. Gant0002364 - Gant0002604;

6.    Technical service bulletins, special service messages, and general service bulletins pertaining to 6F35 transmissions, in general, Bates Nos. Gant0002605 – Gant0002677;

7.   Customer Relationship Center policies or procedures from 2010-2017, Bates Nos. Gant0002678 - Gant0005415. These documents will be produced pursuant to the Protective Order;

8.   Critical Concern Review Group documents pertaining to 6F35 transmissions Bates Nos. Gant0005416 - Gant0005422. These documents will be produced pursuant to the Protective Order;

9.   Warranty claim history information for the Plaintiffs' vehicles received through Ford's Global System for Analytics and Reporting (GSAR) for the VINs provided by Plaintiffs, Bates Nos. Gant0005423 - Gant0010543;

10.  8D reports pertaining to 6F35 transmissions, Bates Nos. Gant0010544 - Gant0010577. These documents will be produced pursuant to the Protective Order; and

11.  NHTSA Information Requests, Preliminary Evaluations or Engineering Assessments pertaining to the transmission and Ford's responses to same.

On April 22, 2020, Plaintiffs withdrew their motion to compel without prejudice. [Dkt. 35.] On April 24, 2020, the Court signed the parties' Stipulated Protective Order on document confidentiality. [ECF No. 36.]   On April 29, 2020, Ford produced documents listed in items 1 through 5, above.  Ford was unable to locate documents responsive to item 11 above, NHTSA Information Requests, Preliminary Evaluations or Engineering Assessments pertaining to transmissions on

2010-2017 Ford Fusion vehicles.  On May 19, 2020, as part of its Order granting Plaintiffs leave to file the SAC and denying Ford's motion to dismiss the FAC as moot, the Court stayed all discovery until further order of the Court.  Thereafter, Ford paused its production of the early discovery documents.

### iii.  Ford's Proposal

Now that the pleadings are closed, the parties agree that discovery of the issues identified above requires at least some depositions and vehicle inspections but do not yet agree on the plan, timing or schedule for either discovery activity. Ford believes that depositions of each Plaintiff and inspections of most if not all of the subject vehicles are necessary and that those discovery activities can and should start in approximately 30 days. Toward that end, on March 18, 2021, Ford served Plaintiffs with its notice of deposition, *duces tecum*, with depositions commencing on May 3, 2021, and continuing from 9 a.m. to noon and 1 p.m. to 4 p.m. until completion, which is estimated to be 90 to 120 days from the date of the first deposition. Ford also requested inspections of Plaintiffs' vehicles. Ford has proposed scheduling six Plaintiff depositions per day, every day Monday through Friday: with three depositions to run simultaneously on different video feeds for three hours in the morning, and three depositions to run simultaneously on different video feeds for three hours in the afternoon.

Plaintiffs have responded to Ford that they respectfully object to this proposed schedule as "onerous, unduly burdensome, disproportional, and chiefly an attempt to intimidate and exhaust the Plaintiffs and their counsel as opposed to engaging in reasonable, sequenced discovery intended to resolve this litigation as quickly and efficiently as possible." Ford denies any improper motive or intent in seeking depositions and inspections of Plaintiffs who have sued Ford, and Ford maintains that such discovery is not only proportional to the needs of each individual Plaintiff's case but is essential to its ensuring due process in defending against these claims.

As to Plaintiffs' proposed "Fact Sheets and Fraud Questionnaires" directed to Plaintiffs, Ford will accept that proposal to the extent Ford's agreement to engage in that process is not treated as a waiver or withdrawal of Ford's request to depose Plaintiffs and complete vehicle inspections and to the extent the timing of Plaintiffs' response to those discovery requests does not substantially delay Plaintiff depositions and vehicle inspections.  While Ford is interested in engaging in efficient discovery activities in this large matter, Fact Sheets and Questionnaires utilized in prior litigation against Ford led to internally inconsistent statements by individual plaintiffs and issues related to the completeness of plaintiffs' responses among other problems that served to unnecessarily burden and delay that litigation.

In addition, with respect to the Plaintiffs' reference to what was done in different and unrelated litigation, Ford responds that this litigation is entirely distinct

from that other litigation.   The other litigation that Plaintiffs have raised in comparison to this matter involved over 10,000 plaintiffs and this ligation involves approximately 360 Plaintiffs.  While Fact Sheets were used, they did not effectively identify early dismissal candidates.  Ford also obtained an order that compelled Plaintiffs to sit for deposition in that other litigation.  Ford submits that with a far smaller plaintiff population, depositions conducted remotely and vehicle inspections as Ford proposes would be workable and proportional to the needs of this large matter, as its proposed schedule shows.

### iv.  Plaintiffs' Proposal

Plaintiffs believe that conducting depositions of every Plaintiff is not necessary or efficient, is disproportional to the needs of the case, and that several Plaintiffs can be identified for early settlement or dismissal by initially using Fact Sheets and Fraud Questionnaires, commonly relied upon by parties in similar automobile-defect related litigation involving multiple plaintiffs, to enhance the efficiency and limit the time burden and expense of the litigation process.

Attached is a Fact Sheet and Fraud Questionnaire Ford relied upon in other litigation involving thousands of Plaintiffs in the DPS6 PowerShift transmission case, directed to a sub-set or representative number of approximately 630 Test Cases, while the cases of over 11,000 plaintiffs in that case would be stayed, pending the

outcome of the Test Cases [2] (and wherein Ford had represented that it expected 70%
of the cases would resolve with no further discovery required). The Fact Sheets and
Fraud Questionnaires in that case produced offers to settle during Facilitation that
encouraged further discussion, which unfortunately was interrupted by Ford's appeal
and a Court of Appeals ordered stay of proceedings that remains pending. To
whatever extent cases could not be resolved based on the Fact Sheets and Fraud
Questionnaires, the parties in the DPS6 litigation had agreed to schedule a number
of depositions and/or inspections in the Test Cases intended to further reduce the
number of cases that would be subjected to further discovery, mediation or trial.[3]
This sequencing is favored by the courts and maximizes the efficiency of the process
for all parties and the Court. Ford has considered and recently accepted Plaintiffs'
proposed plan for the use of Fact Sheets and/or Fraud Questionnaires.

On March 25, 2021, the first day of the parties' discovery conference,
Plaintiffs proposed that the parties attempt to sequence discovery by the use of Fact
Sheets and Fraud Questionnaires to determine which claims may be ripe for
settlement or dismissal rather than jumping into a marathon of 360 depositions
performed at an oppressive rate of six, three-hour depositions per day.  Consistent
with principles of proportionality, Plaintiffs believe, as Ford has elsewhere agreed,

---

[2] Ford objects to any reference to a bellwether process, this is not an MDL or Putative Class
Action, no such process applies here.
[3] It is Plaintiffs' contention that an intervening appeal by Ford precluded the settlement outcome
which Ford had projected.

that perhaps as much as 70% or more of these cases should be resolved based on these methods alone, making the deposition of and the vehicle inspection for every single Plaintiff unnecessary.

### b.  Initial Disclosures and Production Timing:

The parties agree Rule 26(a)(1) initial disclosures will be served on April 23, 2021.  The parties disagree on timing of production of documents identified in the Initial Disclosures:

*Ford's position*:  Documents identified in Initial Disclosures will be produced April 26 – May 31, 2021, with records related to specific Plaintiffs' vehicles being produced one week in advance of any Plaintiff's deposition commencing in May 2021.

*Plaintiffs' position*: Documents identified in Initial Disclosures will be produced April 26 – May 31, 2021 except records related to specific Plaintiffs' vehicles will be produced one week in advance of the submission of Fact Sheets and Fraud Questionnaires to Plaintiffs for their response to enable timely and complete responses to the Fact Sheets and Fraud Questionnaires.

### c.  Subjects on Which Discovery May Be Needed:

The parties agree that to further the application of the proportionality standard in discovery, all discovery should be reasonably targeted, clear, and as specific as

possible.  The parties submit the following separate statements on discovery to be completed:

*Plaintiffs' Position:*  Discovery will include use of Fact Sheets and Fraud Questionnaires, and with respect to any remaining cases, inspection of Plaintiffs' Fusion vehicles, the virtual or in-person depositions of at least some Plaintiffs, or Test Cases, virtual or in-person depositions of Ford's corporate representative, virtual or in-person depositions of Ford employees with relevant information regarding the design and manufacture of the subject transmissions and/or Ford's knowledge of the alleged defects, virtual or in-person depositions of other third-party entities or individual(s) with relevant information regarding the purchase of or service, repair, or maintenance of Plaintiffs' Fusion vehicles, and depositions of expert witnesses. Plaintiffs also intend to propound additional written discovery to Ford, and Ford will propound written discovery to Plaintiffs. The parties may issue subpoenas to third parties. Also on March 25, 2021, Plaintiffs notified Ford that the discovery requests Plaintiffs previously temporarily set aside in reaching agreement with Ford on early discovery should now be considered reissued and pending. Plaintiffs further assert that there is no legal basis to limit Plaintiffs' written discovery to Ford to those requests already served, and Ford has advanced no such justification for its proposal that Plaintiffs should be barred from issuing further written discovery within the limits set by the Federal Rules of Civil Procedure.

*Ford's Position:* Discovery may include completion of initial fact sheets and questionnaires by Plaintiffs, followed promptly by depositions of Plaintiffs[4] and inspection of the subject Fusion vehicles, virtual or in-person depositions of other third-party entities or individual(s) with relevant information regarding the purchase of or service, repair, or maintenance of Plaintiffs' Fusion vehicles, and depositions of expert witnesses. Ford will propound written discovery to Plaintiffs and may issue subpoenas to third parties. Plaintiffs' written discovery to Ford should be limited to the 141 Requests for Production, 25 Interrogatories and 15 Requests for Admission that Plaintiffs served previously absent agreement of the parties or leave of Court. On March 25, the parties discussed Plaintiffs' previous written discovery. Ford specified these sets should be utilized by Plaintiffs in lieu of service of additional written discovery. Ford will promptly supplement its responses to Plaintiffs' Interrogatories and Request for Admission. However, as to the Requests for Production, Plaintiffs should analyze the voluminous set of documents Ford will be producing with its Initial Disclosures, and the parties should meet and confer regarding anything further they need.

### d. Discovery of Electronic Data:

At this time, the parties do not know of any additional electronic discovery issues that may arise. The Plaintiffs propose negotiating an ESI production protocol

---

[4] Ford anticipates that remote deposition tools will be used for most depositions.

substantially similar to the Eastern District of Michigan's model ESI protocol. Ford's position is that the time spent drafting and negotiating an ESI protocol is not necessary for the documents that will be produced in this litigation. Further it is Ford's position that the Producing Party is best situated to decide how to search for and produce ESI responsive to the Receiving Party's discovery requests. *See*, The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1, Principle 6, 118 (2018). If additional issues arise, the parties agree to work in good faith to resolve the matter before bringing the issue to the Court's attention.

### e. Limitations on Discovery:

The parties agree to the following limitations on discovery:

- Notices of depositions must be served at least 28 days prior to the date sought for the deposition. The parties agree to identify or exchange any exhibits to be used at corporate designee, individual Plaintiff, or employee depositions 3 days in advance.

- If any party objects to a notice of deposition – either an individual deposition notice or a Rule 30(b)(6) deposition notice – the responding party need not file a motion for protective order if written objections are asserted. Instead, within 30 days of receipt of the notice of deposition, the responding party will serve written objections to the notice or deposition topics at issue. The Parties shall then meet and confer

regarding the objections. Following these meet-and-confer efforts, if the Parties reach an impasse, the deposition shall proceed as to any portion of the deposition that is not objected to.  Any remaining concerns or objections are preserved until after the deposition has been taken and all parties shall reserve their positions and rights to seek court intervention after the completion of the deposition; however, no party shall argue that the failure to file a motion to compel or a motion for protective order waived their positions.  This paragraph does not prevent a party from electing to seek Court intervention before the deposition.

Any party may move to modify these limitations for good cause.

**f.  Discovery Disputes:**

The parties will comply with the Federal Rules of Civil Procedure and, should the district judge refer any discovery dispute to the magistrate judge, to Magistrate Judge David R. Grand's Practice Guidelines located here: https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=35

**g.  Authentication:**

The Parties will meet and confer regarding document authentication at an appropriate time in advance of trial.

**h.  Preservation:**

The parties represent that they understand and are abiding by their preservation obligations.

### i. Good Faith:

If additional issues arise not governed by this plan, the parties agree to work in good faith, consistent with this Court's Discovery Principles and professionalism, to resolve the matter before bringing the issue to the Court's attention.

### 6. Pretrial Schedule:

The parties agree on and jointly propose the following dates:

| | |
|---|---|
| Initial Disclosures Due Date | April 23, 2021 |
| Initial Disclosure Document Production | April 26 – May 31, 2021 |
| Fact Discovery Cutoff | August 1, 2022 |
| Plaintiffs' Expert Reports | August 30, 2022 |
| Depositions of Plaintiffs' Experts Completed | November 30, 2022 |
| Ford's Expert Reports | December 15, 2022 |
| Depositions of Ford's Experts Completed | January 30, 2023 |
| Dispositive and Daubert motions filing deadline | February 28, 2023 |
| Oppositions to Dispositive and Daubert motions | March 30, 2023 |
| Replies to Dispositive and Daubert motions | April 17, 2023 |
| Hearing on Dispositive and Daubert motions | May 1, 2023 |
| Deadline to file pretrial motions and other filings | May 30, 2023 |

| | |
|---|---|
| Deadline to respond to pretrial motions and other filings | June 15, 2023 |
| Final Pretrial Conference | June 20, 2023 |
| First Plaintiff's Trial[5] | June 26, 2023 |

*Plaintiffs propose the following additional dates for their discovery proposal:*

| | |
|---|---|
| Issue Plaintiff Fact Sheets & Fraud Questionnaires | May 31, 2021 |
| Early Vetting Meet & Confer and Motions Begin[6] | June 28, 2021 |
| Oppositions to Early Vetting Motions | 4 weeks |
| Response Deadline: Fact Sheets & Fraud Questionnaires | July 30, 2021 |
| Begin Plaintiffs' Depositions &Vehicle Inspections | September 27, 2021 |
| Complete Plaintiffs' Depositions & Vehicle Inspections | December 30, 2021 |

---

[5] It is Ford's position that the Plaintiffs' claims are not properly joined nor are they appropriate for joint trial. While pretrial coordination may be appropriate as to discovery and certain preliminary motions practice, joint trials are both infeasible and procedurally improper. Ford therefore reserves the right to seek severance for trial purposes. This is not an MDL or Putative Class Action; thus there is no applicable bellwether trial process.

   Plaintiffs believe these cases are properly joined as all cases derive from the same defective transmission, producing similar effects, necessitating repair or replacement. The duplication of evidence required by multiple trials centered upon the same defect would represent a waste of resources and time. The use of Test Case trials would also be a more effective means to drive settlement in any remaining cases.

[6] Plaintiffs propose that Fact Sheet and Fraud Questionnaire responses would cause an early case vetting review on a rolling basis as received, which may include motion practice, in hopes of identifying those cases that are most ripe for settlement or dismissal so that further discovery efforts are not needlessly expended on such Plaintiffs.  Plaintiffs believe that this early vetting process will allow the narrowing of the litigation to those Plaintiffs for whom additional discovery, including depositions, would be appropriate and proportional.

   Ford, meanwhile, does not agree that the Plaintiffs' proposed fact sheets and questionnaire will advance the Plaintiffs' stated objective of providing information sufficient to support early vetting, motions practice aimed at dispensing claims early on.

Designation of Test cases for trial[7]                              May 30, 2023

_Ford alternatively proposes the following additional dates for its discovery_

_proposal_:

Commencement of Plaintiffs' Depositions              May 24, 2021

Commencement of Vehicle Inspections                 June 14, 2021

Completion of Plaintiffs' Depositions               November 22, 2021

Completion of Vehicle Inspections                   January 20, 2022

Early Vetting Meet & Confer and Motions[8]          January 31, 2022

Oppositions to Early Vetting Motions                February 28, 2022

The parties will continue to evaluate opportunities to maximize efficiencies of

coordinated pretrial proceedings.  The parties demand trial by jury.

**7. Mediation:**

At this time, the parties have not agreed to mediation, and the case has not

been assigned to any alternative dispute resolution procedure.

**8. Motions:**

---

[7] As stated in Footnote 5 and elsewhere, Ford sees no basis for and objects to Plaintiffs' request for "Bellwether cases," "Bellwether" trials or "test cases for trial."

[8] Ford proposes that early Plaintiffs' depositions and vehicle inspections would be followed by an early case vetting review, that may include motion practice, with the aim of resolving or dismissing appropriate cases (e.g., case barred by limitations) and as to whom additional discovery would be both unnecessary to resolve such early motions and also potentially wasteful. By employing this early vetting, the parties and the Court could appropriately and expeditiously narrow scope of the litigation, as well as better focus remaining discovery efforts. This early vetting would be in addition to, and not in lieu of, later customary motions practice following full discovery, such as motions for summary judgment, _Daubert_ motions, and the like.

There are no motions pending at this time.

**9. Other Issues:**

Given that the Plaintiffs hail from and purchased their vehicles in and have asserted claims under the laws of dozens of different states, Ford submits that a choice-of-law analysis may be appropriate as to certain Plaintiffs and/or with respect to certain claims, following sufficient factual development for such analysis. In addition, Ford maintains that these actions are improperly joined and may not be properly tried together or on any kind of representative basis. Therefore, Ford continues to reserve the right to seek severance of these actions for trial. Ford also reserves the right, depending on factual development, to seek any other appropriate relief, including transfer to more appropriate venues.

Beyond that, the parties are not aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this matter at this time.

Date: April 21, 2021

STERN LAW, PLLC

BY:   /s/ *Kenneth A. Stern*
       KENNETH A. STERN (P30722)
       41850 W. Eleven Mile Road, Ste 121
       Novi, Michigan 48375-1857
       Tel: (248) 347-7315
       ken@sternlawonline.com

MARINO LAW PLLC
Amy L. Marino (P76998)

18977 W. Ten Mile Road, Ste 100E
Southfield, Michigan 48075
Tel: (248) 797-9944
Fax: (313) 281-2206
amy@marinopllc.com

*Attorneys for Plaintiffs*

Date: April 21, 2021

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

BY:   /s/ Thomas Branigan
       THOMAS P. BRANIGAN (P41774)
       JODI MUNN SCHEBEL (P55889)
       MATTHEW G. BERARD (P77024)
       BRANDON M. PELLIGRINO (P79112)
       41000 Woodward Avenue, Suite 200 East
       Bloomfield Hills, MI 48304-4132
       Telephone: 248.205.3300
       Facsimile: 248.205.3309
       Email:  tom.branigan@bowmanandbrooke.com
       Email:  jodi.schebel@bowmanandbrooke.com
       Email:  matthew.berard@bowmanandbrooke.com

       MARY T. NOVACHECK (*Admission 1/21/2020*)
       150 South Fifth Street, Suite 3000
       Minneapolis, MN 55402
       Telephone:  612.672.3276
       Facsimile:  612.672.3200
       Email:mary.novacheck@bowmanandbrooke.com

       ROBERT L. WISE (*Admission 11/1/2019*)
       901 East Byrd Street, Suite 1650
       Richmond, VA 23219

Telephone: 804.819.1134
Facsimile: 804.649.1762
Email: rob.wise@bowmanandbrooke.com

*Attorneys for Defendant*
*Ford Motor Company, Inc.*

## **PROOF OF SERVICE**

The undersigned certifies that she filed this document on April 21, 2021, using the Court's CM/ECF system, which will send notice of such filing to all counsel of record.

*/s/ Amy L. Marino*
Amy L. Marino